**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------- X
                                      :

| | | |
|---|---|---|
| LEE E. BUCHWALD, as Chapter 7 Trustee for Magnesium Corporation of America and Related Debtor, Renco Metals, Inc., | : | Case No. 1:13-CV-07948-AJN |
| | : | |
| | : | **PLAINTIFF TRUSTEE'S TRIAL** |
| | X | **MEMORANDUM** |
| Plaintiff, | : | |
| | : | |
| | : | **(FINAL PRETRIAL** |
| vs. | : | **CONFERENCE SCHEDULED FOR** |
| | X | **19 DECEMBER 2014)** |
| THE RENCO GROUP, INC., a Delaware corporation; K. SABEL HOLDINGS, INC., an Alabama corporation; KPMG PEAT MARWICK LLP; DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION; HOULIHAN LOKEY HOWARD & ZUKIN; CADWALADER, WICKERSHAM & TAFT, LLP; IRA LEON RENNERT; ROGER L. FAY; JUSTIN W. D'ATRI; DENNIS A. SADLOWSKI; MICHAEL C. RYAN; MICHAEL H. LEGGE; RON L. THAYER; TODD R. OGAARD; LEE R. BROWN; HOWARD I. KAPLAN; KEITH SABEL; UNIDENTIFIED TRUSTEES of Trusts Established by Ira Leon Rennert; and DOES I through XX, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------- X

185937

## <u>TABLE OF CONTENTS</u>

<u>Page No</u>.

I.      INTRODUCTION ........................................................................................ 1

II.     MAGCORP AND RENCO METALS WERE INSOLVENT AND
        INADEQUATELY CAPITALIZED WHEN DEFENDANTS LOOTED
        THEM OF MORE THAN $118 MILLION .......................................................... 1

III.    JURISDICTION IN THE DISTRICT COURT AND THE NATURE OF
        THE TRUSTEE'S REMAINING CLAIMS ...................................................... 5

IV.     THE TRUSTEE'S REMAINING CLAIMS FOR TRIAL ................................... 5

        A.    The Trustee's Claims For Breaches of Fiduciary Duty .......................... 6

              1.    For An Interested Director Or Officer, The "Entire
                    Fairness" Standard Of Review Applies, And Defendants
                    Have The Burden Of Proof ...................................................... 8

              2.    The Presumption of Insolvency And Shifting Burden Of
                    Proof ..................................................................................... 9

              3.    The Defendants' Duties to Creditors of Insolvent
                    Corporations .......................................................................... 9

        B.    The Trustee's Claims For Aiding and Abetting Breaches of
              Fiduciary Duty .................................................................................. 10

        C.    The Trustee's Claims To Recover Fraudulent Conveyances And
              Preferences ...................................................................................... 11

        D.    The Trustee's Claims For Aiding and Abetting Fraudulent
              Conveyances .................................................................................... 14

        E.    The Trustee's Claims For Unlawful Dividends and Stock
              Redemption Payment ........................................................................ 14

        F.    The Trustee's Claim for Unjust Enrichment ........................................ 16

V.      CONCLUSION ........................................................................................ 17

185937

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

<u>Cases</u>

*Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC,* 114
A.D.3d 888, 981 N.Y.S.2d 135 (2014) ................................................................. 16

*Americas Mining Corp. v. Theriault,* 51 A. 3d 1213 (Del. 2012) ................................. 8

*Asarco LLC v. Americas Mining Corp.,* 396 B.R. 278 (S.D. Tex. 2008) ...................... 8

*Chambers v. Weinstein,* 44 Misc.3d 1224(A) (Sup Ct, NY County 2014)
(Sherwood, J.) .......................................................................................................... 13

*Chem Tex, LLC, v. St. Anthony Enterprises, Inc.,* 490 F. Supp. 536 (S.D.N.Y.
2007) ....................................................................................................................... 14

*Commodity Futures Trading Com'n v Walsh,* 17 N.Y.3d 162 (2011) ........................ 12

*Coroles v. Sabey,* 798 P.3d 974 (Utah App. 2003) ..................................................... 11

*EBS Litigation v. Barclays Global Investors,* 304 F. 3d 302 (3rd Cir. 2002) .............. 15

*Edgar v. MITE Corp.,* 457 U.S. 624 (1982) ................................................................. 6

*Farm Bureau Life Ins. Co. v. American National Insurance,* 505 F.Supp.2d 1178
(D. Utah 2007) ........................................................................................................ 11

*First Keystone Consultants, Inc. v Schlesinger Elec. Contractors, Inc.,* 871
F.Supp.2d 103 (E.D.N.Y. 2012) ............................................................................. 9

*Gantler v. Stephens,* 965 A.2d 695 (Del. 2009) ........................................................... 7

*Georgia Malone & Co. v Rieder,* 19 N.Y.3d 511 (2012) ............................................ 16

*Georgia Malone & Co., Inc. v. Ralph Rieder,* 86 A.D.3d 406, 926 N.Y.S.2d 494
(App. 1st Dept. 2011) ............................................................................................. 16

*GFL Advantage Fund, Ltd. v. Colkitt,* 2003 WL 21459716 (S.D.N.Y. 2003) ............. 12

*Guth v. Loft, Inc.,* 5 A.2d 503 (Del. 1939) ................................................................... 7

*In Re Adelphia Communs. Corp. (Adelphia Communs. Corp. v. Bank of America),*
365 B.R. 24 (Bankr. S.D.N.Y. 2007) ..................................................................... 10

*In re Fedders North America, Inc.,* 405 B.R. 527 (Bankr. D.Del. 2009) ..................... 6

*In re Magnesium Corporation,* 399 B.R. 722 (Bankr. S.D.N.Y. 2009) ....................... 6

*In re Monahan Ford Corp. of Flushing,* 340 B.R. 1 (Bankr. E.D.N.Y. 2006) ............. 13

*In re Musicland Holding Corp., et al.,* 398 B.R. 761 (S.D.N.Y. 2008) ....................... 15

*In re Sharp Int'l Corp.,* 403 F.3d 43 (2d Cir. 2005) .............................................. 11, 13

*In re Sheffield Steel Corp.,* 320 B.R. 405 (N.D. Okla. 2004) ...................................... 15

*In re Topps Co. S'holders Litig.,* 924 A.2d 951 (Del.Ch. 2007) .................................. 6

185937

*In re Tronox, Inc.,* 450 B.R. 432 (Bankr. S.D.N.Y. 2011)................................................ 8

*Ivanhoe Partners v. Newmont Mining Corp.,* 535 A.2d 1334 (Del. 1987)...................................... 7

*Kidz Cloz, Inc. v. Officially For Kids, Inc.,* 320 F. Supp. 2d 164 (S.D.N.Y. 2004) .................... 16

*Lerner v. Fleet Bank, N.A.,* 549 F.3d 273 (2d Cir. 2006) ............................................... 14

*Licci v. Lebanese Canadian Bank, SAL,* 672 F.3d 155 (2d Cir. 2012)..................................... 12

*Lyman Commerce Solutions v. Lung,* 2014 WL 476307 (S.D.N.Y. Feb. 6, 2014)................................ 11

*Mandarin Trading Ltd. v Wildenstein,* 16 N.Y.3d 173 (2011) ............................................ 16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine,* 221 A.D.2d 284, 634
   N.Y.S.2d 469 (1995)............................................................................... 16

*North Am. Catholic Educ. Prog. Found., Gheewalla,* 930 A.2d 92 (Del. 2007)............................. 9

*Paramount Film Distributing Corp. v State,* 30 N.Y.2d 415 (1972) ...................................... 16

*Pereira v. Farace,* 413 F. 3d 330 (2d Cir. 2005).......................................................... 15

*Quadrant Structured Products Co. v. Vertin,* CIV.A.6990-VCL, 2014 WL
   5099428 (Del. Ch. Oct. 1, 2014) .................................................................. 9

*Russell/Packard Development, Inc. v. Carson, et al.,* 78 P.3d 616 (Utah App.
   2003)............................................................................................ 11

*Smith v. Van Gorkom,* 488 A.2d 858 (Del. 1985)........................................................ 7

*Solow v. Stone,* 994 F. Supp 173 (S.D.N.Y. 1998), *aff'd,* 163 F.3d 151 (2d Cir.
   1998)............................................................................................ 10

*Stern v. Marshall,* 131 S. Ct. 2594 (2011) ............................................................. 5

*Tyco Int'l, Ltd. v. Kozlowski,* 756 F.Supp.2d 553 (S.D.N.Y. 2010) ..................................... 12

*Wultz v. Bank of China Ltd.,* 865 F.Supp.2d 425 (S.D.N.Y. 2012) ...................................... 12

## Statutes

11 U.S.C. § 502.......................................................................................... 12

11 U.S.C. § 502(e)...................................................................................... 12

11 U.S.C. § 544(b)(1) .................................................................................. 12

28 U.S.C. § 1334(b)..................................................................................... 5

28 U.S.C. § 1334(e)..................................................................................... 5

## Other Authorities

8 Del. C. § 102(b)(7)................................................................................... 8

8 Del. C. § 170 (2014) ................................................................................. 17

8 Del. C. § 173 (2014) ................................................................................. 17

8 Del. C. § 174 (2014) ................................................................................. 17

185937

DCL § 273............................................................................................................. 15

DCL § 274............................................................................................................. 15

DCL § 275............................................................................................................. 15

DCL § 276............................................................................................................. 14

DCL § 278............................................................................................................. 13

Del. Code Ann. tit. 8, § 174 ................................................................................. 17

185937

## I.      INTRODUCTION

The following trial memorandum is intended to give the Court a brief overview of the Trustee's claims, to identify the law applicable to those claims, and to identify specific issues relating to burden of proof with respect to claims against defendants who were also fiduciaries. This memorandum assumes that the issues remaining for trial are those that were pleaded and asserted in the Joint Pretrial Report, and does not address other issues.

## II.     MAGCORP AND RENCO METALS WERE INSOLVENT AND INADEQUATELY CAPITALIZED WHEN DEFENDANTS LOOTED THEM OF MORE THAN $118 MILLION

Notwithstanding a long history of troubled and unprofitable magnesium operations in Rowley, Utah, and the enormous competition, technology, and environmental problems piling up around them, Ira Rennert and Renco Group (the owners of MagCorp and Renco Metals) took advantage of a relatively brief period of record high magnesium prices[1] to double the companies' debt,[2] and took more than $118 million out of the business in the form of dividends, stock redemption payments, and "Net Worth Appreciation" payments between December 1995 and October 1998 (the "Relevant Period"). Their fraudulent conveyances and breaches of fiduciary duty left both MagCorp and Renco Metals insolvent, and put both companies on the road to inevitable ruin.

---

[1] Even at the time, MagCorp management recognized that the high prices were "*a transient phenomenon* and not a steady state situation." (Defendant Howard Kaplan). Magnesium prices had reached record high levels in 1995 and were already declining before the 1996 Note Offering. Nevertheless, management's projections, used to obtain a solvency opinion from Houlihan Lokey and now also accepted uncritically by Defendants' Experts Edgar and Grabowski, forecast those record high prices continuing *for seven years* (through 2003, when the Notes were due), and record high margins *improving* with new technology that had *never* been tested in an operation like MagCorp's – and which did not work when it was tested. See Part I.D.1, below.

[2] Renco Metals had just issued $75 million in Notes in 1993.

The magnesium business at Rowley started badly under the ownership of NL Industries in 1972 ("it was a disaster" according to defendant Howard Kaplan), and had to be shut down for a year and overhauled within a few years of its startup. It was sold to AMAX in 1980 and continued to perform badly. According to defendant Mike Legge, the CEO of MagCorp, "[t]his company was not making money in the '80s. It was bleeding. It was losing tons of money." AMAX wanted to sell the business in 1985, and "it was on the market for quite a long time" (Howard Kaplan), before it was sold to The Renco Group in 1989, for $44 million.[3] Because the transaction was structured as a stock purchase, MagCorp is the same business as AMAX Magnesium, and acquired 100% of its environmental liabilities from the period of AMAX ownership in the 1980s.[4]

MagCorp *continued* to lose money after its acquisition by Renco Group, and Group formed Renco Metals in connection with a 1993 $75 million offering that refinanced MagCorp's losses, in order to spread them out over 7 years. Renco Group had no intention of ever paying off that debt – and in 1996 rolled it over into a second debt offering by Renco Metals (also

---

[3]  The 1989 Stock Purchase Agreement (Trial Ex. 2171) in Section 3.1 describes the purchase price of $44,170,141, payable with $32,170,141 in cash and a note for $12 million. When MagCorp continued to lose money after the purchase, the note was discounted by AMAX to $7 million (a 42% haircut) and paid off with the proceeds of a 1993 $75 million debt offering, borrowed by Renco Metals, guaranteed by MagCorp. Thus, Renco Metals and MagCorp were made responsible for paying for their own acquisition, as Renco Group was not going to pay the balance of the purchase price (the $12 million note). There was also no consideration to Renco Metals or to MagCorp for assuming that debt.

[4]  The federal Superfund laws (CERCLA/SARA) in the 1990s provided that the *current* owner and operator of a facility is strictly liable for pre-existing contamination of the facility by prior owners and operators, even if the current owner and operator had nothing to do with the contamination. Because MagCorp *is* AMAX Magnesium, it is liable for contamination by AMAX in the 1980s, without regard to those Superfund liability provisions. The evidence at trial will show that MagCorp was also liable under those Superfund liability provisions for contamination by NL Industries from the 1970s.

185937

guaranteed by MagCorp) to further stretch out payment of the losses from 1989-1992 until 2003 – and Renco Group never intended to pay that debt, either.[5]

Renco Metals lost money in three out of five years before the Relevant Period 1995-1998, and lost a total of almost $20 million between 1991 and 1994. Trial Exhibits 2069 and 2072, Renco Metals Form 10-K for 1993 and 1996, respectively (1993 10-K at SDUS 002113; 1996 10-K at KPMG 01141).

During a relatively brief period of record high prices (a "transient phenomenon"), Ira Rennert and Renco Group caused Renco Metals to double its long-term interest bearing debt from $75 million to $150 million. During the Relevant Period 1995-1998, Defendants took more than *$118 million* out of the companies in dividends, stock redemption payments, and "Net Worth Appreciation" payments, without fixing any of the companies' fundamental problems, including their continuing noncompliance with federal hazardous waste laws.

During and after the Relevant Period, as magnesium prices inevitably declined, Renco Metals' and MagCorp's financial condition also continued to deteriorate, as its environmental problems and liabilities grew larger. Renco Group caused Renco Metals to sell Sabel Industries for $11 million, defaulted on interest due under the 1996 Notes, petitioned for relief in bankruptcy, and then sold MagCorp's assets out of bankruptcy – free and clear of most liabilities, including the $150 million 1996 Notes – for less than $18 million.

---

[5]  When Keith Sabel (President of Renco Metals' other operating subsidiary, Sabel Industries) questioned a written consent with respect to the 1996 $150 million Notes, and asked Roger Fay (Vice-President of Finance at Renco Group) how the companies would ever pay the principal on a $150 million bond, he was told that they would just roll it over in another bond offering. Sabel Depo., January 16, 2006, pp. 130-131. Sabel also testified that he and his CFO at Sabel determined that getting killed by a one-ton rock was sufficient, so it didn't matter if it was two tons or not (*i.e.,* doubling the debt from $75 million to $150 million made no difference to his decision to consent to the $150 million Notes Offering, as Sabel could not pay either amount). Sabel Depo., January 16, 2006, pp. 179-180.

3

185937

Even that meager sale price was achieved only after a new electrolytic cell technology was developed and implemented in part by cannibalizing the business (a handful of new cells were built with the proceeds from the December 2000 sale of Sabel), because Renco Group did not trust and would not finance the new technology. "The Renco Corporate group does not wish to engage in economic support of the technology upgrade program." Trial Ex. 2112, 4/6/00 letter from Legge to Rennert; RG006136 to 6145, at 6139. Defendant Ron Thayer testified at his deposition, 8/17/11, p. 201, "They [Renco Group] were also concerned to some degree over the technology because it was new cell technology that hadn't been installed and operated on a scale large enough to make it 100 percent proven."

That is, two years after the Relevant Period, the *owner* of Renco Metals and MagCorp did not believe that MagCorp had developed the new technology required to be competitive. If *Renco Group* didn't believe it, no potential purchaser of the magnesium business was going to believe it. Without that technology upgrade, as the defendants' admissions will demonstrate at trial, *the business could not be sold* – period. And, without a willing buyer, there is no fair market value.

The environmental liabilities at the Rowley Facility also made it impossible to sell the business, as the Superfund laws in effect at the time made any purchaser of the facility strictly liable for existing contamination at the site. That explains why the Rowley Facility and magnesium business were sold to Renco Group, which already owned the problem:

> Since *several potential purchasers have withdrawn their interest because of environmental concerns*, there is no reason to believe Trilon ultimately will be different.  Even its DIP proposal is conditioned upon being comfortable that there can be no lender liability for the environmental condition of the facility.  *We always knew* the environmental issues would create an obstacle to completing a sale or plan of reorganization.

Affidavit of Michael Legge, 3 June 2002, p. 11, paragraph 32.

4

185937

*That* is the business that Defendants' expert values at $200-250 million in 1996 – more than 500-600% its 1989 acquisition price, and more than ten to fifteen times what its assets actually sold for in 2002. The evidence at trial will prove that MagCorp and Renco Metals were insolvent and inadequately capitalized.

## III.   JURISDICTION IN THE DISTRICT COURT AND THE NATURE OF THE TRUSTEE'S REMAINING CLAIMS

The Defendants have very recently taken the position that the Trustee's claims are somehow "integrally related" to the claims-allowance process in the Bankruptcy Court, and to the hierarchical reordering of debtor and creditor relations in the Bankruptcy Court – in other words, that the Trustee's claims remaining for trial are, in part, "public claims" belonging to the equitable jurisdiction of the Bankruptcy Court.

In the Joint Pretrial Report, the parties agreed at page 6:

> *As acknowledged by the issuance of the December 11, 2013 Order,* the Court has jurisdiction over this action: (i) pursuant to 28 U.S.C. §§ 1334(b) and (e), as the action arises in and is related to the chapter 7 proceedings for Renco Metals and MagCorp; and (ii) in accordance with *Stern v. Marshall,* 131 S. Ct. 2594 (2011), *as the claims that the Trustee has asserted in this action involve private rights*.

(Emphasis added.) As the emphasized language above indicates, the nature of the Trustee's remaining claims was one of the issues before the Court and decided by Judge Sweet in his 11 December 2013 order granting the Trustee's Motion to Withdraw the Reference.

## IV.   THE TRUSTEE'S REMAINING CLAIMS FOR TRIAL

The Trustee's claims remaining for trial include several claims for relief against various defendants. In almost every case, the claims are based upon the defendants' abuse of their fiduciary duties and control over the debtors, MagCorp and Renco Metals. Ira Rennert was the sole director of both MagCorp and Renco Metals, and the controlling shareholder of Renco

185937

Group, which owned 100% of Renco Metals, which owned 100% of MagCorp. Defendants D'Atri, Sadslowsi, Fay, and Ryan were officers of debtors, as outlined in the Joint Pretrial Report; all were based in New York. Defendants Legge, Thayer, Ogaard, Brown, and Kaplan were officers of MagCorp, and all were based in Utah.

A.   **The Trustee's Claims For Breaches of Fiduciary Duty[6]**

The Trustee's claims include claims for breaches of fiduciary duty against defendants Rennert, D'Atri, Sadlowski, Fay, Ryan, Legge, Thayer, Ogaard, Brown and Kaplan under state law (Counts 31, 35 and 39). Each of the Defendants is charged with breaches of fiduciary duties to the debtor(s) that they were responsible for serving as an officer or director.

Renco Metals is a Delaware corporation with its principal place of business in New York. Complaint, ¶ 4; Defendants' Answer, ¶ 4; Joint Pretrial Report, Agreed Fact ¶ 5.[7] MagCorp is a Delaware corporation, with its principal place of business in Utah. Complaint, ¶ 5; Defendants' Answer, ¶ 5; Joint Pretrial Report, Agreed Fact ¶ 7. The Trustee's claims for breaches of fiduciary duty are governed by the law of Delaware, under the internal affairs doctrine.[8]

---

[6]  Count 31 against Rennert, and Count 39 against D'Atri, Fay, Sadlowski, Ryan, Legge, Thayer, Ogaard, Brown, and Kaplan.

[7]  Notwithstanding the Defendants' recent attempts to contradict the facts admitted in their own pleadings and Agreed Facts in the Joint Pretrial Report, these are undisputed facts with consequences for both jurisdiction and venue, and also for choice of law.

[8]  *In re Magnesium Corporation,* 399 B.R. 722, 742 (Bankr. S.D.N.Y. 2009) ("As to matters relating to the duties of officers and directors to the corporations they serve … and the extent, if any, to which officers and directors breached them, the Court must apply the law of the state of incorporation, Delaware"); *Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982) ("The internal affairs doctrine provides that only the state of incorporation has the authority to regulate a corporation's internal affairs"); *In re Fedders North America, Inc.,* 405 B.R. 527, 539 (Bankr. D.Del. 2009) ("Few, if any, claims are more central to a corporation's  internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers" (*citing In re Topps Co. S'holders Litig.,* 924 A.2d 951 (Del.Ch. 2007)).

185937

The elements of the claim are (1) existence of a fiduciary duty to Renco Metals and/or to MagCorp; a (2) breach of the duty; (3) proximately causing (4) damages to the corporation; or (5) resulting in a profit for the fiduciary.

The fiduciary duties owed by a director or officer of a Delaware corporation include duties of care and loyalty. The duty of care requires that directors inform themselves of "all material information reasonably available to them," and "act in an informed and deliberate manner" prior to making a business decision. *Smith v. Van Gorkom,* 488 A.2d 858, 872, 873 (Del. 1985). The duty of loyalty requires that "Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests.... The rule that requires an undivided and unselfish loyalty to the corporation demands that there shall be no conflict between duty and self-interest." *Guth v. Loft, Inc.,* 5 A.2d 503, 510 (Del. 1939); *Ivanhoe Partners v. Newmont Mining Corp.,* 535 A.2d 1334, 1345 (Del. 1987).

The fiduciary duties owed by officers of Delaware corporations are identical to those owed by directors. *Gantler v. Stephens,* 965 A.2d 695, 708-709 (Del. 2009) ("In the past, we have implied that officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty, and that the fiduciary duties of officers are the same as those of directors. We now explicitly so hold."). However, as the court in *Gantler* went on to say:

> That does not mean, however, that the consequences of a fiduciary breach by directors or officers, respectively, would necessarily be the same. Under 8 Del. C. § 102(b)(7), a corporation may adopt a provision in its certificate of incorporation exculpating its directors from monetary liability for an adjudicated breach of their duty of care. Although legislatively possible, *there currently is no statutory provision authorizing comparable exculpation of corporate officers.*"

*Id.*, fn. 37 (emphasis added).

Because the defendants were fiduciaries to MagCorp and to Renco Metals during the Relevant Period, special rules of Delaware law apply to the Trustee's claims, and impose on the Defendants the burden of proof to justify their conduct, and to produce evidence to overcome the presumption of insolvency.

### 1. For An Interested Director Or Officer, The "Entire Fairness" Standard Of Review Applies, And Defendants Have The Burden Of Proof

**First**, Delaware law provides that when a fiduciary was "interested" in a transaction – that is, the defendant had a personal interest in the fraudulent conveyance – that defendant has the burden of proving the "entire fairness" of that transaction or conveyance to MagCorp and/or to Renco Metals. The fiduciary's interest in the transaction implicates the duty of loyalty, so this is not a question of "business judgment" and has nothing to do with the application of the "business judgment rule"; where the director and officers are interested in the transaction, the business judgment rule does not apply and the transaction is reviewed instead under the "entire fairness" standard.

Each defendant that is the subject of a claim for breach of fiduciary duty with respect to a conveyance that the Plaintiff seeks to recover, and who was interested in the conveyance as defined below, has the burden of establishing that the conveyance was entirely fair to the entity (MagCorp or Renco Metals) of which the defendant was an officer or director, and to its principal beneficiaries. The entire fairness standard has two parts: fair dealing and fair price. Fair dealing is concerned with how the conveyance was initiated, structured, negotiated, disclosed, and how the approval of the conveyance was obtained. Fair price is concerned with the economic and financial considerations of the conveyance. *Asarco LLC v. Americas Mining Corp.,* 396 B.R. 278, 325-329 n. 149 (S.D. Tex. 2008); *Americas Mining Corp. v. Theriault,* 51 A. 3d 1213, 1239-1240 (Del. 2012); *In re Tronox, Inc.,* 450 B.R. 432, 439 (Bankr. S.D.N.Y. 2011). Here, the

185937

defendants have admitted and testified that there was no benefit or consideration given for the dividends paid to Renco Metals and to Renco Group, and the "entire fairness" standard cannot be satisfied without such consideration.

### 2.      The Presumption of Insolvency And Shifting Burden Of Proof

**Second**, when a conveyance is made without fair consideration, it is presumed that the conveyance made the corporation insolvent. Therefore, while the party challenging a conveyance generally has the burden of proving insolvency, "[o]nce it is established that a debtor transferred property without fair consideration, however, the law presumes that the transfer rendered the debtor insolvent," *First Keystone Consultants, Inc. v Schlesinger Elec. Contractors, Inc.,* 871 F.Supp.2d 103, 120 (E.D.N.Y. 2012), and the burden shifts to defendants "to overcome that presumption by demonstrating the debtor's continued solvency after the transfer." *Id.*

Here, defendants have testified and admitted that there was no benefit to MagCorp or to Renco Metals in the payment of dividends.

### 3.      The Defendants' Duties to Creditors of Insolvent Corporations

**Third**, the beneficiaries of the defendants' fiduciary duties change with insolvency. A director or officer of a Delaware corporation *always* owes fiduciary duties to that corporation. If the corporation is solvent, the fiduciary duties are expected to be exercised for the benefit of the shareholder(s) as the beneficiaries of the corporation's value. However, the corporation's insolvency makes the *creditors* the "principal beneficiaries" of the firm's value, and the shareholders can benefit from the company's value *only after the claims of the company's creditors have been satisfied. North Am. Catholic Educ. Prog. Found., Gheewalla,* 930 A.2d 92, 99 (Del. 2007); *Quadrant Structured Products Co. v. Vertin,* CIV.A.6990-VCL, 2014 WL 5099428 (Del. Ch. Oct. 1, 2014). Thus, the defendants' fiduciary duties to an insolvent

9

corporation are required to be exercised for the benefit of the principal beneficiaries, the creditors, and the defendants' conduct is measured against the interests of the creditors.

### B.        The Trustee's Claims For Aiding and Abetting Breaches of Fiduciary Duty

The Trustee's claims also include claims for aiding and abetting breaches of fiduciary duty by others, against the defendants Rennert, D'Atri, Fay, Sadlowski, Ryan, Legge, Thayer, Ogaard, Brown, Kaplan and Renco under state law (Counts 32, 40 and 45).

Under New York choice of law rules, the aiding and abetting claims are tort claims not governed by Delaware law under the internal affairs doctrine, but by the law of the state identified by New York's "interest analysis." Several courts have ruled that the laws of the state where the economic loss is suffered – the corporation's principal place of business – govern such claims. *Solow v. Stone,* 994 F. Supp 173, 177 (S.D.N.Y. 1998), *aff'd,* 163 F.3d 151 (2d Cir. 1998); *In Re Adelphia Communs. Corp. (Adelphia Communs. Corp. v. Bank of America),* 365 B.R. 24, 39 (Bankr. S.D.N.Y. 2007).

In the absence of a true conflict between the laws of New York (Renco Metals' principal place of business) and Utah (MagCorp's principal place of business), New York law may be applied. The elements of the claim appear to be the same under both states' laws:

(1) a breach by a fiduciary of obligations to another, with the actual knowledge of the defendant who is accused of aiding and abetting the breach;

(2) the defendant knowingly induced or participated in the breach of fiduciary duty; and

(3) the plaintiff suffered damage as a result of the breach of fiduciary duty.

In this case, where the Plaintiff represents the interests of MagCorp and Renco Metals, the third element requires proof that MagCorp or Renco Metals suffered damage as a result of the breach of fiduciary duty.

185937

A person knowingly participates in a breach of fiduciary duty when he or she provides "substantial assistance" to the fiduciary who breached his duty. Substantial assistance may be found where the alleged aider and abettor affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach of fiduciary duty to occur. *In re Sharp Int'l Corp.,* 403 F.3d 43, 50 (2d Cir. 2005); *Russell/Packard Development, Inc. v. Carson, et al.,* 78 P.3d 616, 626-27 (Utah App. 2003); *Farm Bureau Life Ins. Co. v. American National Insurance,* 505 F.Supp.2d 1178 (D. Utah 2007); *Coroles v. Sabey,* 798 P.3d 974 (Utah App. 2003).

### C.    The Trustee's Claims To Recover Fraudulent Conveyances And Preferences

The Trustee's claims against the defendants who received any of the payments challenged in the Amended Complaint include claims to recover fraudulent conveyances and preferential transfers, plus interest from the time of each payment, against the defendants Rennert, Legge, Thayer, Ogaard, Brown, Kaplan, Renco Group, and the trustees of the Rennert Trusts (Amended Complaint, Counts 29, 37, 42, 43, 44, and 46).

Under Bankruptcy Code Section 544(b)(1), "Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title." None of the $150 million notes issued in 1996 were paid, and the Indenture Trustee and EPA (for violations of applicable federal environmental laws) are the principal unsecured claimants in the debtors' bankruptcies.

New York law applies to the fraudulent conveyance claims, where each of the fraudulent conveyances was authorized and directed to be paid by Ira Rennert, as the sole director of both Renco Metals and MagCorp. *Lyman Commerce Solutions v. Lung,* 2014 WL 476307 *3 (S.D.N.Y. Feb. 6, 2014):

185937

> Gilbert defendants cannot refute the Second Circuit's controlling opinion in *Licci v. Lebanese Canadian Bank, SAL,* 672 F.3d 155 (2d Cir. 2012). There, the Court of Appeals recognized that for tort claims involving conduct regulating laws the location of the injury and plaintiff's domicile do not govern the choice of law analysis. *Id.* 672 F.3d at 158. Contrary to Gilbert defendants' position, "the location of the injury does not control; instead, it is the location of the defendants' conduct that controls." *Wultz v. Bank of China Ltd.,* 865 F.Supp.2d 425, 429 (S.D.N.Y. 2012).
>
> *This proposition is well-settled in the fraudulent conveyance context*. For example, in *Tyco Int'l, Ltd. v. Kozlowski,* 756 F.Supp.2d 553, 559-60 (S.D.N.Y. 2010), this court found that *claims of constructive fraud were governed by New York law and that the location of the wrongful conduct, not the place of plaintiff's injury, was determinative in its choice of law analysis*. Similarly in *GFL Advantage Fund, Ltd. v. Colkitt,* 2003 WL 21459716, *3 (S.D.N.Y. 2003), this court held that given that fraudulent conveyance laws are "conduct regulating," the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.

(Emphasis added.) The misconduct that is central to all of the fraudulent conveyance claims in this case is the misconduct of Ira Rennert, who controlled Renco Group, Renco Metals, and MagCorp, and who authorized every one of the fraudulent conveyances from New York.

The Trustee has alleged claims for both actual and constructive fraudulent conveyances. DCL § 278 "provides that a creditor whose claim has matured may have a fraudulent conveyance set aside against any person other than a good faith purchaser for value, defined as a purchaser for fair consideration without knowledge of the fraud." *Commodity Futures Trading Com'n v Walsh,* 17 N.Y.3d 162, 174-75 (2011). Under DCL § 276, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

A claim for actual fraudulent conveyance under § 276 requires proof that (1) the thing transferred has value of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by the debtor and (3) that the transfer was done with actual intent to defraud." *Chambers v. Weinstein,* 44 Misc.3d 1224(A), at *7 (Sup Ct, NY County 2014) (Sherwood, J.), *quoting In re Monahan Ford Corp. of Flushing,* 340 B.R. 1, 37 (Bankr. E.D.N.Y. 2006). In this case, all of the fraudulent conveyances were payments of cash which would otherwise have been available to pay creditors' claims, by the debtors MagCorp and Renco Metals. The evidence at trial will show that the fraudulent conveyances were made and implemented by the use of misrepresentations and omissions about the true financial condition of the debtors, which will support a jury verdict that the fraudulent conveyances were made with intent to hinder, delay, or defraud creditors.

A claim for a constructive fraudulent conveyance requires evidence of lack of fair consideration,[9] and *any one of the following circumstances*:

(1) the transferor is insolvent or will be rendered insolvent by the transfer in question (DCL § 273);

(2) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital (DCL § 274); or

(3) the transferor believes that it will incur debt beyond its ability to pay (DCL § 275)."

*In re Sharp Int'l. Corp.,* 403 F.3d 43, 53 (2d Cir 2005).

---

[9] "Fair consideration" under New York law requires not only that there be fair equivalent value for the transfer – and the defendants have admitted that there was no benefit or consideration given to MagCorp or to Renco Metals for the dividends – but also that the conveyances be made in good faith, which is lacking whenever there is a failure to deal honestly, fairly, and openly.

In the Joint Pretrial Report, the Trustee has calculated damages for the fraudulent conveyances in the aggregate ($118,445,675), plus interest under the laws of the various states that apply to the Trustee's claims. For the fraudulent conveyance claims, the Trustee is entitled to recover $118,445,675 in fraudulent conveyances, plus prejudgment interest under New York law at the rate of 9% simple interest in the total amount of $195,529,098, for a total of $313,974,773.

### D.     The Trustee's Claims For Aiding and Abetting Fraudulent Conveyances

The Trustee has also asserted claims against defendant Rennert for aiding and abetting fraudulent conveyances (Count 30). Because this claim against a New York resident also involves conduct regulating laws, and because the underlying claims are also governed by New York law, the Trustee believes these claims are also governed by New York law. (Judge Gerber's ruling on motions to dismiss also indicated that the tort claims for aiding and abetting fraudulent conveyances by Renco Metals would be governed by New York law.)

The elements of a claim for aiding and abetting a fraudulent conveyance are: (1) the existence of a fraudulent conveyance caused by the primary wrongdoer; (2) knowledge of the fraudulent conveyance by the defendant who is charged with aiding and abetting, and (3) proof that the defendant who is charged with aiding and abetting the fraudulent conveyance substantially assisted the primary wrongdoer. *Chem Tex, LLC, v. St. Anthony Enterprises, Inc.,* 490 F. Supp. 536, 545-46, 548 (S.D.N.Y. 2007); *Lerner v. Fleet Bank, N.A.,* 549 F.3d 273, 292 (2d Cir. 2006).

### E.     The Trustee's Claims For Unlawful Dividends and Stock Redemption Payment

The Trustee's claims include claims to recover unlawful payment of dividends and unlawful stock redemption under Delaware law, against defendants Rennert – who authorized

185937

the unlawful dividends and stock redemption – and Renco Group, which received them (Counts 34 and 51).

Like the Trustee's claims for breaches of fiduciary duty, the claims for payment of unlawful dividends and stock redemption are governed by the law of Delaware, under the internal affairs doctrine. Delaware law imposes personal liability on a director who authorizes payment of unlawful dividends, or payment for an unlawful stock redemption.

The director is liable for the full amount of an unlawful dividend, together with interest from the time of the dividend, if he willfully or negligently declared and paid a dividend on shares of capital stock, and capital representing shares of preferred stock is impaired, or the dividend is made while the corporation is insolvent, or renders the corporation insolvent, and – if the corporation is or would be rendered insolvent – the dividend is not out of net profits from the current or preceding year. 8 Del. C. §§ 170, 173, 174 (2014); *In re Musicland Holding Corp., et al.,* 398 B.R. 761, 783 (S.D.N.Y. 2008); *In re Sheffield Steel Corp.,* 320 B.R. 405, 413 (N.D. Okla. 2004); *EBS Litigation v. Barclays Global Investors,* 304 F. 3d 302, 305 (3rd Cir. 2002); *Pereira v. Farace,* 413 F. 3d 330, 343 (2d Cir. 2005).

The Trustee also alleges that Renco Group is liable for receiving the unlawful dividends. Delaware law imposes liability on a shareholder who receives an unlawful dividend where: (1) Rennert declared an unlawful dividend, (2) Renco Group received the dividend, and (3) Renco Group was aware of facts indicating that such dividend was unlawful. Del. Code Ann. tit. 8, § 174. Because Rennert is the sole director of Renco Metals who declared the dividends, and Renco Group which received them, his own knowledge of the circumstances that made the dividends unlawful (whether he was merely negligent or reckless) is imputed to Renco Group and is sufficient to make Renco Group liable.

185937

F.     <u>The Trustee's Claim for Unjust Enrichment</u>

Finally, the Trustee's claims include a claim for unjust enrichment against defendants Rennert and the trustees of the Rennert Trusts (Count 47).

A claim for unjust enrichment under New York law requires the plaintiff to prove (1) the defendant was enriched, (2) the enrichment was at plaintiff's expense, and (3) the circumstances were such that "equity and good conscience require defendants to make restitution." *Kidz Cloz, Inc. v. Officially For Kids, Inc.,* 320 F. Supp. 2d 164, 177 (S.D.N.Y. 2004). The Plaintiff's claim for unjust enrichment does not require proof that the enriched party committed an unlawful act. However, in determining whether equity and good conscience permit the retention of the money or benefit, the jury may consider the knowledge and conduct of the enriched party. *Georgia Malone & Co., Inc. v. Ralph Rieder,* 86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 497 (App. 1st Dept. 2011); *Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC,* 114 A.D.3d 888, 981 N.Y.S.2d 135, 137 (2014); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine,* 221 A.D.2d 284, 287, 634 N.Y.S.2d 469, 471 (1995).

"The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distributing Corp. v State,* 30 N.Y.2d 415, 421 (1972); *Georgia Malone & Co. v Rieder,* 19 N.Y.3d 511, 516 (2012), *Mandarin Trading Ltd. v Wildenstein,* 16 N.Y.3d 173, 182 (2011).

In this case, Rennert was unjustly enriched by the looting of MagCorp and Renco Metals to pay dividends and stock redemption payments to Renco Group – owned by Rennert – which used the money taken from the debtors to, among other things, build a mansion for the personal use of Rennert and his family, while the debtors' mounting competitive, technology, and environmental problems and liabilities were ignored.

16

V.    **CONCLUSION**

This trial memorandum is intended only to provide a very brief outline of the Trustee's claims remaining for trial. It is not intended to be a comprehensive review of the evidence or the law relating to those claims, and does not purport to state the Trustee's positions with respect to all of the issues in the Joint Pretrial Report, or all of the issues that have been the subject of earlier briefs on motions to dismiss, motions for summary judgment or for partial summary judgment, or any of the pending motions *in limine*. The failure to state or repeat points from such earlier filings should not be construed as a modification or withdrawal of any such points.

Respectfully submitted this 16th day of December 2014.

**BEUS GILBERT PLLC**

By:    *Scot C. Stirling*
Leo R. Beus (Arizona Bar No. 002687) Admitted *Pro Hac Vice*
lbeus@beusgilbert.com
Scot C. Stirling (Arizona Bar No. 005757) Admitted *Pro Hac Vice*
sstirling@beusgilbert.com
Malcolm Loeb (Arizona Bar No. 017338) Admitted *Pro Hac Vice*
mloeb@beusgilbert.com
Robert O. Stirling (Arizona Bar No. 027749) Admitted *Pro Hac Vice*
rstirling@beusgilbert.com
701 North 44th Street
Phoenix, Arizona  85008-6504
Telephone:    (480) 429-3000
Fax:            (480) 429-3100
*Attorneys for Plaintiff*

17

185937