UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
LEE E. BUCHWALD, as Chapter 7 Trustee for                    :   Case No. 1:13-CV-07948-AJN
Magnesium Corporation of America and Related                 :
Debtor, Renco Metals, Inc.,                                  :   **TRUSTEE'S PROFFER**
                                                             X   **REGARDING EVIDENCE OF**
                Plaintiff,                                   :   **DEFENDANT IRA RENNERT'S**
                                                             :   **UNJUST ENRICHMENT**
           vs.                                               :
                                                             X
THE RENCO GROUP, INC., a Delaware                            :
corporation; K. SABEL HOLDINGS, INC., an                     :
Alabama corporation; KPMG PEAT                               :
MARWICK LLP; DONALDSON, LUFKIN &                             :
JENRETTE SECURITIES CORPORATION;                             :
HOULIHAN LOKEY HOWARD & ZUKIN;                               :
CADWALADER, WICKERSHAM & TAFT,                               :
LLP; IRA LEON RENNERT; ROGER L. FAY;                         :
JUSTIN W. D'ATRI; DENNIS A.                                  :
SADLOWSKI; MICHAEL C. RYAN;                                  :
MICHAEL H. LEGGE; RON L. THAYER;                             :
TODD R. OGAARD; LEE R. BROWN;                                :
HOWARD I. KAPLAN; KEITH SABEL;                               :
UNIDENTIFIED TRUSTEES of Trusts                              :
Established by Ira Leon Rennert; and DOES I                  :
through XX,                                                  :
                                                             :
                Defendants.                                  :
                                                             :
------------------------------------------------------------ X

182948

I.      **INTRODUCTION**

Pursuant to the Court's ruling at the pretrial conference on 19 December 2014, the Trustee submits this proffer regarding the relevance of the Trustee's evidence of Ira Rennert's unjust enrichment, as a result of the purchase of land and the construction of a personal residence made possible and accomplished with funds from the dividends from MagCorp and Renco Metals.

The court was correct to not grant the Defendants' over reaching motion in limine to exclude any evidence regarding the use of the dividends from MagCorp and Renco Metals to purchase land and to design and commence construction of Ira Rennert's personal residence.

The formation of Blue Turtles in November 1996, for the *specific purpose of acquiring the land for the construction of this home*[1], only three months after the payment of more than $83 million in dividends and redemption payment to Renco Group in July 1996, is powerful circumstantial evidence that the purchase of the land and the construction of the home were made possible as a direct result of those fraudulent conveyances, at the expense of MagCorp and Renco Metals.

There would be no reason to form an entity for this purpose in November if the source of money required to accomplish the new entity's limited and specific purpose had not been identified and arranged. Moreover, the formation of Blue Turtles in November was followed by the acquisition of the 63 acre parcel in Sagaponack in January 1997, and the jury will be justified in believing that the identification of the location, the negotiation and other arrangements for the purchase of the land, and the commencement of work on the design and construction of a project

---

[1] The only business of Blue Turtles is to acquire and build this home for Mr. Rennert's personal use. Excerpts of KPMG Blue Turtles Audit Workpapers, KPMG-98-02-0001 at 0080-81, attached as Exhibit 1 to the Declaration of Scot C. Stirling.

182948

of this magnitude would not have occurred if the ability to begin *and to complete* the acquisition and construction had not already been determined, much closer to the date of the July 1996 fraudulent conveyances.

Moreover, Renco Group's 30(b)(6) witness, Roger Fay (Renco Group's Chief Financial Officer), testified that the dividends from MagCorp and Renco Metals were used for Renco Group investments, reinvested in Renco Group subsidiaries, and that those investments included real estate. Of course, Blue Turtles is a Renco Group subsidiary which was formed for the purpose of acquiring and developing real estate in Sagaponack for the personal use of Mr. Rennert. When the Trustee's counsel attempted to obtain more specific information from Mr. Fay about the use of the money taken from MagCorp and Renco Metals, Mr. Fay fell back upon the same formulaic response about various "investments," and ultimately answered that the money taken from MagCorp and Renco Metals was "fungible."

The Defendants must live with that testimony. Mr. Fay was required to inform himself specifically about the use of the proceeds from the Renco Metals dividends, in order to testify about the use of those proceeds in response to a 30(b)(6) deposition notice to Renco Group, and his testimony makes the connection between the Renco Metals dividends and the acquisition and construction of the Sagaponack home by Blue Turtles for the personal benefit of Ira Rennert. Mr. Fay admitted that the dividends were used for Renco Group investments, including in Renco Group subsidiaries (Blue Turtle is such a subsidiary), and that investments included real estate.

The Defendants are in no position to argue that the Trustee is required to trace specific dollars from the MagCorp/Renco Metals dividends into specific expenditures by the Blue Turtles subsidiary in response to Mr. Fay's testimony, but the evidence of that connection is

unmistakable from the table at page 3 of the Trustee's Response to the Defendants' Motion in Limine (Document 120).

## II. EVIDENCE ABOUT BLUE TURTLES' PURCHASE OF LAND AND CONSTRUCTION OF A PERSONAL RESIDENCE FOR THE VERY PERSON WHO DECLARED THE DIVIDENDS FROM MAGCORP AND RENCO METALS IS RELEVANT TO PROVE THE UNJUST ENRICHMENT CLAIM

The trial exhibits and deposition testimony demonstrate that Rennert benefited by using the dividends from MagCorp and Renco Metals to purchase land, design, and construct his personal residence.  "A claim for unjust enrichment 'is undoubtedly equitable and depends upon *broad* considerations of equity and justice.'"  *Philips Intern. Investments, LLC v. Pektor*, 117 A.D.3d 1, 982 N.Y.S.2d 98, 102 (N.Y. App. 1st Dept. 2014) (*quoting Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 [1972], cert. denied 414 U.S. 829, 94 S.Ct. 57, 38 L.Ed.2d 64 [1973] [emphasis added]).  "The essence of unjust enrichment is that one party has received money or a benefit at the expense of another." *Wolf v. National Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dept. 1999) (*quoting City of Syracuse v R.A.C. Holding, Inc.*, 258 A.D.2d 905, 906, 685 N.Y.S.2d 381).  "It does not matter whether the benefit is directly or indirectly conveyed."  *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 118 (N.Y. App. 1st Dept.1990) (*citing Blue Cross of Cent. N.Y. v. Wheeler*, 93 A.D.2d 995, 461 N.Y.S.2d 624)).  Recently, the New York Court of Appeals clarified the connection requirement.  While there must be a connection between the plaintiff and defendant, it is sufficient that "the benefit was conferred at the behest of the defendant."  *Philips Intern. Investments, LLC v. Pektor*, 117 A.D.3d 1, 982 N.Y.S.2d 98, 103 (N.Y. App. 1st Dept. 2014).  New York state court cases do not require a direct transfer or direct dealings.

3

In the Trustee's response to the Defendant's Motion *in Limine* to exclude evidence of Rennert's "wealth and lifestyle," the Trustee detailed the timing of the declaration of dividends by Rennert to Renco Group (an entity controlled and owned by Rennert), and the formation of a subsidiary of Renco Group for the specific purupose of purchasing land and construct a personal residence for Ira Rennert. On 3 July 1996 MagCorp declared a dividend to Renco Metals for over $75 million, which then in turn declared a dividend of the same amount to Renco Group.

Within a few months, Blue Turtles, Inc., was created as a new subsidiary of Renco Group, with Ira Rennert as the director of both. Plaintiff's Trial Exhibits 2526 and 2531 p. 4. On 8 January 1997, Blue Turtles purchased a plot of land for $11 million. KPMG 1997 Blue Turtles Workpapers, KPMG-97-01-00067 at 0075, attached as Exhibit 2 to the Declaration of Scot C. Stirling. In April 1998 construction started on the Blue Turtles residence, meaning that building plans had been developed, submitted, and approved. Plaintiff's Trial Exhibit 2535 p. 3.

The defendants' contention that Trustee should not be permitted to introduce evidence regarding Blue Turtles, because the Trustee cannot prove that the specific dollars that were taken from MagCorp and Renco Metals and paid as dividends and stock redemption payment to Renco Group were transferred directly to Blue Turtles is without legal support, and is also contradicted by Roger Fay's 30(b)(6) deposition testimony on behalf of Renco Group. The jury can reasonably conclude from his testimony that this is exactly what Renco Group did with the money taken from MagCorp and Renco Metals.

The Trustee deposed Roger Fay of Renco Group as a 30(b)(6) witness to testify about this specific subject: "1. *What you [Renco Group] did with the money received from Renco Metals in 1996, 1997, and 1998* as dividends or as payment for the redemption of stock…." Trustee's Notice of 30(b)(6) Deposition to Renco Group (emphasis added).

Mr. Fay testified that he had reviewed the relevant documents to answer questions about the subject. Deposition of Roger Fay 9 Dec. 2011 pp. 15. Mr. Fay then generally stated that the funds were used "for general corporate purposes, or investments." Deposition of Roger Fay 9 Dec. 2011 pp. 18, attached as Exhibit 3 to the Declaration of Scot C. Stirling. Notwithstanding his obligation to inform himself about the subject of the 30(b)(6) notice, Mr. Fay at first claimed that he did not determine specific uses of the funds. When asked specifically about the specific investments made by Renco Group with the dividends from MagCorp and Renco Metals he said: "We also invest in securities, you know, not companies, I don't mean buying the whole company. I just mean shares of stock, or invest in hedge funds, or other financial investments. *Invest in real estate*." Deposition of Roger Fay 9 Dec. 2011 pp. 23-24 (emphasis added), attached as Exhibit 3.

When pressed further about the use of the funds from the Renco Metals dividends, Mr. Fay reiterated his general responses, and then answered that money is fungible: "And I said the money stayed in Renco entities or was invested in Renco entities or in other investments, or was used for general corporate purposes. I mean, *it's all fungible, goes in the bank and gets disbursed*." Deposition of Roger Fay 9 Dec. 2011 pp. 204-205 (emphasis added); attached as Exhibit 3.

Whether Mr. Fay failed to prepare as required for a 30(b)(6) deposition, or was deliberately trying to avoid giving specific information about the use of those specific proceeds (and the use of those specific proceeds was the subject of the 30(b)(6) notice for which Mr. Fay appeared on behalf of Renco Group), in the end, Mr. Fay admitted that the dividends received from MagCorp and Metals were invested in Renco Group subsidiaries and used for real estate investments:

> Q. You indicated as well that the money, in your earlier testimony, the money received by Renco Group was invested in various ways; correct?

5

> A. I said it was used for general corporate purposes, including investments. Could have been in stocks and bonds, could have been in some sort of securities, or *invested in our subsidiaries*.
>
> Q. Did the *investments include real estate investments*?
>
> A. *Yes*.

Deposition of Roger Fay 9 Dec. 2011 pp. 210-211 (emphasis added); attached as Exhibit 3. Blue Turtles is both a Renco subsidiary and a real estate investment. Thus, Mr. Fay acknowledged that the funds were used for purposes that encompass Blue Turtles, and the purchase of land and construction of Rennert's residence.

When asked directly and specifically if the real estate investments were in property to be used by Ira Rennert as a personal residence, Mr. Fay said he could not remember "what year real estate investments were made." Deposition of Roger Fay 9 Dec. 2011 pp. 211; attached as Exhibit 3. The Trustee's evidence is sufficient to prove that *this* "real estate investment" was made during the period when the fraudulent conveyances were taken from MagCorp and Renco Metals.

The jury can reasonably conclude from Mr. Fay's testimony that MagCorp and Renco Metals fraudulent conveyances were used to finance the purchase and construction of a personal residence for Mr. Rennert, and that Mr. Fay was trying hard to avoid admitting that fact at his deposition. The evidence that the Defendants are trying to keep from the jury will demonstrate that over $11 million was used to purchase property by January 1997, and a total of over $30 million was advanced by October 1998 (the date of the last dividends from MagCorp and Renco Metals), and that both Mr. Fay and Mr. Rennert will have to admit to those facts when they are on the witness stand in front of the jury. Excerpts of KPMG Blue Turtles Audit Workpapers, KPMG-98-02-0001 at 0080-81, attached as Exhibit 1. We don't know how much more than that

$41 plus million was used or committed for the design and construction of the home during the proceeds of the fraudulent conveyances, because Mr. Fay did not answer specifically about the use of those proceeds (notwithstanding his duties as a 30(b)(6) witness), but insisted upon his claim that all such money is fungible.

This is more than enough evidence for the jury to find that the dividends from Renco Metals and MagCorp were used by Renco Group and Blue Turtles for the construction of a personal residence for Ira Rennert.

The Defendants have not demonstrated any requirement, or supported their argument, that the Trustee trace the exact dollars from Renco Metals to Renco Group, and from Renco Group into its wholly-owned subsidiary Blue Turtles. The law of unjust enrichment does not require such tracing, and a claim for unjust enrichment is not defeated by the Defendants' laundering "fungible" money through a parent corporation's commingled accounts. A defendant should not be able to defend against a claim for unjust enrichment by placing the plaintiff's money in a commingled bank account and then taking money out of the commingled bank account for his personal benefit. Defendants have provided no authority for that position.

### III.     CONCLUSION

The Court properly refused to grant the Defendants' unsupported motion *in limine* regarding the use of the funds from Renco Metals and MagCorp, and the purchase of land and construction of a house for Ira Rennert. There is "no ambiguity about the alleged connection between the benefit provided to Rennert, residence in a multimillion-dollar home, the source of those funds, and those funds' connection to one of the corporations for which plaintiff is trustee." Transcript of 19 December 2014 Pretrial Conference, p. 48. The Defendants' motion seeking to sweep this evidence under the rug by preventing questions or exhibits that are directly relevant to proving the Trustee's claim for unjust enrichment was properly denied. The Trustee's evidence,

including Mr. Fay's testimony on behalf of Renco Group, shows the connection between the dividends and the acquisition of land and construction of this house for Mr. Rennert's personal benefit, through the vehicle of a wholly-owned Renco Group subsidiary formed only a few months after Renco Group took more than $83 million in fraudulent conveyances from Renco Metals and MagCorp.

Respectfully submitted this 12th day of January 2015.

**BEUS GILBERT PLLC**

By: _Scot C. Stirling_
Leo R. Beus (Arizona Bar No. 002687) Admitted *Pro Hac Vice*
lbeus@beusgilbert.com
Scot C. Stirling (Arizona Bar No. 005757) Admitted *Pro Hac Vice*
sstirling@beusgilbert.com
Malcolm Loeb (Arizona Bar No. 017338) Admitted *Pro Hac Vice*
mloeb@beusgilbert.com
Robert O. Stirling (Arizona Bar. No. 027749) Admitted *Pro Hac Vice*
rstirling@beusgilbert.com
701 North 44th Street
Phoenix, Arizona  85008-6504
Telephone:     (480) 429-3000
Fax:                (480) 429-3100
*Attorneys for Plaintiff*