**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
                             :

LEE E. BUCHWALD, as Chapter 7 Trustee for   :   Case No. 1:13-CV-07948-AJN
Magnesium Corporation of America and Related :
Debtor, Renco Metals, Inc.,             :   **JOINT PROPOSED REQUESTS**
                             X   **TO CHARGE**

              Plaintiff,        :
                             :

                vs.           :
                             X

THE RENCO GROUP, INC., a Delaware      :
corporation; K. SABEL HOLDINGS, INC., an  :
Alabama corporation; KPMG PEAT       :
MARWICK LLP; DONALDSON, LUFKIN &  :
JENRETTE SECURITIES CORPORATION;   :
HOULIHAN LOKEY HOWARD & ZUKIN;    :
CADWALADER, WICKERSHAM & TAFT,   :
LLP; IRA LEON RENNERT; ROGER L. FAY; :
JUSTIN W. D'ATRI; DENNIS A.          :
SADLOWSKI; MICHAEL C. RYAN;       :
MICHAEL H. LEGGE; RON L. THAYER;   :
TODD R. OGAARD; LEE R. BROWN;     :
HOWARD I. KAPLAN; KEITH SABEL;    :
UNIDENTIFIED TRUSTEES of Trusts     :
Established by Ira Leon Rennert; and DOES I :
through XX,                     :
                             :

             Defendants.     :
                             :
------------------------------------------------------------ X

62508288_1

Dated: January 12, 2015

BEUS GILBERT PLLC

By: _____

Leo R. Beus
Scot C. Stirling
Malcolm Loeb
Robert O. Stirling
701 North 44th Street
Phoenix, Arizona  85008-6504
Telephone:    (480) 429-3000
Fax:          (480) 429-3100
lbeus@beusgilbert.com
sstirling@beusgilbert.com
rstirling@bcusgilbert.com
Attorneys for Plaintiff Trustee

KAYE SCHOLER LLP

By: _____

H. Peter Haveles, Jr.
Jeffrey A. Fuisz
250 West 55th Street
New York, New York 10019
Telephone:    (212) 836-8000
Fax:          (212) 836-8689
peter.haveles@kayescholer.com

PARK JENSEN BENNETT LLP

Tai H. Park
Steven C. Bennett
40 Wall Street, 41st Floor
New York, New York 10005
Telephone:    (646) 200-6300
Fax:          (646) 200-6301
tpark@parkjensen.com

Attorneys for Defendants

62508288_1      2

**TABLE OF CONTENTS**

<u>**Page No.**</u>

JOINT PROPOSED REQUESTS TO CHARGE .................................................................. ix

JURY CONDUCT AND CONTACT ..................................................................................... 5

JUROR CONDUCT AND CONTACT .................................................................................. 7

ORDER OF TRIAL .............................................................................................................. 8

ROLE OF THE JURY .......................................................................................................... 9

ROLE OF THE JURY ........................................................................................................ 11

NOTE-TAKING ................................................................................................................. 13

NOTE TAKING BY JURORS ........................................................................................... 14

JUROR QUESTIONS ......................................................................................................... 15

JUROR QUESTIONS ......................................................................................................... 16

JUROR QUESTIONS ......................................................................................................... 17

JURY TO DISREGARD COURT'S VIEW ....................................................................... 18

JUDGE'S QUESTIONS TO WITNESSES ........................................................................ 20

DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................................... 21

DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................................... 23

WITNESS CREDIBILITY ................................................................................................. 24

WITNESS CREDIBILITY ................................................................................................. 26

WHAT IS AND IS NOT EVIDENCE AND EVIDENCE FOR LIMITED
        PURPOSES ............................................................................................................ 27

WHAT IS AND IS NOT EVIDENCE ................................................................................ 29

RULINGS ON OBJECTIONS ........................................................................................... 31

IMPEACHMENT – INCONSISTENT STATEMENT OR CONDUCT ............................ 32

IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS .................................... 33

iii

SUMMARIES AND CHARTS ADMITTED AS EVIDENCE ...................................... 34

SUMMARIES AND CHARTS ADMITTED AS EVIDENCE ...................................... 35

DEPOSITION TESTIMONY ................................................................................. 35

BENCH CONFERENCES ..................................................................................... 36

STIPULATIONS OF FACT ................................................................................... 37

STIPULATIONS OF FACT ................................................................................... 38

INFERENCES ...................................................................................................... 39

INFERENCES ...................................................................................................... 40

EXPERT WITNESS ............................................................................................. 41

EXPERT WITNESS ............................................................................................. 42

CONFLICTING EXPERT TESTIMONY ............................................................... 43

DISCREPANCIES IN TESTIMONY ..................................................................... 44

DISCREPANCIES IN TESTIMONY ..................................................................... 46

DUTY TO DELIBERATE ..................................................................................... 48

DUTY TO DELIBERATE/UNANIMOUS VERDICT .............................................. 49

COMMUNICATIONS BETWEEN COURT AND JURY DURING
    JURY'S DELIBERATIONS ......................................................................... 51

RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY ......................................... 52

ELECTION OF FOREPERSON – GENERAL VERDICT ....................................... 53

ELECTION OF FOREPERSON – SPECIAL VERDICT ......................................... 54

SPECIAL VERDICT AND SELECTION OF FOREPERSON .................................. 55

AGREED LIMITING INSTRUCTION ON MR. RENNERT's
    WEALTH/HOME ....................................................................................... 56

II.    OTHER CONTESTED PRELIMINARY INSTRUCTIONS .............................. 57

PREPONDERANCE OF THE EVIDENCE ........................................................... 59

CLEAR AND CONVINCING EVIDENCE ............................................................ 62

III.    contested substantive requests to charge........................................................... 65

BURDEN OF PROOF ............................................................................................... 66

FRAUDULENT CONVEYANCES – INTRO................................................................ 76

**FRADULENT CONVEYANCES – NEW YORK STATE LAW** ............................. 77

**NEW YORK LAW OF FRAUDULENT CONVEYANCES – FOUR
    TESTS** ............................................................................................................. 78

FRAUDULENT CONVEYANCES – ELEMENTS/SUMMARY .................................. 83

**NEW YORK FRAUDULENT CONVEYANCES – ELEMENTS** ............................. 84

FRAUDULENT CONVEYANCES – SOLVENCY, ASSETS AND
    LIABILITIES...................................................................................................... 87

**DEBT (DEFINITION)**........................................................................................... 91

FRAUDULENT CONVEYANCES – CONTINGENT LIABILITIES ............................ 97

PART B – PLAITNIFF'S INSTRUCTION .................................................................. 98

**CONTINGENT    LIABILITIES    –    PROBABILITY    OF
    OCCURRENCE**................................................................................................ 98

FRAUDULENT    CONVEYANCES    –    INADEQUATE
    CAPITAL/UNREASONABLY SMALL CAPITAL ......................................... 103

FRAUDULENT CONVEYANCES – SUBSEQUENT TRANSFERS ......................... 109

FRAUDULENT    CONVEYANCES    –    FAIR
    CONSIDERATION/REASONABLY EQUIVALENT VALUE....................... 113

FRAUDULENT CONVEYANCES – CREDITOR ....................................................... 121

FRAUDULENT CONVEYANCES – BADGES OF FRAUD ...................................... 124

**NY    CODE    §    720    STATUTORY    MISCONDUCT    -    ACTION
    AGAINST    DIRECTORS    AND    OFFICERS    FOR
    MISCONDUCT**................................................................................................ 129

BREACH OF FIDUCIARY DUTY – ELEMENTS AND DUTIES............................. 131

**BREACH OF FIDUCIARY DUTY**......................................................................... 132

**THE DUTY OF CARE** ........................................................................................... 134

**THE DUTY OF GOOD FAITH** ................................................................. 136

BREACH OF FIDUCIARY DUTY – BUSINESS JUDGMENT RULE ...................... 144

BREACH OF FIDUCIARY DUTY – INTERESTED TRANSACTIONS AND ENTIRE FAIRNESS ................................................................. 148

**OFFICER OR DIRECTOR INTERESTED TRANSACTION** ............................... 149

**ENTIRE FAIRNESS** ...................................................................... 149

UNJUST ENRICHMENT ...................................................................... 151

**UNJUST ENRICHMENT** .................................................................... 152

UNLAWFUL PAYMENT OF DIVIDENDS AND STOCK REDEMPTION ................................................................. 157

AIDING AND ABETTING FRAUDULENT TRANSFERS ........................................ 166

**KNOWLEDGE/CONSCIOUS AVOIDANCE** .............................................. 167

**SUBSTANTIAL ASSISTANCE** ............................................................ 168

AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ................................ 173

PART B – PLAINTIFF'S INSTRUCTION ................................................... 175

RCRA 181

RCRA 182

RCRA REGULATION OF HAZARDOUS WASTE ........................................... 183

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF HAZARDOUS WASTE ........................................ 184

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF THE "COMPLAINT WASTES" ............................ 185

THE "COMPLAINT WASTES" ARE NOT EXEMPT FROM HAZARDOUS WASTE REGULATION UNDER RCRA OR EPA RULES ................................................................. 186

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF ANODE DUST ................................................ 187

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF CHLORINE PLANT WATER WASH COLUMN WASTE ................................................................................ 188

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF CHLORINE REDUCTION BURNER WASTE ...................... 189

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF SEAL LEG WATER ............................................... 190

RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF HIGH ENERGY SCRUBBER WASTE .................................. 191

THE UNLAWFUL TREATMENT, STORAGE, OR DISPOSAL OF EACH HAZARDOUS WASTE IS A SEPARATE VIOLATION OF RCRA .................................................................................. 192

RCRA PROVIDES FOR CIVIL PENALTIES FOR EACH DAY OF VIOLATION ............................................................................. 193

DEFENDANTS BURDEN OF PROVING THE EXISTENCE OF A PERMIT TO TREAT, STORE, OR DISPOSE OF HAZARDOUS WASTE ................................................................................. 194

PROOF THAT MAGCORP KNEW IT DID NOT HAVE A REQUIRED PERMIT IS NOT REQUIRED ........................................................ 195

PROOF THAT MAGCORP MANAGEMENT KNEW OR UNDERSTOOD REGULATORY REQUIREMENTS IS NOT REQUIRED ............................................................................... 196

CERCLA ............................................................................................ 198

CERCLA REGULATION OF HAZARDOUS SUBSTANCES ................................. 199

"HAZARDOUS SUBSTANCES" UNDER CERCLA ................................................. 200

CERCLA LIABILITY FOR "HAZARDOUS SUBSTANCES" ................................... 201

"HAZARDOUS WASTE" EXEMPTIONS UNDER RCRA ARE NOT "HAZARDOUS SUBSTANCE" EXEMPTIONS UNDER CERCLA ................................................................................ 202

"RELEASE" OF HAZARDOUS SUBSTANCES UNDER CERCLA ......................... 203

THE "ENVIRONMENT" ................................................................................ 204

THE DEFINITION OF A "FACILITY" UNDER CERCLA ........................................ 205

DAMAGES AND RESPONSE COSTS UNDER CERCLA ......................................... 206

"REMOVAL" OF HAZARDOUS SUBSTANCES UNDER CERCLA ...................... 207

REMEDY OR REMEDIAL ACTION UNDER CERCLA ........................................... 208

TSCA 211

TSCA 212

TSCA LIABILITIES FOR PRODUCTION, IMPORTATION, USE, OR
     DISPOSAL OF PCB'S ........................................................................................ 213

"INADVERTENT" MANUFACTURE OR DISPOSAL OF PCBS
     UNDER TSCA ................................................................................................... 214

MAGCORP'S LIABILITIES UNDER TSCA ............................................................. 215

TSCA PROVIDES FOR CIVIL PENALTIES FOR EACH DAY OF
     VIOLATION ...................................................................................................... 216

DAMAGES ................................................................................................................ 218

DAMAGES ................................................................................................................ 219

JOINT AND SEVERAL LIABILITY ........................................................................ 220

PUNITIVE DAMAGES ............................................................................................ 221

**JOINT PROPOSED REQUESTS TO CHARGE**

Pursuant to the Court's Individual Practices in Civil Cases, Rule 5.D, Plaintiff Trustee and Defendants respectfully submits this set of jury charges to be given in the instant case.

At times in the preliminary requests to charge (Requests # 1-28), the parties have listed similar instructions from both O'Malley, Grenig & Lee, 3 <u>Federal Jury Practice and Instructions</u> and Sand, et al., 4 <u>Modern Federal Jury Instructions</u>, in order to provide the Court the option to utilize the pattern instruction the Court prefers and in accordance with Southern District practice. The parties express no preference as to either instruction.

The parties request that instructions 1 through 10 be given prior to trial.  The parties request that requests to charge 11 through 23, be given at both the outset of trial, and at the close of evidence.  Also, the parties request that requests to charge 24 through 28 be given only at the close of evidence.  Charge 29 is an agreed limiting instruction.

After request to charge 29, the document lists preliminary requests to charge upon which there is disagreement, and then requests to charge on the substantive law.  In those sections, the parties have divided the requests to charge into sections that they believe reasonably overlap in subject matter (e.g. fraudulent conveyances – fair consideration/reasonably equivalent value). Each section is then divided into three subsection.

Part A represents areas of agreement between the parties on an instruction.

Part B represents the plaintiff's proposed jury instructions on the subject matter and the plaintiff's position why the plaintiff's instruction should be adopted.

Part C represents the defendants' proposed jury instructions on the subject matter and the defendants' position why the defendants' instruction should be adopted.

Given the parties different approaches to creating a usable set of jury instructions, the subject sections ((e.g. fraudulent conveyances – fair consideration/reasonably equivalent value)

62508288_1          ix

do not always reflect the order in which the parties believe the instructions should be given, and

the order is not intended to be a comment on either parties view of the law.

## I.     <u>JOINT PROPOSED PRELIMINARY REQUESTS TO CHARGE</u>

**Request No. 1**

**JOINT PROPOSED REQUEST TO CHARGE 1 – OPENING INSTRUCTIONS AND**

**PARTIES**

We are about to begin the trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. The party who sues is called the plaintiff.. The parties being sued are called the defendants.

Lee E. Buchwald is the Plaintiff in this case, in his role as the Bankruptcy Trustee for MagCorp and Renco Metals.  Defendant The Renco Group is a corporation. The fact that trustees and corporations or entities are involved as parties should not affect your deliberations in this case. Trustees and corporations are considered to be "persons" under the laws and like all other persons, must be dealt with as an equal in a court of justice. In his role as Trustee, Mr. Buchwald steps into the shoes of MagCorp and Renco Metals and is entitled to pursue their claims to the same degree as those corporations could.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

1

When I say "admitted into evidence" or "received in to evidence," I that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply. It is your duty to accept my instructions of law and apply them to the facts as you determine them. Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a

question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:01 (modified); L. Sand, et al, Modern Federal Jury Instructions (Civil), § 2-6 (2004) (modified); SEC v. Stoker, No. 11-Civ.7388 (JSR); SEC v. Castaldo, et. al., No. 08-Civ.-8397 (JSR)

## Request No. 2

## RELEVANT NON-PARTIES

During the trial, you have heard reference to other individuals and entities that are not defendants in this trial. Sabel Industries, KPMG Peat Marwick, L.L.P., Donald Lufkin & Jenrette Securities Corporation, Houlihan Lokey Howard & Zukin and Cadwalader Wickersham & Taft, L.L.P. are all entities that were involved in some of the transactions and events giving rise to this litigation, but they are not part of this trial. You may not draw any inferences from these facts. Nevertheless, as I will explain later, you may consider the evidence related to those entities and persons in determining whether Plaintiff has established the elements of his claims or whether the Defendants have established any of their defenses.

62508288_1    4

**Either Request 3A or 3B**

**Request No. 3A**

**JURY CONDUCT AND CONTACT**

To insure fairness, you must obey the following rules:

1. Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2. Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

3. Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

4. During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5. Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6. Do not do any research, such as checking dictionaries, or make any investigation about the case on your own.

62508288_1          5

7. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8. If you need to tell me something, simply give a signed note to the *[marshal] [bailiff] [clerk]* to give to me

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013); § 101.11.

**Request No. 3b**

**JUROR CONDUCT AND CONTACT**

Before we start the trial, let me give you a few "rules of the road."

First, please do not discuss the case with anyone.  This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any Internet chat room, web site or other feature.  If you have to tell someone such as you spouse or your employer that you are serving on a jury and that the trial may last as late as February XX, that's okay.  But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the judge not to discuss the case.  The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who hasn't heard the evidence may think about the case.  If you are asked or approached in any way about your jury service or anything about the case, you should respond that you have been ordered by the judge not to discuss the matter, and you should report the contact to the court as soon as possible.

 Along the same lines, you should not try to access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the Internet. And in the unlikely event you see anything in the media about this case, please turn away and pay it no heed.  Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations.  The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 71-15

**Request No. 4**

**ORDER OF TRIAL**

The case will proceed as follows:

First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence, but is simply an outline or summary to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After the opening statements, the plaintiff will present evidence in support of plaintiff's claims and the defendants' lawyer may cross-examine the witnesses. At the conclusion of the plaintiff's case, the defendant*s* may introduce evidence and the plaintiff's lawyer may cross-examine the witnesses. The defendants *are* not required to introduce any evidence or to call any witnesses. [*If the defendant[s] introduce[s] evidence, the plaintiff[s] may then present rebuttal evidence.*]

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:02

62508288_1          8

**Either 5A or 5B**

**Request No. 5A**

**ROLE OF THE JURY**

As member of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is what I may have said – or what I may say in these instructions – about a fact issue evidence.  In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the fats or what your verdict should be.

 I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

62508288_1          9

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.


Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 71-3 (modified)

**Request No. 5B**

**ROLE OF THE JURY**

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. I must stress that you must accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

Authority: O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:10

62508288_1    11

**Request No. 6**

**JUROR OATH**

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  You are not to be swayed by rhetoric or emotional appeals.  I know that you will do this and reach a just and true verdict.


Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 71-4 (modified); *SEC v. Castaldo*, et al., No. 08-Civ.-8397 (JSR)

62508288_1        12

**EITHER 7A OR 7B**

**Request No. 7A**

**NOTE-TAKING**

If you want to take notes during the course of the trial, you may do so. If you do take notes, be sure that your note-taking does not interfere with your listening to and considering all of the evidence. Also, if you take notes, do not discuss them with anyone before or during your deliberations. Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case. The fact that a particular juror has taken notes entitles that juror's view to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

Authority: L. Sand, et al, <u>Modern Federal Jury Instructions (Civil)</u>, § 71-16;

**Request No. 7B**

**NOTE TAKING BY JURORS**

During this trial, I will permit you to take notes. You are not required to take notes. If you do not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

Because many courts do not permit note taking by jurors, a word of caution is in order. You must not allow your note taking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to decide this case.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:15

62508288_1          14

**Either 8A or 8B or 8C**

**Request No. 8A**

**JUROR QUESTIONS**

No instruction recommended.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 71-17

**Request No. 8B**

**JUROR QUESTIONS**

Jurors normally do not ask a witness questions. However, I allow jurors to ask important questions during the trial under certain conditions.

If you feel the answer to your question would be helpful in understanding the issues in the case, please raise your hand after the lawyers have completed their examination but before I have excused the witness. You will then be given pen and paper with which to write your question for the witness.

I will talk privately with the lawyers and decide whether the question is proper under the law. If the question is proper, I will ask the witness the question. Some questions may be rewritten or rejected. Do not be concerned if the question is not asked.

Do not discuss your question with anyone, including the marshal or clerk. Remember, you are not to discuss the case with the other jurors until it is submitted for your decision.

If you have difficulty hearing a witness or lawyer, please raise your hand immediately.

Authority: O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:17

62508288_1        16

**Request No. 8C**

**JUROR QUESTIONS**

I do not permit jurors to ask questions of witnesses or of the lawyers. Please do not interrupt the lawyers during their examination of witnesses.

If you are unable to hear a witness or a lawyer, please raise your hand immediately and I will see that this is corrected.

Authority: O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. (6th ed. 2013), § 101:18

**Request No. 9**

**JURY TO DISREGARD COURT'S VIEW**

I have not expressed nor have I intended to intimae any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing. You have no concern with the reasons for any such rulings and you are not to draw any inferences from them. Whether offered evidences is admissible is purely a question of law in the province of the court and outside the province of the jury. In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between court and counsel held out of your hearing or sight.

Authority:  L. Sand, et al, <u>Modern Federal Jury Instructions (Civil)</u>, §  71-5.

## Request No. 10

### JUDGE'S QUESTIONS TO WITNESSES

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:30.

**Either Request 11A or 11B**

**Request No. 11A**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but

62508288_1          21

simply requires that your verdict must be based on (e.g. a preponderance of) all the evidence presented.

Authority:  L. Sand, et al, <u>Modern Federal Jury Instructions (Civil)</u>, § 74-2

**Request No. 11B**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

"Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

Authority:  O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:42

**Either Request 12A or 12B**

**Request No. 12A**

**WITNESS CREDIBILITY**

It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you to decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he appear to be frank, forthright ad candid, or evasive and edgy as if hiding something? How did the witness appear; what was his demeanor – that is, his carriage, behavior, hearing, manner and appearance while testifying? Often it is not what a person says but how he says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance in you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 76-1 (modified; excluding first sentence; omitting parenthetical)

**Request No. 12B**

**WITNESS CREDIBILITY**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101.43

62508288_1        26

**Either Request 13A or 13B**

**Request No. 13A**

**WHAT IS AND IS NOT EVIDENCE AND EVIDENCE FOR LIMITED PURPOSES**

The evidence in the case will consist of the following:

1. The sworn testimony of the witnesses, no matter who called a witness.

2. All exhibits received in evidence, regardless of who may have produced the exhibits.

3. All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. In some cases, a deposition may be played for you on videotape. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact. A "stipulation" is an agreement between both sides that [certain facts are true] [that a person would have given certain testimony]. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witness. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider that item only for that limited purpose and for no other.


Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) §§ 101:40, 101:44 and 101:45

**Request No. 13B**

**WHAT IS AND IS NOT EVIDENCE**

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence.  It is the witness' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?"  You would not be permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose – such as for the purpose of assessing a witness's credibility – you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

62508288_1          29

To constitute evidence which may be considered by you, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 74-1.

62508288_1        30

**Request No. 14**

**RULINGS ON OBJECTIONS**

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side believes the question or exhibit is not admissible under the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received into evidence. If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been. In addition, you must not consider evidence that I have ordered stricken from the record.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 101:49.

62508288_1          31

**EITHER 15A OR 15B**

**Request No. 15A**

**IMPEACHMENT – INCONSISTENT STATEMENT OR CONDUCT**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 105:04.

62508288_1          32

**Request No. 15B**

**IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS**

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness' trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil),  § 74-4 (modified).

62508288_1    33

## Request No. 16

### SUMMARIES AND CHARTS ADMITTED AS EVIDENCE

Plaintiff and Defendants have presented exhibits in the form of charts and summaries. I decided to admit these summaries and charts in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil),  § 74-11

**Request No. 17**

**SUMMARIES AND CHARTS ADMITTED AS EVIDENCE**

**DEPOSITION TESTIMONY**

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adverse party under oath before a stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition and received in evidence during the trial according to the same standards as you would use to evaluate the testimony of a witness given at trial.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil),  § 74-11

## Request No. 18

## BENCH CONFERENCES

From time to time it may be necessary for me to talk to the lawyers out of your hearing. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error. Do not consider my granting or denying a request for a conference as an indication of my opinion of the case or of what your verdict should be. I do not wish to cause you any delay, but these conferences are necessary. I apologize for any inconvenience. I will do what I can to limit the number and length of these conferences.

Authority:    O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 102.02

**Either Request 19A or 19B**

**Request No. 19A**

**STIPULATIONS OF FACT**

The parties have stipulated, or agreed, that the following are facts.

[INSERT AGREED STATEMENTS OF FACT FROM JOINT PRETRIAL REPORT.]

You must treat this fact as having been proven for the purpose of this case.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) 102:11(modified)

**Request No. 19B**

**STIPULATIONS OF FACT**

A stipulation of facts is an agreement among the parties that a certain fact is true.  You

must regard such agreed facts as true.  The parties have stipulated to the following facts as true:

[INSERT AGREED STATEMENT OF FACTS FROM JOINT PRERIAL REPORT].

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil),  § 74-4 (modified).

**Either Request 20A or 20B**

**Request No. 20A**

**INFERENCES**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 104:20

**Request No. 20B**

**INFERENCES**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

Authority: L. Sand, et al, Modern Federal Jury Instructions (Civil), § 75-1

**Either Request 21A or 21B**

**Request No. 21A**

**EXPERT WITNESS**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 104:40

62508288_1        41

**Request No. 21B**

**EXPERT WITNESS**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or to reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

Authority: L. Sand, et al, Modern Federal Jury Instructions (Civil), § 76-9,

**Request No. 22**

**CONFLICTING EXPERT TESTIMONY**

You have heard testimony of witnesses who have been called by both sides to give their opinion about various issues.

The witnesses who testified in this case did so in order to assist you in reaching a decision on the issues.

The testimony of these witnesses is in conflict.  They disagree.  You must remember that you are the sole trier of the facts and their testimony relates to a question of facts; so, it is your job to resolve the disagreement.

The way you resolve the conflicts between these witnesses is the same way that you decide the other fact questions and the same way you decide whether to believe ordinary witnesses.  In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.   You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness.  The determination of the facts in this case rests solely with you.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 76-10 (modified)

**Either 23A or 23B**

**Request No. 23A**

**DISCREPANCIES IN TESTIMONY**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 105:01

**Request No. 23B**

**DISCREPANCIES IN TESTIMONY**

You have heard the evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 76-4

**Request No. 24**

**JUROR ATTENTIVENESS**

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law. You must pay close attention and I will be as clear as possible. As I told you at the start of this case, and as you agreed, it is your duty to accept my instructions of law and apply them to the facts as you determine.  Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you.  Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified.  Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 71-1 (modified); *SEC v. Stoker*, No. 11-Civ-7388 (JSR); *SEC v. Castaldo*, et. Al., No. 08-Civ-8397 (JSR)

62508288_1        47

**Either 25A or 25B**

**Request No. 25A**

**DUTY TO DELIBERATE**

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) § 106:01

62508288_1          48

**Request No. 25B**

**DUTY TO DELIBERATE/UNANIMOUS VERDICT**

You will now return to decide the case. In order to prevail, the plaintiff (or defendant) must sustain his or her burden of proof as I have explained to you with respect to each element of the complaint (or affirmative defense or counterclaim). If you find that the plaintiff has succeeded, you should return a verdict in his or her favor on that claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff. Similarly, if you find that the defendant has failed to sustain his or her burden with respect to any element of the defendant's affirmative defense, you must return a verdict against the defendant on that defense.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

62508288_1                49

Authority:  L. Sand, et al, <u>Modern Federal Jury Instructions (Civil)</u>, § 78-3

**Request No. 26**

## COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the bailiffs you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

Authority:  O'Malley, Grenig & Lee 3 Fed. Jury Prac. & Instr. (6th Ed. 2013)

**Request No. 27**

**RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony – in fact any communication with the court – should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), § 78-1

**Either 28A, 28B, or 28C**

**Request No. 28A**

**ELECTION OF FOREPERSON – GENERAL VERDICT**

Upon retiring to the jury room, you will select one of you to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court.

Verdict forms have been prepared for your convenience.*[Read forms of verdict]*.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree. You will then return with your verdict to the courtroom.

Authority:  O'Malley, Grenig & Lee Fed. Jury Prac. & Instr. (6th Ed. 2013) § 106:04

**Request No. 28B**

**ELECTION OF FOREPERSON – SPECIAL VERDICT**

Upon retiring to the jury room, you will select one of you to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court.

A special verdict form has been prepared for your convenience. You will take this form to the jury room. [*Read special verdict form.*]

[*Each of the interrogatories or questions calls for a "Yes" or "No" answer. The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided opposite each question. As you will note from the wording of the questions, it will not be necessary to consider or answer question (2) if your answer to question (1) is "No." Nor will it be necessary for you to consider or answer question (3), unless your answer to both questions (1) and (2) is "Yes."*]

[*If your answer to either questions (1) or (2) is "No," the foreperson will date and sign the special verdict, without answering question (3). On the other hand, if your answer to both questions (1) and (2) is "Yes," then you will answer question (3). The foreperson will then date and sign the special verdict as so completed; and you will then return with it to the courtroom.*]

Authority:  O'Malley, Grenig & Lee Fed. Jury Prac. & Instr. (6th Ed. 2013) § 106:05

62508288_1          54

**Request No. 28C**

**SPECIAL VERDICT AND SELECTION OF FOREPERSON**

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

I have prepared a special verdict form for you to use in recording your decision. The special verdict form is made up of questions concerning the important issues in this case. These questions are to be answered "yes" or "no." Your answers must be unanimous and must reflect the conscientious judgment of each juror. You should answer every question (except where the verdict form indicates otherwise).

Authority:  L. Sand, et al, Modern Federal Jury Instructions (Civil), §§ 78-5, 78-9.

**Request No. 29**

**AGREED LIMITING INSTRUCTION ON MR. RENNERT'S WEALTH/HOME**

You have heard testimony about Mr. Rennert's wealth and about a home in Sagoponack, New York. This evidence has been admitted for a single, limited purpose and I want to explain to you the sole basis on which you should consider this evidence.

Mr. Rennert's wealth has no bearing on any issue in this case. The fact that he is wealthy or the size of the home are irrelevant to this case and they do not make it more or less likely that he or any other defendant is liable for any claim.

Mr. Buchwald presented evidence regarding the home owned by Blue Turtles Inc. for the exclusive purpose of being used by Mr. Rennert and his family as a personal residence. That evidence is only relevant to Mr. Buchwald's contention that the proceeds of the dividends paid by Renco Metals to the Renco Group benefitted Mr. Rennert personally.

If you find that Mr. Buchwald has proven that dividend proceeds were used in part to purchase land for the home's construction and expenses related to the construction of the home, you may consider this evidence in assessing what, if any, benefit Mr. Rennert personally received.

If you find that Mr. Buchwald has failed to prove that the proceeds of the dividends were used to purchase land for the home's construction or expenses related to the construction of the home, you should disregard all evidence about the home and Mr. Rennert's wealth. In that case, this evidence should play no role in your deliberations.

## II.    OTHER CONTESTED PRELIMINARY INSTRUCTIONS

## PREPONDERANCE OF THE EVIDENCE

## PART A

## PART B - PLAINTIFF'S INSTRUCTION

## PREPONDERANCE OF THE EVIDENCE

The plaintiff has made claims against the defendants for aiding and abetting breach of fiduciary duty, unjust enrichment, unlawful dividends, unlawful stock redemption, statutory misconduct of New York officers and directors, constructive fraudulent conveyances and constructive fraudulent transfers under state and federal law, and aiding and abetting fraudulent conveyances and fraudulent transfers. The plaintiff must prove the elements of those claims by a preponderance of the evidence.

To establish by the preponderance of the evidence means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence in this case means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Authority:  O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. (6th ed. 2013), § 104.1; § 164:251 (Modified).

## PART C –DEFENDANTS' INSTRUCTION

Defendants' instruction on the preponderance of the evidence is found in the Burden of Proof instruction, Part C.

## CLEAR AND CONVINCING EVIDENCE

## PART A

## PART B – PLAINTIFF'S INSTRUCTION

## CLEAR AND CONVINCING EVIDENCE

One of the plaintiff's claims is that the fraudulent transfers were *actual* fraudulent transfers – that is, that they were made with the actual intent to hinder, delay, or defraud the creditors of MagCorp and of Renco Metals. In order to prevail on the claim that the fraudulent transfers were *actual* fraudulent transfers, the burden is on the plaintiff to prove by clear and convincing evidence that the transfers were made with the actual intent to hinder, delay, or defraud creditors.

This is a separate question from the existence of *constructive* fraudulent conveyances, and must be considered and decided separately from the plaintiff's claim that these same conveyances were also *constructive* fraudulent conveyances.

A party who must establish his claim by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he claims is what actually happened. Proof by "clear and convincing" evidence is not as high a standard as the burden of proof applied in criminal cases, which is proof beyond a reasonable doubt. In this case, the Plaintiff does not need to convince you beyond a reasonable doubt in order to prevail on his claim.

If, upon all the evidence, you are satisfied that there is a high probability that there was actual intent to hinder, delay, or defraud in the claimed fraudulent conveyances, you must decide for the plaintiff with respect to the claim for *actual* fraudulent conveyances. If you are not satisfied that there is such a high probability, you must decide for the defendant with respect to the claim for *actual* fraudulent conveyances.

Authority:  Based on N.Y. P.J.I- Civil 1:64; *General Instruction—Burden of Proof— Clear and Convincing Evidence*: L. Sand, Modern Federal Jury Instructions, Instr. 73-1:

Instructions in *SEC v. Stoker*, No. 11-CIV-7388(JSR); *In re Bruno Machinery Corp.*, 435 B.R. 819, 853 (Bankr. N.D.N.Y. 2010)

## PART C – DEFENDANTS' INSTRUCTION

## NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION

Defendants object to the instruction concerning clear and convincing evidence since it is only relevant to Plaintiff's claim of actual fraud. For the same reasons that the jury should not be instructed on that count, they should not be instructed on the clear and convincing evidence standard. See Defendants' Memo in Support of Motion in Limine to Exclude Claim for Actual Fraud (Dkt. 181).

## III.  CONTESTED SUBSTANTIVE REQUESTS TO CHARGE

## BURDEN OF PROOF

## PART A

This is a civil case. Plaintiff is suing the Defendants for damages, and to "avoid" or take back transfers of money to the defendants that occurred prior to MagCorp and Renco Metals bankruptcy filings in August 2001.

I will instruct you about which party has the burden of proof on a particular claim or issue. Unless I instruct you differently with respect to a particular claim, the Plaintiff has the burden of proof to establish the elements of his claims, while the Defendants have the burden of proof with respect to any affirmative defenses. The "burden of proof" is the burden of proving each of the essential elements of a claim or of an affirmative defense.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of evidence in the case means evidence that has more convincing force and produces in your minds a belief that what the plaintiff wants to prove is more likely true than not true. This rule does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called those witnesses, and all exhibits received in evidence, regardless of who may have produced them. If there are times when I want you to depart from this general rule, I will specifically let you know.

62508288_1        66

**PART B – PLAINTIFF'S INSTRUCTION**

This is a civil case. Plaintiff is suing the Defendants for damages, and to "avoid" or take back transfers of money to the defendants that occurred prior to MagCorp and Renco Metals bankruptcy filings in August 2001.

I will instruct you about which party has the burden of proof on a particular claim or issue. Unless I instruct you differently with respect to a particular claim, the Plaintiff has the burden of proof to establish the elements of his claims, while the Defendants have the burden of proof with respect to any affirmative defenses. The "burden of proof" is the burden of proving each of the essential elements of a claim or of an affirmative defense.

The plaintiff has the burden of proof on his claims against the defendants for

1.      aiding and abetting breach of fiduciary duty;

2.      unjust enrichment;

3.      unlawful dividends;

4.      unlawful stock redemption;

5.      statutory misconduct of New York officers and directors; and

6.      aiding and abetting fraudulent conveyances and fraudulent transfers.

To say that a party has the burden of proof on a particular issue means that, considering all the evidence in the case, the party's claim on that issue must be established to some degree based on credible evidence. Credible evidence means such testimony, exhibits or other evidence that you find worthy of belief.

Authority:  Based on N.Y. P.J.I- Civil 1:64; L. Sand, Modern Federal Jury Instructions¸ Instr. 73-1: Instructions in SEC v. Stoker, No. 11-CIV-7388(JSR); Romanian American Interests, Inc. v. Scher, 464 N.Y.S.2d 821, 823 94 A.D.2d 549, 552 (NY App. 2d 1983); Barton Group Inc. v. NCR Corp., 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011) (defendant has burden of proving

affirmative defenses); Asarco LLC v. Americas Mining Corp., 396 B.R. 278, 325-329 n. 149 (SD Tex. 2008); Americas Mining Corp. v. Theriault, 51 A. 3d 1213, 1240 (Del. 2012); In re Tronox, Inc., 450 B.R. 432, 439 (Bankr. S.D.N.Y. 2011).

Defendants' Objection: Consolidate Plaintiff's Instruction into Defendant's instruction.

Plaintiff's Objection to Defendants' instruction: The plaintiff objects to defendants instruction, because it ignores the defendants possible burden to prove elements of claims under certain conditions (entire fairness if stand on both sides of transaction; burden to come forward with evidence of solvency where there is no fair consideration).

The defendants' instruction also ignores their burden to prove affirmative defenses.

Third, the plaintiff still alleges that actual fraudulent conveyances are present in this case. Thus, not all claims are governed by the preponderance of the evidence.

## PART C – DEFENDANTS' INSTRUCTION

### Burden of Proof

This is a civil case. Plaintiff is suing the Defendants for damages, and to "avoid" or take back transfers of money to the defendants that occurred prior to MagCorp and Renco Metals bankruptcy filings in August 2001.

I will instruct you about which party has the burden of proof on a particular claim or issue. Unless I instruct you differently with respect to a particular claim, the Plaintiff has the burden of proof to establish the elements of his claims, while the Defendants have the burden of proof with respect to any affirmative defenses. The "burden of proof" is the burden of proving each of the essential elements of a claim or of an affirmative defense.

To say that a party has the burden of proof on a particular issue means that, considering all the evidence in the case, the party's claim on that issue must be established to some degree based on credible evidence. Credible evidence means such testimony, exhibits or other evidence that you find worthy of belief.

The burden of proof is on the plaintiff in a civil action to prove every essential element of his claim by a preponderance of the evidence.  In this case, Mr. Buchwald brings claims on behalf of Renco Metals' and Magcorp's bankruptcy estates.  Hence, Mr. Buchwald has the burden of proof in this action as to each one of his claims against the various defendants.  With respect to each of those claims, and with respect to each of the defendants, if Mr. Buchwald fails to prove any one of the essential elements of any of his claims by a preponderance of the evidence, you should find for defendants with respect to that claim.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of evidence in the case means evidence that has more convincing force and produces in your minds a belief that what the plaintiff wants

to prove is more likely true than not true.  This rule does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called those witnesses, and all exhibits received in evidence, regardless of who may have produced them.  If there are times when I want you to depart from this general rule, I will specifically let you know.

Authorities

L. Sand et al., 4 Modern Federal Jury Instructions-Civil ¶73.01 (2014)
E. Devitt, C. Blackmar & M. Wolff, 3 Federal Jury Practice and Instructions § 72.01 (4th ed. 1987).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Defendants' instruction accurately presents the proper burden of proof standard. Alternatively, Plaintiff's instruction is incomplete, ignoring that the burden of proof is on the plaintiff to prove every essential element of his claim by a preponderance of the evidence.  See L. Sand et al., 4 Modern Federal Jury Instructions-Civil ¶73.01 (2014); E. Devitt, C. Blackmar & M. Wolff, 3 Federal Jury Practice and Instructions § 72.01 (4th ed. 1987).

Plaintiff's instruction incorrectly asserts that the burden of proof shifts to the Defendants for both breaches of fiduciary duty and fraudulent conveyances.  Defendants' burden of proof instruction correctly states that the burden of proof remains with the Plaintiff at all times.

The entire fairness standard is inapplicable.  First, if MagCorp and Renco are determined to be solvent, the entire fairness standard is irrelevant because directors and officers of wholly-owned subsidiary companies, like MagCorp and Renco, are obligated only to manage the affairs of the subsidiary in the best interests of the parent company.  See Quadrant Structured Products Co. v. Vertin, 102 A.3d 155, 184 (Del. Ch. 2014) (citing Anadarko Petroleum Corp. v.

62508288_1    70

Panhandle E. Corp., 545 A. 2d 1171, 1174 (Del. 1988)).  In that circumstance, the entire fairness standard is not implicated.  A finding of insolvency does not change that but instead renders the transaction void.  A finding of insolvency does not give rise to a need to consider the fairness of the transaction where it did not already exist and does not shift the burden of proof.

## SHIFTING BURDEN OF PROOF

## PART A

## PART B – PLAINTIFF'S INSTRUCTION

## SHIFTING BURDEN OF PROOF

While the Plaintiff may have the initial burden of proof on some claims, the burden can shift to a defendant on that claim if the Plaintiff establishes certain facts.

In this case, the Plaintiff has alleged claims against the defendants Rennert, D'Atri, Sadlowski, Fay, Ryan, Legge, Thayer, Ogaard, Brown and Kaplan, for breaches of their fiduciary duties as officers and director of MagCorp and Renco Metals in connection with the conveyances that the Plaintiff seeks to recover.

The Plaintiff has also alleged claims against the defendants Rennert, D'Atri, Fay, Sadlowski, Ryan, Legge, Thayer, Ogaard, Brown, Kaplan, for aiding and abetting the breaches of fiduciary duties by officers and director of MagCorp and Renco Metals, as well as for aiding and abetting breaches of fiduciary duties by The Renco Group, in connection with the conveyances that the Plaintiff seeks to recover.

The plaintiff begins with the burden of proof on his claims against the defendants for breaches of fiduciary duty to MagCorp and to Renco Metals

If you find that an officer or director defendant was "interested" in a conveyance and thus stood on both sides of the transaction – that is, that he had divided loyalties because of his personal interest in the conveyance – the burden of proof shifts to that defendant to prove the "entire fairness" of the conveyance to the company.

Authority: Asarco LLC v. Americas Mining Corp., 396 B.R. 278, 327-329 n. 149 (SD Tex. 2008); Americas Mining Corp. v. Theriault, 51 A. 3d 1213, 1240 (Del. 2012); In re Tronox, Inc., 450 B.R. 432, 439 (Bankr. S.D.N.Y. 2011).

Defendants' Objection: Object to this instruction in its entirety.

62508288_1          73

**PART C – DEFENDANTS' INSTRUCTION**

**NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION**

Plaintiff's instruction incorrectly asserts that the burden of proof shifts to the Defendants for both breaches of fiduciary duty and fraudulent conveyances. Defendants' instruction on burden of proof appropriately lays out the burden of proof for the relevant claims. Regarding Plaintiff's fraudulent conveyance claims, Plaintiff misrepresents the appropriate standard. Under Utah law, the Trustee has the burden of proof in all respects. See Furniture Manufacturers Sales, Inc. v. Deamer, 680 P.2d 398, 399 (Utah 1984).[1] Under New York law, to the extent that it may apply, the Trustee has the burden of proof when the issue is presented to the jury. Under New York Debtor Creditor Law, "if the debtor did not receive fair consideration, then it is presumed that the transfer made the debtor insolvent, and the burden is on the defendant to rebut this presumption." In re TC Liquidations LLC, 463 B.R. 257, 267 (Bankr. E.D.N.Y. 2011). Yet, as long as the defendant "come[s] forward with some evidence of [the debtor's] solvency, then the burden shifts back to the plaintiff to prove that the debtor was insolvent and that the transfer was therefore a fraudulent conveyance." Id. at 268. Defendants will readily satisfy that requirement, and the Trustee will bear the ultimate burden of proof at trial.

The entire fairness standard is inapplicable. First, if MagCorp and Renco are determined to be solvent, the entire fairness standard is irrelevant because directors and officers of wholly-owned subsidiary companies, like MagCorp and Renco, are obligated only to manage the affairs of the subsidiary in the best interests of the parent company. See Quadrant Structured Products

---

[1] The claims against the Utah officer defendants (defendants Legge, Thayer, Kaplan, Ogaard, Brown) are governed by Utah law. See In re Magnesium Corp. of Am., 399 B.R. 722, 743 (Bankr. S.D.N.Y. 2009). Similarly, Utah law applies to transfers from Renco Metals. See Defendants' Memo on Jury Trial, Statute of Limitations and Section 546(e) Issues (Dkt. 162) at 11-15.

Co. v. Vertin, 102 A.3d 155, 184 (Del. Ch. 2014) (citing Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A. 2d 1171, 1174 (Del. 1988)).  In that circumstance, the entire fairness standard is not implicated.  A finding of insolvency does not change that but instead renders the transaction void.  A finding of insolvency does not give rise to a need to consider the fairness of the transaction where it did not already exist.

## FRAUDULENT CONVEYANCES – INTRO

## PART A

Sections 544 and 550 of the Bankruptcy Code enable a bankruptcy trustee like the [The] Plaintiff seeks to "avoid" or, in other words, to take back certain conveyances of property. The term "conveyance" is defined broadly, and it includes the transfer of money, transfer, and also the creation of any lien or encumbrance.

In this case, Plaintiff has been appointed as the Bankruptcy Trustee for Renco Metals and MagCorp, the debtors who filed for bankruptcy on August 2, 2001. Plaintiff claims in this lawsuit, pursuant to his duties as bankruptcy trustee, that the Defendant The Renco Group received conveyances of money in the form of dividends and stock redemptions from Renco Metals and MagCorp, and that the Defendants Mike Legge, Ron Thayer, Todd Ogaard, Lee Brown, and Howard Kaplan received conveyances from Magcorp in the form of net worth appreciation payments, totaling $118,445,675 million.

[Y]ou must consider, based on the totality of the evidence presented, the value of the companies' assets at the time of the transfers, as well as the amount of the companies' liabilities at that time.

## PART B – PLAINTIFF'S INSTRUCTIONS

## FRADULENT CONVEYANCES – NEW YORK STATE LAW

Sections 544 and 550 of the Bankruptcy Code enable a bankruptcy trustee like the Plaintiff seeks to "avoid" or, in other words, to take back certain conveyances of property. The term "conveyance" is defined broadly, and it includes the transfer of every payment of money, release, transfer, and also the creation of any lien or encumbrance.

In this case, Plaintiff has been appointed as the Bankruptcy Trustee for Renco Metals and MagCorp, the debtors who filed for bankruptcy on August 2, 2001. Plaintiff claims in this lawsuit, pursuant to his duties as bankruptcy trustee, that the Defendant The Renco Group received conveyances of money in the form of dividends and stock redemptions from Renco Metals and MagCorp, and that the Defendants Mike Legge, Ron Thayer, Todd Ogaard, Lee Brown, and Howard Kaplan received conveyances from Magcorp in the form of net worth appreciation payments, totaling $118,445,675 million,  which rightfully should be returned to MagCorp and Renco Metals to be redistributed to all of their creditors.  The Trustee also asserts that Rennert is liable for the dividends as the person for whose benefit such transfers were made.

In this case, the Plaintiff is seeking to recover conveyances that occurred on the following dates and in these amounts:

8 Dec 1995     (Dividends of $6,121,500)
8 Dec 1995     (Net Worth Appreciation payments of $428,505)
12 Feb. 1996   (Dividends of $3,700,000)
16 May 1996    (Dividends of $4,100,000)
16 May 1996    (Net Worth Appreciation payments of $546,000)
3 July 1996    (Dividends of $75,028,175.21)
3 July 1996    (Stock Redemption of $8,500,000)
3 July 1996    (Net Worth Appreciation payments of $5,255,495)
19 May 1997    (Dividends of $1,300,000)
30 July 1997   (Dividends of $5,300,000)
30 July 1997   (Net Worth Appreciation payments of $462,000)

5 Jan 1998    (Dividends of $2,000,000)
4 June 1998    (Dividends of $3,200,000)
14 Oct 1998    (Dividends of $2,000,000)
14 Oct 1998    (Net Worth Appreciation payments of $504,000)

Authority:  11 U.S.C.A. §§ 544, 550;  New York Debtor & Creditor Law, §§ 270, 273-76;
O'Malley, Grenig & Lee Fed. Jury Prac. & Instr. (6th Ed. 2013) § 164:200

Defendants' Objection: Use Defendants' objection as modified.


## NEW YORK LAW OF FRAUDULENT CONVEYANCES – FOUR TESTS

Sections 544 and 550 of the Bankruptcy Code and New York statutes provide that a

bankruptcy trustee may avoid any conveyance that is either *actually* fraudulent, or *constructively*

fraudulent.


Although tagged with the title "fraudulent," fraud has nothing to do with the constructive

fraudulent conveyance claims. Whether a conveyance is constructively fraudulent is based on the

financial condition of the company making the conveyance, and the sufficiency of any

consideration received in exchange for the conveyance.


There are four tests for a fraudulent conveyance:

(1) *actual* fraudulent conveyance;
(2) *constructive* fraudulent conveyance because of insolvency;
(3) *constructive* fraudulent conveyance because of unreasonably small capital; and
(4) *constructive* fraudulent conveyance because of inability to pay debts as they become
due.

The plaintiff only needs to establish that a conveyance is fraudulent under any one of the

tests to recover the conveyance.


Authority:  11 U.S.C.A. §§ 544, 550; New York Debtor & Creditor Law, §§ 273-76; *In re Corcoran*, 246 B.R. 152, 158 (E.D.N.Y. 2000); *In re Sharp. Intern. Corp.*, 302 B.R. 760, 778 (E.D.N.Y. 2003); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr. S.D.N.Y. 1998); O'Malley, Grenig & Lee Fed. Jury Prac. & Instr. (6th Ed. 2013) § 164:210

Defendants' Objection: Object to instruction.

Plaintiff's Objection to Defendants' Instruction:

The plaintiff objects to the defendants' instruction, because it omits key facts that are necessary to the claims or are helpful to instructing the jury on the transfers in dispute.  For example, the instruction fails to mention that the Plaintiff has a fraudulent conveyance claim against Rennert.

In addition, the instruction does not contain a list of the challenged transfers.  Providing a list of the challenged transfers simplifies the analysis for the jury, and may save substantial time in deliberations.

The instruction fails to properly state the law, by not acknowledging that actual fraudulent conveyances, and inability to pay debts are also conditions that make a transfer fraudulent.  Furthermore, it fails to consistently state that transactions that render a corporation insolvent or to lack adequate capital may be fraudulent as well.

The instruction also reflects an underlying issue between the plaintiff and defendants.  The defendants seek to define insolvency to mean liabilities in excess of fair value of assets, and then in a separate instruction suggest that insolvency may also mean inadequate capital.  We appreciate the defendants' willingness to consider changing some of the language in this instruction, but unless the language is consistent throughout the jury instructions, there is a risk of confusion to the jury.

Lastly, New York law alone governs the transfers.  The Defendants instructions suggest that New York and Utah law are the same.  If that is the case then there is a false conflict, and New York law applies.

## PART C – DEFENDANTS' INSTRUCTIONS

### Fraudulent Conveyances – Generally

Let me instruct you now on the law as to each of the legal claims the plaintiff has asserted against the defendants.

First, Mr. Buchwald has asserted fraudulent conveyance claims on behalf of Renco Metals and Magcorp. He contends that, in 1995, 1996, 1997 and 1998, after receiving fraudulent transfers from Magcorp, Renco Metals made transfers that are fraudulent conveyances to defendant, The Renco Group, and that Magcorp made transfers that were fraudulent conveyances to Michael Legge, Ron Thayer, Howard Kaplan, Todd Ogaard and Lee Brown. Mr. Buchwald contends that he is entitled to recover all of the transfers to each of those defendants because he contends that the transfers are void under the law.

A fraudulent conveyance is a transfer for which the transferring party did not receive reasonably equivalent value and as to which the transferring party was insolvent at the time of the transfer or as a result of the transfer. If these elements are proven, the transfer is void under the law. Although the claim is called "fraudulent conveyance," fraud is not an element of such a claim, and the plaintiff is not claiming that anyone engaged in actual fraud. To prove this claim, Mr. Buchwald must prove two things: first, that the transferor was insolvent at the time that it made the transfer, or that it was left insolvent or lacked adequate capital as a result of the transfer and, second, that the transferor did not receive reasonably equivalent value for the transfer.

Therefore, your first task is to determine whether Mr. Buchwald has proven that Magcorp and Renco Metals were insolvent at the time of each of their respective transfers in 1996, 1997 and 1998 or became insolvent as a result of the transfers, or lacked adequate capital. What do I mean by "insolvent?" Put simply, were Magcorp's and Renco Metals' assets less than their liabilities when the transfers were made? To determine whether Mr. Buchwald proved

insolvency, you must consider, based on the totality of the evidence presented, the value of the companies' assets at the time of the transfers, as well as the amount of the companies' liabilities at that time.   I will next explain in greater detail what the law requires with respect to determining whether a company is insolvent.

Authorities

N.Y. Debt & Cred. Law §§ 271, 272 & 273.
Utah Code Ann. §§ 25-6-2 & 25-6-3 & 25-6-6.

**Fraudulent Conveyance – Summary**

In sum, for each one of the transfers that is the subject matter of Mr. Buchwald's claims, you must consider whether:  (i) Magcorp or Renco Metals (that is, the company that made the initial transfer) was insolvent, rendered insolvent by the transfer, or lacked adequate capital; and (ii) the transfer was not for reasonably equivalent value.  If you determine that Mr. Buchwald has met his burden of proof with respect to each of those two elements as to each defendant, then you should find that the transfer in question was a fraudulent conveyance.  If you determine that Mr. Buchwald has failed to meet his burden of proof with respect to any element of the claim as to a particular transfer to a particular defendant, then you should find that Mr. Buchwald's claim as to that transfer to that defendant fails.  Alternatively, if you find that Mr. Buchwald has met his burden of proof with respect to all elements of the claim as to a particular transfer to a particular defendant, then you should find that defendant liable for fraudulent conveyance.

Authorities

N.Y. Debt & Cred. Law §§ 271, 272 & 273.
Del. Code Ann. tit. 6, §§ 1302 & 1304(a)(2).
Utah Code Ann. §§ 25-6-3 & 25-6-5(1)(b).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

62508288_1        81

Plaintiff's instruction is improper as a jury instruction because it presents factual contentions and arguments of the parties rather than a statement of the law.  Plaintiff's instruction does not account for the application of Utah law for the fraudulent conveyance claims against defendants Legge, Thayer, Kaplan, Ogaard, Brown and the transfers from Renco Metals.

# FRAUDULENT CONVEYANCES – ELEMENTS/SUMMARY

## PART A

## PART B – PLAINTIFF'S INSTRUCTION

## NEW YORK FRAUDULENT CONVEYANCES – ELEMENTS

For each alleged fraudulent conveyance you must determine whether each of the defendants is liable for that fraudulent conveyance.

A defendant is liable for a fraudulent conveyance if the plaintiff proves by a preponderance of the evidence that:

(1)     RECIPIENT - the defendant was an initial transferee or the entity for whose benefit the conveyance was made, or a subsequent transferee of the initial transferee, AND the conveyance from the debtor was EITHER:

(2)     ACTUALLY FRAUDULENT – the conveyance was made or an obligation was incurred with actual intent to hinder, delay, or defraud either present or future creditors, OR

(3)     CONSTRUCTIVELY FRAUDULENT – because

(a) an actual creditor existed at the time of the conveyance; and

(b) the conveyance was made without fair consideration; and

(c) at least one of the following conditions existed:

(i) INSOLVENT – the conveyance was made or an obligation was incurred by a company that is insolvent or will be rendered insolvent by the conveyance; OR

(ii) UNREASONABLY SMALL CAPITAL - the company making the conveyance or incurring an obligation is engaged or is about to engage in a business or transaction for which the property remaining in its hands after the conveyance is an unreasonably small capital; OR

(iii) DEBTS BEYOND ABILITY TO PAY - the company making the conveyance or incurring an obligation intends or believes that he will incur debts beyond his ability to pay as they mature.

Authority:   11 U.S.C.A. §§ 544, 550; New York Debtor & Creditor Law, §§ 273-76; *In re Corcoran*, 246 B.R. 152, 158 (E.D.N.Y. 2000); *In re Sharp. Intern. Corp.*, 302 B.R. 760, 778 (E.D.N.Y. 2003); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr. S.D.N.Y. 1998); *Boyer v. Belavilas*, 474 F.3d 375, 377 (2007)

Defendants Objection: Use Defendants' instruction as modified.

62508288_1          85

## PART C – DEFENDANTS' INSTRUCTION

Defendants' instruction concerning the elements of a fraudulent conveyance claim is found in PART C of "Fraudulent Conveyances – Intro."

## BASIS FOR USING DEFENDANTS' INSTRUCTION:

Defendants' fraudulent conveyance instruction accurately put forth the law relevant for claims asserted by the Plaintiff.  Alternatively, Plaintiff's instruction would mislead the jury as to the appropriate analysis and instructs on irrelevant claims.  First, any instruction related to actual fraudulent conveyance is inappropriate.  The Plaintiff failed to plead a fraudulent conveyance claim based on actual fraud and the Court should bar the Plaintiff from instructing the jury on any claims under New York or Utah law for fraudulent conveyances made with the intent to defraud creditors.  Defendants' Memo in Support of Motion in Limine to Exclude Claim for Actual Fraud (Dkt. 181).  Further, the instruction incorrectly presents the constructive fraudulent conveyance claim as three different claims, rather than one analysis of insolvency, as instructed by the Defendants.

## FRAUDULENT CONVEYANCES – SOLVENCY, ASSETS AND LIABILITIES

## PART A

A company is insolvent when the present fair saleable value of its assets is less than the amount that will be required to pay its probable liability on its existing debts as they become absolute and matured.

There is no one test for determining insolvency.

In determining whether MagCorp or Renco Metals was solvent or insolvent on the dates of the conveyances that the Plaintiff seeks to recover, you must determine whether their assets at fair valuation were greater than their liabilities. The relevant solvency valuation date is the date of the challenged conveyance

In assessing debts and liabilities, you must take into account contingent liabilities for the purpose of determining insolvency.

With respect to liabilities, there are two types of liabilities, actual liabilities and contingent liabilities. I will discuss contingent liabilities in a moment. Actual liabilities refer to the debts that a company has incurred, and are typically reflected in the company's financial statements and balance sheet. Actual liabilities typically consist of obligations such as payments owed to vendors and suppliers and monies owed under loans (including bonds and notes). Based on the evidence presented, you should determine the amount of Magcorp's and Renco Metals' actual liabilities. Further, if you determine that Magcorp and Renco Metals had any contingent liabilities, which I will explain to you in a moment, you should add the amount of any such contingent liabilities to the amount of the actual liabilities.

## PART B – PLAINTIFF'S INSTRUCTIONS

## INSOLVENCY (DEFINITION)

A company is insolvent when the present fair saleable value of its assets is less than the amount that will be required to pay its probable liability on its existing debts as they become absolute and matured.

This is known as the "balance sheet" test of insolvency, meaning comparing the fair value of assets against liabilities or debts.  There is no one test for determining insolvency. While the company's actual balance sheet is evidence of solvency or insolvency it is not conclusive evidence of solvency or insolvency. A company's financial statements, or lists of assets and liabilities, are not necessarily reflective of actual fair market value.  For example, evidence of insolvency may be found by examining the company's financial statements, in particular, its actual balance sheet. However, a company's balance sheet that indicates assets as being greater than liabilities is not absolute proof of solvency. A company may have substantial paper net worth but if the assets could not be sold for an amount greater than the company's liabilities as they mature, the company will be considered insolvent. Conversely, a company's actual balance sheet may reflect that liabilities exceed the assets, but the fair value of the assets may be higher than reflected on the actual balance sheet.  Similarly, the fact that a company is paying its debts as they become due is not absolute proof that the company is solvent.

In assessing insolvency, where an asset cannot be sold it is not counted in determining the value of available assets.

A debt includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. Thus, debts need not be absolute or matured to be

considered in evaluating a company's insolvency, despite the language of the test above.   A debt or  liability refers to the debts that a company has incurred, and are typically reflected in the company's financial statements and balance sheet. Actual liabilities typically consist of obligations such as payments owed to vendors and suppliers and monies owed under loans (including bonds and notes).

In assessing debts and liabilities, you must take into account contingent liabilities for the purpose of determining insolvency. However, a contingent liability must be reduced to its expected value in connection with making a determination whether the company's assets exceed its liabilities.

A company that transfers property without fair consideration is presumed to be insolvent, and the burden shifts to the defendants to rebut the presumption. Such a transfer is presumed to be a fraudulent conveyance.

In determining whether MagCorp or Renco Metals was solvent or insolvent on the dates of each conveyance that the Plaintiff seeks to recover, you must determine whether their assets at fair valuation were greater than their liabilities. The relevant solvency valuation date is the date of the challenged conveyance. You may consider information that was knowable on that valuation date even if the information was actually not known at the time.

In simple terms, to decide whether a firm is insolvent you should ask: "What would a buyer be willing to pay for the debtor's entire package of assets and liabilities? If the price is positive, the firm is solvent, if negative, insolvent."

Authority:  11 U.S.C. § 101(32); New York Debtor & Creditor Law, §§ 270-271 (McKinney 1990); *In Re Centennial Textiles Co., Inc*., 220 B.R. 165, 172-74 (B.R. S.D.N.Y 1998); *In Re Coated Sales, Inc*., 144, B.R. 663, 668 (B.R. S.D.N.Y 1992); *In Re Transworld Airlines, Inc*., 180 B.R. 389, 411 n. 28 (B.R. D. Del. 1994); *In Re Xonics Photochemical Co., Inc*., 841 F.2d 198, 200 (7th Cir. 1988); *In Re Iridium Operating, LLC*, 373 B.R. 283, 344 (B.R. S.D.N.Y.

2007); *In re Operations, LLC*, 490 B.R. 84, 97 (S.D.N.Y. 2013); *Chen v. New Trend Apparel, Inc.*, 8 F.Supp.3d 406, 445 (S.D.N.Y. 2014); *In re Franklin Nat. Bank Sec. Litig.*, 2 B.R. 687, 711 (E.D.N.Y. 1979) aff'd sub nom. Corbin v. Franklin Nat'l Bank, 633 F.2d 203 (2d Cir. 1980); In re Davis, 148 B.R. 165, 176 (Bankr. E.D.N.Y.1992); *In re Commercial Financial Services*, Inc., 350 B.R. 520, 541 n. 18 ( Bankr. N.D. Ok. 2005).

Defendants' Objection: Use defendants' instruction as modified.

## **FAIR MARKET OR SALEABLE VALUE**

Fair value is determined by the fair market price of the company's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the company's debts.

You must estimate determine what price the company's assets would realize if they were sold in a prudent manner in the current market conditions that existed at the time of each transfer.

In determining a company's insolvency, you must examine the actual values of the company's assets at the time of the conveyances that the Plaintiff seeks to recover. The fair market value of the assets must be measured by what the assets would bring if actually sold on the market at the time of the conveyance, assuming a hypothetical informed and willing seller and a hypothetical informed and willing buyer, with neither under any compulsion to buy or sell, and having a reasonable amount of time to sell the property. You must assume that both the hypothetical buyer and seller had all of the relevant information. You may consider information discovered subsequent to the date of a conveyance if it sheds light on a fair assessment of an asset or a liability as of the date of the conveyance.

Where an asset cannot be sold it is not counted in determining the value of assets for the purpose of deciding the question of insolvency. There must be an actual market for the asset, and not simply a theoretical market.

A company's actual financial statements, or lists of assets and liabilities, are not necessarily reflective of actual fair market value.  They could be higher or lower.

Authority:  In re W.R.T. Energy Corp., 282 B.R. 343, 369-70 (W.D. La., Lafayette-Opelousas Div. 2001); In re Perry H. Koplik & Sons, Inc., 476 B.R. 746, 790, 810-11 (Bankr. S.D.N.Y. 2012); In re Coated Sales, Inc., 144 B.R. 663, 666-70 (Bankr. S.D.N.Y. 1992) (assumes all relevant information is known; and can consider current awareness); In re Chemical Separations Corp., 38 B.R. 890, 895 (Bankr. E.D. Tenn 1984) (may consider information that sheds light on past); In re Energy Corp., Inc., 109 B.R. 822, 828 (N.D. Ill. 1989).

Defendants' Objection: Object to Instruction.

## DEBT (DEFINITION)

A debt includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. Thus, debts needs not be absolute or mature to be considered in evaluating a corporation's insolvency, and contingent debts or contingent liabilities must be included. In this case, the Trustee asserts that, on the date of each conveyance MagCorp had environmental liabilities, including contingent environmental liabilities.

Authority:  New York Debtor & Creditor Law, §§ 270 (McKinney 1990); *In re Centennial*, 220 B.R. 165, 172-173 (Bankr. S.D.N.Y. 1998); *In re Davis*, 148 B.R. 165, 176 (Bankr. E.D.N.Y.1992).

Defendants Objection: Object to instruction.

Plaintiff's Objection to Defendants' Instruction: The plaintiff objects to the Defendants' instruction, because it is argumentative, suggests the jury focus on specific evidence over others, and fails to include a complete statement of the law.

The instruction is argumentative because it states that a "monumental failure" is not evidence of bankruptcy, but fails to express the contrary view that a company can continue in business even though it is insolvent.

The instruction is also argumentative, because the instruction repeatedly suggests that the jurors focus on the experts.  The solvency decision may be heavily influenced by expert

testimony, but the jurors are supposed to consider all of the evidence. The instruction suggests that listening to the experts opinions given the valuation methodologies is controlling, by stating that that those are basic legal principles that the jurors must apply.

Also, the instruction is an incomplete statement of the law. It makes no mention of the actual balance sheets as competent evidence of solvency or insolvency, though the actual balance sheet may not be dispositive. The instruction fails to mention that facts after the date of the challenged transfer can be considered if the demonstrate what was knowable at the time of the transfer. The instruction also presumes that the assets could be sold, but an asset has no value if there is not an actual market for it, and thus is not saleable. Lastly, the instruction ignores that a hypothetical sale presumes that both the buyer and seller have full knowledge of all material facts.

62508288_1    92

## PART C – DEFENDANTS' INSTRUCTIONS

### Fraudulent Conveyances – Insolvency:  Assets & Liabilities

The parties dispute whether Magcorp and Renco Metals were insolvent at the time of the transfer.  Defendants contend that Magcorp and Renco Metals were each solvent at the time of every transfer.  Mr. Buchwald has the burden of proving insolvency.

You heard experts from both sides talk about insolvency, and as I have instructed you about expert testimony, you can give it as much weight as you think is appropriate.  But there are some basic legal principles about how solvency must be determined and that I instruct you to apply here.

A company is insolvent as of the date of the transfer when the present fair market value of the company's assets (as opposed to their historic value) is less than its liabilities, that is, the amount that the company will have to pay on existing debts as they come due.  You should not take a rigid approach in considering the fair valuation of a company to determine solvency; instead, you should consider the totality of the circumstances and the evidence.

As I've explained before, the plaintiff has to prove insolvency at the time when each of the transfers took place.  Just because the company became insolvent at a later point in time, you cannot presume the company was insolvent at the time of every one of the transfers.  The ultimate failure of a business, even a monumental failure, does not alone prove that the business was insolvent in the years prior to its demise.

First, you must evaluate the evidence presented regarding Magcorp's and Renco Metals' assets at the time of the transfers.  Second, you must evaluate the evidence presented regarding the companies' liabilities at that time.

Fair valuation for a company that can continue day-to-day operations is based on a "going concern" valuation. In such a circumstance, the fair value of a company's assets is determined by the fair market value of the assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay a company's debts. To make that determination, you may consider any combination of valuation methodologies presented to you during the course of the trial. Based on the evidence presented by the parties and the evidence of the financial condition of Magcorp and Renco Metals at the time of the transfers, you should determine the fair value of those assets.

With respect to liabilities, there are two types of liabilities, actual liabilities and contingent liabilities. I will discuss contingent liabilities in a moment. Actual liabilities refer to the debts that a company has incurred, and are typically reflected in the company's financial statements and balance sheet. Actual liabilities typically consist of obligations such as payments owed to vendors and suppliers and monies owed under loans (including bonds and notes). Based on the evidence presented, you should determine the amount of Magcorp's and Renco Metals' actual liabilities. Further, if you determine that Magcorp and Renco Metals had any contingent liabilities, which I will explain to you in a moment, you should add the amount of any such contingent liabilities to the amount of the actual liabilities.

Once you have determined the value of Magcorp's and Renco Metals' assets and liabilities, you should subtract the amount of the liabilities from the value of the assets to determine whether Magcorp and Renco Metals were each solvent as of each of the transfers that are the basis of Mr. Buchwald's claims.

If you determine that Magcorp and Renco Metals had more assets than liabilities as of the date of a particular transfer, then you must find that the companies were solvent at the time of the

transfers.  If you determine that each company's liabilities exceeded its assets as of the date of a particular transfer, then you must find that the companies were insolvent or rendered insolvent at the time of that transfer.

Authorities

N.Y. Debt & Cred. Law §§ 270, 271, 272 & 273.
Utah Code Ann. §§ 25-6-2 & 25-6-3.
In re Trinsum Group, Inc., 460 B.R. 379 (Bankr. S.D.N.Y. 2011).
In Re Iridium Operating LLC, 373 B.R. 283 (Bankr. S.D.N.Y. 2007).
Wasatch Oil & Gas, LLC v. Edward A. Reott, 263 P.3d 391, 394–395 (Utah Ct. App. 2011).
Trenwick American Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 195 (Del. Ch. 2006), aff'd sub nom. Trenwick American Litigation Trust v. Billett, 931 A.2d 438 (Del. 2007).
Furniture Manufacturers Sales, Inc. v. Deamer, 680 P.2d 398 (Utah 1984).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Plaintiff's instruction misstates and oversimplifies the proper solvency analysis. Defendants' instruction puts forth the appropriate standard that the jury must consider when determining insolvency.  As discussed in the Defendants' instruction, for the purpose of insolvency, "fair salable value," like its bankruptcy code counterpart "fair valuation," is determined, in the going concern context, "by the fair market value of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts."  See In re Nirvana Restaurant Inc., 337 B.R. 495, 506 (S.D.N.Y. 2006) (citing Lawson v. Ford Motor Co., 78 F.3d 30, 35 (2d. Cir. 1996).  Further, fair value is not synonymous with a forced sale or the value of a continuing unhampered business.  Rather it refers to: the amount of money that the debtor could raise from its property in a short period of time, but not so short as to approximate a forced sale, if the debtor operated as a reasonable prudent and diligent businessman with his interests in mind, especially a proper concern for the payment of his debts.  In re Coated Sales, Inc., 144 B.R. 663, 667 (Bankr. S.D.N.Y. 1992).  Finally, unless a

62508288_1        95

business is on its deathbed, the fair valuation of its assets pursuant to 547(b) is the going concern value or the fair market price. Id.

Plaintiff's instruction provides on fair market value is incomplete and misleading standard. Plaintiff's standard ignores and denies that the law provides that: "[m]ere inaction is considered substantial assistance only where the person who fails to act owes an actual affirmative duty to act directly." See In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (citing Kaufman v. Cohen, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003). Defendants' instruction should be applied because it accurately states what is and is not substantial assistance.

Plaintiff's debt instruction is unnecessary, misleading and inappropriate for the jury because the parties do not dispute what is and is not a debt. What the parties do dispute is the correct valuation of contingent liability.

## FRAUDULENT CONVEYANCES – CONTINGENT LIABILITIES

## PART A

Mr. Buchwald contends that Magcorp and hence Renco Metals had contingent liabilities arising from certain claims for violation of environmental laws. The defendants disagree whether there was any contingent liability.

[W]hen you consider the evidence regarding Renco Metals' and Magcorp's liabilities, you must determine whether Mr. Buchwald proved that Renco Metals and Magcorp, in fact, had contingent liabilities at the time that the disputed transfers were made and the amount of any such contingent liability.

Mr. Buchwald asserts that Magcorp had various environmental liabilities, including under RCRA and CERCLA.

## PART B – PLAITNIFF'S INSTRUCTION

## CONTINGENT LIABILITIES – PROBABILITY OF OCCURRENCE

In analyzing whether a company is insolvent, contingent liabilities such as those for environmental obligations must be reduced to present value for determining whether the company is insolvent.

You must determine the company's probable liabilities, including contingent liabilities, considering the likelihood or probability that the contingency will occur. In other words, if you determine as of the date of a conveyance that it was reasonably probable that MagCorp would incur environmental liabilities following the date of the conveyance, you must determine the probable present value of such liabilities by considering the probability that such liabilities would be incurred in the future. You may use information developed after the date of the conveyance if it sheds light upon the value of the contingent environmental liabilities as of the date of the conveyance.

Authority:  *In re Tronox, Inc.*, 429 B.R. 73, 98 (Bankr. S.D.N.Y 2010); *In re Solomon*, 299 B.R. 626, 639 n.55 (10th Cir. BAP. 2003); *In re WRT Energy Corp*., 282 B.R. 343, 370 (Bankr. W.D. La, Lafayette-Opelousas Div. 2001); In Re Coated Sales, Inc., 144, B.R. 663, 668 (B.R. S.D.N.Y 1992); In re Commercial Financial Services, Inc., 350 B.R. 520, 541 n. 18 ( Bankr. N.D. Ok. 2005).

Defendants' Objection: Use Defendants' instruction as modified.

Plaintiff's Objections to Defendants' Instruction: The plaintiff objects to the Defendants' instruction, because it is argumentative, and misstates the law.

The instruction improperly suggests that on the date of the transfer the jury must determine what the entities might owe in the future, reduce it by the probability of the occurrence, and then further reduce it to present value.  It thus asks the jury to discount the liability to present value twice.

62508288_1        98

In addition, the instruction suggests that it can only be argued that there was no violation of environmental liabilities.  The instruction states that the Defendants'  dispute whether any contingent liability existed; in other words, they intend to prove that they did not violate any environmental law.  In the same instruction, they tell the jury that they can't determine whether an environmental law was actually violated.

Thus, the instruction is confusing in vacillating between suggesting that the jurors must determine if MagCorp or Renco had committed acts which exposed them to environmental liabilities, but that they aren't actually determining whether they had committed acts which exposed them to environmental liabilities.

Also, the defendants cannot argue ignorance of the law.  They may have disagreed with what the law was, but the federal court's decision in the Utah case confirmed that the at the time of the conveyance that the EPA had correctly interpreted the law.

## PART C – DEFENDANTS' INSTRUCTION

### Fraudulent Conveyances – Insolvency: Contingent Liabilities

Recall that liabilities consist of both actual and contingent liabilities. Here, Mr. Buchwald contends that Magcorp and hence Renco Metals had contingent liabilities arising from certain claims for violation of environmental laws. The defendants disagree whether there was any contingent liability. Consequently, when you consider the evidence regarding Renco Metals' and Magcorp's liabilities, you must determine whether Mr. Buchwald proved that Renco Metals and Magcorp, in fact, had contingent liabilities at the time that the disputed transfers were made and the amount of any such contingent liability.

A contingent liability is one that the company will be called upon to pay only if some event that triggers liability occurs. In other words, a claim is contingent if the company's legal duty to pay does not come into existence until triggered by the occurrence of a future event.

A contingent liability is to be distinguished from mere speculation about possible future liability. Contingent liabilities must be limited to the probable costs that arise from events, as occurring while the company remains a going concern, that were foreseeable, at the time of the transfers. So, when a liability is contingent on an unlikely future event, the amount of the liability will be close to nothing or will have negligible effect on the net value of an asset.

I know this is not easy to follow so let me break this down further. In order for the plaintiff to prove the existence and amount of any contingent liability, several separate facts must be proven: (1) At the time of the transfers in question, were there events that could cause a liability to be incurred at a later time foreseeable, and not just mere speculation? (2) If so, what was the potential cost of that liability? Meaning, if the event occurred, would the company have $1 million in costs, or $5 million, or $10 million, etc. (3) Next how probable is it that the

62508288_1          100

liability would occur later and how probable is the potential cost of the liability?  Was it 10% probable, 30%, 40%, etc?  (4) Once the amount of the projected cost is determined and the probability is determined, you would multiply the two figures to come to the unadjusted contingent liability amount.  For example, if the potential liability is $100 but the overall probability of the liability is only 40% percent, the unadjusted liability amount would be $40, not $100. (5) And last, once this figure is determined, you have to further discount or adjust that figure to the present value of the amount at the time of the transfer. As you know, a dollar today doesn't go as far as a dollar did back in 1996, nearly 20 years ago. For this reason, you have to reduce the probability-adjusted liability amount to the amount that would exist in 1996, 1997 or 1998 when the transfers occurred.  So, for example, if you conclude that the plaintiff proved a contingent liability in the amount of $40, that amount will need to be reduced to, say, $30 or some other number, depending on what the difference is between dollar value in the mid-90s versus today.

Mr. Buchwald asserts that Magcorp had various environmental liabilities, including under RCRA and CERCLA.  In making the determination about the amount of such contingent liabilities, it is not your job to determine that Magcorp is liable for violations of the various environmental statutes.  Rather, you are to determine solely, based on the evidenced presented to you, what the probability of liability and the amount of liability was as of the time of the transfers.  Further, as you know from personal experience, parties have disputes all of the time.  Just because one party ultimately loses if that dispute goes to court, it does not mean that the probability of liability was 100 percent – you have to evaluate the parties' positions and the uncertainties about the facts or the law when determining probability.

If you conclude that Mr. Buchwald proved the existence of the contingent liabilities that he asserts and you have determined what the evidence has proven about the amount of those liabilities, after making the required probability and present day value adjustments, that amount gets added to the amount of Renco Metals' and Magcorp's actual liabilities. The sum of those two amounts equals the total amount of liabilities to be subtracted from the fair market value of the companies' assets as of each transfer date.

Authorities

Paloian v. LaSalle Bank, N.A., 619 F.3d 688 (7th Cir. 2010).
Mazzeo v. United States, 131 F.3d 295 (2d Cir. 1997).
Covey v. Commercial National Bank, 960 F.2d 657 (7th Cir. 1992)
Xonics Photochemical, Inc. v. Mitsui and Company (U.S.A.), Inc., 841 F.2d 198 (7th Cir. 1988).
Davis v. Suderov, 169 B.R. 285 (E.D.N.Y. 1994).
In re Best Products Co., 168 B.R. 35, 52 (Bankr. S.D.N.Y. 1994).
In re Ohio Corrugating Co., 91 B.R. 430 (N.D. Ohio 1988).
In re Tronox, Inc., 429 B.R. 73 (Bankr. S.D.N.Y. 2010).
Lippe v. Bairno Corp., 249 F. Supp. 2d 357, 379 (S.D.N.Y. 2003).
Staten Island Savings Bank v. Reddington, 260 A.D.2d 365, 687 N.Y.S.2d 707 (2d. Dep't 1999).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

The Plaintiff's instruction misstates and attempts to oversimplify the calculation of contingent liabilities. The jury is not to determine a "probable liability." As this Court has recognized that "[t]he facts be determined are the dollar amount of the debtor corporations' potential liabilities and the probability that this liability would come to pass." December 19, 2014 Hearing Tr. 77-78. In addition, the jury must decide when the liabilities would come to pass and reduce the contingent liabilities to its present value as of the date of the transfer in question. In re Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th Cir. 1988) (Posner, J.). The Defendants' instruction on contingent liabilities accurately puts forth the standard a jury must apply to determine the appropriate present value of an alleged contingent liability. Id.

62508288_1        102

## FRAUDULENT CONVEYANCES – INADEQUATE CAPITAL/UNREASONABLY SMALL CAPITAL

## PART A

Whether MagCorp or Renco Metals was left with unreasonably small capital or "undercapitalized" as a result of the conveyances is a question of fact that you must determine. In making your determination, you may consider all of the relevant evidence.

**PART B – PLAINTIFF'S INSTRUCTION**

**UNREASONABLY SMALL AMOUNT OF CAPITAL**

The term unreasonably small capital refers to the inability of a company to generate sufficient profits to sustain operations, and to problems that are short of insolvency in any sense but are likely to lead to insolvency at some time in the future. The test is whether the unreasonably small capital condition and consequent cash flow problems were reasonably foreseeable when viewed objectively at the time of the transaction at issue. A determination of what is an unreasonably small amount of capital requires an examination of a company's capital and financial condition looking forward from the date of a conveyance or transfer that the plaintiff seeks to recover.

In order to determine the adequacy of capital, you may consider factors such as a company's debt-to-equity ratio, its historical capital cushion and its need for working capital in the specific industry. You should also consider the reasonableness of the company's projections and whether they were prudent when made. You should also consider a company's ability to account for difficulties that are likely to arise or reasonably foreseeable, including interest rate fluctuations and general economic downturns.

Whether MagCorp or Renco Metals was left with unreasonably small capital or "undercapitalized" as a result of the conveyances is a question of fact that you must determine. In making your determination, you may consider all of the relevant evidence, including the assets of each company, and each company's cash flow, ability to access lines of credit or otherwise borrow money, as well as its short-term and long-term liabilities and its contingent liabilities, including environmental liabilities. You may also consider the circumstances that lead to MagCorp's and Renco Metals' bankruptcy.

Authority:   O'Malley, Grenig & Lee Fed. Jury Prac. & Instr. (6th Ed. 2013) § 164: 234 (Modified); Barrett v. Cont. Ill. Nat'l Bank & Trust Co., 882 F.2d 1, 4 (1st Cir. 1989); In Re WRT Energy Corp., 282 B.R. 343, 410-11 (B.R. W.D. La. Lafayette-Opelousas Div. 2001); Credit Managers Assoc. of So. Cal. v. The Federal Co., 629, F.Supp. 175, 183-84 (C.D. Cal. 1985); MFS/Son Life Trust – High Yield Series v. Van Dusen Airport Srvcs. Co., 910 F.Supp 913, 944 (S.D.N.Y. 1995); Asarco, LLC, So. Peru Holdings, LLC v. America's Mining Corp., 396 B.R. 278, 396 (S.D. TX, Brownsville Div. 2008); Moody v. Security Pacific Business Credit, Inc., 971 F.2d 1056, 170 (3rd Cir. 1992); In Re Joy Recovery Tech Corp., 286 B.R. 54, 76 (B.R. N.D. Ill. 2002); In re Tronox, 503 B.R. 239, 320 (Bankr. S.D.N.Y. 2013) (problems that "are short of insolvency in any sense but are likely to lead to insolvency at some time in the future"); Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.), 473 B.R. 525, 552 (Bankr. D. Del. 2012) (following Moody, "Reasonable foreseeability is the standard").

Defendants' Objection: Use Defendants' Instruction as Modified.

Plaintiff's Objection to Defendants' Instruction:   The plaintiff object because the instruction misstates the law.

First, the instruction seems to blend ability to pay debts as they become due, and inadequate capital.  They are separate tests.  As the defendants correctly state, the test is doomed to fail, not simply paying their bills for a period of time.

In addition, the instruction fails to explain what types of evidence may be helpful to analyzing inadequate capital.  The test requires a company to consider its past financial condition, including historical needs for cash in the industry and capital cushion.  It also requires an objective analysis of the financial projections and capital needs.  The defendants' instruction simply argues that if the company had net profits on its financial statements for a little while after the transfer then it had adequate capital.  As Posner demonstrated, a company may be able to limp along for quite a while, but that does not mean it has adequate capital and is not doomed to fail.

Here, there will be evidence that at the time of the transfers conditions were in place that doomed MagCorp to fail, including the absence of a competitive technology, and competition.

Thus, the instruction also fails, because it fails to include the foreseeability test.

In sum, the unreasonably small capital/inadequate capital is not just a brief analysis of a company's profits after the transfer.

## PART C – DEFENDANTS' INSTRUCTION

### Fraudulent Conveyances – Inadequate Capital

Under fraudulent conveyance law, even if a company might technically be solvent, a company can be considered insolvent if it does not have adequate capital to pay its bills as a result of the transfers. Of course, if you determine that Mr. Buchwald met his burden of proving that Renco Metals and Magcorp were insolvent at the time of the transfers, then you need not consider this instruction. If, however, you determine that the plaintiff did not meet his burden of proof on solvency and that Renco Metals and Magcorp were solvent at the time of the transfers, then you must separately determine whether the transfers left the companies with inadequate capital for a reasonable period of time after the transfers.

A company has inadequate capital when it is unable to generate sufficient profits to sustain operations. The issue requires an analysis of the company's ability to generate sufficient cash flow from its operation and other financial resources to pay its debts and remain financially stable. The question is whether the transfer left the company technically solvent but doomed to fail. In other words, did the transfer make the company unable to generate sufficient cash to sustain its operations, that is to pay its bills and costs? If not, then the company had adequate capital.

The unreasonably small capital test does not require that a company have sufficient capital to withstand all potential occurrences, but only those reasonably foreseeable at the time of the transfer and nothing more. In other words, if it turns out that the company did not have enough capital to withstand setbacks or events that were not predictable or foreseeable at the time of the transfer, that fact does not mean that the company lacked adequate capital as a result of the transfers. Further, the determination about adequate capital is made at the time of the transfer, and not with hindsight based on what ultimately happened. You should look at the

company's working capital as of the transfer, that is, the company's reasonably expected cash flows and its other financial resources at that time and compare that working capital to the company's capital needs for a reasonable period of time after the transfers to cover reasonably foreseeable expenses.

### Authorities

N.Y. Debt & Cred. Law §§ 274 & 275.
Utah Code Ann. § 25-6-5(1)(b).
Moody v. Security Pacific Business Credit, Inc., 971 F.2d 1056 (3d Cir. 1992).
In re Fidelity Bond and Mortgage Co., 340 B.R. 266 (E.D. Pa, 2006).
In re Joy Recovery Technology Corp., 286 B.R. 54 (N.D. Ill. 2002).
Credit Managers Association v. The Federal Co., 629 F. Supp. 175 (C.D. Cal. 1985).
In re Iridium Operating LLC, 373 B.R. 283 (Bankr. S.D.N.Y. 2007).
Grace Plaza of Great Neck, Inc. v. Heitzler, 2 A.D.3d 780, 770 N.Y.S.2d 421 (2d. Dep't 2003).
Hospitalists of Delaware, LLC v. Lutz, No. CIV.A. 6221-VCP, 2012 WL 3679219 (Del. Ch. Aug. 28, 2012).

### BASIS FOR USING DEFENDANTS' INSTRUCTION:

Plaintiff's instruction does not accurately state the appropriate standard.  As explained in Defendants' instruction, the law provides that a company has inadequate capital when a transfer leaves "the transferor technically solvent but doomed to fail."  See MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co., 910 F. Supp. 913, 944 (S.D.N.Y. 1995). Plaintiff's instruction fails to instruct the jury that "[w]hile a company must be adequately capitalized, it does not need resources sufficient to withstand any and all setbacks."  Id.  Further, Plaintiff's instruction ignores that a company needs to be adequately capitalized only for a reasonable period of time following the transfer.  Id. ("[A]dequacy of capital need only be tested within a reasonable period of the transfer at issue.").  Defendants' instruction provides the proper standard and instructs the jury that the critical inquiry is the "reasonableness of the company's projections, not with hindsight, but with respect to whether they were prudent when made."  Id.

## <u>FRAUDULENT CONVEYANCES – SUBSEQUENT TRANSFERS</u>

## <u>PART A</u>

## PART B – PLAINTIFF'S INSTRUCTION

Plaintiff's Objection to Defendants' Instruction:  The Trustee does not claim that Ira Rennert or the Rennert Trusts are liable as subsequent transferees of cash dividends from MagCorp or Renco Metals.  The Trustee claims that Ira Rennert and the Rennert Trusts are liable under 550(a)(1) as the party for whose benefit such dividends were made.  The issue of subsequent transfers of fraudulent conveyances may only apply to Renco Group, which we believe are admitted in the Joint Pretrial Report.

## PART C – DEFENDANTS' INSTRUCTION

### Subsequent Transfers

Mr. Buchwald also asserts claims against the recipients of subsequent transfers of the fraudulent conveyances that he alleges were made by Magcorp to Renco Metals and Renco Metals to defendant The Renco Group. If you determine that Mr. Buchwald has not proven his claims that The Renco Group received fraudulent conveyances, you should not consider this claim. If you determine that Mr. Buchwald has met his burden of proving that The Renco Group received fraudulent conveyances, you must then go on to decide whether Mr. Buchwald has proven his subsequent transfer claims against Mr. Rennert and the Rennert family trusts.

The law provides that, when there is a fraudulent conveyance, a trustee such as Mr. Buchwald may recover the property transferred or the value of the property transferred from the initial transferee or recipient to any subsequent transferee of the initial transferee – in other words, from someone who receives the property that was the subject of the initial transfer. In order to prove that one of those defendants is a subsequent transferee, Mr. Buchwald must prove that The Renco Group transferred what it received from Renco Metals to Mr. Rennert or the Rennert family trusts. It is not enough to show that the party received a benefit from the property or had the use of it – that party must receive ownership of the property.

If you determine that Mr. Buchwald has proven that Mr. Rennert or the Rennert family trusts received the property that The Renco Group received from Renco Metals in the form of dividends in 1996 through 1998, then you must find that Mr. Rennert or the Rennert family trusts are liable as a subsequent transferee. If you determine that Mr. Buchwald has failed to meet his burden of proof that either Mr. Rennert or the Rennert family trusts received that property, then you must find that Mr. Rennert and the Rennert family trusts are not liable as subsequent transferees and that Mr. Buchwald's claim fails.

<u>Authorities</u>

11 U.S.C. § 550.

<u>In re Furs by Albert & Marc Kaufman, Inc.</u>, No. 03-41301, 2006 WL 3735621 (Bankr. S.D.N.Y. Dec. 14, 2006).

### BASIS FOR USING DEFENDANTS' INSTRUCTION:

Plaintiff incorrectly argue that the amended complaint alleges a Bankruptcy Code section 550(a)(1) claim against Defendant Ira Rennert. However, the relevant allegation of the amended complaint states that Mr. Rennert and the Rennert Trusts "benefited as *the ultimate recipients* of certain of the fraudulent conveyances." <u>See</u> Amended Complaint at ¶532. (emphasis added) If Mr. Rennert was the ultimate recipient of the transfer, he would be an alleged subsequent transferee.

# FRAUDULENT CONVEYANCES – FAIR CONSIDERATION/REASONABLY EQUIVALENT VALUE

## PART A

**PART B – PLAINTIFF'S INSTRUCTION**

**FAIR CONSIDERATION**

In analyzing whether a trustee may avoid a constructive fraudulent conveyance under New York statutes, you must determine whether MagCorp or Renco Metals received fair consideration in exchange for the conveyance.

If you find that the other elements of a constructive fraudulent conveyance exist with respect to any of the conveyances that the plaintiff seeks to recover, and that MagCorp or Renco Metals did not receive fair consideration in exchange for that conveyance, the conveyance is a constructive fraudulent conveyance and the plaintiff is entitled to avoid or to recover that conveyance from the recipients and person for whose benefit the initial transfer was made.

Fair consideration is given for property, or obligation,

a.    When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.    When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Thus, fair consideration has two elements: (1) the exchange of fair value and (2) good faith.

There is no mechanical mathematical formula for determining fair value. In other words, there need not be a dollar-for-dollar equivalent of the amount of the transfer. You should determine the value of the property transferred and any value received in exchange. You should determine whether the net economic effect of the transfer was a dissipation of the debtor's estate. In evaluating the net effect of the transaction, the property exchanged by the debtor and the

62508288_1        114

transferee must be valued at their fair market value. While there is no exact test, to be adequate, the consideration given must have conferred an economic benefit upon MagCorp or Renco Metals, and the value of the benefit must approximate the value of the property or obligation conveyed by MagCorp or Renco Metals.

The good faith of both the transferor (party making transfer or conveyance) and transferee (party receiving the transfer or conveyance) is required. The transfer of corporate assets to an insider lacks good faith if the transfer of assets is either directly to the insider or to an entity controlled by the insider.

Authority:  New York Debtor & Creditor Law, § 272 (McKinney 1990); *In re Cassandra Grp.*, 312 B.R. 491, 498 (Bankr. S.D.N.Y. 2004); *Mega Pers. Lines, Inc. v. Halton*, 9 A.D.3d 553, 555, 780 N.Y.S.2d 409, 411 (App. Div. 2004); *In re RT Energy Corp.*, 282 B.R. 343, 404-05 (Bankr. W.D. La. Lafayette-Opelousas Div. 2001).

Defendants' Objection: Use Defendants' instruction as modified.

Plaintiff's Objection to Defendants' instruction: First, the instruction improperly ignores the good faith requirement under New York law.  By ignoring that element of fair consideration, the Defendants' ignore the resultant effect of a transfer to an insider:  there is no good faith. Second, it is unequivocal that the companies received 0 benefit for the dividends.

The language is argumentative:  "even if Mr. Buchwald proved insolvency…"  Suggests that it would be preposterous for the Trustee to prove insolvency.

Also, the defendants' elaborate example of what would be fair consideration from the officer defendants, ends by suggesting that if the officers gave value for the transfers then all "transfers" had value.

It also persistently focuses on facts for the defendants, such as value from the officer defendants, but not the dividends to Renco Metals and Group.

It also misstates the law by suggesting the test is only whether the transfers were reasonably related to an employment contract. A subject matter relationship is not the test of reasonably equivalent value, and their statement ignores the fact that Renco Metals provided no services to MagCorp, and the defendants have unequivocally stated that neither Metals nor Magcorp received any benefit for the dividends.

**PART C – DEFENDANTS' INSTRUCTION**

**Fraudulent Conveyance – Reasonably Equivalent Value**

As I mentioned earlier, Mr. Buchwald must also prove that Magcorp and Renco Metals did not receive reasonably equivalent value for the net worth payments that they made. In other words, even if Mr. Buchwald proved insolvency, you have to then ask yourselves, did the plaintiff also prove that Magcorp and Renco Metals did not receive reasonably equivalent value for these transfers that those companies made to the defendants. The defendants contend that the companies received reasonably equivalent value for the transfers that they received, and Mr. Buchwald has the burden of proving that such was not the case.

There are two separate determinations that you must make. The first is whether Magcorp and Renco Metals received value in exchange for the transfers to defendants. If you determine that they did, the second determination you must make is whether the services or value received were "reasonably equivalent" to the amount of the transfers they made. The value of a transaction is determined at the time the transaction is made and not with hindsight based on what ultimately happened.

To put these instructions in more concrete terms with respect to the individual defendants, as you know, Messrs. Legge, Thayer, Ogaard, Kaplan and Brown were each employees and senior officers of Magcorp, and they received certain funds pursuant to compensation agreements that they signed with Magcorp at an earlier time. The reasonably equivalent value element requires you to consider whether Magcorp received value in connection with payments under those agreements, that is whether each of Messrs. Legge, Thayer, Ogaard, Kaplan and Brown provided employment services based on their skill, ability and judgment in exchange for those agreements. Mr. Buchwald claims that they did not, but if you conclude that he did not prove that contention based on all the evidence you heard, then you must find that

Magcorp received value for the transfers.  Note that the initial determination regarding whether Magcorp received value is not about the quality or amount of value provided, but simply whether Magcorp received any value.

You must then consider whether that value was "reasonably equivalent" to the services that Magcorp received.  In other words, the compensation at issue must have a reasonable relation to the value of the services for which Magcorp paid that compensation, and Mr. Buchwald must prove that there was no reasonable relation.  This requires you to evaluate what Magcorp received, and to do this, you should consider several factors.  First, you should consider the background, skills and expertise that Messrs. Legge, Thayer, Ogaard, Kaplan and Brown each brought to their respective positions.  You should determine their skill set based on the evidence presented regarding their education, training and years of experience in the industry. Next, you must consider what Messrs. Legge, Thayer, Ogaard, Kaplan and Brown each had to do in order to perform their job responsibilities.  For example, you should consider work load, business travel, the number of employees managed, the number and complexity of areas of responsibility, services and time devoted to the company.  You should also consider any difficulties or burdens related to each of those factors.  Finally, you should consider the results that Messrs. Legge, Thayer, Ogaard, Kaplan and Brown each accomplished while functioning in their respective positions as of the time that they received the transfers.  With all of these factors in mind, you should determine whether the value of the transfers was reasonably related to the services that Messrs. Legge, Thayer, Ogaard, Kaplan and Brown each provided to Magcorp at the time that they were received.

If you determine that, with respect to each defendant, Mr. Buchwald has met his burden of proof that the transfers were not reasonably related to the services that each such defendant

62508288_1          118

provided to Magcorp, then you should find that such defendant did not provide reasonably equivalent value for the payments that they received. If you determine that Mr. Buchwald has failed to meet his burden of proof with respect to whether the transfers were reasonably related to the service that a defendant provided, then you should find that Mr. Buchwald has failed to prove that there was no reasonably equivalent value as to that defendant and that his claim against that defendant fails.

Authorities

11 U.S.C. § 548(a)(1)(B)(i).
N.Y. Debt & Cred. Law § 272.
Utah Code Ann. § 25-6-4.
Cilco Cement Corp. v. White, 55 A.D.2d 668, 390 N.Y.S.2d 178 (2d Dep't 1976).
Heller v. Boylan, 29 N.Y.S.2d 653 (N.Y. Sup. Ct. 1941).
Brehm v. Eisner, 746 A.2d 244 (Del. 2000).
Saxe v. Brady, 184 A.2d 602 (Del. Ch. 1962).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Plaintiff's instruction ignores the proper standard for fair consideration in cases involving compensation provided to directors or officers for services performed. In such an action, the law provides that services in exchange for transfers are made with fair consideration unless the plaintiff proves that there is no reasonable relationship between the payments and the services that the individuals provided. See In re TC Liquidations LLC, 463 B.R. 257, 268 (Bankr. E.D.N.Y. 2011); Cilco Cement Corp. v. White, 55 A.D.2d 668 (2d Dep't 1976). Defendants' instruction properly charges the jury that it is entitled to consider each individual's background, skills and expertise and to exhibit how each individual compared against his job responsibilities, including such things as workload, business travel, the number of employees managed, the services and time devoted to the company. See TC Liquidations LLC, 463 B.R. at 268-69; Heller v. Boylan, 29 N.Y.S.2d 653, 668 (N.Y. Sup. Ct. 1941). In addition, Defendants'

instruction appropriately instructs the jury that it should consider the number and complexity of areas within the individual's responsibility, including the difficulties and burdens of those responsibilities, and consider whether each individual accomplished their jobs. See id.

## FRAUDULENT CONVEYANCES – CREDITOR

## PART A

## **PART B – PLAINTIFF'S INSTRUCTION**

## **CREDITOR**

A "creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. A person is a creditor at the time of a conveyance, if at the time of the transfer, all the elements for a legal cause of action have occurred.

Authority:  N.Y. Debt. & Cred. Law § 270 (McKinney); Shelly v. Doe, 249 A.D. 2d 756, 757, 671 N.Y.S. 2d 803 (App Div. 3 Dept 1998)

*Defendants' Objection*: Object to this instruction in its entirety.

## PART C – DEFENDANTS' INSTRUCTION

## NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION

There is no dispute concerning whether someone is or is not a creditor. Such an instruction is unnecessary and should not be given to the jury.

# FRAUDULENT CONVEYANCES – BADGES OF FRAUD

## PART A

## PART B – PLAINTIFF'S INSTRUCTION

## CONVEYANCE MADE WITH INTENT TO DEFRAUD – BADGES OF FRAUD

Under New York law, courts have identified certain factors or "badges of fraud" that accompany actual fraudulent conveyances so commonly that their presence gives rise to an inference of intent to hinder, delay, or defraud creditors.

These include: (1) the lack or inadequacy of consideration; (2) a family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits of creditors; and (6) the general chronology of the events and transactions under inquiry.

In this case, Plaintiff alleges that the following circumstances constitute such badges of fraud which give rise to an inference of intent to defraud:

1.      The fact that MagCorp and Renco Metals received nothing in return for the dividends to The Renco Group;

2.      The fact that the conveyances were taken by MagCorp's and Renco Metals' shareholders, directors and/or officers;

3.      The fact that Renco Metals was required to borrow $150 million through the Senior Note Offering in 1996, and that MagCorp was required to guarantee repayment of the $150 million Senior Notes, and that most of the proceeds were taken by Defendants as dividends or other payments;

4.     The fact that dividends were taken many times over a lengthy period of time after MagCorp and Renco Metals had incurred debt;

5.     The fact that MagCorp was in a business that required a great deal of capital and constantly needed money to  upgrade its technology and to address its environmental problems; and

6.     The general fact that MagCorp and Renco Metals, after the conveyances, defaulted on their obligations under the Senior Notes and declared bankruptcy shortly thereafter.

Authority:    *In Re Operations NY, LLC*, 490 B.R. 84, 94 (B.R. S.D.N.Y. 2013); *Capital Distribution Services, Ltd. V. Ducor Express Airlines, Inc.*, 449 F. Supp. 2d, 195, 204 (E.D.N.Y. 2006); *Salomon v. Kaiser*, 722 F.2d 1574, 1582-83 (2nd Cir. 1983)

Defendants' Objection: Objection to this instruction in its entirety.

**PART C – DEFENDANTS' INSTRUCTION**

**NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION**

Any instruction related to actual fraudulent conveyance is inappropriate. The Plaintiff failed to plead a fraudulent conveyance claim based on actual fraud and the Court should bar the Plaintiff from asserting any claims under New York or Utah law for fraudulent conveyances made with the intent to defraud creditors. Defendants' Memo in Support of Motion in Limine to Exclude Claim for Actual Fraud (Dkt. 181).

If the court were to determine an actual fraud claim was adequately plead in the complaint, Plaintiff's instruction remains inappropriate because it includes factual contentions rather than limited to a statement of the appropriate law. Further, the instruction fails to instruct the jury that the absence of these badges of fraud would constitute evidence that there was no intent to defraud, or that their value as evidence is relative but not absolute. See Selvage v. J.J. Johnson & Associates, 910 P.2d 1252, 1261-62 (Utah App. Ct. 1996) (citing Territorial Savings & Loan Association v. Baird, 781 P.2d 452, 462 (Utah 1989); Lippe v. Bairco Corp., 249 F. Supp.2d 357, 374 (S.D.N.Y. 2003).

## <u>NY CODE § 720 – STATUTORY MISCONDUCT</u>
## <u>PART A</u>

**PART B – PLAINTIFF'S INSTRUCTION**

**NY CODE § 720 STATUTORY MISCONDUCT - ACTION AGAINST DIRECTORS
AND OFFICERS FOR MISCONDUCT**

An action may be brought against one or more directors or officers of a company to require that officer or director to account for his official conduct in:

(a) the neglect of, or failure to perform, or other violation of his duties in the management and disposition of company assets committed to his charge;

(b) the acquisition by himself, transfer to others, loss or waste of company assets due to any neglect of, or failure to perform, or other violation of his duties; or

(c) to set aside an unlawful conveyance, assignment or transfer of company assets, where the transferee knew of its unlawfulness.

Authority:  N.Y. CLS Bus. Corp. § 720 (2014); *Klein v. Tabatchnick*, 610 F.2d 1043, 1050 (2d Cir. 1979).

Defendants' Objection: Objection to this instruction in its entirety.

62508288_1          129

**PART C – DEFENDANTS' INSTRUCTION**

**NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION**

Plaintiff's instruction is largely duplicative of Plaintiff's common law fiduciary duty claims discussed in breach of fiduciary duty instructions and provides no further rights or remedies. Therefore, Defendants believe there is no reason for the jury to be instructed on this claim.

## BREACH OF FIDUCIARY DUTY – ELEMENTS AND DUTIES

## PART A

A claim for breach of fiduciary duty requires:  (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that the breach caused a loss to the beneficiary of the duty or resulted in a profit for the fiduciary.

The first element of a breach of fiduciary duty claim that Mr. Buchwald must prove is whether any of Messrs. Rennert, Fay, Sadlowski or Ryan owed a fiduciary duty to Renco Metals, and as to Magcorp, whether any of Messrs. Rennert, Legge, Thayer, Ogaard, Brown or Kaplan owed a fiduciary duty to that company.

Officers and directors of a corporation stand in a fiduciary relationship to the corporation and have a duty of care to the corporation. The duty of care is satisfied when a director or officer exercises a good faith effort to be informed and to exercise appropriate judgment.

## PART B – PLAINTIFF'S INSTRUCTIONS

### BREACH OF FIDUCIARY DUTY

The defendants who were officers or director of MagCorp and of Renco Metals owed fiduciary duties to the companies they served as officers or director. The fiduciary's obligations include the duties of due care, good faith and loyalty. The standard of conduct for directors requires that they strive in good faith and on an informed basis to maximize the value of the company for the benefit of the ultimate beneficiaries of the company's value. A fiduciary may not act in a manner contrary to the interests of the company her serves or to the company's ultimate beneficiaries.

In a solvent corporation, the beneficiaries are the shareholders. Renco Group was the shareholder in this case. Therefore, in a solvent company, the law requires that directors and officers seek prudently, loyally, and in good faith to manage the business of the company for the benefit of its shareholders.

However, if you find that MagCorp or Renco Metals was insolvent or lacked adequate capital at the time of any of the conveyances the Plaintiff seeks to recover, the company's insolvency makes the company's creditors the principal beneficiaries of the firm's value, and the officers and directors were required to exercise those fiduciary duties for the benefit of MagCorp or Renco Metals, and for the company's creditors as the primary beneficiaries of the company's value.

A claim for breach of fiduciary duty requires:  (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that the breach caused a loss to the beneficiary of the duty or resulted in a profit for the fiduciary.

The Trustee alleges that Rennert and the officer and director defendants breached their fiduciary duties to MagCorp and to Renco Metals by approving and making the conveyances the Plaintiff seeks to recover, and by approving and assisting the 1996 Notes Offering in which Renco Metals borrowed and MagCorp guaranteed repayment of $150 million, and the use of the proceeds to pay dividends and other conveyances to defendants when MagCorp and Renco Metals were insolvent.

Ira Rennert As Director Of MagCorp And Renco Metals

As the director of MagCorp and of Renco Metals, Ira Rennert owed those corporations fiduciary duties.

Individual Defendants As Officers Of MagCorp

The following defendants were officers of MagCorp, and owed that corporation fiduciary duties:
1.    Michael Legge
2.    Ron Thayer
3.    Howard Kaplan
4.    Todd Ogaard
5.    Lee Brown

Individual Defendants As Officers Of Renco Metals

The following defendants were officers of Renco Metals, and owed that corporation fiduciary duties:
1.    Roger Fay
2.    Justin D'Atri
3.    Michael Ryan (from September 25, 1998 to June 24, 2002)
4.    Dennis Sadlowski (from September 25, 1998 to 2002)


Authority:  *Jackson Nat'l Life Ins. Co. v. Kennedy, et al.*, 741 A.2d 377, 386 (Del. Ch. 1999); *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004); *North Am. Catholic Educ. Prog. Found., Gheewalla*, 930 A.2d 92, 99 (Del. 2007); *Quadrant Structured Products Co. v. Vertin*, CIV.A.6990-VCL, 2014 WL 5099428 (Del. Ch. Oct. 1, 2014).

Defendants' Objection: Object to Instruction.

62508288_1        133

## THE DUTY OF CARE

The defendants who were officers and the director of MagCorp and Renco Metals also had a duty to perform their functions in a manner they reasonably believed to be in the best interest of MagCorp and Renco Metals, and with the care that ordinarily prudent persons would reasonably be expected to exercise in a like position and under similar circumstances. This duty is called the duty of care.

The duty of care requires officers and directors to act diligently and prudently in managing the company's affairs, to pay attention and to inform themselves fully and in a deliberate manner, actively to participate in board discussions, to use reasonable and independent judgment, and requires that a director inform himself of all material information reasonably available before voting on a transaction.

**Authority**:    ABA Model Jury Instructions, Business Torts Litigation (Fourth Edition 2005); *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 560 (D. Del. 2012).

Defendants' objection: Object to Instruction.

62508288_1        134

**THE DUTY OF LOYALTY**

The defendants who were officers and the director of MagCorp and Renco Metals also owed a duty of undivided and unqualified loyalty to MagCorp and to Renco Metals.

The duty of loyalty means essentially that fiduciaries such as the defendants may not put their own personal interests ahead of those of MagCorp and Renco Metals — neither in their dealings with the company nor in their dealings with others. Those defendants were required as a result of this duty of loyalty to exercise the utmost good faith in furthering the interests of MagCorp and Renco Metals and conserving their property.

Pursuant to the duty of loyalty, a company's officers and directors are not permitted to use their position of trust and confidence to further their private interests. The duty of loyalty demands of a company's officer or director the most scrupulous observance of his duty, not only affirmatively to protect the interests of the company committed to his charge, but also to refrain from doing anything that would work injury to the company, or to deprive it of profit or advantage which his skill and ability might properly bring to it. The rule that requires an undivided and unselfish loyalty to the company demands that there be no conflict between duty and self-interest.

A corporate fiduciary fails to act in good faith, and thus fails to act with a duty of loyalty by, amongst other things, (1) intentionally acting with a purpose other than that of advancing the best interests of the corporation, (2) acting with the intent to violate applicable positive law, or (3) intentionally failing to act in the face of a known duty to act, demonstrating a conscious disregard for his responsibilities.

**Authority**:    ABA Model Jury Instructions, Business Torts Litigation (Fourth Edition 2005); *In re Tousa, Inc.,* 437 B.R. 447, 460 (Bankr. S.D. Fla. 2010); *Gearhart Indus. v. Smith Int'l, Inc.,* 741 F.2d 707 (5th Cir. 1984); *Horwitz v. Southwest Forest Indus., Inc.,* 604 F. Supp.

1130 (D. Nev. 1985); *Jones v. H.F. Ahmanson & Co.,* 460 P.2d 464 (Cal. 1969); *FDIC v. Schuchmann,* 235 F.3d 1217, 1223 (10th Cir. 2000); *Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co.,* 197 F.3d 742, 749 (5th Cir. 1999); *GAB Bus. Servs. v. Lindsey & Newsom Claim Servs.,* 83 Cal. App. 4th 409 (Cal. Ct. App. 2000); 3 William M. Fletcher, Cyclopedia of the Law of Private Corporations § 838 (rev. perm. ed. 1986).

Defendants' objection: Object to Instruction.


## THE DUTY OF GOOD FAITH


A violation of the duty of good faith may be found where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation; second, where the fiduciary acts with the intent to violate applicable law; and third, where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his or her duties.

**Authority**:    ABA Model Jury Instructions, Business Torts Litigation (Fourth Edition 2005); *In re Tousa, Inc.,* 437 B.R. 447, 460 (Bankr. S.D. Fla. 2010); *Gearhart Indus. v. Smith Int'l, Inc.,* 741 F.2d 707 (5th Cir. 1984); *Horwitz v. Southwest Forest Indus., Inc.,* 604 F. Supp. 1130 (D. Nev. 1985); *Jones v. H.F. Ahmanson & Co.,* 460 P.2d 464 (Cal. 1969); *FDIC v. Schuchmann,* 235 F.3d 1217, 1223 (10th Cir. 2000); *Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co.,* 197 F.3d 742, 749 (5th Cir. 1999); *GAB Bus. Servs. v. Lindsey & Newsom Claim Servs.,* 83 Cal. App. 4th 409 (Cal. Ct. App. 2000); 3 William M. Fletcher, Cyclopedia of the Law of Private Corporations § 838 (rev. perm. ed. 1986).

Defendants' objection: Object to Instruction.

Plaintiff's Objection to Defendant's Instruction: First, the instruction tells the jury to stop analyzing claims, simply based upon the lack of a fraudulent transfer.

In addition, the defendants' instruction ignores the applicability of interested transactions and entire fairness analysis.

Most importantly, the instruction completely ignores the effect of insolvency on the exercise of an officers and directors fiduciary duties.  Under the Defendants' construction of the

rule, there is no way that the Defednants could ever be liable for breach of fiduciary duty, unless they ignored Renco Group's interest.

Moreover, the instruction is littered with argument.  It repeatedly suggests that Mr. Buchwald has the burden of proof, in an apparent attempt subtly sway the jury.

Also, the instruction includes elements of the business judgment rule, and then later the defendants' provide a separate instruction for the business judgment rule.  This attempts to place an extra hurdle in front of the Trustee.  By this the defendants misstate what actually constitutes a breach of the duty of care, or loyalty.

## PART C – DEFENDANTS' INSTRUCTIONS

### Breach of Fiduciary Duty

Mr. Buchwald contends that defendants Ira Rennert, Roger Fay, Dennis Sadlowski, Justin D'Atri and Michael Ryan breached their fiduciary duties to Renco Metals and that defendants Ira Rennert, Michael Legge, Ron Thayer, Todd Ogaard, Howard Kaplan and Lee Brown breached their fiduciary duties to Magcorp when the disputed transfers occurred.  Mr. Buchwald has the burden of proving those claims as to each of the defendants.  If you determine that Mr. Buchwald has failed to prove each of his fraudulent conveyance claims, then you should not consider these claims.  If, however, you determine that Mr. Buchwald met his burden of establishing any of his fraudulent conveyance claims, you must then go on to decide whether Mr. Buchwald has proven that any of those defendants breached their fiduciary duties to Renco Metals or Magcorp with respect to the transfers relating to those claims.

As you may recall, there are two separate companies at issue for this claim: Renco Metals and Magcorp.  The first element of a breach of fiduciary duty claim that Mr. Buchwald must prove is whether any of Messrs. Rennert, Fay, Sadlowski or Ryan owed a fiduciary duty to Renco Metals, and as to Magcorp, whether any of Messrs. Rennert, Legge, Thayer, Ogaard, Brown or Kaplan owed a fiduciary duty to that company.

A fiduciary relationship exists between two parties when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relationship.  Officers and directors of a corporation stand in a fiduciary relationship to the corporation and have a duty of care to the corporation.  The duty of care is satisfied when a director or officer exercises a good faith effort to be informed and to exercise appropriate judgment.  Subject to the business judgment rule, which I will discuss in a moment, acting in good faith means acting honestly, with a sincere intention to deal fairly with others.  In addition

to a duty of care, directors and officers owe the corporation loyalty and may not act in any manner contrary to the interests of the corporation.  However, in a parent and wholly-owned subsidiary context, as is the case here between Renco Metals as the parent and Magcorp as the subsidiary, the directors and officers of the subsidiary Magcorp are obligated only to manage the affairs of the Magcorp in the best interests of the parent shareholder, Renco Metals, and not anyone else.  If Mr. Buchwald proves that Magcorp and Renco Metals were insolvent at the time of the transfers, were made insolvent as a result of the transfers or lacked adequate capital, then the directors and officers owe a duty of care and loyalty to the creditors and the shareholders.

In connection with evaluating the individuals' fiduciary duties, the board and officers of a subsidiary are obligated to manage the subsidiary with loyalty to the parent corporation, the company's sole shareholder.  The subsidiary's board and officers do not owe a duty to exercise their independent, disinterested business judgment separate from the interests of the parent corporation.  In absence of any indication that they would be causing the subsidiary to violate legal obligations owed to others, the subsidiary's board and officers are free to take action in aid of its parent's business strategy, even if the subsidiary took actions that made the subsidiary less valuable as an entity.  A subsidiary's board and officers are permitted to act to benefit the subsidiary's parent, not simply the subsidiary itself, for the obvious reason that a wholly-owned subsidiaries is formed by the parent corporation to benefit the parents, and not for the subsidiary's own sake.

I will pause here a moment to emphasize that you must consider the proof as to each defendant individually, and not group them as if they were all just one unit.  For example, you might find that one individual defendant did owe a duty but conclude that another did not, and so on.

If you decide that the plaintiff proved that any of the individuals whom you are considering owed a fiduciary duty to Renco Metals or Magcorp, whichever applies to that individual, you must then consider whether the plaintiff proved that that individual breached his duty. That is, did the individual defendant you are considering act in a manner that was contrary to his duty of loyalty to the company to whom he owed those duties?

In this regard, it is important to note that only directors vote to approve a company's payment of a dividend. The company's officers do not have the right to vote with respect to such an action.

Of course, directors of companies often represent shareholders or ownership interests, and there is nothing wrong with a director of a company voting to issue a dividend when the director or the shareholding entity that he represents will benefit financially from the dividend transfer. Indeed, the right of shareholders to take a dividend under the appropriate circumstances is an incident of ownership of a company. Thus, you may not infer that, just because a director or an officer gained personally by voting to issue a dividend, his conduct was necessarily a breach of the fiduciary duty owed to the company, or that taking the dividend is necessarily against the best interest of the company. Instead, the question for you to consider is whether the timing and/or size of the dividend issuance was such that it was unreasonable and contrary to the interests of the company and its shareholders at the time that the dividends were authorized.

If you decide that the individual under consideration breached his duty to the corporation, then you must decide whether that individual's actions were a substantial factor in the corporation's making the transfer. This means that Mr. Buchwald must prove that there was a reasonable connection between the individual's personal acts or omissions and the transfer that is at issue.

In the particular facts of this case, in order to find that any of Messrs. Rennert, Legge, Thayer, Ogaard, Kaplan or Brown are liable for breach of fiduciary duty to Magcorp or that any of Messrs. Fay, Ryan, Sadlowski, D'Atri or Rennert are liable for breach of fiduciary duty to Renco Metals, Mr. Buchwald must prove as to each of them that that defendant did not act in good faith and instead acted in a manner that he believed to be against the company's best interests and that the individual's conduct was directly responsible for or enabled Magcorp or Renco Metals to make the transfers that Mr. Buchwald contends were fraudulent transfers.

In sum, if you determine that Mr. Buchwald has proven that: (1) an individual breached his fiduciary duty, (2) that that breach was a substantial factor in the completion of the transfers, and (3) he did not act in good faith, then you must find that the individual you are considering is liable for a breach of fiduciary duty. If you determine that Mr. Buchwald has failed to prove any one of those elements, then you must find that the individual is not liable for breach of fiduciary duty and that Mr. Buchwald's claim fails as to that individual.

Authorities

2 Committee on Pattern Jury Instructions, New York Pattern Jury Instructions PJI 3:59 (2d ed. 2013).
Greenberg v. Joffee, 34 A.D.2d 426, 824 N.Y.S.2d 355 (2d Dep't 2006).
Anadarko Petroleum Corp. v. Panhandle Eastern Corp., 545 A.2d 1171 (Del. 1988).
In re Walt Disney Co. Derivative Litigation, 907 A.2d 693 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006).
Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163 (Del. Ch. 2002).
Trenwick American Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 195 (Del. Ch. 2006), aff'd sub nom. Trenwick American Litigation Trust v. Billett, 931 A.2d 438 (Del. 2007).
Leung v. Schuler, No. 17089, 2000 WL 264328 (Del. Ch. Feb. 29, 2000).
Christensen & Jensen, P.C. v. Barrett & Daines, 194 P.3d 931 (Utah 2008).
Giles v. Mineral Resources. International, Inc., No. 20130694-CA, 2014 WL 5487423 (Utah Ct. App. Oct. 30, 2014).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Plaintiff's instruction fails to instruct the jury on the proper considerations for the breach of fiduciary duty claims.   First, although the premise underlying these claims is that the Defendants caused or permitted fraudulent conveyances, see Amended Complaint ¶¶ 541, 595; see also Buchwald v. The Renco Group, Inc., 399 B.R. 722, 758 n.122 (Bankr. S.D.N.Y. 2009), the instruction fails to make clear to the jury that the breach of fiduciary duty should not be considered if Mr. Buchwald fails to prove the fraudulent conveyance claims because without a fraudulent conveyance, no duty could have been breached.   Further, the instruction ignores well-settled Delaware law that officers and directors of a solvent wholly-owned subsidiary company only owe fiduciary duties to the parent company.   See e.g., Quadrant Structured Products Co. v. Vertin, 102 A. 3d 155, 184 (Del. Ch. 2014) (citing Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A. 2d 1171, 1174 (Del. 1988)); Trenwick America Litigation Trust v. Ernst & Young LLP, 906 A.2d 168 (Del. Ch. 2006) aff'd 931 A.2d 438 (Del. 2007) ("Delaware law does not embrace the concept that a director of a wholly-owned subsidiary owes a duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another.").   Alternatively, Defendants' properly lay out the fiduciary duty standard.

The Plaintiff's duty of care instruction incorrectly states the relevant standard.   Plaintiff's instruction ignores well-settled Delaware law that officers and directors of a solvent wholly-owned subsidiary company only owe fiduciary duties to the parent company.   See e.g., Quadrant Structured Products Co. v. Vertin, 102 A. 3d 155, 184 (Del. Ch. 2014) (citing Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A. 2d 1171, 1174 (Del. 1988)); Trenwick America Litigation Trust v. Ernst & Young LLP, 906 A.2d 168 (Del. Ch. 2006) aff'd 931 A.2d 438 (Del.

2007) ("Delaware law does not embrace the concept that a director of a wholly-owned subsidiary owes a duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another."). Alternatively, Defendants' instruction correctly states this standard and accurately explains satisfaction of the duty of care under Delaware law.

The Plaintiff's instruction duty of loyalty instruction incorrectly states the relevant standard. In fact, Plaintiff's instruction ignores well-settled Delaware law that officers and directors of a solvent wholly-owned subsidiary company only owe fiduciary duties to the parent company. See e.g., Quadrant Structured Products Co. v. Vertin, 102 A. 3d 155, 184 (Del. Ch. 2014) (citing Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A. 2d 1171, 1174 (Del. 1988)). An officer or director of a wholly-owned subsidiary owes no duty to second guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another. Trenwick America Litigation Trust v. Ernst & Young LLP, 906 A.2d 168 (Del. Ch. 2006) aff'd 931 A.2d 438 (Del. 2007). Alternatively, Defendants' instruction for breach of fiduciary duty accurately puts forth this standard.

Plaintiff's instruction on the duty of good faith fails to accurately state Delaware law because it ignores Delaware precedent that states a director or officer's good faith is presumed when making business judgments. See In re Walt Disney Company Derivative Litigation, 907 A.2d 693, 753 (Del. Ch. 2005). Defendants' breach if fiduciary duty instruction accurately describes good faith and its applicability to Plaintiff's claims.

## BREACH OF FIDUCIARY DUTY – BUSINESS JUDGMENT RULE

## PART A

## PART B – PLAINTIFF'S INSTRUCTION

Plaintiff's Objection to Defendants' Instruction:

The instruction overstates the breadth of the business judgment rule. The rule is merely a presumption that an officer or director reasonably informed himself of the facts, and actually exercised his business judgment for the benefit of the residual risk bearers. It merely protects against the effect decisions, not the process of making a decision. Moreover, the business judgment rule does not protect against a breach of the duty of loyalty. Also, when the business judgment rule is rebutted, as in where an officer or director stands on both sides of a transaction, it becomes the burden of that officer or defendant to prove the entire fairness of the transaction.

62508288_1    145

## PART C – DEFENDANTS' INSTRUCTION

### The Business Judgment Rule

The individual defendants assert as an affirmative defense to Mr. Buchwald's claims for breach of fiduciary duty that the decision to make the disputed transfers is protected by the business judgment rule. If you determine that Mr. Buchwald has failed to prove that the individual defendants breached a fiduciary duty to Renco Metals or Magcorp, then you do not have to consider this additional defense.  But if you do conclude there was a breach of fiduciary duty by a defendant, then, as to that defendant, you need to consider the affirmative defense that I will call the business judgment rule.  Unlike the instructions that I previously gave you about the burden being squarely on Mr. Buchwald to prove each element of his claims by a preponderance of the evidence, for this affirmative defense, the defendant has the burden of proving that the business judgment rule applies to him by a preponderance of the evidence.

The business judgment rule prevents courts from substituting their business decisions for the decisions that directors or officers of a corporation make in good faith and honest judgment. In other words, the role of exercising business judgment belongs to a company's directors and officers and not to courts.  That is because courts are ill-equipped and infrequently called on to evaluate business judgments, and there is no available objective standard by which the correctness of every corporate decision may be measured.

Exercising business judgment requires directors and officers to handle issues of policy, management, expediency of contracts or action, use of corporate funds and overall business decisions in good faith, with reasonable information, skill and prudence.   As I previously instructed you, acting in good faith means acting honestly, with a sincere intention to deal fairly with others.

Consequently, the responsibility for business judgments must rest with corporate directors and officers whose capabilities and experiences make them best qualified for that responsibility. The reasonable exercise of their powers for the best interests of the corporation may not be questioned, even if the results later show that what they did was unwise.

If you determine that an individual defendant has proven that he exercised his business judgment in good faith in connection with the disputed transfers, then you must find that the individual's decision is protected by the business judgment rule and that the individual is not liable for breach of fiduciary duty.

Authorities

2 Committee on Pattern Jury Instructions, New York Pattern Jury Instructions PJI 3:59 (2d ed. 2013).
Auerbach v. Bennett, 47 N.Y.2d 619 (1979).
2 Committee on Pattern Jury Instructions, New York Pattern Jury Instructions PJI 3:59 (2d ed. 2013) (citing Levandusky v. One Fifth Avenue Apartment Corp., 75 N.Y.2d 530, 554 N.Y.S.2d 807 (1990)).
Utah Code Ann. § 16-10a-840.
Spiegel v. Buntrock, 571 A.2d 767 (Del. 1990).
Trenwick American Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del. Ch. 2006), aff'd sub nom. Trenwick American Litigation Trust v. Billett, 931 A.2d 438 (Del. 2007).
In re Walt Disney Co. Derivative Litigation, 907 A.2d 693 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006).
Summit Range & Livestock Co. v. Rees, 265 P.2d 381 (Utah 1953).
C & Y Corp. v. General Biometrics, Inc., 896 P.2d 47 (Utah Ct. App. 1995).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Defendants' instruction accurately states the business judgment rule. Under Delaware law, the business judgment rule is a presumption that the officers and directors of a corporation acted on an informed basis and in the honest belief that the action taken was in the best interests of the company. See In re Walt Disney Company Derivative Litigation, 907 A.2d 693, 755 (Del. Ch. 2005).

## BREACH OF FIDUCIARY DUTY – INTERESTED TRANSACTIONS AND ENTIRE FAIRNESS

## PART A

**PART B – PLAINTIFF'S INSTRUCTION**

**OFFICER OR DIRECTOR INTERESTED TRANSACTION**

An officer or director is interested in a transaction if he either: (1) stands on both sides of the transaction; or (2) expects to derive a personal financial benefit from the transaction.

Authority: *Asarco LLC v. Americas Mining Corp.,* 396 BR 278, 326 (S.D. Tex. 2008).

Defendants Response: Object to this instruction entirely.

**ENTIRE FAIRNESS**

The Plaintiff has alleged claims for breach of fiduciary duty. Each defendant that is the subject of a claim for breach of fiduciary duty with respect to a conveyance that the Plaintiff seeks to recover, and who was interested in the conveyance as defined below, has the burden of establishing that the conveyance was entirely fair to the entity (MagCorp or Renco Metals) of which the defendant was an officer or director, and to its principal beneficiaries.

The entire fairness standard has two parts: fair dealing and fair price.

Fair dealing is concerned with how a conveyance was initiated, structured, negotiated, disclosed, and how the approval of the conveyance was obtained.

Fair price is concerned with the economic and financial considerations of the conveyance, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.

Authority:  *Asarco LLC v. Americas Mining Corp.*, 396 B.R. 278, 325-329 n. 149 (SD Tex. 2008); *Americas Mining Corp. v. Theriault*, 51 A. 3d 1213, 1239-1240 (Del. 2012); *In re Tronox, Inc.*, 450 B.R. 432, 439 (Bankr. S.D.N.Y. 2011).

Defendants Response:  Object to this instruction in its entirety.

**PART C – DEFENDANTS' INSTRUCTION**

**NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION**

Plaintiff's instruction on entire fairness and interested transactions should be wholly omitted because the entire fairness standard is inapplicable to Plaintiff's claims.  First, if MagCorp and Renco are determined to be solvent, entire fairness is irrelevant because directors and officers of wholly-owned subsidiary companies, like MagCorp and Renco, are obligated only to manage the affairs of the subsidiary in the best interests of the parent company.  See Quadrant Structured Products Co. v. Vertin, 102 A. 3d 155, 184 (Del. Ch. 2014) (citing Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A. 2d 1171, 1174 (Del. 1988)).  In that circumstance, the entire fairness standard is not implicated.  A finding of insolvency does not change that but instead renders the transaction void.  A finding of insolvency does not give rise to a need to consider the fairness of the transaction where it did not already exist.

62508288_1    150

# UNJUST ENRICHMENT

## PART A

## PART B – PLAINTIFF'S INSTRUCTION

## UNJUST ENRICHMENT

The Plaintiff alleges that the defendant Ira Rennert has been unjustly enriched by the declaration of dividends and by the redemption of Renco Metals preferred shares, which depleted the funds available to MagCorp and Renco Metals that could have been used to improve MagCorp's operations or to pay creditors, and which personally benefited Rennert by enriching The Renco Group and by the use of the funds to purchase land and to construct a house for Rennert's personal use.

The Trustee must prove by a preponderance of the evidence that

    (1) Rennert was enriched,

    (2) at MagCorp's or Renco Metals' expense, and

    (3) that it is against equity and good conscience to permit defendant Ira Rennert to retain what is sought to be recovered.

The Plaintiff's claim for unjust enrichment does not require proof that the enriched party committed an unlawful act. However, in determining whether equity and good conscience permit the retention of the money or benefit, you may consider the knowledge and conduct of the enriched party.

Authority: *Georgia Malone & Co., Inc. v. Ralph Rieder*, 86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 497 (App. 1st Dept. 2011); *Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC*, 114 A.D.3d 888, 981 N.Y.S.2d 135, 137 (2014); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine*, 221 A.D.2d 284, 287, 634 N.Y.S.2d 469, 471 (1995)

Defendants' Objection: Use Defendants' instruction.

<u>Plaintiff's Objection to Defendants' Instruction</u>: It is the law of New York that an unlawful act is not required to prove unjust enrichment. The law also makes no requirement that something be conveyed directly to Mr. Rennert, only that there be some connection between him and Metals and MagCorp. The instruction argues that the transfer to Renco Group, or through them to Blue Turtles is not sufficient, although any benefit is enough. There is no requirement that Rennert receive cash, or have actual possession. Though Rennert was the beneficiary of the funds in Renco Group, and exercised control and dominion over them although they were not titled, at that moment in his name.

## PART C – DEFENDANTS' INSTRUCTION

### Unjust Enrichment

Mr. Buchwald claims that defendants Ira Rennert and the Rennert family trusts were unjustly enriched at Renco Metals' expense, and Mr. Buchwald has the burden of proving that claim. If you determine that Mr. Buchwald has failed to prove his fraudulent conveyance claims against Renco, then you should not consider this claim. If, however, you determine that Mr. Buchwald met his burden of proving the fraudulent conveyance claims, you must then go on to decide whether Mr. Buchwald has proven that Mr. Rennert, and/or the Rennert family trusts, were unjustly enriched.

In order to prove his claim for unjust enrichment against Mr. Rennert and the Rennert family trusts, Mr. Buchwald must prove that these two defendants were enriched at Renco Metals' expense and that it is against equity and good conscience to permit them to retain the amount the plaintiff seeks to recover. In other words, Mr. Buchwald must prove that Mr. Rennert or the Rennert family trusts received something directly from Renco Metals and that it would be unjust for them to keep what they had received. In those circumstances, the law requires the unjustly enriched person to repay, return to or compensate the other person.

The Trustee contends that Mr. Rennert was unjustly enriched by being able to occupy a home in Sagoponack that the Trustee claims was constructed with the proceeds of the transfer from Renco Metals.

To support an unjust enrichment claim, Mr. Buchwald must prove that a specific and direct benefit moved from Renco Metals to Mr. Rennert and the Rennert family trusts as a result of a fraudulent conveyance, that is, a transfer at a time when Magcorp and Renco Metals were insolvent or resulted in insolvency due to the transfer. It is not sufficient for Mr. Rennert and

154

the Rennert family trusts to have received an indirect benefit from another entity that received the transfer, such as The Renco Group. Inferences or speculation that they had access to or the benefit of money, property or a benefit received by another is insufficient for an unjust enrichment claim.

Instead, to prove that the enrichment is direct, Mr. Buchwald must prove that the alleged recipient had actual possession of the money that Renco Metals received from a Magcorp when Magcorp was insolvent and transferred to The Renco Group. It is not enough for Mr. Buchwald to prove that Mr. Rennert or the Rennert family trusts had the benefit or use of property or funds transferred to The Renco Group merely by virtue of their relationship with The Renco Group.

If you determine that Mr. Buchwald has proven that there was a fraudulent conveyance, that Mr. Rennert and the Rennert family trusts obtained money, property or a benefit directly from Renco Metals flowing from the fraudulent conveyance and that, in fairness and good conscience, they should not retain that benefit, then you must determine the value of that direct benefit that was given to Mr. Rennert by being able to occupy the home. Alternatively, if you find that Mr. Buchwald has failed to prove any one of these elements, then you must find against Mr. Buchwald on his claim for unjust enrichment.

Authorities

2 Committee on Pattern Jury Instructions, New York Pattern Jury Instructions PJI 4:2 (2d ed. 2013).
Georgia Malone & Co. v. Rieder, 19 N.Y.2d 511, 950 N.Y.S.2d 333 (2012).
Zell & Ettinger v. Berglas, 261 A.D.2d 613, 690 N.Y.S.2d 721 (2d Dep't 1999).
Marini v. Adamo, 12 F. Supp. 3d 549 (E.D.N.Y. 2014).
Brenner v. Brenner, 821 F. Supp. 2d 533 (E.D.N.Y. 2011).
M&J Savitt, Inc. v. Savitt, No. 08 Civ. 8535(DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) (citing Kaye v. Grossman, 202 F.3d 611 (2d Cir. 2000)).
In re Hydrogen, LLC, 431 B.R. 337 (Bankr. S.D.N.Y. 2010).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Plaintiff's instruction incorrectly ignores clear and uncontroverted case law that states unjust enrichment requires a defendant be directly enriched. See Marini v. Adamo, 12 F. Supp. 549, 553 (E.D.N.Y. 2014) ("[O]n a theory of unjust enrichment, there must first be enrichment.") (quoting Indyk v. Habib Bank Ltd., 694 F.2d 54, 57 (2d Cir.1982)); see also Jaffe v. Capital One Bank, No. 09 Civ. 4106 (PEG), 2010 WL 691639, at *8 (S.D.N.Y. Mar. 1, 2010) (noting "[t]he absence of an allegation that Defendants tangibly benefitted at Jaffe's expense").    As appropriately stated in Defendants' unjust enrichment instruction, courts have held enrichment to constitute the possession of funds or obtaining of a benefit. Zell & Ettinger v. Berglas, 261 A.D.2d 613, 613 (N.Y. 2d Dep't 1999) (dismissing unjust enrichment claim on summary judgment as the defendant "established that he did not exercise dominion or control over the misappropriated funds, and there was no showing that he obtained any benefit that in equity and good conscience he should not have obtained").    Further, the jury should be instructed that "[i]t is not sufficient for defendant to receive some indirect benefit -- the benefit received must be 'specific and direct' to support an unjust enrichment claim." M+J Savitt, Inc. v. Savitt, No. 08 Civ. 8535(DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) (citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) ("While this testimony may suggest that [defendant] received some indirect benefit from the loan, however, it does not establish the specific and direct benefit necessary to support an unjust enrichment claim.")); Brenner v. Brenner, 821 F. Supp. 2d 533, 540-41 (E.D.N.Y. 2011); see also Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 518 (2012).

## UNLAWFUL PAYMENT OF DIVIDENDS AND STOCK REDEMPTION

## PART A

The Trustee has alleged that Rennert and Renco Group are liable for declaring or for receiving

dividends in violation of Delaware law.

## PART B – PLAINTIFF'S INSTRUCTION

## UNLAWFUL DIVIDEND – LIABILITY OF DIRECTORS

The Trustee has alleged that Rennert and Renco Group are liable for declaring or for receiving dividends in violation of Delaware law. A director is liable for the full amount of an unlawful dividend, together with interest from the time of such unlawful dividend, if the plaintiff proves by a preponderance of the evidence:

(1)     The director

(2)     Willfully or negligently

(3)     Declared and paid a dividend on shares of capital stock, and

(4)     One of the following exists

a.     capital representing shares of preferred stock is impaired; or

b.     the dividend is not out of surplus, and in the event there is no surplus it is not out of net profits to the current or preceding year.

Surplus is fair value of the assets, less liabilities and the amount listed as capital.  Capital cannot be less than the par value of the issued shares.  Thus, surplus is similar to solvency or insolvency, except the amount of capital must also be weighed against the fair value of the assets.

Directors are not bound by the values reflected on the balance sheet.

Authority:  8 Del. C. §§ 154, 244, 170, 173, 174 (2014); *In re Musicland Holding Corp., et al.*, 398 B.R. 761, 783 (S.D.N.Y. 2008); *In re Sheffield Steel Corp.*, 320 B.R. 405, 413 (N.D. Okla. 2004); *EBS Litigation v. Barclays Global Investors*, 304 F. 3d 302, 305 (3rd Cir. 2002); *Pereira v. Farace*, 413 F. 3d 330, 343 (2d Cir. 2005).

Defendants' Objection: Object to Instruction.

## LIABILITY OF SHAREHOLDERS
## FOR UNLAWFUL DIVIDENDS

The Trustee also alleges that Renco Group is liable for the unlawful dividends under Delaware law.

The Trustee succeeds on this claim for unlawful dividends if you find by a preponderance of the evidence that:

1)      Rennert declared an unlawful dividend, and

2)      Renco Group received the dividend, and

3)      Renco Group had knowledge of facts indicating that such dividend was unlawful.

Authority: Del. Code Ann. tit. 8, § 174 (West).

Defendants' Objection: Object to Instruction.

## DIRECTOR'S GOOD FAITH RELIANCE

The following instruction only applies to the statutory unlawful dividend claim, under Delaware law, and does not apply to the other claims.  The defense only applies to the defendant Ira Rennert as a director, and not to The Renco Group as a shareholder in Renco Metals.

A member of a board of directors is not liable for the declaration of an unlawful dividend if the director has a good faith belief and reasonably believed the information, opinions, reports and statements presented to him as to the value and amount of the assets, liabilities and/or net profits of the company, or any other facts pertinent to the existence and amount of surplus or other funds from which dividends might properly be declared and paid.

To prove this affirmative defense for the payment of an unlawful dividend, Rennert must prove by a preponderance of the evidence that the officer or expert actually determined the

existence of a surplus, that it was reasonable to rely on their determination, and that Rennert actually did rely on it.

Authority:  8 Del. C § 172 (2014).; In re Sheffield Steel Corp., 320 B.R. 423, 451-452 (Bankr. N.D. Okla. 2004).

Defendnats' Objection: Object to Instruction.

## DIVIDENDS; PAYMENT

Directors of Delaware corporations may declare and pay dividends only out of its surplus or out of net profits for the fiscal year in which the dividend is declared. The capital of the company must not reduced or impaired by the payment of any return or income to the stockholders on account of the money put into the company by them, but such income or return can only legally be paid from current or accumulated profits.

Authority:  8 Del. C § 170 (2014); Penington v. Commonwealth Hotel Constr. Corp., 17 Del. Ch. 394, 155a 514 (1931).

Defendants' Objection: Object to Instruction.

## UNLAWFUL STOCK REDEMPTION - CORPORATION'S POWERS RESPECTING OWNERSHIP OF ITS STOCK

The Trustee also alleges that Rennert is liable for redeeming stock when the capital of the corporation is impaired.

Under Delaware law, no corporation shall purchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such redemption would cause any impairment of the capital of the corporation. A redemption impairs capital if the funds used in the repurchase exceed the amount of the corporation's surplus, that is the excess of net assets (fair value of assets minus liabilities) over the par value of the corporation's issued stock.

62508288_1          160

Authority:  8 Del. C. § 160 (2014); Klang v. Smith's Food & Drug Centers, 702 A.2d 150 (Del. 1997).

Defendants' Objection: Object to Instruction.

Plaintiff's Objection to Defendants' Instruction:  The defendants' instruction is overly broad, and confusing.  First, the instruction improperly suggests that somehow surplus can be manipulated to reflect even higher values than any form of solvency opinion could.  While the courts have provided directors with latitude to revalue the assets of the corporation, that was meant to free the directors from being bound only to the balance sheet.  The instruction suggests that the ability to revalue the assets provides the director with almost unfettered discretion.  In addition, the instruction suggests that the Houlihan solvency opinion controls the outcome of this case.

Also, the good faith reliance instruction implies that every single claim against every defendant fails if Rennert relied in good faith upon any information, record, statement, or report in declaring the dividends.  This defense is actually specific to this statutory claim alone.  The defendants instruction would mislead the jury into believing that fraudulent conveyances fail if Rennert relied in good faith on corporate records and experts.  But fraudulent conveyances are a form of strict liability.

The good faith reliance instruction also fails to accurately state the elements of the claim. The mere fact that an expert report was issued, does not insulate the director.  The instruction also fails to state that even if Rennert may be insulated, Renco Group could still be liable for an unlawful dividend.

## PART C – DEFENDANTS' INSTRUCTION

### Unlawful Payment of Dividends – Delaware

Mr. Buchwald contends that, as the director of Renco Metals, defendant Ira Rennert caused Renco Metals to pay dividends and to redeem its own shares from The Renco Group for cash in violation of Delaware corporate law and that The Renco Group was the recipient of these dividends. Mr. Buchwald bears the burden of proof as to these claims.

Under the law, a company's board of directors may pay dividends on the company's stock or redeem the company's stock for cash either 1) out of the company's surplus or 2) if there is no surplus, out of its net profits. Surplus is the excess of the net assets of the corporation over the amount determined to be capital. Net assets mean the amount by which total assets exceed total liabilities. Although similar to solvency, the surplus under the law is more flexible.

A company's directors are given reasonable latitude in deciding what the value of the company's net assets is and in calculating surplus. Surplus is not determined by looking at a company's balance sheet, as a balance sheet does not reflect the present fair market value of the company's assets. Rather, a company's directors are entitled to revalue the assets and liabilities to conclude whether a surplus exists. There is no rigid rule by which directors must abide when valuing assets and no particular methodology is required. Instead, directors are to evaluate assets on the basis of acceptable data and by standards that they are entitled to believe reasonably reflect present values.

Under the law, directors are fully protected from liability in declaring and paying dividends when they rely in good faith on the company's records and on information, opinions, reports or statements regarding the value of net assets and the amount of surplus that are provided by any officers, employees or other parties whom the directors select with reasonable care. The determination by a board of the company's net assets is entitled to deference and may

not be disregarded unless the board used unreliable methods and data to evaluate the company's net assets. In the absence of bad faith or fraud on the part of a board, you may not substitute the wisdom of another party for the judgment of the company's directors regarding whether there was a surplus at the time of the transfers. Indeed, even if you determine that Renco Metals was insolvent in connection with Mr. Buchwald's fraudulent conveyance claims, a dividend may still be lawful under the Delaware statute if the board relied on acceptable data and used standards that it reasonably believed reflected Renco Metals' then present values.

If you determine that Mr. Buchwald has proven that there was no surplus and that, even if it appears that there was one, Mr. Rennert used unreliable methods or acted in bad faith or fraudulently when determining that there was a surplus, then you must find that Mr. Rennert is liable for the amount of the particular transfer. Further, if you determine that the transfer was received by The Renco Group and that it had knowledge of facts indicating that such dividend was unlawful, then you must find that The Renco Group is also liable for the particular amount of that transfer. However, if you determine that Mr. Buchwald has failed to prove both that there was no surplus and that Mr. Rennert used unreliable methods or acted in bad faith or fraudulently, then you must find that Mr. Rennert and The Renco Group are not liable for repayment of the transfers.

<u>Authorities</u>

DGCL §§ 170, 172 & 174.
Klang v. Smith's Food & Drug Centers, Inc., 702 A.2d 150 (Del. 1997).
Morris v. Standard Gas and Electric Co., 31 Del. Ch. 20 (Del. Ch. 1949).
In re Color Tile Inc., Nos. 96-76 (HSB), 96-80 (HSB), Civ. A 98-358-SLR, A-96-90, 96-77
    (HSB), 96-78 (HSB), 96-79 (HSB), 2000 WL 152129 (D. Del. Feb. 9, 2000).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Plaintiff's instruction is misleading and improper because it presents elements that have no bearing and relevance to this action.  Alternatively, Defendants' instruction accurately states when the directors would be liable for an unlawful dividend and the law that should be applied.

Defendants object to Plaintiffs' instruction because it fails to make reference to good faith defense.  Defendants' instruction on unlawful payment of dividends correctly states Delaware law.

Defendants' object to Plaintiff's good faith reliance instruction because it fails to correctly state that the good faith defense also applies to The Renco Group.  Defendants' unlawful payment of dividend's instruction correctly states Delaware law.

Plaintiff's instruction fails to instruct the jury on the proper analysis to apply to determine whether dividends are appropriate.  Alternatively, Defendants' instruction appropriately explains that the plaintiff "first must prove that the corporation depleted its surplus in paying the dividend." In re Color Tile, Inc., Nos. 96–76 (HSB), 96–80 (HSB), Civ.A. 98–358–SLR, A–98–90, 96–77 (HSB), 96–78 (HSB), 96–79 (HSB), 2000 WL 152129, at *3 (D. Del. Feb. 9, 2000). Defendants' instruction appropriately instructs the jury that the law provides that directors are given reasonable latitude in deciding what value of the company's net assets is and in calculating surplus.  See Klang v. Smith's Food & Drug Centers, Inc., 702 A.2d 150, 154 (Del. 1997) ("Allowing corporations to revalue assets and liabilities to reflect current realities complies with the statute and serves well the policies behind this statute.")

Plaintiff's instruction fails to instruct the jury on the proper analysis to determine whether stock redemptions are appropriate.  Defendants' instruction instructs the jury that the law provides that directors are given reasonable latitude in deciding what value of the company's net assets is and in calculating surplus.  See Klang v. Smith's Food & Drug Centers, Inc., 702 A.2d 150, 152 (Del. 1997) ("Directors have reasonable latitude to depart from the balance sheet to calculate surplus, so long as they evaluate assets and liabilities in good faith, on the basis of acceptable data, by methods that they reasonably believe reflect present values, and arrive at a determination of the surplus that is not so far off the mark as to constitute actual or constructive fraud.").

**AIDING AND ABETTING FRAUDULENT TRANSFERS**

**PART A**

To prove an aiding and abetting fraudulent conveyance claim, Mr. Buchwald must prove that the fraudulent conveyance occurred and that Mr. Rennert knowingly induced or participated in the transfer.

The elements of a claim for aiding and abetting a fraudulent conveyance are

(1) the existence of a fraudulent conveyance caused by the primary wrongdoer;

(2) knowledge of the fraudulent conveyance by the defendant who is charged with aiding and abetting, and

(3) proof that the defendant who is charged with aiding and abetting the fraudulent conveyance substantially assisted the primary wrongdoer.

Second, the person must provide substantial assistance to the transfer. One provides substantial assistance if he affirmatively assists, helps conceal or fails to act when required to do so, enabling the fraudulent conveyance to occur. ~~In contrast,~~ inaction amounts to substantial assistance only if the person who fails to act owes a duty to act

## PART B – PLAINTIFF'S INSTRUCTION

## AIDING AND ABETTING FRAUDULENT CONVEYANCE

The elements of a claim for aiding and abetting a fraudulent conveyance are

(1) the existence of a fraudulent conveyance caused by the primary wrongdoer;

(2) knowledge of the fraudulent conveyance by the defendant who is charged with aiding and abetting, and

(3) proof that the defendant who is charged with aiding and abetting the fraudulent conveyance substantially assisted the primary wrongdoer.

Authority:  *Chem Tex, LLC, v. St. Anthony Enterprises, Inc.*, 490 F. Supp. 536, 545-46, 548 (S.D.N.Y. 2007); *Lerner v. Fleet Bank, N.A.*, 549 F.3d 273, 292 (2d Cir. 2006).

Defendants' Objection: Object to instruction.

## KNOWLEDGE/CONSCIOUS AVOIDANCE

If it appears from the evidence in the case a person had information that would lead a reasonably prudent person to make inquiry through which that person would surely learn the facts, then this person may be found to have had actual knowledge of those facts, the same as if the person had made such inquiry and had actually learned such facts. The law charges a person with notice and knowledge of whatever that person would have learned on making such inquiry as it would have been reasonable to expect the person to make under the circumstances. Knowledge may also be established by circumstantial evidence.

Authority:  O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) Based on 3 Fed. Jury Prac. & Instr. § 104:24 (Modified); *Kolbeck v. LIT Am. Inc.,* 939 F. Supp. 240, 246 (S.D.N.Y. 1996); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,* 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007); *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 205); *Russell/Packard Development, Inc., v. Carson, et al.*, 78 P.3d 616, 626-27 (UT App. 2003); *Mower v. Simpson*, 278 P.3d 1076, 1087-88; *Farm Bureau Life Ins. Co. v. American National Insurance*, 505 F.Supp.2d 1178 (D. Utah 2007); *Coroles v. Sabey*, 798 P.3d 974 (Utah App. 2003).

Defendants' Objection: Object to instruction.

## SUBSTANTIAL ASSISTANCE

Substantial assistance occurs when a defendant affirmatively assists or helps conceal a fraud, or fails to act when required to do so, thereby enabling the fraud to occur. Whether the assistance is substantial or not is measured by whether the action of the defendant was a cause of the occurrence that resulted in the plaintiff's harm.

An act or omission is regarded as a cause of an occurrence if it was a substantial factor in bringing about that occurrence, that is, if it had such an effect in producing the occurrence that reasonable people would regard it as a cause of the occurrence. Put another way, a defendant will be considered to have caused an occurrence if that occurrence was a direct or reasonably foreseeable result of its conduct. There may be more than one cause of an occurrence, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Furthermore, where the independent acts or omission or two or more parties cause an occurrence to happen, each of those acts or omissions is regarded as a cause of that occurrence provided that it was a substantial factor in bringing about the occurrence.

Substantial assistance can take many forms. Executing transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation.

Authority:  Based on N.Y. P.J.I. – *Civil 3:20: Intentional Torts – Fraud and Deceit;* N.U. P.J.I. – *Civil 2:70: Proximate Cause – In General;* N.Y. P.J.I. – *Civil 2:71: Proximate Cause – Concurrent Causes; Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.,*, 64 A.D.3d 472, 476 (1st Dep't 2009); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007); *Kaufman v. Cohen*, 307 A.D.2d 113, 126 (1st Dep't 2003); *Kirschner v. Bennett, et al.*, 759 F. Supp. 2d 301, 336 (S.D.N.Y. 2010); *Nathel v. Siegel,*

592 F.2d 452, 470 (S.D.N.Y. 2008). ; *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 205); *Russell/Packard Development, Inc., v. Carson, et al.*, 78 P.3d 616, 626-27 (UT App. 2003); *Mower v. Simpson*, 278 P.3d 1076, 1087-88; *Farm Bureau Life Ins. Co. v. American National Insurance*, 505 F.Supp.2d 1178 (D. Utah 2007); *Coroles v. Sabey*, 798 P.3d 974 (Utah App. 2003).

Defendants' Objection: Object to instruction.

Plaintiff's objection to Defendants' Instruction:  The defendants' instruction misstates the law.

## PART C – DEFENDANTS' INSTRUCTION

### Aiding and Abetting Fraudulent Transfers

Mr. Buchwald contends that defendant Ira Rennert aided and abetted various fraudulent conveyances, and Mr. Buchwald has the burden of proving that claim. If you determine that Mr. Buchwald has failed to prove a transfer is a fraudulent conveyance, then you should not consider this claim for that transfer. On the other hand, if you determine that Mr. Buchwald met his burden of proving the fraudulent conveyance claims, you must decide whether Mr. Buchwald has proven that defendant Ira Rennert aided and abetted the transfers.

To prove an aiding and abetting fraudulent conveyance claim, Mr. Buchwald must prove that the fraudulent conveyance occurred and that Mr. Rennert knowingly induced or participated in the transfer. "Knowing participation" involves two elements.

First, "knowing participation" requires that a person have actual knowledge of the wrongdoing, here, that the disputed transfers would be a fraudulent conveyance. In this case, that means Mr. Buchwald must prove that Ira Rennert knew that Magcorp was insolvent at the time of the transfers or that the transfers would cause it to be insolvent or left with inadequate capital. Aiding and abetting liability requires proof that the person actually knew of a wrongdoing that amounts to bad faith or intentional dishonest conduct, and that the person is complicit in the wrongdoing. It is insufficient if the defendant "should have known" that the transfer amounted to fraudulent conveyance.

Second, the person must provide substantial assistance to the transfer. One provides substantial assistance if he affirmatively assists, helps conceal or fails to act when required to do so, enabling the fraudulent conveyance to occur. In contrast, inaction amounts to substantial assistance only if the person who fails to act owes a duty to act directly to the harmed party.

If you determine that Mr. Buchwald has proven that Mr. Rennert knowingly participated in a transfer at a time when Magcorp was insolvent or would be rendered insolvent, and that he provided "substantial assistance" to that conduct, then you must find that Mr. Rennert is liable for aiding and abetting that fraudulent transfer. If you determine that Mr. Buchwald has failed to prove either that Mr. Rennert knew Magcorp was insolvent or would become insolvent because of the transfer or that his participation amounted to substantial assistance, then you must find that Mr. Rennert is not liable for aiding and abetting a fraudulent conveyance.

Authorities

2 Committee on Pattern Jury Instructions, New York Pattern Jury Instructions PJI 3:59 (2d ed. 2013).

2 Committee on Pattern Jury Instructions, New York Pattern Jury Instructions PJI 3:59 (2d ed. 2013) (citing Sanford/Kissena Owners Corp. v. Daral Properties LLC, 84 A.D.3d 1210, 923 N.Y.S.2d 692 (2d Dep't 2011)).

Kolbeck v. Lit America, International, 939 F. Supp. 240 (S.D.N.Y. 1996).

**BASIS FOR USING DEFENDANTS' INSTRUCTION:**

Plaintiff's instruction fails to present the appropriate standard. As explained in Defendants' instruction, actual knowledge, as opposed to constructive knowledge is required for an aiding and abetting claim. See ChemTex, LLC v. St. Anthony Enterprises Inc., 490 F. Supp. 2d 536, 546-47 (S.D.N.Y. 2007) ("Even assuming, arguendo, that SAE did engage in a fraudulent conveyance, New York law requires that the alleged aider and abettor have 'actual,' as opposed to merely constructive , knowledge of the primary wrong.").

Plaintiff's instruction provides an incomplete and misleading standard. Plaintiff's standard ignores and denies that the law provides that: "[m]ere inaction is considered substantial assistance only where the person who fails to act owes an actual affirmative duty to act directly." See In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (citing Kaufman v. Cohen, 307

A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).  Defendants' instruction should be applied because it accurately states what is and is not substantial assistance.

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

## PART A

Mr. Buchwald contends that the individual defendants also aided and abetted other individuals in breaching their fiduciary duty to Renco Metals or Magcorp.

There are three (3) elements to a claim for aiding and abetting a breach of fiduciary duty.

The first element is a breach by a fiduciary of obligations by another, with the actual knowledge of the defendant who is accused of aiding and abetting the breach of fiduciary duty.

The second element is that the defendant knowingly induced or participated in the breach of fiduciary duty.

The third element is that Plaintiff suffered damage as a result of the breach of fiduciary duty

First, "knowing participation" requires that a person have actual knowledge of the wrongdoing, here, that that the other individual's breached their fiduciary duty.

Second, the person must provide substantial assistance to the primary violator. One provides substantial assistance if he affirmatively assists, helps conceal or fails to act when required to do so, enabling the breach of fiduciary duty to occur. In contrast, inaction amounts to substantial assistance only if the person who fails to act owes a duty to act directly to the harmed party.

If you determine that Mr. Buchwald has proven that there was a breach of fiduciary duty and that an individual defendant knowingly induced or participated in that breach to the detriment of Renco Metals or Magcorp, then you must find that this individual is liable for aiding and abetting a breach of fiduciary duty. If you determine that Mr. Buchwald has not proven both that there was a breach of fiduciary duty or that an individual defendant knowingly induced or

participated in such a breach, then you must find that such individual is not liable for aiding and abetting a breach of fiduciary duty.

## PART B – PLAINTIFF'S INSTRUCTION

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

There are three (3) elements to a claim for aiding and abetting a breach of fiduciary duty.

The first element is a breach by a fiduciary of obligations by another, with the actual knowledge of the defendant who is accused of aiding and abetting the breach of fiduciary duty.

The second element is that the defendant knowingly induced or participated in the breach of fiduciary duty.

The third element is that Plaintiff suffered damage as a result of the breach of fiduciary duty. In this case, where the Plaintiff represents the interests of MagCorp and Renco Metals, the third element requires that MagCorp or Renco Metals suffered damage as a result of the breach of fiduciary duty.

A person knowingly participates in a breach of fiduciary duty when he or she provides "substantial assistance" to the fiduciary who breached his duty. Substantial assistance may be found where the alleged aider and abettor affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach of fiduciary duty to occur.

Authority: *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 205); *Russell/Packard Development, Inc., v. Carson, et al,*, 78 P.3d 616, 626-27 (UT App. 2003); *Mower v. Simpson*, 278 P.3d 1076, 1087-88; *Farm Bureau Life Ins. Co. v. American National Insurance*, 505 F.Supp.2d 1178 (D. Utah 2007); *Coroles v. Sabey*, 798 P.3d 974 (Utah App. 2003).

## KNOWLEDGE/CONSCIOUS AVOIDANCE

If it appears from the evidence in the case a person had information that would lead a reasonably prudent person to make inquiry through which that person would surely learn the facts, then this person may be found to have had actual knowledge of those facts, the same as if the person had made such inquiry and had actually learned such facts. The law charges a person with notice and knowledge of whatever that person would have learned on making such inquiry

62508288_1    175

as it would have been reasonable to expect the person to make under the circumstances. Knowledge may also be established by circumstantial evidence.

Authority:  O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. (6th Ed. 2013) Based on 3 Fed. Jury Prac. & Instr. § 104:24 (Modified); *Kolbeck v. LIT Am. Inc.,* 939 F. Supp. 240, 246 (S.D.N.Y. 1996); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,* 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007); *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 205); *Russell/Packard Development, Inc., v. Carson, et al.*, 78 P.3d 616, 626-27 (UT App. 2003); *Mower v. Simpson*, 278 P.3d 1076, 1087-88; *Farm Bureau Life Ins. Co. v. American National Insurance*, 505 F.Supp.2d 1178 (D. Utah 2007); *Coroles v. Sabey*, 798 P.3d 974 (Utah App. 2003).

## SUBSTANTIAL ASSISTANCE

Substantial assistance occurs when a defendant affirmatively assists or helps conceal a fraud, or fails to act when required to do so, thereby enabling the fraud to occur. Whether the assistance is substantial or not is measured by whether the action of the defendant was a cause of the occurrence that resulted in the plaintiff's harm.

An act or omission is regarded as a cause of an occurrence if it was a substantial factor in bringing about that occurrence, that is, if it had such an effect in producing the occurrence that reasonable people would regard it as a cause of the occurrence. Put another way, a defendant will be considered to have caused an occurrence if that occurrence was a direct or reasonably foreseeable result of its conduct. There may be more than one cause of an occurrence, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

Furthermore, where the independent acts or omission or two or more parties cause an occurrence to happen, each of those acts or omissions is regarded as a cause of that occurrence provided that it was a substantial factor in bringing about the occurrence.

Substantial assistance can take many forms. Executing transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation.

Authority:  Based on N.Y. P.J.I. – *Civil 3:20: Intentional Torts – Fraud and Deceit;* N.U. P.J.I. – *Civil 2:70: Proximate Cause – In General;* N.Y. P.J.I. – *Civil 2:71: Proximate Cause – Concurrent Causes; Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.,*, 64 A.D.3d 472, 476 (1st Dep't 2009); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,* 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007); *Kaufman v. Cohen,* 307 A.D.2d 113, 126 (1st Dep't 2003); *Kirschner v. Bennett, et al.,* 759 F. Supp. 2d 301, 336 (S.D.N.Y. 2010); *Nathel v. Siegel,* 592 F.2d 452, 470 (S.D.N.Y. 2008). ; *In re Sharp Int'l Corp.,* 403 F.3d 43, 50 (2d Cir. 205); *Russell/Packard Development, Inc., v. Carson, et al.,* 78 P.3d 616, 626-27 (UT App. 2003); *Mower v. Simpson,* 278 P.3d 1076, 1087-88; *Farm Bureau Life Ins. Co. v. American National Insurance,* 505 F.Supp.2d 1178 (D. Utah 2007); *Coroles v. Sabey,* 798 P.3d 974 (Utah App. 2003).

Plaintiff's Objection to Defendants' Instruction: The instruction misstates the law.

## PART C – DEFENDANTS' INSTRUCTION

### Aiding and Abetting Breach of Fiduciary Duty

Mr. Buchwald contends that the individual defendants also aided and abetted other individuals in breaching their fiduciary duty to Renco Metals or Magcorp. Again, Mr. Buchwald has the burden of proving those claims. If you determine that Mr. Buchwald has failed to prove that the individual defendant breached a fiduciary duty to Renco Metals or Magcorp, then you should not consider this claim. On the other hand, if you determine that Mr. Buchwald met his burden of proving that certain individual defendants breached their duty to Renco Metals or Magcorp, you must decide whether Mr. Buchwald has met his burden of proving that certain individual defendants aided and abetted the breach of that fiduciary duty.

To prove an aiding and abetting breach of fiduciary duty claim, Mr. Buchwald must prove that the breach of fiduciary duty occurred and that the individual defendant knowingly induced or participated in the breach. "Knowing participation" involves two elements.

First, "knowing participation" requires that a person have actual knowledge of the wrongdoing, here, that that the other individual's breached their fiduciary duty. In this case, that means that the person must actually know of the wrongdoing that amounts to bad faith, or intentional dishonest conduct, and is complicit in the wrongdoing. It is insufficient if the defendant "should have known" that the transfer amounted to fraudulent conveyance.

Second, the person must provide substantial assistance to the primary violator. One provides substantial assistance if he affirmatively assists, helps conceal or fails to act when required to do so, enabling the breach of fiduciary duty to occur. In contrast, inaction amounts to substantial assistance only if the person who fails to act owes a duty to act directly to the harmed party.

If you determine that Mr. Buchwald has proven that there was a breach of fiduciary duty and that an individual defendant knowingly induced or participated in that breach to the detriment of Renco Metals or Magcorp, then you must find that this individual is liable for aiding and abetting a breach of fiduciary duty. If you determine that Mr. Buchwald has not proven both that there was a breach of fiduciary duty or that an individual defendant knowingly induced or participated in such a breach, then you must find that such individual is not liable for aiding and abetting a breach of fiduciary duty.

<u>Authorities</u>

2 Committee on Pattern Jury Instructions, <u>New York Pattern Jury Instructions</u> PJI 3:59 (2d ed. 2013).

2 Committee on Pattern Jury Instructions, <u>New York Pattern Jury Instructions</u> PJI 3:59 (2d ed. 2013) (citing <u>AHA Sales, Inc. v. Creative Bath Products, Inc.</u>, 58 A.D.3d 6, 867 N.Y.S.2d 169 (2d Dep't 2008)).

<u>Baron v. Galasso</u>, 83 A.D.3d 626, 921 N.Y.S.2d 100 (2d Dep't 2011).

<u>Kassover v. Prism Venture Partners, LLC</u>, 53 A.D.3d 444, 862 N.Y.S.2d 493 (1st Dep't 2008).

<u>Kolbeck v. Lit America, International</u>, 939 F. Supp. 240 (1996).

<u>In re Jevic Holding Corp.</u>, No. 08-11006 BLS, 2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011).

<u>Russell/Packard Development, Inc. v. Carson</u>, 78 P.3d 616 (Utah Ct. App. 2003), <u>aff'd</u>, 108 P.3d 741 (Utah 2005).

**<u>BASIS FOR USING DEFENDANTS' INSTRUCTION:</u>**

Plaintiffs' instruction incorrectly states the law for an aiding and abetting claim. First, although the premise underlying these claims is that the Defendants caused or permitted fraudulent conveyances, <u>see</u> Amended Complaint ¶¶ 541, 595; <u>see</u> <u>also</u> <u>Buchwald v. The Renco Group, Inc.</u>, 399 B.R. 722, 758 n.122 (Bankr. S.D.N.Y. 2009), the instruction fails to make clear to the jury that the breach of fiduciary duty should not be considered if Mr. Buchwald fails to prove the fraudulent conveyance claims because without a fraudulent conveyance, no duty could have been breached. Further, the instruction states that "knowingly" participating in a breach is satisfied by providing "substantial assistance." The law is contrary to that contention. As stated

in Defendants' instruction for aiding and abetting, "actual knowledge" is required to meet the knowing participation requirement of an aiding and abetting claim.  See ChemTex, LLC v. St. Anthony Enterprises Inc., 490 F. Supp. 2d 536, 546-47 (S.D.N.Y. 2007) ("Even assuming, arguendo, that SAE did engage in a fraudulent conveyance, New York law requires that the alleged aider and abettor have 'actual,' as opposed to merely constructive , knowledge of the primary wrong.").  Alternatively, Defendants' instruction presents the appropriate standard.

Plaintiff's instruction improperly instructs the jury to determine whether the defendant was acting as a reasonably prudent person.  A reasonably prudent person analysis is relevant only for determining whether a defendant had constructive knowledge.  See Kolbeck v. LIT America, Inc., 939 F. Supp. 240, 245 (S.D.N.Y. 1996) aff'd, 152 F.3d 918 (2d Cir. 1998).  However, constructive knowledge is irrelevant to whether a defendant is liable for aiding and abetting claims.  See ChemTex, LLC v. St. Anthony Enterprises Inc., 490 F. Supp. 2d 536, 546-47 (S.D.N.Y. 2007) ("Even assuming, arguendo, that SAE did engage in a fraudulent conveyance, New York law requires that the alleged aider and abettor have 'actual,' as opposed to merely constructive , knowledge of the primary wrong.").  Alternatively, Defendants instruction appropriately instructs the jury that actual knowledge if required.  See In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (citing Kaufman v. Cohen, 307 A.D.2d 113, 125 (1st Dep't 2003) ("Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty.")); see also Kolbeck, 939 F. Supp. at 246 ("[C]ourts in this district applying New York law have held that actual knowledge is necessary to impose liability for participating in a breach of fiduciary duty.")

# RCRA

# PART A

## PART B – PLAINTIFF'S INSTRUCTIONS

## RCRA

The plaintiff alleges that MagCorp's probable liabilities, as of the dates of the conveyances that the plaintiff seeks to recover, included environmental liabilities and contingent environmental liabilities under the Resource Conservation and Recovery Act, or RCRA.

To assist you in deciding whether MagCorp had such contingent environmental liabilities as of the dates of the conveyances that the plaintiff seeks to recover, and the amounts of such environmental liabilities, I am going to instruct you about some of the environmental laws and regulations relating to those claims.

Plaintiff's Basis for Using RCRA instructions:  It would be unfair to only permit  the defendants to argue that they were in compliance with all environmental law, as their jury instructions demonstrate they intend to do, but not permit the trustee to argue to the jury how they had violated environmental laws.

## RCRA REGULATION OF HAZARDOUS WASTE

RCRA and rules adopted by the Environmental Protection Agency (EPA) pursuant to RCRA, are part of the environmental laws of the United States to regulate the management of hazardous wastes from the point of generation of the waste through the disposal of the waste – that is, "from the cradle to the grave."

The term "hazardous waste" as used in these instructions means a substance classified by the EPA as hazardous waste. RCRA hazardous wastes include both

(1) *listed* hazardous wastes, which are specific materials listed in EPA regulations and designated with the codes "F," "K," "P," or "U;" and

(2) *characteristic* hazardous wastes, which are other substances that exhibit a hazardous waste characteristic, including (a) ignitability; (b) corrosivity; (c) reactivity; or (d) toxicity.

Authority: 42 U.S.C. § 6901; *American Chemistry Council v. EPA*, 337 F.3d 1060, 1062 (D.C. Cir. 2003) ("The RCRA 'is a comprehensive environmental statute that empowers EPA to regulate hazardous wastes from cradle to grave, in accordance with ... rigorous safeguards and waste management procedures.'") (citations omitted); 42 U.S.C. § 6903(5) ("The term 'hazardous waste' means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may--(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."); 40 CFR § 261.31 (The "F" list); 40 CFR § 261.32 (The "K" list); 40 CFR § 261.33 (The "P" and "U" lists); 40 CFR § 261.21 (Ignitability); 40 CFR § 261.22 (Corrosivity); 40 CFR § 261.23 (Reactivity); 40 CFR 261.24 (Toxicity).

## RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF HAZARDOUS WASTE

Under RCRA, it is unlawful to treat, store, or dispose of a hazardous waste without a permit. In order to determine whether a waste is a hazardous waste subject to RCRA regulation, RCRA requires the operator of a facility like the MagCorp magnesium production facility to "characterize" or determine the hazardous or non-hazardous nature of the wastes that it generates.

You may find that MagCorp's probable liabilities as of the dates of the conveyances included liabilities for the unlawful treatment, storage, or disposal of hazardous wastes in violation of RCRA if:

(1)     MagCorp treated, stored, or disposed of a waste on or before the conveyance date;

(2)     The waste was hazardous; and

(3)     MagCorp did not have a permit which authorized the treatment, storage, or disposal of the hazardous waste under RCRA at the time.

Authority: 42 U.S.C. § 6925. *United States v. Laughlin*, 10 F.3d 961, 964 (2d Cir. 1993), *cert. denied*, 511 U.S. 1071 (1994).

## RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF THE "COMPLAINT WASTES"

The plaintiff has alleged that, on or before each of the conveyance dates, MagCorp had existing environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes at MagCorp's Rowley Facility.

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes if you find that MagCorp was treating, storing, or disposing of the following wastes in violation of RCRA or EPA regulations:

(1) Anode Dust,

(2) Chlorine Plant Water Wash Column waste,

(3) Chlorine Reduction Burner waste,

(4) Seal Leg Water, or

(5) High Energy Scrubber waste.

Authority: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010).

## THE "COMPLAINT WASTES" ARE NOT EXEMPT FROM HAZARDOUS WASTE REGULATION UNDER RCRA OR EPA RULES

The Court has already determined that the following waste streams at MagCorp's Rowley

facility were not exempt from regulation as hazardous wastes under RCRA Subtitle C:

(1) Anode Dust,

(2) Chlorine Plant Water Wash Column waste,

(3) Chlorine Reduction Burner waste,

(4) Seal Leg Water, and

(5) High Energy Scrubber waste.

Authority: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010), interpreting (a) The Bevill Amendment, codified at 42 U.S.C. § 6921(b)(3)(A)(ii); and (b) Final Regulatory Determination for Special Wastes From Mineral Processing (Mining Waste Exclusion), 56 Fed. Reg. 27,300, June 13, 1991 (codified at 40 C.F.R. § 261.4(b)(7) (the "Final Rule"); 40 C.F.R. § 270.1(a).

## <u>RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF ANODE DUST</u>

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes if you find that:

1. MagCorp treated, stored, or disposed of <u>ANODE DUST</u> on or before a conveyance date;

2. The <u>ANODE DUST</u> was hazardous; and

3. MagCorp did not have a permit which authorized the treatment, storage, or disposal of <u>ANODE DUST</u> hazardous waste under RCRA.

<u>Authority</u>: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010), interpreting (a) The Bevill Amendment, codified at 42 U.S.C. § 6921(b)(3)(A)(ii); and (b) Final Regulatory Determination for Special Wastes From Mineral Processing (Mining Waste Exclusion), 56 Fed. Reg. 27,300, June 13, 1991 (codified at 40 C.F.R. § 261.4(b)(7) (the "Final Rule"); 40 C.F.R. § 270.1(a).

## <u>RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF</u> <u>CHLORINE PLANT WATER WASH COLUMN WASTE</u>

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes if you find that:

1.      MagCorp treated, stored, or disposed of <u>CHLORINE PLANT WATER WASH COLUMN WASTE</u> on or before a conveyance date;

2.      The CHLORINE PLANT WATER WASH COLUMN WASTE was hazardous; and

3.      MagCorp did not have a permit which authorized the treatment, storage, or disposal of CHLORINE PLANT WATER WASH COLUMN WASTE hazardous waste under RCRA.

<u>Authority</u>: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010), interpreting (a) The Bevill Amendment, codified at 42 U.S.C. § 6921(b)(3)(A)(ii); and (b) Final Regulatory Determination for Special Wastes From Mineral Processing (Mining Waste Exclusion), 56 Fed. Reg. 27,300, June 13, 1991 (codified at 40 C.F.R. § 261.4(b)(7) (the "Final Rule"); 40 C.F.R. § 270.1(a).

## RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF CHLORINE REDUCTION BURNER WASTE

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes if you find that:

1.      MagCorp treated, stored, or disposed of <u>CHLORINE REDUCTION BURNER WASTE</u> on or before a conveyance date;

2.      The CHLORINE REDUCTION BURNER WASTE was hazardous; and

3.      MagCorp did not have a permit which authorized the treatment, storage, or disposal of CHLORINE REDUCTION BURNER WASTE hazardous waste under RCRA.

<u>Authority</u>: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010), interpreting (a) The Bevill Amendment, codified at 42 U.S.C. § 6921(b)(3)(A)(ii); and (b) Final Regulatory Determination for Special Wastes From Mineral Processing (Mining Waste Exclusion), 56 Fed. Reg. 27,300, June 13, 1991 (codified at 40 C.F.R. § 261.4(b)(7) (the "Final Rule"); 40 C.F.R. § 270.1(a).

## RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF SEAL LEG WATER

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes if you find that:

1.    MagCorp treated, stored, or disposed of SEAL LEG WATER on or before a conveyance date;

2.    The SEAL LEG WATER was hazardous; and

3.    MagCorp did not have a permit which authorized the treatment, storage, or disposal of SEAL LEG WATER hazardous waste under RCRA.

Authority: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010), interpreting (a) The Bevill Amendment, codified at 42 U.S.C. § 6921(b)(3)(A)(ii); and (b) Final Regulatory Determination for Special Wastes From Mineral Processing (Mining Waste Exclusion), 56 Fed. Reg. 27,300, June 13, 1991 (codified at 40 C.F.R. § 261.4(b)(7) (the "Final Rule"); 40 C.F.R. § 270.1(a).

## RCRA LIABILITIES FOR TREATMENT, STORAGE, AND DISPOSAL OF HIGH ENERGY SCRUBBER WASTE

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful treatment, storage, and disposal of hazardous wastes if you find that:

1.     MagCorp treated, stored, or disposed of HIGH ENERGY SCRUBBER WASTE on or before a conveyance date;

2.     The HIGH ENERGY SCRUBBER WASTE was hazardous; and

3.     MagCorp did not have a permit which authorized the treatment, storage, or disposal of HIGH ENERGY SCRUBBER WASTE hazardous waste under RCRA.

Authority: *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010), interpreting (a) The Bevill Amendment, codified at 42 U.S.C. § 6921(b)(3)(A)(ii); and (b) Final Regulatory Determination for Special Wastes From Mineral Processing (Mining Waste Exclusion), 56 Fed. Reg. 27,300, June 13, 1991 (codified at 40 C.F.R. § 261.4(b)(7) (the "Final Rule"); 40 C.F.R. § 270.1(a).

## THE UNLAWFUL TREATMENT, STORAGE, OR DISPOSAL OF EACH HAZARDOUS WASTE IS A SEPARATE VIOLATION OF RCRA

If you find that MagCorp unlawfully treated, stored, or disposed of one or more hazardous wastes

(1) The unlawful treatment of each hazardous waste constitutes a separate violation of RCRA

(2) The unlawful storage of each hazardous waste constitutes a separate violation of RCRA; and

(3) The unlawful disposal of each hazardous waste constitutes a separate violation of RCRA.

In other words, the unlawful *disposal* of *one* hazardous waste constitutes a single violation of RCRA; the unlawful *treatment* of that *same* hazardous waste constitutes another violation of RCRA; the unlawful *disposal* of *five* hazardous wastes constitutes five violations of RCRA; the unlawful *treatment* of the *same five* hazardous wastes constitutes another five violations of RCRA. Thus, the unlawful treatment, storage, and disposal of five hazardous wastes constitutes fifteen violations of RCRA.

Authority: 42 U.S.C. § 6903(3), (33), & (34); 40 C.F.R. § 268.31 (Disposal of dioxin containing wastes); 40 C.F.R. § 268.48 (Universal treatment standards); 40 C.F.R. § 268.50 (Prohibitions on storage).

62508288_1    192

## RCRA PROVIDES FOR CIVIL PENALTIES FOR EACH DAY OF VIOLATION

The plaintiff has alleged that, on or before each of the conveyance dates, MagCorp had existing environmental liabilities for RCRA civil penalties for the unlawful treatment, storage, and disposal of hazardous wastes at MagCorp's Rowley Facility. If you find that MagCorp was unlawfully treating, storing, or disposing of a hazardous waste at the Rowley Facility before any of the conveyance dates, you may include liabilities for civil penalties in determining the amount of MagCorp's probable liabilities as of those dates.

RCRA provides for civil penalties for violations of RCRA, up to $25,000 per day per violation before January 30, 1997, and up to $27,500 per day per violation after January 30, 1997. That is, for each violation of RCRA, a civil penalty may be assessed up to the maximum amount permitted by law for each day that the violation existed or continued.

Authority:

| Environmental statute | U.S. code citation | Statutory penalties before January 30, 1997 | Penalties effective after January 30, 1997 through March 15, 2004 |
|---|---|---|---|
| RESOURCE CONSERVATION AND RECOVERY ACT (RCRA) | 42 U.S.C. § 6928(a)(3) | 25,000 | 27,500 |
| RESOURCE CONSERVATION AND RECOVERY ACT (RCRA) | 42 U.S.C. § 6928(c) § 6928(g) § 6928(h) § 6934(e) § 6973(b) § 6991e(a)(3) | 25,000 | 27,500 |

## DEFENDANTS BURDEN OF PROVING THE EXISTENCE OF A PERMIT TO TREAT, STORE, OR DISPOSE OF HAZARDOUS WASTE

If you find that MagCorp treated, stored, or disposed of hazardous wastes at the Rowley Facility on or before a conveyance date, MagCorp was liable for the unlawful treatment, storage, or disposal of the hazardous waste unless it was done pursuant to a permit.

The plaintiff is not required to prove that the treatment, storage, or disposal of a hazardous waste at the Rowley Facility was not permitted by EPA.

The exception for permitted releases is an affirmative defense, which means the defendants are required to prove the existence of such a permit, issued on or before the date of the treatment, storage, or disposal, authorizing MagCorp to treat, store, or dispose of the hazardous waste at the Rowley Facility.

Authority: *United States v. Freter*, 31 F.3d 783, 788 (9th Cir.), *cert. denied*, 513 U.S. 1048 (1994).

## PROOF THAT MAGCORP KNEW IT DID NOT HAVE A REQUIRED PERMIT IS NOT REQUIRED

If you find that MagCorp was unlawfully treating, storing, or disposing of hazardous waste at the Rowley Facility, it does not matter whether MagCorp management knew that MagCorp did not have a required permit to treat, store, or dispose of hazardous waste at the Rowley Facility.

Authority: *United States v. Laughlin*, 10 F.3d 961, 967 (2d Cir. 1993), *cert. denied*, 511 U.S. 1071 (1994): Although this Court never before has been presented with the question of whether 42 U.S.C. § 6928(d)(2)(A) requires that a defendant have knowledge of the lack of a permit for hazardous waste disposal, most of the courts of appeals that have addressed this issue have responded in the negative. *See, e.g.*, *United States v. Dean*, 969 F.2d 187, 191 (6th Cir.1992) ("[§ 6928(d)(2)(A)] does not require that the person charged have known that a permit was required, and that knowledge is not relevant."), *cert. denied*, --- U.S. ----, 113 S.Ct. 1852, 123 L.Ed.2d 475 (1993); *United States v. Hoflin*, 880 F.2d 1033, 1037 (9th Cir.1989) (expressly holding that knowledge of lack of permit is not an element of section 6928(d)(2)(A) offense), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990); *see also United States v. Goldsmith*, 978 F.2d 643, 645-46 (11th Cir.1992) (*per curiam*) (approving jury instruction which did not require knowledge of the absence of a permit); *United States v. Dee*, 912 F.2d 741, 745 (4th Cir.1990) (Government need not prove that defendants knew that violation of RCRA was a crime nor did they need to know of existence of specific regulations or requirements), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991). [The law is otherwise for *criminal* violations of RCRA that expressly include a "knowing" requirement.]

## PROOF THAT MAGCORP MANAGEMENT KNEW OR UNDERSTOOD REGULATORY REQUIREMENTS IS NOT REQUIRED

If you find that MagCorp was unlawfully treating, storing, or disposing of hazardous waste at the Rowley Facility, it does not matter whether MagCorp management knew or understood RCRA's regulatory requirements with respect to the treatment, storage, or disposal of hazardous waste at the Rowley Facility. Ignorance or misunderstanding of the law's requirements is not a defense to RCRA liability.

Authority:  *United States v. Laughlin*, 10 F.3d 961, 967 (2d Cir. 1993), *cert. denied*, 511 U.S. 1071 (1994): When knowledge is an element of a statute intended to regulate hazardous or dangerous substances, the Supreme Court has determined that the knowledge element is satisfied upon a showing that a defendant was aware that he was performing the proscribed acts; knowledge of regulatory requirements is not necessary. *See United States v. International Minerals & Chem. Corp.*, 402 U.S. 558, 563-65, 91 S.Ct. 1697, 1700-1701, 29 L.Ed.2d 178 (1971) (in prosecution for knowingly violating a hazardous materials regulation, Government was not required to prove that the defendant was aware of regulation, but only that he was aware of shipment of the hazardous materials); *see also United States v. Balint*, 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604 (1922) (manifest purpose of statute proscribing sale of narcotics to persons not having written order "is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute"). "[W]here, as here ... dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *International Minerals*, 402 U.S. at 565, 91 S.Ct. at 1701-1702. In light of this precedent, particularly the presumption of awareness of regulation set forth in International Minerals, it is clear that § 6928(d)(2)(A) requires only that a defendant have a general awareness that he is performing acts proscribed by the statute. The district court did not err in declining to charge that the statute required knowledge that the creosote sludge was "identified or listed" under RCRA.

## PART C – DEFENDANTS' INSTRUCTIONS

## NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION

Defendants' object to instructions regarding RCRA in their entirety as inappropriate jury instructions in this action.  As stated by this Court, "it bears saying that this is not an environmental action to determine whether MagCorp was operating in violation of federal or state environmental laws."  December 19, 2014 Hearing Tr. at 29.  Defendants' contingent liability instruction appropriately charges the jury on what should be considered for contingent liability and these instructions should be omitted in their entirety.

**CERCLA**

**PART A**

**PART B – PLAINTIFF'S INSTRUCTION**

**CERCLA REGULATION OF HAZARDOUS SUBSTANCES**

The plaintiff alleges that, as of the transfer dates, MagCorp was liable under the Comprehensive Environmental Response, Compensation, and Liability Act or CERCLA for certain costs arising from the alleged release of hazardous substances into the environment at the Rowley Facility. This is also referred to as the "Superfund" law. The following instructions are to help you determine the amount of any contingent environmental liabilities as of the alleged fraudulent transfer dates.

Plaintiff's Basis for Using CERCLA instructions:  It would be unfair to only permit the defendants to argue that they were in compliance with all environmental laws, as their jury instructions demonstrate they intend to do, but not permit the trustee to argue to the jury how they had violated environmental laws.

## "HAZARDOUS SUBSTANCES" UNDER CERCLA

CERCLA and the rules outlined in the Clean Air Act are part of the environmental laws of the United States to regulate the management of hazardous substances that have been released into the environment.

CERCLA defines a "hazardous substance" as any substance classified as such by the following statutes:

(1) The Federal Water Pollution Control Act

(2) CERCLA

(3) The Solid Waste Disposal Act

(4) The Federal Water Pollution Control Act

(5) The Clean Air Act

(6) The Toxic Substances Control Act.

Authority: 42 U.S.C. § 9601(14); 33 U.S.C. 1321 (b)(2)(A); 42 U.S.C. § 9602; 42 U.S.C. § 9621; 33 U.S.C. § 1317(a); 42 U.S.C. § 7412; 15 U.S.C. § 2606. *See also B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1199-1200 (2nd Cir. 1992).

## CERCLA LIABILITY FOR "HAZARDOUS SUBSTANCES"

The plaintiff has alleged that, on or before each of the conveyance dates, MagCorp had existing environmental liabilities for the unlawful release of "hazardous substances" at MagCorp's Rowley Facility.

I instruct you that the following substances are "hazardous substances" under CERCLA:

(1) Anode Dust, if you determine that it is a "hazardous waste" under RCRA,

(2) Chlorine Plant Water Wash Column waste, if you determine that it is a "hazardous waste" under RCRA,

(3) Chlorine Reduction Burner Waste, if you determine that it is a "hazardous waste" under RCRA,

(4) Seal Leg Water, if you determine that it is a "hazardous waste" under RCRA, and

(5) High Energy Scrubber waste, if you determine that it is a "hazardous waste" under RCRA.

To incur such liabilities, MagCorp need not be aware of specific legal requirements, but rather simple awareness of its actions.

Authority: 42 U.S.C. 9603(a); *United States v. Magnesium Corp. of America*, 616 F.3d 1129 (10th Cir. 2010); *United States v. Laughlin*, 10 F.3d 961, 964 (2d Cir. 1993); *United States v. Carr*, 880 F.2d 1550, 1552 (2d Cir. 1989); *United States v. Buckley*, 934 F.2d 84, 88 (6th Cir. 1991); *United States v. International Minerals & Chemical Corp*, 91 S.Ct. 1697, 1701 (1971).

### "HAZARDOUS WASTE" EXEMPTIONS UNDER RCRA ARE NOT "HAZARDOUS SUBSTANCE" EXEMPTIONS UNDER CERCLA

Hazardous wastes that are exempt under RCRA can still be classified as "hazardous substances" under CERCLA. If MagCorp had any exemptions under the Bevill Amendment for certain "hazardous wastes," such exemption is no exemption under CERCLA for the release of "hazardous substances."

As such, you should consider all waste streams and any releases of any material at the Rowley Facility in determining if MagCorp released "hazardous substances" in violation of CERCLA.

Authority: 42 U.S.C. § 9601(14)(C); *Louisiana-Pacific Corp. v. ASARCO*, 24 F.3d 1565, 1572-73 (9th Cir. 1994); *Eagle-Picher Indus., Inc. v. U.S. EPA*, 159 F.2d 922 (D.C. Cir. 1985).

## "RELEASE" OF HAZARDOUS SUBSTANCES UNDER CERCLA

You may find that MagCorp's probable liabilities included environmental liabilities for the release of hazardous substances, in violation of CERCLA, if you find that MagCorp "released" hazardous substances.

The term "release" means any spilling, leaking, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substances or pollutant or contaminant).

Authority: 42 U.S.C. § 9601(22).

## THE "ENVIRONMENT"

You may find that MagCorp's probable liabilities included environmental liabilities for the release of hazardous substances, in violation of CERCLA, if you find that MagCorp released hazardous substances "into the environment."

Under CERCLA, for the purpose of deciding whether a release of hazardous substance has occurred "into the environment," the term "environment" includes any surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States. The MagCorp Rowley Facility is located within the United States.

Authority: 42 U.S.C. § 9601(8).

## THE DEFINITION OF A "FACILITY" UNDER CERCLA

You may find that MagCorp's probable liabilities included environmental liabilities for the release of hazardous substances, in violation of CERCLA, if you find that MagCorp is a "facility" under CERCLA.

The term "facility" means any building, structure, installation, equipment, pipe or pipeline, well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, or any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

Authority: 42 U.S.C. § 9601(9).

## DAMAGES AND RESPONSE COSTS UNDER CERCLA

CERCLA requires that MagCorp, Renco Metals, Renco Group, and Ira Rennert pay the "full and total costs of response and damages" for the release of any "hazardous substances" into the environment.

The term "damages" means the cost for injury or loss of natural resources.

The term "respond" or "response" means remove, removal, remedy, and remediation action; all such terms include enforcement activities.

The parties agree that, as of the conveyance dates, MagCorp was the owner and operator of the Rowley Facility. As the owner and operator of the Rowley Facility, MagCorp was liable under CERCLA for the release of any hazardous substances at or from the Rowley Facility.

MagCorp is the same corporation as AMAX Magnesium, which owned and operated the Rowley Facility from 1980 to 1989. Therefore, MagCorp was also liable under CERCLA for the release of any hazardous substances at or from the Rowley Facility during the period 1980 to 1989 (when the Rowley Facility was owned and operated by AMAX Magnesium), and from 1989 through each of the conveyance dates.

Authority: 42 U.S.C. § 9601(25); 42 U.S.C. § 9607; 42 U.S.C. § 9611(b).

## "REMOVAL" OF HAZARDOUS SUBSTANCES UNDER CERCLA

CERCLA requires that MagCorp, Renco Metals, Renco Group, and Ira Rennert "remove" any "hazardous substances" released into the environment at or from the Rowley Facility.

Under CERCLA, the terms "remove" or "removal" means the actions and costs associated with:

(1) The cleanup or removal of released "hazardous substances" from the environment,

(2) Such actions as may be necessary in the event of the threat of release of "hazardous substances" into the environment,

(3) Such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances,

(4) The disposal of removed material,

(5) The taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

This also includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, and any other actions mandated by law.

Authority: 42 U.S.C. § 9601(3).

## REMEDY OR REMEDIAL ACTION UNDER CERCLA

CERCLA requires that MagCorp, Renco Metals, Renco Group, and Ira Rennert pay the full costs of any "remedy" or "remedial" action taken as a result of the release of hazardous substances into the environment.

Under CERCLA, the terms "remedy" or "remedial action" means the actions and costs consistent with permanent remedies taken:

(1) Instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment,

(2) To prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

This also includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.

"Remedy" or "remedial action" also means the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public

health or welfare; the terms also include offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials as well as any other actions mandated by law.

Authority: 42 U.S.C. § 9601(24).

## PART C – DEFENDANTS' INSTRUCTION

## NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION

Defendants' object to instructions regarding CERCLA in their entirety as inappropriate jury instructions in this action.  As stated by this Court, "it bears saying that this is not an environmental action to determine whether MagCorp was operating in violation of federal or state environmental laws."  December 19, 2014 Hearing Tr. at 29.  Defendants' contingent liability instruction appropriately charges the jury on what should be considered for contingent liability and these instructions should be omitted in their entirety.

**TSCA**

**PART A**

## PART B – PLAINTIFF'S INSTRUCTION

## TSCA

The plaintiff alleges that, as of the transfer dates, MagCorp was liable under the Toxic Substances Control Act or TSCA for certain costs arising from the production, importation, use, and disposal of specific chemicals. The following instructions are to help you determine the amount of any contingent environmental liabilities as of the alleged fraudulent transfer dates.

Basis for Plaintiff's Using Plaintiff's Jury Instructions: It would be unfair to only permit the defendants to argue that they were in compliance with all environmental laws, as their jury instructions demonstrate they intend to do, but not permit the trustee to argue to the jury how they had violated environmental laws.

## TSCA LIABILITIES FOR PRODUCTION, IMPORTATION, USE, OR DISPOSAL OF PCB'S

You may find that MagCorp's probable liabilities included environmental liabilities if MagCorp unlawfully produced, imported, used, or disposed of PCB's or other prohibited chemicals.

TSCA specifically requires that "no person may manufacture any polychlorinated biphenyl after two years after January 1, 1977, and no person may process or distribute in commerce any polychlorinated biphenyl after two and one-half years after such date."

Authority: 15 U.S.C. § 2605(e)(3)(A)(i)-(ii); 15 U.S.C. § 2614; 15 U.S.C. § 2689.

## **"INADVERTENT" MANUFACTURE OR DISPOSAL OF PCBS UNDER TSCA**

If you find that MagCorp manufactured PCBs "inadvertently," MagCorp is still considered to have contingent environmental liabilities if:

(1) Products containing PCBs had an annual average of 25 parts per million or more or had a maximum of 50 parts per million or more,

(2) The release of such PCBs to ambient air was 10 parts per million or more,

(3) The release of such PCBs discharged to water was 100 parts per billion or more, or

(4) The disposal of any process wastes with concentrations of PCBs above 50 parts per million was not incinerated.

Plaintiff alleges that MagCorp discharged wastes with PCB levels above 50 parts per million without complying with EPA's incineration requirement.

Authority: 40 C.F.R. § 761.1; 40 C.F.R. § 761.3; 40 C.F.R. 761.180-193.

## MAGCORP'S LIABILITIES UNDER TSCA

You may find that MagCorp's probable liabilities included environmental liabilities for the unlawful manufacture and/or disposal of PCB's if you find that:

(1) MagCorp created Anode Dust (as a violation against the manufacture of PCB's),

(2) MagCorp released Anode Dust in the Electrolytic Buildings, the Courtyards, the Unlined Ditches, and/or the Ponds (as a violation against the spill, release, or other unauthorized disposal of PCB's),

(3) MagCorp created Melt Reactor Dust (as a violation against the manufacture of PCB's),

(4) MagCorp released Melt Reactor Dust in the Melt Reactor Buildings, the Unlined Ditches, and the Ponds (as a violation against the spill release or other unauthorized disposal of PCB's),

(5) MagCorp released PCB waste in the Landfill (as a violation against the spill release or other unauthorized disposal of PCB's).

Each creation of PCB's and each disposal of PCB's is a separate violation of TSCA.

Authority: 15 U.S.C. §2605(e); 15 U.S.C. § 2614(1)(B), 15 U.S.C. § 2605; 40 C.F.R. § 761.3; 40 C.F.R. § 761.61.

**TSCA PROVIDES FOR CIVIL PENALTIES FOR EACH DAY OF VIOLATION**

The plaintiff has alleged that, on or before each of the conveyance dates, MagCorp had existing environmental liabilities for TSCA civil penalties for the unlawful manufacture and disposal of polychlorinated biphenyl (PCB's) at MagCorp's Rowley Facility. If you find that MagCorp was unlawfully producing PCB's at the Rowley Facility before or during any of the conveyance dates, you may include liabilities for civil penalties in determining the amount of MagCorp's probable liabilities as of those dates.

TSCA provides for civil penalties for violations of TSCA, up to $25,000 per day per violation. That is, for each violation of TSCA, a civil penalty may be assessed up to the maximum amount permitted by law for each day that the violation existed or continued.

Authority: 15 U.S.C. § 2615.

## PART C – DEFENDANTS' INSTRUCTION

## NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION

Defendants' object to instructions regarding TSCA in their entirety as inappropriate jury instructions in this action.  As stated by this Court, "it bears saying that this is not an environmental action to determine whether MagCorp was operating in violation of federal or state environmental laws."  December 19, 2014 Hearing Tr. at 29.  Defendants' contingent liability instruction appropriately charges the jury on what should be considered for contingent liability and these instructions should be omitted in their entirety.

**DAMAGES**

**PART A**

## PART B – PLAINTIFF'S INSTRUCTION

## DAMAGES

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the Plaintiff on any of Plaintiffs' claims, you must determine how much money Defendants owe Plaintiff with respect to that claim. This is called "damages." Plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury you find was caused by Defendants.

It is for you to determine what damages, if any, have been proven. Your award must be based upon evidence and not upon speculation, guess work or conjecture.

As to any damage award, bear in mind that you should not add any amount for interest. The Court will do that automatically. Also, bear in mind that, while you should make every effort to calculate damages with reasonable certainty, absolute certainty as to the amount is not required.

Authority:  N.Y. PJI 3:20 comments; *Continental Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 907 N.Y.S.2d 139, 933 N.E.2d 738; *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370.

## JOINT AND SEVERAL LIABILITY

Tortfeasors generally are jointly and severally liable for a judgment, meaning that each is responsible for the full amount regardless of their relative culpability. In this case, Defendants will be jointly and severally liable if you find that they were joint tortfeasors who caused Plaintiff's losses.

Authority:  *Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 556, 593 N.E.2d 1365 (N.Y. 1992); *Greenidge v. HRH Const. Corp.*, 720 N.Y.S.2d 46, 48-49 (N.Y. App. Div. 2001); General Motors LLC v. Lewis Bros., L.L.C., 2014 WL 1783607 May 5, 2014 (W.D.N.Y. 2014); 11 U.S.C. 550.

## **PUNITIVE DAMAGES**

In addition to awarding damages to compensate Plaintiff for his injuries, you may, but you are not required to, award plaintiff punitive damages if you find that the acts of a defendant that caused the injury complained of were wanton and reckless or malicious. Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations. The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for wanton and reckless or malicious acts and thereby to discourage the defendant and other companies from acting in a similar way in the future.

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights and with the intent to interfere with those rights. An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its affect upon the health, safety and rights of others.

In arriving at your decision as to the amount of punitive damages you should consider the nature and reprehensibility of what defendant did. That would include the character of the wrongdoing, whether defendant's conduct demonstrated an indifference to, or a reckless disregard of, the health, safety or rights of others, whether the acts were done with an improper motive or vindictiveness, whether the acts constituted outrageous or oppressive intentional misconduct, how long the misconduct went on, defendant's awareness of what harm the misconduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often defendant had committed similar acts of this type in the past, and the actual and potential harm created by defendant's misconduct.

Punitive damages against a corporation may be sustained even where the corporation has not explicitly ratified the activities, so long as the alleged misconduct occurred within the scope of the corporation's business and where the award would advance the goal of deterring wrongful conduct by motivating the corporation to adequately supervise its employees.

Authority:  N.Y.PJI 2:278; *Walker v. Shelton*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497; *Giblin v. Murphy*, 73 N.Y.2d 769, 536 N.Y.S.2d 54, 532 N.E.2d 1282; *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 643 N.Y.S.2d 33.

## PART C – DEFENDANTS' INSTRUCTION

## NO INSTRUCTION: OBJECTION TO PLAINTIFF'S INSTRUCTION

Plaintiff's damages instruction attempts to inappropriately put forth general tort damages to fraudulent conveyance claims. Such an instruction does not apply to the claims alleged in this action. In fact, Plaintiff fails to cite any authority in the fraudulent conveyance context to support this instruction. Alternatively, New York Debtor & Creditor Law, §278 provides that the appropriate damages for a fraudulent conveyance is: a) have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or b) disregard the conveyance and attach or levy execution upon the property conveyed. Id. The amount of the transfers have been stipulated to in the fact section of the Joint Pretrial Report. Therefore, this instruction is misleading and irrelevant.

Plaintiff cites no authority to support the contention that joint and several liability is applicable for fraudulent conveyances and instead rely on cases involving unrelated tort claims. Plaintiff's instruction regarding joint and several liability should be omitted in its entirety.

Defendants' object to any reference to punitive damages in the instructions to the jury. First, under New York law, fraudulent conveyance is not the type of misconduct that is considered so gross and wanton as to justify punitive damages. See Sungchang Interfashion Co. v. Stone Mountain Accessories, Inc., No. 12 Civ. 7280 (ALC)(DCF), 2013 WL 5366373 at *22 (S.D.N.Y. Sept. 25, 2013) (citing Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 131-32 (N.Y. 2d Dep't 1986) ("The remedies [the fraudulent conveyance law] provides are clearly geared toward re-establishing the status quo ante, rather than punishing the debtor."). Second, New York law requires there be a "public harm" rather than merely a private one for punitive damages to be applicable. See Sungchang, 2013WL 5366373 at *21(citing Rocanova v.

62508288_1    223

<u>Equitable Life Assurance Society of U.S.</u>, 83 N.Y.2d 603, 613 (1994).  No such public harm is alleged by the Plaintiff, therefore, punitive damages to not apply.