UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEE E. BUCHWALD, as Chapter 7 Trustee for Magnesium Corporation of America and Related Debtor Renco Metals, Inc.,<br><br>        Plaintiff,<br><br>-against-<br><br>THE RENCO GROUP, INC., et al.,<br><br>        Defendants. | 13 Civ. 7948 (AJN) |

**DEFENDANTS' RESPONSE TO TRUSTEE'S PROFFER REGARDING
EVIDENCE OF DEFENDANT IRA RENNERT'S UNJUST ENRICHMENT**

                                              KAYE SCHOLER LLP
                                              Attorneys for Defendants
                                              250 West 55th Street
                                              New York, New York  10019
                                              (212) 836-8000
                                              peter.haveles@kayescholer.com

                                              PARK JENSEN BENNETT LLP
                                              40 Wall Street
                                              New York, New York  10005
                                              (646) 200-6300
                                              tpark@parkjensen.com
                                              Attorneys for Defendants

Defendants respectfully submit this memorandum of law in response to the proffer of plaintiff Lee E. Buchwald (the "Trustee"), the Chapter 7 Trustee of Magnesium Corporation of America ("Magcorp") and Renco Metals, Inc. ("Renco Metals"), regarding evidence of defendant Ira Rennert's alleged unjust enrichment.

On September 5, 2014, defendants filed a motion in limine seeking to preclude, pursuant to Rule 403, the Trustee from presenting the unduly prejudicial evidence regarding Ira Rennert's personal wealth and lifestyle. Dkt. 63. As a component of that motion, defendants sought to exclude evidence related to a Sagaponack, New York estate that is owned by a subsidiary of The Renco Group, Blue Turtles, Inc., and used by Mr. Rennert and his family. Id. The unstated purpose of showing the jury the home is obvious. The Trustee hopes to inflame the jury with Mr. Rennert's wealth, symbolized by the size and grandeur of the home.

The Trustee responded that this evidence was relevant to his claim of unjust enrichment against Mr. Rennert. According to the Trustee, value of the house represents the unjust enrichment of Mr. Rennert. As a result of the Trustee's contention that the dividend proceeds were given to Blue Turtles to pay for the construction of the estate, the Court observed that occupancy in the estate, rent free, could constitute a benefit. 12/19/2014 Hearing Tr. at 46-47.

The Court invited the Trustee to make a proffer regarding the relevance of evidence about the house in Sagaponack to the claims of unjust enrichment against Ira Rennert. The Court understood that Trustee was "trying to tie a specific transaction to the use of the allegedly unjustly acquired funds." 12/19/14 Hearing Tr. at 48. In light of this, counsel for the defendants requested that:

> [The Court] ask that there be at least a written proffer to show the linkage that your Honor just said should be there so that we can have a discussion and prevent something, if the proffer falls way to short, because we will have to do much more than a limiting

> instruction if the proffer falls short but the evidence is heard by the jury.

12/19/14 Hearing Tr. at 49. The Court then invited the Trustee to make a proffer on that basis. Id.

The Trustee submitted his proffer on January 12, 2015. Dkt. 194. In his proffer, the Trustee claims that testimony from Roger Fay to the effect that The Renco Group invested proceeds from dividends in a number of different ventures, including unspecified "real estate investments" during the transfer period and accounting records showing that Blue Turtles had capital are sufficient for the jury to conclude that the proceeds from the dividends at issue went to Blue Turtles specifically. See Trustee's Proffer at 4. But the Trustee points to no evidence tracing the proceeds of the dividends paid from Renco Metals to Blue Turtles.

## ARGUMENT

It is apparent from the Trustee' proffer that he has no evidence from which the jury could reasonably conclude dividends paid to The Renco Group were used by Blue Turtles to construct the Sagaponack house.

"The general rule is that the party that asserts the affirmative of an issue has the burden of providing the facts essential to the claim." Hallinan v. Republic Bank & Trust Co., 519 F. Supp. 2d 340, 358 (S.D.N.Y. 2007), aff'd sub nom. Republic Bank & Trust Co. v. Hallinan, 306 F. App'x 626 (2d Cir. 2009) (citing National Communications Association v. AT&T Corp., 238 F.3d 124, 131 (2d Cir.2001)). The Trustee's proffer fails because it rests on an unsupportable logical leap: namely that because money is fungible, he is relieved from his obligation to prove the link that was the purpose of his making a written proffer in the first place.

The case law that the Trustee cites in his proffer is inapposite. The Trustee relies on several decisions reciting the general unjust enrichment standard. See Trustee's Proffer at 3.

2

These decisions, however, focus on the nature of the attenuation of the relationship of the parties, not the plaintiff's failure to present evidence tracing the benefit to the defendant. See Philips International Investments, LLC v. Pektor, 117 A.D.3d. 1, 7, 982N.Y.S.2d 98, 103 (1st Dep't 2014). Philips, for example, simply states that a recent New York Court of Appeals decision does not change the law regarding the need for privity when pleading unjust enrichment. Id. The other decisions are likewise irrelevant to the core issue of the Trustee's burden to come forward with evidence that the dividends were used to build the Sagaponack home. See Wolf v. National Council of Young Israel, 264 A.D. 2d 416, 417, 694 N.Y.S.2d 424, 425 (2d Dep't 1999) (upholding denial of a motion to dismiss a counterclaim when defendant alleged plaintiff's son had used defendant's funds to pay plaintiff's taxes); Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D. 2d 113, 119, 559 N.Y.S.2d 704, 709 (1st Dep't 1990) (granting summary judgment in an unjust enrichment claim stemming from a mistaken bank transfer). The fact that a plaintiff may recover on an unjust enrichment claim when the parties are attenuated does not relieve the plaintiff of his burden to adduce evidence establishing that the benefit flowed from one attenuated party to the other.

The Trustee argues that because Blue Turtles was created within a few months of the July 1996 dividend, the money generated thought the Renco Metals' dividends must have been used to fund this entity. See Trustee Proffer at 4. The strength of such circumstantial evidence "requires a weighting of probabilities." 2 McCormick On Evidence § 338 (7th ed.). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." See Underdog Trucking, L.L.C. v. Cellco Partnership, 514 F. App'x 31, 32 (2d Cir. 2013). In Underdog, the Second Circuit affirmed the grant of summary judgment, holding that the

circumstantial evidence presented by the plaintiff was "not sufficient to rationally support a finding that Verizon's proffered" evidence met his burden. Id. at 33.

Here, the Trustee's own proffer acknowledges that real estate investments were just one of several categories of investments that The Renco Group was making at the time of the transfers. That real estate investments were part of The Renco Group portfolio is not sufficient to show that the dividend from Renco Metals went to Blue Turtles. The Trustee quotes from the deposition of Roger Fay. Mr. Fay testifies that money, such as the dividend payments, which came into The Renco Group, "was invested in Renco entities or in other investments, or was used for general corporate purposes." See Trustee Proffer at 4. The Trustee places substantial emphasis on Mr. Fay's testimony that dividends were used for various corporate purposes, but he does not (and cannot) proffer any evidence that the dividends were used for the specific real estate investment at issue in this case—namely Blue Turtles. Contrary to the testimony the Trustee cites, Mr. Fay did not "acknowledge that the funds [from the dividends] were used for purposes that encompass Blue Turtles" but simply that receipts from dividends were used for real estate investments. Trustee's Proffer at 6. The Trustee does not even proffer any evidence that Blue Turtles was The Renco Group's only real estate investment.

The Trustee also argues that the jury can reasonably conclude that the dividend proceeds went to Blue Turtles based upon the timing of the purchase of the Sagaponack property. See id. at 4. He presents no evidence that the 1996 bond offering and the purchase of the property six months later were somehow related, aside from their relative temporal proximity.[1] Likewise, the amount of money that he asserts was used for the house and property is different from the

---

[1] The Trustee offers KPMG workpapers concerning Blue Turtles that do nothing to further the inquiry. See Trustee's Proffer at 4. These documents do not offer any link between the dividends and any activity by Blue Turtles.

4

amounts generated in the bond offering – there is no near or actual match that would support that assertion. See Trustee Proffer at 6. He presents no basis for concluding that the amount of money spent on the home is evidence that it came from the dividend transfers.

Without evidence of a link between the dividends and Blue Turtles, the probative value of the Trustee's limited circumstantial evidence turns on other facts not in the record. Specifically, without direct evidence of a link, the probability that the dividend payments at issue were directed to Blue Turtles depends upon the number of other sources of income flowing to The Renco Group as well as the number of investments that The Renco Group was making at the time of the Transfers. The Trustee has no evidence as to whether Blue Turtles was one of a handful of investments made by The Renco Group at the time, or one of scores or hundreds. He has presented no evidence that The Renco Group had no other income streams, unrelated to the 1996 Bond Offering, that could have been used to pay for the Sagaponack house. In other words, the Trustee has no evidence that, but for the dividends, The Renco Group would have lacked the funds to contribute to Blue Turtles. Without evidence of that fact, a reasonable jury would be forced to speculate and would be unable to conclude, based on temporal proximity alone, that the dividend payments went to Blue Turtles.

Moreover, the Trustee's argument regarding the inequities of a "comingled bank account" assumes the existence of facts that the Trustee has not proven. See Trustee Proffer at 7. Under the Trustee's logic, the use of a comingled account means that the proceeds of the dividends can be linked with every transaction in that account, a clear misstatement of the law.

The Trustee's remaining arguments as to Mr. Fay's testimony are presented simply to obscure the fact that the Trustee was not diligent in his efforts to gather information about how the proceeds from the dividends were used. The Trustee served a document request on The

5

Renco Group in advance of Mr. Fay's deposition seeking evidence of transfers to Mr. Rennert or the Rennert family trusts. During his deposition, Mr. Fay answered counsel's questions and counsel was able to pursue these issues further in discovery if he so choose. He chose not to, and did not request any documents regarding Blue Turtles, as he could have. Now, lacking the evidence that he needs, he is left to support his claim through argument and speculation.

The evidence regarding the Sagaponack estate has powerful potential to mislead the jury from the issue in this action. To be admitted, its probative value must outweigh that prejudice. The Trustee's proffer fails to meet that test, and this inflammatory evidence should therefore be excluded.

## CONCLUSION

For the foregoing reasons, the Court should find that the Trustee's proffer is insufficient and thus grant defendants' motion to exclude evidence regarding the Sagaponack estate.

Dated:   New York, New York
         January 16, 2015

KAYE SCHOLER LLP

By: _____
H. Peter Haveles, Jr.
Jeffrey A. Fuisz
250 West 55th Street
New York, New York  10019-9710
(212) 836-8000
peter.haveles@kayescholer.com

PARK JENSEN BENNETT LLP
Tai H. Park
Steven C. Bennett
40 Wall Street, 41st Floor
New York, New York  10005
Telephone:  (646) 200-6300
Fax:  (646) 200-6301
tpark@parkjensen.com

Attorneys for Defendants