UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 3 2015

|  |  |
|---|---|
| Lee E. Buchwald,<br><br>             Plaintiff,<br><br>       –v–<br><br>The Renco Group, *et al.*,<br><br>           Defendants. | 13-cv-7948 (AJN)<br><br>ORDER |

ALISON J. NATHAN, District Judge:

Following a second day of the charging conference, the parties indicated that they had been heard on all issues related to the jury charge and verdict form. Attached to this order are final versions of the jury charge and special verdict form reflecting the changes made at today's charging conference (February 23, 2015). If the parties see any technical errors or transcription mistakes made as a result of the changes inputted today, they may raise them with the Court tomorrow morning (February 24, 2015) before the jury is brought in.

SO ORDERED.

Dated: February 23, 2015
      New York, New York

ALISON J. NATHAN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lee E. Buchwald,

              Plaintiff,

     –v–

The Renco Group, *et al.*,

              Defendants.

13-cv-7948 (AJN)

**DRAFT JURY CHARGE**

**DISTRIBUTED FEBRUARY 23, 2015**

**AFTER CHARGING CONFERENCE DAY TWO**

1

No. 1.  Role of the Court and the Jury ............................................................... 4

No. 2.  Preponderance of the Evidence ............................................................. 5

No. 3.  Improper Considerations ....................................................................... 6

No. 4.  Conduct of Counsel ............................................................................... 7

No. 5.  Liability in General ............................................................................... 8

No. 6.  Overview of Claims ............................................................................... 9

No. 7.  Claim One: Fraudulent Transfer—Bankruptcy Code ........................... 10

No. 8.  Definitions: Insolvency and Debt ......................................................... 12

No. 9.  Definition: Contingent Liability ............................................................ 14

No. 10.  Definition: Unreasonably Small Capital ............................................... 16

No. 11.  Claim Two: Fraudulent Conveyance—New York Law ....................... 17

No. 12.  Fraudulent Conveyance—Element One: Lack of Fair Consideration ................ 18

No. 13.  Fraudulent Conveyance—Element Two: Insolvency or Unreasonably Small

Capital .............................................................................................................. 19

No. 14.  Claim Three: Aiding and Abetting Fraudulent Conveyance .............................. 20

No. 15.  Fraudulent Transfer or Fraudulent Conveyance: Damages ................................ 21

No. 16.  Claim Four: Breach of Fiduciary Duty ................................................. 22

No. 17.  Claim Five: Aiding and Abetting Breach of Fiduciary Duty ............................. 25

No. 18.  Breach of Fiduciary Duty and Aiding & Abetting Breach of Fiduciary Duty:

Damages ............................................................................................................ 27

No. 19.  Breach of Fiduciary Duty and Aiding & Abetting Breach of Fiduciary Duty:

Punitive Damages ............................................................................................. 28

No. 20.  Claim 6A: Unlawful Payment of Dividends ......................................... 30

2

No. 21. Claim 6B: Unlawful Stock Redemptions..............................................................33

No. 22. Claims 6A and 6B: Good Faith Reliance Defense...............................................34

No. 23. Claim 6C: Shareholder Liability for Unlawful Dividends...................................35

No. 24. Unlawful Dividends and Unlawful Stock Redemptions: Damages....................36

No. 25. Claim Seven: Unjust Enrichment.........................................................................37

No. 26. Unjust Enrichment: Damages ...............................................................................39

No. 27. Agreed Instruction Regarding Ira Rennert's Wealth ..........................................40

No. 28. Nature of Evidence...............................................................................................41

No. 29. Direct and Circumstantial Evidence ....................................................................42

No. 30. Inferences .............................................................................................................43

No. 31. Credibility of Witnesses.......................................................................................44

No. 32. Deposition Testimony...........................................................................................47

No. 33. Expert Witnesses..................................................................................................48

No. 34. Conflicting Expert Testimony..............................................................................49

No. 35. Stipulations...........................................................................................................50

No. 36. Right to See Exhibits and Hear Testimony..........................................................51

No. 37. Juror Note-Taking ................................................................................................52

No. 38. Deliberation and Verdict......................................................................................53

No. 39. Closing Comment .................................................................................................54

### No. 1.  Role of the Court and the Jury

1   

2   I will now instruct you as to the law.  It is your duty to accept these instructions of law

3   and apply them to the facts as you determine them.  If an attorney has stated a legal principle

4   different from any that I state to you in my instructions, it is my instructions that you must

5   follow.  You should not single out any instruction as alone stating the law; you should consider

6   my instructions as a whole when you retire to deliberate.

7   You, the members of the jury, are the sole and exclusive judges of the facts.  You pass

8   upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as

9   there may be in the testimony. You draw whatever reasonable inferences you decide to draw

10   from the facts as you have determined them, and you determine the weight of the evidence.  You

11   must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or

12   against any party.

13   What has been said in the opening statements, closing arguments, objections, or questions

14   is not evidence.  The evidence before you consists of the answers given by witnesses, the

15   exhibits that were received in evidence, and any facts to which the parties have stipulated.  You

16   may not consider any testimony that I have told you to disregard or that was stricken from the

17   record.

18   Nor is what I say evidence.  The rulings I have made during the trial are not any

19   indication of my views of what your decision should be.  Since you are the sole and exclusive

20   judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict

21   should be.  The rulings I have made during the trial are not any indication of my views of what

22   your decision should be as to whether or not the Plaintiff has proven his case.

4

### No. 2.  Preponderance of the Evidence

In order to prevail, the Plaintiff must meet his burden of proof.  The standard under which you will decide whether the Plaintiff has met his burden of proof on a particular issue is the preponderance of the evidence.  Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

To establish something by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it.  The difference in persuasiveness need not be great: it requires only that you find that the scales tip, however slightly, in favor of the party with the burden of proof—that what that party claims is more likely than not true.  On the other hand, if you find that the credible evidence is evenly divided between the parties – that is, equally probable that one side is right as it is that the other side is right – then you must decide that issue in favor of the Defendants.

What is important is the quality of the evidence and not the number of witnesses, or the number or variety of the exhibits, or the length of time spent on a subject.  In determining whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses and all of the exhibits.

Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its importance or significance.  That is for you to decide.

1                                       **No. 3.  Improper Considerations**

2           Your verdict must be based solely upon the evidence, or the lack of evidence, developed

3 at trial.  It would be improper for you to consider any personal feelings you may have about a

4 party or witness's race, sex, age, national origin, or religion.  Under your oath as jurors, you are

5 not to be swayed by sympathy.

1        **No. 4.  Conduct of Counsel**

2               It is the duty of the attorney for each side of a case to object when the other side offers

3        testimony or other evidence that the attorney believes is not properly admissible.  Counsel also

4        have the right and duty to ask the Court to make rulings of law or hold conferences out of the

5        hearing of the jury.  All those questions of law must be decided by me.

6               You should not show any prejudice against any attorney or his client because the attorney

7        objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or

8        asked the Court for a ruling on the law.

1                                                **No. 5.  Liability in General**

2          We turn now to legal responsibility, known as "liability."  If a party making a claim

3 against another party proves each of the essential elements of its claim by a preponderance of the

4 credible evidence, we say that that party has established that the other party is legally liable.  The

5 plaintiff in this case is Lee E. Buchwald, who is the trustee for two corporations in bankruptcy,

6 Magnesium Corporation of America and Renco Metals, Inc.  Together, I will sometimes call

7 these companies the "Debtor Companies" or "Debtor Corporations."  There are twelve

8 defendants in this case.  One, The Renco Group, Inc., is a corporation.  Ten are individuals: Ira

9 Rennert, Roger Fay, Justin D'Atri, Dennis Sadlowski, Michael Ryan, Michael Legge, Ron

10 Thayer, Todd Ogaard, Lee Brown, and Howard Kaplan.  The final defendants are the trustees of

11 trusts established by Ira Rennert.

12          Although there are several defendants in this case and they are being represented by the

13 same attorneys, it does not follow that if one is liable, all of the rest are liable as well.  Each

14 defendant is entitled to fair, separate, and individual consideration of the case without regard to

15 your decision as to the other defendants.

16          You must now determine, in accordance with my instructions, whether the Plaintiff has

17 carried his burden of proving by a preponderance of the credible evidence that the Defendants

18 are liable for his various claims.

## No. 6.  Overview of Claims

1
2      In this civil case, the Plaintiff is suing the Defendants for damages, and to "avoid" or take

3      back transfers of money to the Defendants.  The Plaintiff has alleged that the Defendants made

4      or received unlawful transfers of money away from the Debtor Corporations.

5           The Plaintiff's first set of claims is brought pursuant to federal bankruptcy law for claims

6      of fraudulent transfer and under state law for claims of fraudulent conveyance.  These claims are

7      similar but defined differently under state and federal law, so you must consider Plaintiff's

8      claims under both definitions.

9           The Plaintiff's second set of claims alleges that some Defendants either breached certain

10     duties they had toward the debtor corporations, or aided others in the breach of those duties.

11          A third set of claims alleges that Defendants paid or received dividends or stock

12     redemptions when doing so was unlawful.

13          Finally, the Plaintiff has alleged that Defendants Rennert and the trustees of the Renco

14     Trusts were unjustly enriched by the transfers made from Magnesium Corporation and Renco

15     Metals.

16          You should make your award based on the merits of each claim.

17          I will now explain each of these claims in more detail.

| | |
|---|---|
| 1 | **<u>No. 7.  Claim One: Fraudulent Transfer—Bankruptcy Code</u>** |
| 2 | Plaintiff's first claim is for fraudulent transfers.  The bankruptcy laws allow a trustee to |
| 3 | "avoid," or in other words take back, transfers of money made under certain circumstances.  In |
| 4 | this context, a "transfer" refers to any mode of voluntarily or involuntarily disposing of, or |
| 5 | parting with, money or property.  In this case, the Plaintiff claims that The Renco Group, Inc., |
| 6 | received transfers in the form of dividends and stock redemptions from the Debtor Companies, |
| 7 | that Defendants Ira Rennert and the Trustees of the Rennert Trusts were subsequent transferees, |
| 8 | and that Defendants Mike Legge, Ron Thayer, Todd Ogaard, Lee Brown, and Howard Kaplan |
| 9 | received transfers from Magnesium Corporation that were made pursuant to net worth |
| 10 | appreciation agreements. |
| 11 | Plaintiff's contention is that these transfers are avoidable because they are fraudulent |
| 12 | under the Bankruptcy Code.  In this context, "fraudulent" does not mean that you must find that |
| 13 | the Defendants intended to commit actual fraud or deceive someone.  Instead, there are three |
| 14 | types of fraudulent transfers for which you may find Defendants responsible under the |
| 15 | Bankruptcy Code.  If the Plaintiff has proven by a preponderance of the evidence that any one of |
| 16 | these types of transfers occurred, you should find in favor of the Plaintiff on count one. |
| 17 | First, a transfer is fraudulent under the law if (1) the debtor received less than a |
| 18 | reasonably equivalent value in exchange for the transfer AND (2) the debtor was insolvent on the |
| 19 | date that the transfer was made, or became insolvent as a result of the transfer.  In other words, if |
| 20 | the value of what the debtor received was materially less than the reasonably equivalent value of |
| 21 | what the debtor transferred away, and the fair market value of the debtor's assets was less than |
| 22 | its liabilities by the time the transfer was complete, that was a fraudulent transfer. |
| 23 | Second, a transfer is fraudulent under the law if (1) the debtor received less than a |
| 24 | reasonably equivalent value in exchange for the transfer—again, if the value of what it received |
| 25 | was materially less than the reasonably equivalent value of what it transferred away—AND (2) |
| 26 | immediately after the transaction, the debtor was left with an unreasonably small amount of |

10

1   remaining capital for carrying on the debtor's business for a reasonable period of time

2   considering what was reasonably foreseeable at the time of the transfer.

3          Third, a transfer is fraudulent under the law if (1) the debtor received less than a

4   reasonably equivalent value in exchange for the transfer, AND (2) the debtor intended or

5   believed that it would incur debts beyond its ability to pay as they became due.

6          During the course of the trial, you have heard the parties address these three types of

7   fraudulent transfers as three tests of insolvency.  For the purposes of your task, that description is

8   just a different way of saying the same thing that I have just explained to you.   Accordingly, you

9   need to find by a preponderance of the evidence that only one of these three types of transfers

10   has occurred in order to find for the plaintiff.  You do not need to find that all three types of

11   transfers occurred.

1        **No. 8.  Definitions: Insolvency and Debt**

2              So that you can determine whether fraudulent transfers were committed as described in

3        Plaintiff's first claim, I am going to give you the legal definitions of some terms.  The definitions

4        that I give you here should guide your deliberations when determining whether the Plaintiff has

5        proven his case.  Some of these terms will also appear in other claims that I will describe later in

6        my instructions.  Know that even though I will only instruct you on the meanings of these terms

7        once, they have the same definition every time they appear in my instructions, unless I

8        specifically indicate otherwise.

9              The first term I will define is "insolvency."  An entity is insolvent or made insolvent at

10       the time of a transfer when the sum of its debts is greater than the fair market value of all of its

11       assets.  No rigid approach should be taken regarding the fair valuation of a company within the

12       context of a solvency analysis, but rather you should consider the totality of the circumstances.

13       The fair value of a company's assets is determined by the fair market value of the assets that

14       could be obtained if sold in a prudent manner by a willing seller to a willing buyer with all

15       relevant information within a reasonable period of time to pay a company's debts.  To make that

16       determination, you may consider any combination of valuation methodologies presented to you

17       during the course of the trial.  Based on the evidence presented by the parties, you should

18       determine the fair market value of those assets.

19             The definition of insolvency that I am giving you also requires a determination of the

20       sum of all of Magnesium Corporation's and Renco Metals's debts.  In the bankruptcy context, a

21       "debt" is defined as the amount of money that one will be legally responsible to pay to other

22       parties as a result of legal rights to payment that those others have.  This right to payment can

23       include amounts owed to individuals and entities that have lent an entity money, as well as

24       reasonably certain potential legal liability, whether or not the entity has actually been sued.  You

25       have heard the parties discuss "contingent liability" at length during trial, and I will instruct you

26       on the meaning of "contingent liability" in a moment.  For now, you should know that if you find

1    that MagCorp or Renco Metals had a contingent liability, you should include the amount of that

2    contingent liability in the company's debts.

3         You must find whether insolvency existed at the time of each transfer.  In determining

4    whether Magnesium Corporation and Renco Metals were insolvent, you should consider the

5    companies' assets as they were appropriately valued at the time of each transfer, not at the level

6    they later turned out to be valued.  That is to say, just because Magnesium Corporation and

7    Renco Metals went bankrupt at some point after the transfers at issue in this case does not

8    determine that they were insolvent at the time of each transfer.  While the solvency of MagCorp

9    and Renco Metals must be determined as of the date of the transfer, you may consider evidence

10   from after the date of the transfer only insofar as you conclude that it demonstrates the existence

11   of facts that were known or, through the exercise of reasonable diligence, could have been

12   known by the date of each transfer.  It is for you to decide both the value of the companies'

13   assets and the amount of their debts at the time of the transfers in question.

1 **No. 9.  Definition: Contingent Liability**

2      As I just stated, I will also define the term "contingent liability," which you have heard

3 the lawyers use throughout the trial.

4      A contingent liability is one that, although a person or business is not required to pay it

5 right now, there is a reasonable probability that they will have to pay in the future.  They are

6 liabilities that are *contingent* on a future event occurring.  For example, if someone has taken an

7 action that violates the law, any amount they might have to pay would be a contingent liability if

8 there is a reasonable probability that a liability will be established in the future.  In other words, a

9 contingent liability is a cost that is reasonably foreseeable based on conduct that has already

10 occurred.

11      It is not mere speculation, nor is it the result of random, unforeseeable events.  There is

12 always a chance that someone could have to pay for something that they could not have

13 expected, but that does not mean they have a contingent liability.  Contingent liabilities do not

14 exist if there is not a reasonable probability that the events triggering actual liability will come to

15 pass.  Accordingly, contingent liabilities only have value in proportion to the probability that

16 they will actually come to pass.

17      To determine the size of contingent liability, you must first find the total amount of

18 liability that a company would take on if the event triggering that liability comes to pass, and

19 then reduce it by the probability that the liability will actually come to pass.  For example, if a

20 contingent liability would be for $100, but there is only a 60% chance that someone would ever

21 have to pay that liability, the value of the contingent liability is calculated at $60.  If you find that

22 there is little or no chance that a contingent liability would come to pass, you may value it as

23 zero.  If you find that the likelihood that a contingent liability would come to pass is certain, you

24 may value it at 100%.

25      With this definition in mind, you should assess the evidence that the parties offered as to

26 the appropriate measure of contingent liabilities.

14

1    The size of Magnesium Corporation's and Renco Metals's contingent liabilities can then

2    be factored into determining whether the corporations were solvent.  As I have already instructed

3    you, a corporation is solvent when its assets are greater than its liabilities.  Contingent liabilities

4    are part of the companies' overall liabilities for the purpose of determining solvency.

1   **No. 10.  Definition: Unreasonably Small Capital**

2   Of the three ways you can find liability for fraudulent transfers in Claim One, the second

3   requires a finding that the debtor corporations were left with an unreasonably small amount of

4   remaining capital for carrying on the debtor's business for a reasonable period of time,

5   considering what was reasonably foreseeable at the time of the transfer.  A company has an

6   unreasonably small amount of capital if, though technically solvent, it is "doomed to fail."  It

7   means that the companies were left in such a state that they would be unable to sustain enough

8   profit to continue operations.  While a company must be adequately capitalized, it does not need

9   resources sufficient to withstand any and all setbacks.

10   You may consider a number of factors in determining whether Magnesium Corporation

11   and Renco Metals were left with enough capital to survive after the transfers.  These may include

12   the amount of extra capital the companies historically kept on hand, the general amount of

13   capital needed in the magnesium production industry, and how the ratio of its operations

14   financed by the value of all of its stock compared to the amount of debt it has taken on has

15   changed since the transfers.  In addition, you may consider the reasonableness of the company's

16   financial projections and whether they were prudent, not with hindsight, but at the time made.

17   The mere fact that the companies later went bankrupt does not mean that they were left

18   with an unreasonably small amount of capital.  Your task is to decide whether the amount of

19   capital remaining was reasonable at the time the transfers were made, not with the benefit of

20   hindsight.  That is, you must decide whether someone viewing the Defendants' actions at the

21   time the transfers were made, and not knowing exactly what would happen in the future, would

22   decide that they acted prudently in relation to the amount of capital left in the businesses.  While

23   the adequacy of capital of MagCorp and Renco Metals must be determined as of the date of the

24   transfer, you may consider evidence from after the date of the transfer only insofar as you

25   conclude that it demonstrates the existence of facts that were known or, through the exercise of

26   reasonable diligence, could have been known by the date of the transfer.

1    **No. 11.  Claim Two: Fraudulent Conveyance—New York Law**

2        I will now turn to Plaintiff's second claim, which is that Defendants Rennert, Legge,

3    Thayer, Ogaard, Brown, Kaplan, the Renco Group, and the Trustees of the Rennert Trust are

4    liable for Fraudulent Conveyances under section 273 of New York's Debtor & Creditor Law.  To

5    establish a claim of fraudulent conveyance, the Plaintiff must show that:

6        1)  That debtor corporation or corporations made a conveyance to the Defendants

7            without fair consideration, and

8        2)  The debtor corporation was insolvent when it made the conveyance, or rendered

9            insolvent because of the conveyance, or was left with unreasonably small capital as a

10           result of the conveyance, or made the conveyance intending or believing that it would

11           incur debts beyond his ability to pay as they came due.

12       I will now further explain each of these elements of the claim.

13

17

1       **No. 12.  Fraudulent Conveyance—Element One: Lack of Fair Consideration**

2       The first element of a fraudulent conveyance claim is that the conveyance was made

3 without "fair consideration."  Fair consideration has two components: an exchange of fair value

4 and good faith.  So a conveyance made without fair consideration is one where either the party

5 receiving the conveyance did not give fair value in exchange for what it received, or the party

6 receiving the conveyance was not acting in good faith.

7       New York law defines "fair value" as receiving a fair equivalent amount of property, or

8 satisfying a fair equivalent amount of debt, in exchange for the property given.  This does not

9 mean that the amount given on each side of the exchange must be precisely the same.  The

10 values need only be roughly equal to constitute "fair value."

11       "Fair value" can also mean that the property was given as part of an advance made in the

12 present, or because of a debt incurred in the past, and the amount of the advance given or debt

13 satisfied was not disproportionately small when compared with the value of the property

14 transferred.

15       "Good faith" means that the party receiving the transfer acted honestly, fairly, and

16 openly.  A party may be acting in bad faith when it does not honestly believe that the actions it is

17 taking are proper, if it intends to take unfair advantage of others, or if it knows or intends that the

18 actions will hinder, delay, or defraud others.

1    **No. 13.  Fraudulent Conveyance—Element Two: Insolvency or Unreasonably Small**

2    **Capital**

3    The second element that the Plaintiff must establish by a preponderance of the evidence

4    is that the debtor corporations—Magnesium Corporation of America and Renco Metals—were

5    insolvent at the time the conveyances were made, or were left with unreasonably small capital as

6    a result of the conveyances, or intended or believed that they would incur debts beyond their

7    ability to pay as they came due as a result of the transfers.  I have already instructed you on the

8    meaning of insolvency, but for you to decide Claim Two, I must instruct you on its specific

9    definition under New York law.  Under New York law, an entity is insolvent when the present

10   fair saleable value of its assets is less than the amount that will be required to pay his probable

11   liability on his existing debts as they become absolute and matured.  In other words, a company

12   is insolvent when the sum total of assets is worth less than the total amount of liabilities that the

13   company faces, or its debts exceed the fair market value of its property.

14   In determining whether Magnesium Corporation and Renco Metals were insolvent, you

15   should consider the companies' assets as they were appropriately valued at the time of the

16   transfers, not at the level they later turned out to be valued.  While the solvency of MagCorp and

17   Renco Metals must be determined as of the date of the transfer, you may consider evidence from

18   after the date of the transfer that demonstrates the existence of facts that were known or, through

19   the exercise of reasonable diligence, could have been known by the date of the transfer.

20   In determining whether the companies were left with unreasonably small capital or debts

21   that they intended or believed they would not be able to pay as they came due, you should apply

22   the definitions that I have already given to you.

23   If you determine a preponderance of the evidence that either Magnesium Corporation or

24   Renco Metals was insolvent at the time the transfers at issue in this case were made, or that they

25   were rendered insolvent as a result of the transfers, then the Plaintiff has satisfied his burden on

26   this element.

19

**No. 14.  Claim Three: Aiding and Abetting Fraudulent Conveyance**

The Plaintiff's third claim is that Defendant Ira Rennert aided and abetted fraudulent conveyances made by other Defendants.  You will consider this claim only ig you determine that a fraudulent conveyance occurred.

A person "aids and abets" a fraudulent conveyance when he knowingly participated in the transfer to another person who commits a fraudulent transfer.  A person does not have to actually cause or make the fraudulent transfer to be liable under an "aiding and abetting" theory.  Liability as an aider and abettor is, in fact, premised on the idea that the person accused of aiding and abetting a violation of the law was not the same person who actually violated the law.

To establish that a person aided and abetted another person's fraudulent conveyances, the Plaintiff must demonstrate three things by a preponderance of the evidence.

First, the Plaintiff must establish that fraudulent conveyances were committed by a person or entity other than the Defendant accused in this claim.  If you find that the fraudulent conveyances alleged in the previous claim were committed, you should consider this element satisfied.  If you find that no fraudulent conveyances were committed, you should consider this claim no further and find in favor of the Defendant on this claim.

If you do find that fraudulent conveyances were committed, you must next consider whether the Plaintiff has established that Defendant Rennert knowingly induced or participated in those fraudulent conveyances.  Knowing participation requires that a person have actual knowledge of the wrongdoing—here, that the disputed transfers were fraudulent conveyances.  A person "knowingly induces or participates" in fraudulent conveyances when he provides substantial assistance to the person or people who commit the actual fraudulent conveyances.  The question for you, then, is whether Defendant Rennert affirmatively assisted, helped to conceal, or otherwise enabled fraudulent conveyances to occur.

Finally, to be liable for aiding and abetting fraudulent conveyances, the conveyances must have caused damage to the debtor corporations.

20

1   **No. 15.  Fraudulent Transfer or Fraudulent Conveyance: Damages**

2       If you find in Plaintiff's favor on Claim One, Claim Two, and/or Claim Three—that is,

3   for fraudulent transfer, fraudulent conveyance, or aiding and abetting fraudulent conveyance—

4   you must next determine the full amount of the fraudulent transfers or conveyances made.  You

5   should include in this amount all of the transfers that you find to be fraudulent.  If there are any

6   transfers or conveyances Plaintiff has alleged that you find not to be fraudulent, you should not

7   include the amount of those transfers or conveyances in this calculation.  You must indicate the

8   total amount of each fraudulent transfer or conveyance, if any, in the appropriate place on your

9   verdict sheet.

1          **No. 16.  Claim Four: Breach of Fiduciary Duty**

2          The Plaintiff's fourth claim is that Defendants Rennert, D'Atri, Sadlowski, Fay, Ryan,

3    Legge, Thayer, Ogaard, Brown, and Kaplan breached their fiduciary duties to Magnesium

4    Corporation and Renco Metals.  You will reach this claim only if you conclude that MagCorp or

5    Renco Metals was insolvent or was inadequately capitalized as to a particular transfer.  I will

6    now instruct you on fiduciary duties owed by corporate officers and directors to their

7    corporations.

8          First, a corporate director or officer has a fiduciary duty of loyalty.  The duty of loyalty

9    requires that the officers and directors act in the best interest of the corporation and not act in any

10   manner contrary to those interests.

11         Second, a corporate director or officer has a fiduciary duty of care.  This is the duty to

12   perform their functions and responsibilities in a manner they reasonably believed to be in the

13   best interest of those corporations, and with the care that ordinarily prudent persons would

14   reasonably be expected to exercise in a like position and under similar circumstances.  The duty

15   of care has been described as the duty to act on an informed basis, and is violated if the Plaintiff

16   proves that the officers and director failed to inform themselves fully and in a deliberate manner.

17   The Plaintiff claims that the Defendants breached—that is, acted in violation of—at least one of

18   their fiduciary duties with respect to the dividend payments, stock redemptions, and the net

19   worth appreciation payments that they knew would leave the corporations insolvent or with

20   inadequate capital.

21         The duty of care is satisfied when a director or officer exercises a good faith effort to be

22   informed and exercises appropriate judgment for the benefit of the corporation in the

23   performance of his responsibilities.  Acting in good faith means acting honestly with a sincere

24   intention to deal fairly with others.  If so, you should find that the officer or director did not

25   violate his fiduciary duties.

26         When considering whether there was a breach of fiduciary duty, you should consider

27   each Defendant against whom this claim is raised separately.  Generally, it is the Plaintiff's

1  burden to show by a preponderance of the evidence that a particular Defendant committed a

2  breach of fiduciary duty.  However, if the Plaintiff has proven by a preponderance of the

3  evidence that an officer or director is interested in a transaction, the burden will shift to that

4  Defendant.  An officer or director is interested in a transaction if he either: (1) stands on both

5  sides of the transaction, or (2) expects to receive a personal financial benefit from the

6  transaction.

7      Each Defendant that is the subject of a claim for breach of fiduciary duty with respect to

8  a conveyance that the Plaintiff seeks to recover, and who was interested in the conveyance as

9  defined below, has the burden of establishing that the conveyance was entirely fair to the entity

10 (MagCorp or Renco Metals) of which the Defendant was an officer or director.

11     The entire fairness standard has two parts: fair dealing and fair price.

12     Fair dealing is concerned with how a conveyance was initiated, structured, negotiated,

13 disclosed, and how the approval of the conveyance was obtained.  Fair price is concerned with

14 the economic and financial considerations of the conveyance, including all relevant factors:

15 assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or

16 inherent value of a company's stock.

17     If you find that the Defendants did not breach their fiduciary duty to MagCorp or Renco

18 Metals, you need proceed no further. If you find that the Defendants did breach their fiduciary

19 duty, you must then decide whether that breach was a substantial factor in causing Magnesium

20 Corporation and Renco Metals to sustain damages. If you find that it was not a substantial factor

21 in causing these corporations to sustain damages, you need proceed no further. If you find that

22 the Defendants' breach was a substantial factor in causing the corporations to sustain damages,

23 you should find in favor of the Plaintiff on this claim.  You will then proceed to determining

24 damages, as I will discuss in a moment.

25     These are the specific companies that Plaintiff alleges specific Defendants owed fiduciary

26 duties to:

27

23

<u>As Director Of MagCorp And Renco Metals</u>

1.  Ira Rennert

<u>Individual Defendants As Officers Of MagCorp</u>

1.   Michael Legge
2.   Ron Thayer
3.   Howard Kaplan
4.   Todd Ogaard
5.   Lee Brown
6.   Michael Ryan (from September 25, 1998 to June 24, 2002)
7.   Dennis Sadlowski (from September 25, 1998 to June 24, 2002)

<u>Individual Defendants As Officers Of Renco Metals</u>

1.   Roger Fay
2.   Justin D'Atri
3.   Michael Ryan (from September 25, 1998 to June 24, 2002)
4.   Dennis Sadlowski (from September 25, 1998 to June 24, 2002)

1        **No. 17.  Claim Five: Aiding and Abetting Breach of Fiduciary Duty**

2        The Plaintiff's fifth claim is that Defendants Rennert, D'Atri, Fay, Sadlowski, Ryan,

3   Legge, Thayer, Ogaard, Brown, Kaplan, and The Renco Group aided and abetted a breach of

4   fiduciary duty.  To establish that those Defendants aided and abetted a breach of fiduciary duty,

5   the Plaintiff must demonstrate by a preponderance of the evidence that

6        1)  There was a breach of fiduciary duty

7        2)  The Defendant at issue knowingly induced or participated in that breach of fiduciary

8            duty, and

9        3)  That Magnesium Corporation and Renco Metals suffered damage as a result of the

10           breach of fiduciary duty.

11       If you find that the Defendants named in the Plaintiff's fourth claim, for breach of

12  fiduciary duty, did in fact commit a breach of fiduciary duty, then the first element of the

13  Plaintiff's aiding and abetting a breach of fiduciary duty is satisfied.  Conversely, if when

14  deciding the Plaintiff's third claim, you decide that none of the Defendants committed a breach

15  of fiduciary duty, you must find in favor of the Defendants on the Plaintiff's claim for aiding and

16  abetting a breach of fiduciary duty.

17       If you do find that there was an underlying breach of fiduciary duty, you must next

18  decide whether the Defendants knowingly induced or participated in that breach of fiduciary

19  duty.  A person "knowingly induces or participates" in a breach of fiduciary duty when he

20  provides substantial assistance to the person or people who commit the actual breach of fiduciary

21  duty.  The question for you, then, is whether the Defendants affirmatively assisted, helped to

22  conceal, or otherwise enabled a breach of fiduciary duty to occur.

23       If you find that a Defendant substantially assisted a breach of fiduciary duty, you do not

24  need to find that he *intended* to harm Magnesium Corporation or Renco Metals by aiding and

25  abetting the breach of fiduciary duty; you need only find that he had *actual knowledge* of the

26  breach of that duty when he induced or participated in it.

25

1          Finally, to be liable for aiding and abetting a breach of fiduciary duty, the underlying

2    breach must have caused damage to the debtor corporations.  Such damage can include rendering

3    them insolvent.

4          If you find that the Plaintiff has established all three elements of aiding and abetting a

5    breach of fiduciary duty by a preponderance of the evidence, you must find in his favor.

1     **No. 18.  Breach of Fiduciary Duty and Aiding & Abetting Breach of Fiduciary Duty:**

2                                                **Damages**

3         If you find that a Defendant committed a breach of his fiduciary duties as alleged in

4 Plaintiff's fourth claim, or aided and abetted a breach of fiduciary as alleged in Plaintiff's fifth

5 claim, and that the breach was a substantial factor in causing Magnesium Corporation or Renco

6 Metals to sustain damages, you must then determine the amount of damages that should be

7 awarded to the Plaintiff.  In that event, you will award the Plaintiff such an amount as you find to

8 be the actual damages sustained by way of the dividend payments, stock redemptions, and net

9 worth appreciation payments.

1   **No. 19.  Breach of Fiduciary Duty and Aiding & Abetting Breach of Fiduciary Duty:**

2   **Punitive Damages**

3       If you decide to award compensatory damages to the Plaintiff for a breach of fiduciary

4   duty or aiding and abetting a breach of fiduciary duty, you must determine whether a Defendant

5   who has been found liable is also liable for punitive damages.

6       Punitive damages are different from compensatory damages.  Compensatory damages are

7   awarded to compensate the Plaintiff for the injury suffered.  Punitive damages, on the other hand,

8   are awarded in addition to compensatory damages.

9       You may award punitive damages to punish a party for outrageous conduct and to deter a

10  party, and others like him, from engaging in similar conduct in the future.  To award punitive

11  damages, you must find by a preponderance of the evidence that the Defendants that you have

12  found breached their fiduciary duty engaged in willful or wanton conduct and acted maliciously

13  for the purpose of injuring the corporation.  Punitive damages cannot be awarded for mere

14  inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

15      Intentional conduct means it is the person's conscious object to engage in conduct of that

16  nature.  This standard requires that the Defendant foresee that his conduct threatens a particular

17  harm to another.

18      The law provides no fixed standards for the amount of punitive damages.

19      In determining any award of punitive damages, you may consider the nature of a

20  Defendant's conduct and the degree to which the conduct was reprehensible.  Finally, you may

21  assess an amount of damages that will deter the Defendant and others like him from similar

22  conduct in the future.  You may consider the Defendant's financial condition when evaluating

23  deterrence.

24      If you determine that there has been a breach of fiduciary duty, then in addition to

25  awarding damages to compensate Plaintiff for his injuries, you may, but you are not required to,

26  award the Plaintiff punitive damages if you find that the acts of a Defendant that breached a

27  fiduciary duty, or aided and abetted a breach of fiduciary duty, were wanton and malicious.

28

1   Punitive damages may be awarded for conduct that represents a high degree of immorality and

2   shows such gross, wanton dishonesty as to imply a criminal indifference to civil obligations.

3   The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant

4   for wanton and reckless or malicious acts and thereby to discourage the defendant and other

5   companies from acting in a similar way in the future.

6          An act is malicious when it is done deliberately with knowledge of the plaintiff's rights

7   and with the intent to interfere with those rights.  An act is wanton and reckless when it

8   demonstrates conscious indifference and utter disregard of its affect upon the health, safety and

9   rights of others.

10         In arriving at your decision as to the amount of punitive damages you should consider the

11   nature and reprehensibility of what a Defendant did.  That would include the character of the

12   wrongdoing, whether defendant's conduct demonstrated an indifference to, or a reckless

13   disregard of, the health, safety or rights of others, whether the acts were done with an improper

14   motive or vindictiveness, whether the acts constituted outrageous or oppressive intentional

15   misconduct, how long the misconduct went on, a defendant's awareness of what harm the

16   misconduct caused or was likely to cause, any concealment or covering up of the wrongdoing,

17   how often a defendant had committed similar acts of this type in the past, and the actual and

18   potential harm created by a defendant's misconduct.

19         Punitive damages against a corporation may be sustained even where the corporation has

20   not explicitly ratified the activities, so long as the alleged misconduct occurred within the scope

21   of the corporation's business and where the award would advance the goal of deterring wrongful

22   conduct by motivating the corporation to adequately supervise its employees.

29

1

2

## No. 20.  Claim 6A: Unlawful Payment of Dividends

3   Plaintiff's sixth claim is that Defendant Rennert made unlawful dividend payments and

4   unlawful stock redemptions.  You will reach this claim only if you conclude that there has been a

5   fraudulent transfer or fraudulent conveyance.  Under the law, a company may declare a dividend

6   out of its surplus, or if there is no surplus, out of its net profits from the year in which the

7   dividend was declared or the prior fiscal year.

8   A company's "surplus" is defined as the amount by which its net assets exceed the value

9   of its capital.  "Net assets," much like solvency, is defined as the value of a company's assets

10   minus the amount of its liabilities.  A company may determine for itself the amount of its assets

11   that constitute capital, and you should consider the evidence presented by the parties to

12   determine the amount of Magnesium Corporation's and Renco Metals's assets that should be

13   considered capital.

14   If you find that the debtor companies did not have a surplus, you should next consider

15   whether they had net profits for the year in which the dividend was declared, or the prior fiscal

16   year.  Net profits are the amount by which the money a company earned in a given year

17   exceeded its costs in that year.  A company that does not have a surplus may still pay dividends

18   out of its net profits.

19   Note that a company may *not* pay a dividend if it is insolvent when it pays the dividend,

20   or would be rendered insolvent by paying the dividend.  Insolvency here has the same definition

21   I gave to you earlier in Instruction Number 8.

22   Note also that when deciding whether to pay a dividend, a corporate director like

23   Defendant Rennert is not bound to strictly follow the corporation's balance sheet when deciding

24   whether the corporation may declare a dividend.  The touchstone, instead, is whether the

25   Defendant was acting in good faith.  Directors have reasonable latitude to depart from the

26   balance sheet to calculate surplus, so long as they evaluate assets and liabilities in good faith, on

1    the basis of acceptable data, by methods that they reasonably believe reflect present values, and

2    arrive at a determination of the surplus that is not so far off the mark as to constitute bad faith.

3          To demonstrate that Mr. Rennert made unlawful dividend payments and unlawful stock

4    redemptions, the Plaintiff must show, by a preponderance of the evidence, that Defendant

5    Rennert willfully or negligently caused a dividend to be paid or a stock redemption to occur

6    when Magnesium Corporation and Renco Metals either had no surplus or did not have a net

7    profit in the fiscal year the dividend was declared or the previous year.  I will explain these

8    elements in more detail.

9          First, you must determine whether Magnesium Corporation and Renco Metals properly

10    paid dividends out of a surplus or net profits, and that the payment did not exceed the amount of

11    the companies' surplus or net profits.  You must also find that the companies were solvent at the

12    time the dividends were paid.  Remember that this involves determining whether Mr. Rennert

13    valued the company's surplus in good faith and based on reasonable methods, and not whether

14    he was strictly correct.

15          Second, if you find that Magnesium Corporation and Renco Metals were insolvent at the

16    time that the dividends were paid and the stock redemptions were made, or that they did not have

17    the required surplus or net profits to pay the dividends, you must also determine whether

18    Defendants Rennert and the Renco Group were acting willfully or negligently when they paid

19    dividends or made the stock redemptions.  Willfulness and negligence here have the same

20    meaning that you would use in ordinary life.

21          A person's conduct is "negligent" if that person fails to exercise ordinary care.  It is a

22    failure to use that degree of care that a reasonably prudent person would have used under the

23    same circumstances.  Negligence may arise from doing an act that a reasonably prudent person

24    would not have done under the circumstances.

25          Willful conduct is more than negligence; it describes when a person intentionally acts,

26    knowing that his action will probably result in injury or damage.

31

1         Accordingly, if you find that the Plaintiff has proven by a preponderance of the evidence

2    that dividends were paid while Magnesium Corporation and Renco Metals were insolvent, and

3    that such action was taken willfully or negligently on the part of Defendant Rennert, you should

4    find that Defendant Rennert made unlawful dividend payments, and proceed to evaluate the

5    affirmative defense on which I will instruct you in a moment.

### No. 21.  Claim 6B: Unlawful Stock Redemptions

A second part of the Plaintiff's sixth claim is that Defendant Rennert made unlawful stock redemptions.  You will reach this claim only if you conclude that there has been a fraudulent transfer or fraudulent conveyance.  Under the law, a corporation may purchase shares of its own stock only out of surplus funds, as I have just defined them for you.  Accordingly, you must determine whether Defendant Rennert made stock redemptions in an amount exceeding Magnesium Corporation's and Renco Metals's surplus.  If you find that the Plaintiff has proven by a preponderance of the evidence that he did, you should find that Defendant Rennert made unlawful stock redemptions, and proceed to evaluate the affirmative defense on which I will now instruct you.

## No. 22.  Claims 6A and 6B: Good Faith Reliance Defense

Defendant Rennert has asserted a defense of good-faith reliance to the claims of unlawful dividends and stock redemptions, as described in the previous two instructions.  I earlier instructed you that Plaintiff must meet the burden of proof with respect to establishing his claims.  However, with respect to this affirmative defense, it is the Defendant's burden to prove by a preponderance of the evidence.

Under the law, a corporate director like Mr. Rennert is fully protected from liability on claims 6A and 6B (for unlawful dividends and unlawful stock redemptions) when he in relies in good faith upon the records of the corporation and upon information, opinions, reports or statements presented to the corporation by any of its officers or employees, or committees of the board of directors.

He is also protected from liability on claims 6A and 6B when relying on information presented to him by any other person as to matters the director reasonably believes are within such other person's professional or expert competence, and who has been selected with reasonable care by or on behalf of the corporation.  This protection applies to information as to the value and amount of the assets, liabilities and/or net profits of the corporation or any other facts pertinent to the existence and amount of surplus or other funds from which dividends might properly be declared and paid, or with which the corporation's stock might properly be purchased or redeemed.

Accordingly, if you find that Defendant Rennert relied in good faith on these matters when deciding whether to declare a dividend or redeem stock, you should find in his favor on the claims of unlawful dividend and unlawful stock redemption against him.  It is Defendant Rennert's burden to prove good faith reliance by a preponderance of the evidence.

1        **No. 23.  Claim 6C: Shareholder Liability for Unlawful Dividends**

2            Plaintiff's third allegation with respect to his sixth claim is that Defendant The Renco

3    Group, Inc., received the unlawful dividends alleged.  If you find that there was no unlawful

4    dividend, you should not consider this claim further.

5            Under the law, a shareholder is liable for and must repay unlawful dividends if it knew

6    the facts indicating that the dividend was unlawful when it received the dividend.  Accordingly,

7    if you find by a preponderance of the evidence that Defendant The Renco Group, Inc., knew the

8    facts indicating that the dividends it received were unlawful according to the instructions I have

9    just given you, you should find in favor of the Plaintiff on this claim.

1            **No. 24.  Unlawful Dividends and Unlawful Stock Redemptions: Damages**

2         If you find that the payment or receipt of unlawful dividends, as alleged in Plaintiff's

3 claims 6A and 6B, or the unlawful stock redemptions alleged in Plaintiff's claim 6C occurred,

4 you must then determine the amount of damages that should be awarded to the Plaintiff on those

5 claims.  If you find for the Plaintiff on any of these claims, you shall then find the full amount of

6 the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or

7 redemption of the corporation's stock, and indicate that amount in the appropriate place on the

8 verdict form.

1      **No. 25.  Claim Seven: Unjust Enrichment**

2            The Plaintiff's seventh claim is that Defendants Ira Rennert and Trustees of the Rennert

3      Trusts were unjustly enriched at Magnesium Corporation's and Renco Metals's expenses.  The

4      Defendants deny these claims, and contend that Mr. Rennert and the Trustees of the Rennert

5      Trusts did not receive any direct benefits at the expense of Magnesium Corporation or Renco

6      Metals, and that Magnesium Corporation and Renco Metals were not harmed by any of those

7      Defendants' actions.

8            Unjust enrichment occurs when one person or entity has obtained money, property, or a

9      direct benefit from another person or entity, that the recipient is not entitled to receive and under

10     such circumstances that, in fairness and good conscience, the money, property or direct benefit

11     should not be retained. In those circumstances, the law requires that person who received the

12     direct benefit to repay, return the property to, or compensate the other person.

13           The Plaintiff has the burden of proving by a preponderance of the evidence that

14     Defendant Rennert and the Rennert Trusts received a direct benefit from the Debtor Companies,

15     and that the Debtor Companies were harmed as a result.  If the Plaintiff has not proven to you

16     that it is more likely than not that the Defendants received a direct benefit from the Debtor

17     Companies, that it would be against fairness and good conscience for Mr. Rennert or the Rennert

18     Trusts to retain that direct benefit, and that the Debtor Companies were harmed because they

19     gave that direct benefit to the Defendants, you must find for the Defendants on this claim.  If you

20     decide that the Plaintiff has proven each of those elements, you will find that the Defendants

21     liable to the Plaintiff and you will go on to consider the value of the direct benefit that the

22     Defendant obtained.

23           Your task with regard to this claim is to make three findings.  First, you must decide

24     whether Defendants Rennert and the Rennert Trusts received a direct benefit from the debtor

25     companies.  If you find that they did not receive a direct benefit, you need proceed no further

26     with this claim.  If you find they did receive a direct benefit, you must determine whether the

27     debtor companies were harmed by conveying this direct benefit.  If you find that they were, you

1    must find in favor of the Plaintiff on this claim, and will now consider damages.  If you find that

2    the debtor companies were not harmed by conveying this direct benefit, you must find in favor of

3    the Defendants.

1

**No. 26.  Unjust Enrichment: Damages**

2      If you find in the Plaintiff's favor on claim seven, for unjust enrichment, you must next

3    determine the amount of damages that should be awarded to the Plaintiff on this claim.  To do so,

4    you must determine the value of the direct benefit conferred on the Defendants by the debtor

5    companies.  On your verdict sheet, the amount of damages you indicate should be equal to the

6    value of the direct benefit that was directly conferred by the Defendants.  It is the Plaintiff's

7    burden to prove this amount by a preponderance of the evidence.

1      **No. 27.  Agreed Instruction Regarding Ira Rennert's Wealth**

2          You have heard testimony about Mr. Rennert's wealth.  This evidence has been admitted

3      for a single, limited purpose and I want to explain to you the sole basis on which you should

4      consider this evidence.

5          Mr. Rennert's wealth has no bearing on any issue in this case.  The fact that he is wealthy

6      is irrelevant to this case and it does not make it more or less likely that he or any other defendant

7      is liable for any claim.

8          Mr. Buchwald presented evidence regarding the property owned by Blue Turtles Inc. for

9      the exclusive purpose of being used by Mr. Rennert and his family.  That evidence is only

10     relevant to Mr. Buchwald's contention that the proceeds of the dividends paid by Renco Metals

11     to The Renco Group, Inc., benefitted Mr. Rennert personally.

12         If you find that Mr. Buchwald has proven that dividend proceeds were used in part to

13     purchase land, you may consider this evidence in assessing what, if any, benefit Mr. Rennert

14     personally received.

15         If you find that Mr. Buchwald has failed to prove that the proceeds of the dividends were

16     used to purchase land, you should disregard all evidence about the land and Mr. Rennert's

17     wealth.  In that case, this evidence should play no role in your deliberations.

### No. 28.  Nature of Evidence

The evidence in this case is the sworn testimony of witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of the statement, and if there is no direct evidence in the record proving that assumed fact to be true, you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## No. 29.  Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  One kind of direct evidence is a witness's testimony about something the witness knows by virtue of her or his own senses—something the witness has seen, felt, touched or heard.  Direct evidence may also be in the form of an exhibit.  The other type of evidence is circumstantial evidence.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.  There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else then walks in with a raincoat that is also dripping wet.

Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of the facts that I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.  Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.  Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

### No. 30.  Inferences

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

1                                  **No. 31.  Credibility of Witnesses**

2        Now for the important subject of evaluating testimony.  How do you evaluate the

3 credibility or believability of the witnesses?  The answer is that you use your plain common

4 sense.  Common sense is your greatest asset as a juror.  You should ask yourselves, did the

5 witness impress you as honest, open, and candid?  Or did the witness appear evasive or as though

6 the witness were trying to hide something?  How responsive was the witness to the questions

7 asked on direct examination and on cross-examination?

8        If you find that a witness is intentionally telling a falsehood, such a finding is always a

9 matter of importance that you should weigh carefully.  If you find that any witness has lied under

10 oath at this trial, you should view the testimony of such a witness cautiously and weigh it with

11 great care.  It is, however, for you to decide how much of the witness's testimony, if any, you

12 wish to believe.  Few people recall every detail of every event precisely the same way.  A

13 witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely

14 believable and truthful in other respects.  It is for you to determine whether such inconsistencies

15 are significant or inconsequential, and whether to accept or reject all or to accept some and reject

16 the balance of the testimony of any witness.

17        On some occasions during this trial, witnesses were asked to explain an apparent

18 inconsistency between testimony offered at this trial and previous statements made by the

19 witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how

20 much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at

21 trial.  You may consider evidence of a prior inconsistent statement by a witness who is not a

22 party only insofar as it relates to that witness's credibility, and may not consider it as evidence of

23 a defendant's liability, except for statements that have been received in evidence.  You may

1    consider evidence of a party's prior inconsistent statement for whatever light you find it sheds on

2    the issues in this case.

3          You are not required to accept testimony even though the testimony is uncontradicted and

4    the witness's testimony is not challenged.  You may decide because of the witness's bearing or

5    demeanor, or because of the inherent improbability of the testimony, or for other reasons

6    sufficient to yourselves that the testimony is not worthy of belief.  On the other hand, you may

7    find, because of a witness's bearing and demeanor and based upon your consideration of all the

8    other evidence in the case, that the witness is truthful.

9          In evaluating the credibility of the witnesses, you should take into account any evidence

10   that a witness may benefit or suffer in some way from the outcome of the case.  Such interest in

11   the outcome creates a motive to testify falsely and may sway a witness to testify in a way that

12   advances his or her own interests.  Therefore, if you find that any witness whose testimony you

13   are considering may have an interest in the outcome of this trial, then you should bear that factor

14   in mind when evaluating the credibility of his testimony, and accept it with great care.

15         Keep in mind, though, that it does not automatically follow that testimony given by an

16   interested witness is to be disbelieved.  There are many people who, no matter what their interest

17   in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on

18   your own perceptions and common sense, to what extent, if at all, the witness' interest has

19   affected her or his testimony.

20         Thus, there is no magic formula by which you can evaluate testimony.  You bring to this

21   courtroom all your experience.  You determine for yourselves in many circumstances the

22   reliability of statements that are made by others to you and upon which you are asked to rely and

23   act.  You may use the same tests here that you use in your everyday lives.  Among the factors

1    you may consider are the witness's intelligence; the ability and opportunity the witness had to

2    see, hear, or know about the things that the witness testified about; the witness's memory; any

3    interest, bias, or prejudice the witness may have; the manner of the witness while testifying; and

4    the reasonableness of the witness's testimony in light of all the evidence in the case.

1

### No. 32.  Deposition Testimony

2      Some of the testimony before you is in the form of depositions which have been

3      received in evidence. A deposition is simply a procedure where the attorneys for one side

4      may question a witness or an adverse party under oath before a stenographer prior to trial.

5      This is part of the pretrial discovery, and each side is entitled to take depositions. You may

6      consider the testimony of a witness given at a deposition and received in evidence during the

7      trial according to the same standards as you would use to evaluate the testimony of a witness

8      given at trial.

1

**No. 33.  Expert Witnesses**

2       In this case, I have permitted certain witnesses to express their opinions about matters

3 that are in issue.  A witness may be permitted to testify to an opinion on those matters about

4 which he or she has special knowledge, skill, experience, and training.  Such testimony is

5 presented to you on the theory that someone who is experienced and knowledgeable in the field

6 can assist you in understanding the evidence or to reaching an independent decision on the facts.

7       In weighing this opinion testimony, you may consider the witness's qualifications, his or

8 her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily

9 apply when you are deciding whether or not to believe a witness's testimony.  You may give the

10 opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this

11 case.  You should not, however, accept opinion testimony merely because I allowed the witness

12 to testify concerning his or her opinion.  Nor should you substitute it for your own reason,

13 judgment, and common sense.  The determination of the facts in this case rests solely with you.

1          <u>**No. 34.  Conflicting Expert Testimony**</u>

2          You have heard testimony of expert witnesses who have been called by both sides to give

3    their opinions on several important issues in the case.

4          The witnesses who testified in this case did so in order to assist you in reaching a

5    decision on the issues before you.

6          The testimony of these witnesses is in conflict. They disagree. You must remember that

7    you are the sole trier of the facts and their testimony relates to a question of fact—so it is your

8    job to resolve the disagreement.

9          The way you resolve the conflict between these witnesses is the same way that you

10   decide other fact questions and the same way you decide whether to believe ordinary witnesses.

11   In addition, since they gave their opinions, you should consider the soundness of each opinion,

12   reasons for the opinion and the witness' motive, if any, for testifying.

13         You may give the testimony of each of these witnesses such weight, if any, that you think

14   it deserves in the light of all the evidence. You should not permit a witness' opinion testimony to

15   be a substitute for your own reason, judgment, and common sense.

16         You may reject the testimony of any opinion witness in whole or in part, if you conclude

17   the reasons given in support of an opinion are unsound or, if you, for other reasons, do not

18   believe the witness. The determination of the facts in this case rests solely with you.

1                                    **No. 35.  Stipulations**

2         Stipulations have been entered into relating to various facts in this case.  A stipulation is

3 an agreement between parties as to what certain facts were or what the testimony would be if

4 certain people testified before you.  The stipulations are the same for your purposes as the

5 presentation of live testimony.  You should consider the weight to be given such evidence just as

6 you would any other evidence.

1          **No. 36.  Right to See Exhibits and Hear Testimony**

2          You are about to go into the jury room and begin your deliberations.  The exhibits

3   will be sent back to you in the jury room.  If you want any of the testimony read back to you,

4   you may also request that.  Please remember that it is not always easy to locate what you

5   might want, so be as specific as you possibly can in requesting portions of the testimony.

6          Your requests for exhibits or testimony – in fact any communication with the court –

7   should be made to me in writing, signed by your foreperson, and given to one of the

8   marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until

9   after a unanimous verdict is reached.

**No. 37.  Juror Note-Taking**

I remind you that any notes you may have taken are simply to be used solely to assist you and are not to substitute for your recollection of the evidence in the case. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

### No. 38.  Deliberation and Verdict

The verdict must represent the considered judgment of each juror.  The verdict must be unanimous as to each question on the special verdict form.

After your deliberations are complete and you have the verdict, you will indicate your verdict on the extra copy of the special verdict form that has been distributed to you.  You will all sign at the bottom of it and advise the Marshal that a verdict has been reached.  It is important that you adhere strictly to the instructions on the form.  Please do not add anything that is not called for by the special verdict form and please skip any questions that the instructions require you to skip based on your answers to the previous questions.

The purpose of the questions on the verdict form is to help us—the Court, the attorneys, the Plaintiff, and the Defendants—understand what your findings are.  No inference is to be drawn as to what the answers should be.  The questions are not to be taken as any indication that I have any opinion as to how they should be answered.  I have no such opinion.

Now, finally, with respect to your deliberations.  Your first task will be to select a foreperson.  The foreperson has no greater voice or authority than any other juror but is the person who will communicate with the Court when questions arise.

The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the Marshal that the jury has a verdict, and you will come into open court and give your verdict.

### No. 39.  Closing Comment

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact.  I know you will try the issues that have been presented to you according to the oath that you have taken as jurors.  In that oath you promised that you would well and truly try the issues joined in this case and a true verdict render.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold the center stage in the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

Your decision must be unanimous.  You are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including the Court, at any time during your deliberations.  Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse to say this: you should treat each other with courtesy and respect during your deliberations.

During your deliberations, you will have the exhibits available to you.  You may also ask for portions of the testimony, but please try to be as specific as you can in requesting testimony.  It may take time to provide you the testimony once you request it, so please be patient.

If you have questions for the Court, just send me a note.  As I said, you will have a copy of this set of instructions to take with you into the jury room.

1       All litigants stand equal in this room.  All litigants stand equal before the bar of justice.

2   All litigants stand equal before you.  Your duty is to decide between these parties fairly and

3   impartially, and to see that justice is done.  You should be guided solely by the evidence

4   presented during the trial and the law as I gave it to you, without regard to the consequences of

5   your decision.  You have been chosen to try the issues of fact and reach a verdict on the basis of

6   the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking, there is

7   a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair

8   trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

9       Members of the jury, I ask your patience for a few moments longer.  Please remain

10  patiently in the jury box without speaking with each other.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lee E. Buchwald, as Trustee for Magnesium
Corporation of America and Renco Metals, Inc.,

                Plaintiff,

     –v–

The Renco Group, *et al.*,

            Defendants.

13-CV-7948 (AJN)

## DRAFT SPECIAL VERDICT FORM

## AFTER SECOND CHARGING CONFERENCE

### February 23, 2015

1

**Instructions:** You answer must be unanimous as to each question.  The foreperson should place a check mark next to your unanimous answer to each question.  Some questions must be answered only if a certain answer was given to a previous question, so please follow the directions regarding when to skip questions.  Unless there are specific instructions regarding a question, assume you must answer it.

**Proceed to Question 1.**

### A. Fraudulent Transfer (Claim 1)

1.  Do you find that the Plaintiff has proven that Magnesium Corporation (MagCorp) or Renco Metals was insolvent on, or rendered insolvent because of transfers made on, any of the following dates, using the definition of insolvency provided in Instruction No. 8? Check "Yes" or "No" for each date.

      a.   December 8, 1995

YES \_\_\_\_              NO \_\_\_\_

      b.   February 12, 1996

YES \_\_\_\_              NO \_\_\_\_

      c.   May 16, 1996

YES \_\_\_\_              NO \_\_\_\_

      d.   July 3, 1996

YES \_\_\_\_              NO \_\_\_\_

      e.   May 19, 1997

YES \_\_\_\_              NO \_\_\_\_

      f.   July 30, 1997

YES \_\_\_\_              NO \_\_\_\_

      g.   January 5, 1998

YES \_\_\_\_              NO \_\_\_\_

2

    h.   June 4, 1998

YES _____                              NO _____

    i.   October 14, 1998

YES _____                              NO _____

**Proceed to Question 2.**

2.   Do you find that the Plaintiff has proven that Magnesium Corporation (MagCorp) or Renco Metals was left with unreasonably small capital because of transfers made on any of the following dates, using the definition of unreasonably small capital provided in Instruction No. 10?  Check "Yes" or "No" for each date.

    a.   December 8, 1995

YES _____                              NO _____

    b.   February 12, 1996

YES _____                              NO _____

    c.   May 16, 1996

YES _____                              NO _____

    d.   July 3, 1996

YES _____                              NO _____

    e.   May 19, 1997

YES _____                              NO _____

    f.   July 30, 1997

YES _____                              NO _____

    g.   January 5, 1998

YES _____                              NO _____

3

    h.  June 4, 1998

YES _____                    NO _____

    i.  October 14, 1998

YES _____                    NO _____

**Proceed to Question 3.**

3. Do you find that the Plaintiff has proven that Magnesium Corporation (MagCorp) or Renco Metals intended or believed that it would incur debts beyond its ability to pay as they became due because of transfers made on any of the following dates, as described in Instruction No. 7? Check "Yes" or "No" for each date.

    a.  December 8, 1995

YES _____                    NO _____

    b.  February 12, 1996

YES _____                    NO _____

    c.  May 16, 1996

YES _____                    NO _____

    d.  July 3, 1996

YES _____                    NO _____

    e.  May 19, 1997

YES _____                    NO _____

    f.  July 30, 1997

YES _____                    NO _____

    g.  January 5, 1998

YES _____                    NO _____

h.  June 4, 1998

YES ____                    NO ____

i.  October 14, 1998

YES ____                    NO ____

**If you answered "No" to every part of Question 1, every part of Question 2, AND every part of Question 3, <u>skip</u> to Question 7 below.  Otherwise, proceed to answer Questions 4, 5, and 6.**

4.  This question involves only the Defendant The Renco Group, Inc.  If you answered YES to any portion of Question 1, Question 2, and/or Question 3, I instruct you that Defendant The Renco Group, Inc. is liable for fraudulent transfer(s).  Accordingly, if you answered YES to any portion of Question 1, Question 2, and/or Question 3,  you are directed to indicate YES to this Question: Do you find that the Plaintiff has proven that The Renco Group, Inc., is liable for fraudulent transfers in the 1996-1998 period, as they were defined in Instruction No. 7?

YES ____

**If you answered Question 4, proceed to Question 5.**

5.  This question involves the individual Defendants listed below.  If you answered YES to any portion of Question 1, Question 2, and/or Question 3, you must also determine if the Plaintiff has proven that Magnesium Corporation received less than a reasonably equivalent value in exchange for the transfer.  Thus, if you answered YES to any portion of Question 1, Question 2, and/or Question 3, you must answer the following question as to each Defendant: Do you find that the Plaintiff has proven that any of the following Defendants are liable for fraudulent transfers, as they were defined in Instruction No. 7? Check "Yes" or "No" for each Defendant.

a.  Ira Rennert
    YES ____                    NO ____
b.  Michael Legge
    YES ____                    NO ____
c.  Ron Thayer
    YES ____                    NO ____

5

    d.  Todd Ogaard

        YES _____              NO _____

    e.  Lee Brown

        YES _____              NO _____

    f.   Howard Kaplan

        YES _____              NO _____

**If you answered Question 5, proceed to Question 6.**

6. If you answered YES with regard a Defendant in Question 4 or Question 5, what amount of damages do you find the Plaintiff has proven that Defendant is responsible for, using the guidance at Instruction No. 15? Answer only with regard to Defendants for whom you answered "YES" in Question 4 or Question 5.

    a.   The Renco Group    $_____

    b.   Ira Rennert          $_____

    c.   Michael Legge      $_____

    d.   Ron Thayer          $_____

    e.   Todd Ogaard        $_____

    f.   Lee Brown           $_____

    g.   Howard Kaplan     $_____

**Proceed to Question 7.**

**B. Fraudulent Conveyance (Claim 2)**

7. Do you find that the Plaintiff has proven that any of the following Defendants are liable for fraudulent conveyances under New York law, as they were defined in Instruction Nos. 11-13? Check "Yes" or "No" for each Defendant.

6

a.  Ira Rennert
     YES _____                   NO _____

b.  Michael Legge
     YES _____                   NO _____

c.  Ron Thayer
     YES _____                   NO _____

d.  Todd Ogaard
     YES _____                   NO _____

e.  Lee Brown
     YES _____                   NO _____

f.  Howard Kaplan
     YES _____                   NO _____

g.  The Renco Group, Inc.
     YES _____                   NO _____

h.  Trustees of the Rennert Trusts
     YES _____                   NO _____

**If you answered "No" as to all Defendants in <u>all parts of Questions 1, 2, 3, and 7,</u> <u>skip</u> to Question 21.**

**If you answered "No" as to all Defendants in Question 7, but answered "Yes" to at least one part of Question 1, Question 2, or Question 3, <u>skip</u> to Question 11.**

**If you answered at least one "Yes" to Question 7, proceed to Question 8.**

8.  If you answered "YES" with regard to any Defendant in Question 7, what measure of damages do you find that the Plaintiff has proven that the Defendant(s) are responsible for, using the guidance at Instruction No. 15?  Answer this question with respect to a particular Defendant <u>only</u> if you found that Defendant liable by answering YES to Question 7.  Leave the space next to any other Defendant(s) blank.

    a.  Ira Rennert       $ _____

    b.  Michael Legge   $ _____

    c.  Ron Thayer      $ _____

    d.  Todd Ogaard     $ _____

    e.  Lee Brown       $ _____

    f.  Howard Kaplan   $ _____

7

g.   The Renco Group, Inc.         $ _____

h.   Trustees of the Rennert Trusts    $ _____

**If you answered any portion of Question 8, proceed to Question 9.**

**C.  Aiding and Abetting Fraudulent Conveyances (Claim 3)**

9.  **Answer only if you marked at least one "YES" answer in Question 7 to at least one Defendant other than Ira Rennert.**  If you answered "No" to all parts of Question 7, or your only "Yes" answer to Question 7 was to Ira Rennert, <u>skip</u> to Question 11.

Do you find that the Plaintiff has proven that Defendant Ira Rennert aided and abetted fraudulent conveyances on any of the following dates under the standard defined in Instruction No. 14?  Check "Yes" or "No" for each date.

a.   December 8, 1995

YES _____                    NO _____

b.   February 12, 1996

YES _____                    NO _____

c.   May 16, 1996

YES _____                    NO _____

d.   July 3, 1996

YES _____                    NO _____

e.   May 19, 1997

YES _____                    NO _____

f.   July 30, 1997

YES _____                    NO _____

8

    g.  January 5, 1998

YES _____                  NO _____


    h.  June 4, 1998

YES _____                  NO _____


    i.  October 14, 1998

YES _____                  NO _____

**If you answered "No" to all parts of Question 9, <u>skip</u> to Question 11.  If you answered "Yes" to any portion of Question 9, proceed to Question 10.**

10. If you answered "YES" to any part of Question 9, what measure of damages do you find that the Plaintiff has proven that Defendant Ira Rennert is responsible for with regard to aiding and abetting fraudulent conveyances, using the guidance at Instruction No. 15?

      $ _____

**Proceed to Question 11.**

**D.  Breach of Fiduciary Duty and Aiding & Abetting Breach of Fiduciary Duty (Claims 4 & 5)**

11. With respect to any transfer for which you found MagCorp or Renco Metals insolvent or inadequately capitalized, do you find that the Plaintiff has proven that any of the following Defendants committed a breach of a fiduciary duty as defined in Instruction No. 16?  Check "Yes" or "No" for each Defendant.

    a.  Ira Rennert

        YES _____             NO _____

    b.  Michael Legge

        YES _____             NO _____

9

c. Ron Thayer

YES _____          NO _____

d. Howard Kaplan

YES _____          NO _____

e. Todd Ogaard

YES _____          NO _____

f. Lee Brown

YES _____          NO _____

g. Roger Fay

YES _____          NO _____

h. Justin D'Atri

YES _____          NO _____

i. Michael Ryan

YES _____          NO _____

j. Dennis Sadlowski

YES _____          NO _____

**If you answered "No" to all Defendants in Question 11, <u>skip</u> to Question 15 below. Otherwise, proceed to answer Questions 12, 13, and 14.**

12. **Answer only if you marked at least one "YES" answer to Question 11.** Do you find that the Plaintiff has proven that any of the following Defendants aided and abetted a breach of fiduciary duty as defined in Instruction No. 17? Check "Yes" or "No" for each Defendant.

a.  Ira Rennert

    YES _____            NO _____

b.  Michael Legge

    YES _____            NO _____

c.  Ron Thayer

    YES _____            NO _____

d.  Howard Kaplan

    YES _____            NO _____

e.  Todd Ogaard

    YES _____            NO _____

f.  Lee Brown

    YES _____            NO _____

g.  Roger Fay

    YES _____            NO _____

h.  Justin D'Atri

    YES _____            NO _____

i.  Michael Ryan

    YES _____            NO _____

j.  Dennis Sadlowski

    YES _____            NO _____

11

k.  The Renco Group

YES _____          NO _____

**If you answered Question 12, proceed to Question 13.**

13. If you answered "YES" with regard to a particular Defendant in Question 11 or Question 12, what level of damages do you find that the Plaintiff has proven that Defendant responsible for, using the guidance in Instruction No. 18?  Answer <u>only</u> with regard those Defendants for which you found liability by answering "YES" to Question 11 and/or Question 12.  <u>DO NOT</u> include any amount for punitive damages in your answer to this question.

a.  Ira Rennert

$_____

b.  Michael Legge

$_____

c.  Ron Thayer

$_____

d.  Howard Kaplan

$_____

e.  Todd Ogaard

$_____

f.  Lee Brown

$_____

g.  Roger Fay

$_____

h.  Justin D'Atri

$_____

i.  Michael Ryan

$_____

j.  Dennis Sadlowski

$_____

k.  The Renco Group

$_____

**If you answered any part of Question 13, proceed to Question 14.**

14. Punitive Damages: If you answered "YES" with regard to a particular Defendant in Question 11 or Question 12, you must determine whether the Plaintiff has proven that punitive damages should be imposed against that Defendant. Accordingly, you should answer this Question only with regard to those Defendants you found liable in Question 11 or Question 12 by answering "Yes" as to that Defendant. For all Defendants to whom you gave a "Yes" answer in Question 11 or Question 12, you must first indicate whether you find that punitive damages should be imposed against that Defendant, using the guidance in Instruction No. 19. To do this, check "Yes" or "No" next to the Defendant's name. Second, if you answered "Yes" to any particular Defendant, you must indicate the amount of punitive damages that the Defendant should be responsible for on the line below his name.

a.  Ira Rennert        YES _____                NO _____

$_____

b.  Michael Legge    YES _____                NO _____

$_____

c.  Ron Thayer        YES _____                          NO _____

    $_____


d.  Howard Kaplan   YES _____                          NO _____

    $_____


e.  Todd Ogaard      YES _____                          NO _____

    $_____


f.  Lee Brown        YES _____                          NO _____

    $_____

g.  Roger Fay        YES _____                          NO _____

    $_____

h.  Justin D'Atri    YES _____                          NO _____

    $_____

i.  Michael Ryan     YES _____                          NO _____

    $_____

j.  Dennis Sadlowski      YES _____                          NO _____

    $_____

k.  The Renco Group      YES _____                          NO _____

    $_____


**Proceed to Question 15.**

14

**E. Unlawful Dividends and Unlawful Stock Redemptions (Claims 6A, 6B, & 6C)**

15. Do you find that the Plaintiff has proven that Defendant Ira Rennert made unlawful dividend payments as defined in Instruction No. 20?

    YES _____                    NO _____

**Proceed to Question 16.**

16. Do you find that the Plaintiff has proven that Defendant Ira Rennert made unlawful stock redemptions as defined in Instruction No. 21?

    YES _____                    NO _____

**If you answered "No" to both Question 15 and Question 16, <u>skip</u> to Question 21.  If you answered "Yes" to Question 15, Question 16, or both, answer Question 17.**

17. Do you find that Defendant Rennert has met his burden of establishing a good faith defense, as defined in Instruction No. 22?

    YES _____                    NO _____

**If you answered "Yes" to Question 17, <u>skip</u> to Question 21.  If you answered "No," proceed to Questions 18 and 19.**

18. If you answered YES to Question 15 and/or Question 16, and NO to Question 17, what measure of damages do you find the Plaintiff has proven that Defendant Ira Rennert is responsible for, using the guidance at Instruction No. 24?

    $_____

**If you answered Question 18, proceed to Question 19.**

19. Do you find that the Plaintiff has proven that Defendant The Renco Group, Inc., is liable for unlawful dividends under the standard as I have defined it for you in Instruction No. 23?

    YES _____                    NO _____

**If you answered "No" to Question 19, <u>skip</u> to Question 21.  If you answered "Yes" to Question 19, answer Question 20.**

15

20. If you answered YES to Question 19, what measure of damages do you find that the Plaintiff has proven that Defendant The Renco Group, Inc., is responsible for, using the guidance at Instruction No. 24?

$\underline{\hspace{4in}}$

**Proceed to Question 21.**

### F.  Unjust Enrichment (Claim 7)

21. Do you find that the Plaintiff has proven that Defendants Ira Rennert or the Trustees of the Rennert Trusts received a direct benefit from Magnesium Corporation and/or Renco Metals that Defendants Ira Rennert or the Trustees of the Rennert Trusts were not entitled to receive?

YES \_\_\_\_                          NO \_\_\_\_

**If you answered "No" to Question 21, <u>do not</u> answer Questions 22 and 23.  If you answered "Yes" to Question 21, proceed to Question 22.**

22. If you answered "Yes" to Question 21, do you find that Magnesium Corporation and/or Renco Metals was harmed by conveying the direct benefit you identified in response to Question 21?

YES \_\_\_\_                          NO \_\_\_\_

**If you answered "No" to Question 22, <u>do not</u> answer Question 23.  If you answered "Yes" to Question 22, proceed to Question 23.**

23. If you answered "Yes" to Question 22, what do you find was the value of the benefit conferred by MagCorp and/or Renco Metals on Defendants Ira Rennert and Trustees of the Renco Trusts?

$\underline{\hspace{4in}}$

After completing the form, each juror who agrees with the verdict must sign below:

_____          _____
**Foreperson**


_____          _____


_____          _____


_____          _____


_____          _____


                                         DATED: _____