UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                                                         :

LEE E. BUCHWALD, as Chapter 7 Trustee for    :   Case No. 1:13-CV-07948-AJN
Magnesium Corporation of America and Related  :
Debtor, Renco Metals, Inc.,                             :   **TRUSTEE'S BRIEF RE JURY**
                                                                                X   **INSTRUCTION OPEN ISSUES**
                 Plaintiff,                               :   **AND QUESTIONS FROM JURY**
                                                                                  :   **CHARGE CONFERENCE ON**
                 vs.                                        :   **FRIDAY, 20 FEBRUARY 2015**
                                                                                  X

THE RENCO GROUP, INC., a Delaware
corporation; K. SABEL HOLDINGS, INC., an
Alabama corporation; KPMG PEAT
MARWICK LLP; DONALDSON, LUFKIN &
JENRETTE SECURITIES CORPORATION;
HOULIHAN LOKEY HOWARD & ZUKIN;
CADWALADER, WICKERSHAM & TAFT,
LLP; IRA LEON RENNERT; ROGER L. FAY;
JUSTIN W. D'ATRI; DENNIS A.
SADLOWSKI; MICHAEL C. RYAN;
MICHAEL H. LEGGE; RON L. THAYER;
TODD R. OGAARD; LEE R. BROWN;
HOWARD I. KAPLAN; KEITH SABEL;
UNIDENTIFIED TRUSTEES of Trusts
Established by Ira Leon Rennert; and DOES I
through XX,

                 Defendants.

------------------------------------------------------------ X

188423

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ........................................................................ 1

II. CHOICE OF LAW FOR THE FRAUDULENT CONVEYANCE CLAIMS AGAINST UTAH DEFENDANTS (FORMER MAGCORP OFFICERS)........................................................................ 1

III. DIRECT OR INDIRECT BENEFIT FOR UNJUST ENRICHMENT CLAIM........................................................................ 5

IV. UNDERLYING CONDUCT REQUIRED TO SUPPORT AN UNJUST ENRICHMENT CLAIM ........................................................................ 7

V. PUNITIVE DAMAGES FOR BREACHES OF FIDUCIARY DUTY, OR FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY BY OTHERS ........................................................................ 8

**I.      INTRODUCTION**

The following questions were left open for further briefing at the conclusion of the Jury Charge Conference on Friday, 20 February 2015.  The first addressed below is choice of law for the fraudulent conveyance claims against the Utah Defendants (former officers of MagCorp), and the possibility of combining or collapsing the fraudulent transfer and fraudulent conveyance instructions into a single set of instructions; the second is whether a claim for unjust enrichment requires a "direct" benefit to the Defendant; the third is the nature of the conduct or circumstances required to support a claim for unjust enrichment;; and the fourth is the basis for an instruction on the Trustee's claim for punitive damages, which is based upon the Trustee's claims for breach of fiduciary duty, as well as the tort claims for aiding and abetting breach of fiduciary duty and aiding and abetting fraudulent conveyances.

**II.     <u>CHOICE OF LAW FOR THE FRAUDULENT CONVEYANCE CLAIMS AGAINST UTAH DEFENDANTS (FORMER MAGCORP OFFICERS)</u>**

The Trustee's right to recover fraudulent conveyances under New York (or Utah) law arises under Bankruptcy Code Section 544[1] which refers to transfers "voidable under applicable law by a creditor ..." The "applicable law" in this case is the relevant state law that would permit the transfer (or "conveyance" if so described in state law) to be avoided by such a creditor.

Because the Court is sitting in New York in a case in which state law provides the rule of decision, the Court should apply New York's choice of law rules and "interest analysis" to determine what state law to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496

---

[1] Section 544 says: "Except as provided in paragraph (2) [dealing with an exception for charitable contributions], the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title."

1

(1941). New York's choice of law analysis is focused on deciding which jurisdiction, "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Cooney v. Osgood Mach.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993), quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743 (1963).

Assuming a conflict between the laws, a preliminary inquiry in the New York interest analysis is whether the substantive law at issue constitutes a "conduct-regulating" or a "loss-allocating" rule. Conduct-regulating rules are those which people use as a guide to govern their primary conduct. *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90 (1985); *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310 (1994) (the jurisdiction [that] has the greatest interest in regulating behavior within its borders").

Fraudulent conveyance laws are conduct-regulating laws under New York's choice of law analysis. *Drenis v. Haligannis,* 452 F.Supp.2d 418, 427 (S.D.N.Y.2006):

> New York's interest analysis requires that 'the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' " *Thelen*, 736 F.3d at 219 (alterations in original) (*quoting GlobalNet,* 449 F.3d at 384). "[G]iven that fraudulent conveyance laws are 'conduct regulating,' the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Lyman,* 2014 WL 476307, at *3; *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F.Supp.2d 198, 215–16 (S.D.N.Y.2002) (finding that Canadian law applied to plaintiffs' fraudulent conveyance claim because "the conveyance alleged by [the plaintiffs] to be fraudulent—the transfer of funds held by [one defendant] to the [other defendants]—took place in Canada").

This is consistent with New York interest analysis generally with respect to conduct-regulating statutes and laws. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 739 F.3d 45, 50–51 (2d Cir.2013) (when the alleged wrongful conduct occurs in a place different from the place of

2

188423

injury, the Second Circuit dictates that "**it is the place of the allegedly wrongful conduct that generally has superior 'interests** …") (*quoting Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 684–85 (1985)).

In *Lyman Commerce Solutions, Inc. v. Lung,* 2014 WL 476307 (S.D.N.Y. 2014), the Court addressed the same choice of law issue that was discussed at the Jury Charge Conference on Friday:

> **Plaintiff alleges that these payments**, which were made during a pending court proceeding by MUDD to its officers and owners located in New York, **were fraudulent conveyances under New York Debtor and Creditor Law ("DCL")**.
>
> On September 7, 2012, **the Gilbert defendants moved to dismiss** the complaint, **arguing that the law of Iowa (where LCS is located)** or Delaware (where MUDD was formed) **governs the dispute**; …

*Id.* at *1 (emphasis added.) Reviewing its own earlier decisions in that case, the court referred to its choice of law decision with respect to the plaintiff's constructive fraudulent conveyance claim:

> In denying Gilbert defendants' motion to dismiss on August 30, 2013, the court found that **New York Debtor Creditor Law § 273-a, the basis for plaintiff's constructive fraudulent conveyance claim**, did not require a showing of fraudulent intent, while both Iowa law and Delaware law required such a showing. Therefore, it followed that a conflict of laws existed. Upon recognizing the existing conflict, **the court engaged in a choice of law analysis and came to the conclusion that New York law governed plaintiff's § 273-a claims**.

*Id.* at *2 (emphasis added).

> Moreover, contrary to defendants' contention, **the fraud alleged in this action is "conduct regulating," and thus where the fraud occurred, as opposed to where LCS was located, is more germane to the court's conclusion that New York law applied to plaintiff's constructive fraudulent conveyance claims**.

\* \* \* \*

3

188423

>This proposition is well-settled in the fraudulent conveyance context. For example, in *Tyco Int'l, Ltd. v. Kozlowski,* 756 F.Supp.2d 553, 559–60 (S.D.N.Y.2010), this court found that **claims of constructive fraud were governed by New York law and that the location of the wrongful conduct, not the place of plaintiff's injury, was determinative** in its choice of law analysis. Similarly in *GFL Advantage Fund, Ltd. v. Colkitt,* 2003 WL 21459716, *3 (S.D.N.Y.2003), this court held that given that fraudulent conveyance laws are "conduct regulating", the law of the jurisdiction where the tort occurred will generally apply because **that jurisdiction has the greatest interest in regulating behavior within its borders**.

*Id.* at 3 (emphasis added).

Here, the MagCorp officer Defendants **received** the avoidable fraudulent conveyances in Utah, **but only as the result of Ira Rennert's decision in New York to declare a dividend to Renco Group in New York**, which entitled these Defendants to their "piece of the action" under the NWA Agreements. The **conduct** that the fraudulent conveyance laws are intended to regulate is the conduct of the person who causes the fraudulent conveyances to be made – the person who decides whether an insolvent or inadequately capitalized company is going to be looted or not. When Mr. Rennert declared these dividends, he did so with the intent that Renco Group would receive 93% of the dividends in New York, where he also resides and from which he controlled and directed every one of the dividend decsions.

Because New York's constructive fraudulent conveyance statutes are conduct-regulating statutes, and because the conduct that these laws are intended to discourage and regulate occurred in New York, and was directed by a New York resident for the benefit of a parent corporation that is also located in New York, New York's substantive law applies to every one of the fraudulent conveyance claims in this case.

If the Court determines that the fraudulent conveyance claims against the Utah Defendants are governed by Utah law, notwithstanding that the conduct giving rise to those

4

claims is the conduct of the Defendant Ira Rennert in New York, the Trustee believes that the appropriate way to instruct the jury is to give the instructions already reviewed in the Jury Charging Conference with respect to the claims against those Defendants (Nos. 7-10) as the law applicable to those claims, as the provisions of Bankruptcy Code Section 548 and the Utah Fraudulent Transfer Act are substantially congruent, and the Fraudulent Conveyance instructions under New York law should be given to the jury as the controlling law with respect to the fraudulent conveyance claims against Renco Group. The instruction with respect to the need for fair consideration under New York law also imposes a further requirement of good faith that is not in the Utah statute. However, the Trustee continues to believe that the instructions including cannot be collapsed or consolidated into a single coherent set of instructions incorporating both "reasonably equivalent value" and "fair consideration" elements, when they are not identical standards, and the "fair consideration" instruction under New York law must be given.

## III. DIRECT OR INDIRECT BENEFIT FOR UNJUST ENRICHMENT CLAIM

On this point, the law as stated by the New York courts is clear: "**It does not matter whether the benefit is directly or indirectly conveyed**." *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 118 (N.Y. App. 1st Dept.1990) (*citing Blue Cross of Cent. N.Y. v. Wheeler,* 93 A.D.2d 995, 461 N.Y.S.2d 624 (1983). "A person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit where his debt is satisfied or where he is saved expense or loss." *Id.* at 117-118 (citation omitted). There, Manufacturers Hanover Trust accidentally had its account debited twice to a Chemical Bank account that was held by Mr. Hazza which was all times in a negative balance. The mistaken second transfer thus reduced the negative/over draft balance on the man's account at Chemical bank. Mr. Hazza at all relevant times had a checking account with an overdraft line, maintained in continuous overdraft status for some seven years. And, as the record

5

clearly establishes, MHT's mistaken transfer never left Chemical's hands and merely reduced the amount of the final negative balance. No amount of rhetorical flourish can alter this inescapable fact. *Id.* at 120. Thus, the second debit benefited Chemical bank by reducing the amount of the overdraft. *Id.* at 122.

In *Wolf v. National Council of Young Israel,* 264 A.D.2d 416, 417 (N.Y. 2d Dept. 1999), the court held that the facts alleged were sufficient to support a claim for unjust enrichment. There, in a counter claim, the defendant alleged that the plaintiff's son used the defendant's money to pay taxes on plaintiff's property. *Id.* Alhough there was no allegation that the plaintiff himself actually received money, or that it went to a company he controlled, it was sufficient to show "that one party has received money or a benefit at the expense of another." *Id.* at 417 (*citing City of Syracuse v R.A.C. Holding, Inc.,* 258 A.D.2d 905, 906, 685 N.Y.S.2d 381. Although there was no evidence in that case that the plaintiff actually caused or received the transfer, a claim for unjust enrichment was stated, because he was saved expense.

The relationship between the Defendant Ira Rennert and the impoverished debtors is not remote or attenuated – he is the majority owner and controlling director of the company that owned them both, and he was the sole director of both, with the authority to direct the payment of the fraudulent conveyances that impoverished the debtors and made the funds available to Renco Group and to Blue Turtles, as he directed. Those facts are sufficient to establish the required connection between the unjustly enriched Defendant and the debtors.

In *Philips Intern. Investments, LLC v. Pektor,* 117 A.D.3d 1, 92 N.Y.S. 2d 98 (NY App. 1st Dept. 2014), the court said "At issue in this case is whether *Georgia Malone* changed the law on unjust enrichment sufficient to support a motion to renew pursuant to CPLR 2221." *Id.* at 99. In that case:

> Plaintiff investment company entered into a joint venture with defendants Louis and Lisa Pektor to purchase a portfolio of commercial properties from nonparty Liberty Property. During due diligence, plaintiff discovered that one of the properties had a critical flaw that made its purchase or inclusion in the sale unviable. The venture then entered into discussions with Liberty to purchase the remaining properties (the viable properties). The deal with the venture did not go forward. Subsequently, however, plaintiff learned that the Pektors had created a series of limited partnerships (the partnership defendants) to act as vehicles to purchase the viable properties from Liberty, cutting the venture out of the transaction.

Plaintiff brought suit against, inter alia, the Pektors and the partnership defendants. The complaint included a claim for unjust enrichment against the partnership defendants. All defendants moved to dismiss. The motion court granted the motion to dismiss in part, and granted leave to amend to replead the dismissed claims. One of the claims that was not dismissed was the unjust enrichment claim against the partnership defendants. *Id.* at 100 (emphasis added). The court held that the plaintiff had sufficiently stated a claim against the limited partnerships.

> Here, plaintiff alleged a sufficient relationship with the partnership defendants to survive a motion to dismiss, namely that its joint venturers, the Pektors, created the partnership defendants as vehicles to appropriate the venture's business opportunity of buying the viable properties. All of the Pektors' knowledge and scheming is, under this theory, imputable to the partnership defendants. As such, there is far more of a relationship than in *Georgia Malone, Sperry* or *Mandarin*. Indeed, unlike *Georgia Malone,* here, the partnerships, through the Pektors, knew of the alleged wrong being done to plaintiff and of their essential role in the allegedly wrongful scheme.

*Id.* at 103.

## IV. <u>THE UNDERLYING CONDUCT OR CIRCUMSTANCES REQUIRED TO SUPPORT AN UNJUST ENRICHMENT CLAIM</u>

To establish a claim for unjust enrichment, a plaintiff must show that (1) the defendant was enriched (2) at the plaintiff's expense, and (3) "that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v.*

7

*Wildenstein,* 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465 (2011), *citing Citibank, N.A. v. Walker,* 12 A.D.3d 480, 481, 787 N.Y.S.2d 48 (2d Dep't 2004) and *Baron v. Pfizer, Inc.,* 42 A.D.3d 627, 629-630, 840 N.Y.S.2d 445 (3d Dep't 2007). The Court of Appeals has long held that the "essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State of New York,* 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388 (1972).

Unjust enrichment doctrine does not require the performance of any otherwise tortious conduct or wrongful act by the party enriched. In fact, "[**i**]**nnocent parties may frequently be unjustly enriched**. What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." *Simonds v. Simonds,* 45 N.Y.2d 233, 239, 380 N.E.2d 189, 192, 408 N.Y.S.2d 359, 362 (1978) (emphasis added). Thus, the Trustee must establish **only** that these "defendants were enriched, the enrichment came at plaintiff['s] expense, and permitting defendants to retain what plaintiff[ ] seek[s] to recover would be against equity and good conscience" *ARB Upstate Communications LLC v R.J. Reuter, LLC,* 93 AD3d 929, 933 (2012).

### V. PUNITIVE DAMAGES FOR BREACHES OF FIDUCIARY DUTY, OR FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY BY OTHERS

The Trustee's claims against the Defendants include claims for breach of fiduciary duty under Delaware law, but also include tort claims for (1) aiding and abetting fraudulent transfers against defendant Rennert (Count 30) and (2) aiding and abetting breach of fiduciary duty against defendants Rennert, D'Atri, Fay, Sadlowski, Ryan, Legge, Thayer, Ogaard, Brown, Kaplan and Renco under state law (Counts 32, 40 and 45).

The Defendants' argument for a jury instruction requiring that the conduct be "done maliciously for the purpose of injuring the company or the corporation" is not consistent with the law of Delaware, and the language that Defendants' counsel is citing comes from a decision that recognized that this formulation of the Delaware standard was – as the defendant in that case acknowledged – incorrect: "[Defendant] Maynard does not specifically challenge the plaintiffs' suggestion that **the lower court applied a test more demanding than that required by Delaware law with regard to punitive damages.**" *Niehoff v. Maynard,* 299 F.3d 41 (1st Cir. 2002). In fact, the standard under Delaware law is that "punitive damages are recoverable where the defendant's conduct exhibits a **wanton or wilful disregard for the rights of plaintiff**," *Cloroben Chemical Corp. v. Comegys,* 464 A.2d 887, 891 (Del.1983), *citing Riegal v. Aastad, Del.Supr.,* 272 A.2d 715, 718 (1970), and "[f]or defendant's conduct to be found wilful or wanton **the conduct must reflect a 'conscious indifference' or 'I don't care' attitude**." *Id., citing Eustice v. Rupert, Del.*, 460 A.2d 507 (1983). (Eemphasis added.) Nothing more than that is required to support a claim for punitive damages.

At the Jury Charging Conference, the Court referred the parties to the decision in *Adams v. Calvarese Farms Maintenance Corporation, Inc.,* 2010 WL 3944961 (Del. Ch. September 17, 2010), where Vice-Chancellor Parsons observed that "The Court of Chancery, however, lacks jurisdiction to award punitive or exemplary damages unless it has received express statutory authority from the Delaware Legislature." (Emphasis added.) That decision does not stand for the proposition that a corporate officer or director who breaches his fiduciary duties, or who aids and abets breaches of fiduciary duties by others, may not be held liable for punitive damages under Delaware law. It does not limit the right to seek punitive damages in this action, nor limit

9

the right to seek punitive damages for other torts, including the Trustee's aiding and abetting claims.

Respectfully submitted this 21st day of February 2015.

**BEUS GILBERT PLLC**

By: *Scot C. Stirling*
Leo R. Beus (Arizona Bar No. 002687) Admitted *Pro Hac Vice*
lbeus@beusgilbert.com
Scot C. Stirling (Arizona Bar No. 005757) Admitted *Pro Hac Vice*
sstirling@beusgilbert.com
Malcolm Loeb (Arizona Bar No. 017338) Admitted *Pro Hac Vice*
mloeb@beusgilbert.com
Robert O. Stirling
rstirling@beusgilbert.com
701 North 44th Street
Phoenix, Arizona 85008-6504
Telephone: (480) 429-3000
Fax: (480) 429-3100
*Attorneys for Plaintiff*