USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 04 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lee E. Buchwald,

                Plaintiff,

--v--

The Renco Group, *et al.*,

                Defendants.

13-cv-7948 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On February 27, 2015, Defendants in this action made an oral motion for a mistrial based on an alleged inconsistent verdict after the jury returned a unanimous verdict and immediately after, not before, the jury was dismissed on the consent of all parties. The Court denied that motion. Tr. at 3066. Nevertheless, Defendants have submitted a letter arguing that judgment should not be entered in this matter until the claimed inconsistencies in the verdict are addressed, either by entering judgment in favor of Defendants, or ordering a new trial.

The Court addressed the claimed inconsistency in the verdict by orally denying Defendants' motion for a mistrial when Defendants raised it immediately after the jury was dismissed. This order elaborates the Court's grounds for denying that motion, and explains why Defendants' claimed inconsistency will not stand as an impediment to entry of judgment consistent with the jury's verdict.

I.      **Background**

Although most pertinent to this discussion is the sequences of events that followed the jury's return of a unanimous verdict, some additional background on the procedural development of the jury instructions and verdict form are required.

1

On the evening of February 19, 2015, the Court distributed a draft jury charge and special verdict form to the parties in advance of the charging conference scheduled for the next day. The charging conference lasted the full day of Friday, February 20, 2015, and continued for several hours on Monday, February 23, 2015. On this first day of the charging conference, the parties addressed the question of whether federal law regarding fraudulent transfers and New York state law of fraudulent conveyance could be addressed in a single jury charge, or set of jury charges, because they were substantially the same. After the Court asked the parties if there was a conflict between state and federal law, Defendants' counsel responded:

> Fair consideration in some respects is a broader concept, which is why I made that observation, than reasonably equivalent value. So it has a broader legal definition that reasonably equivalent value under the New York statute. The New York statute is anachronistic across the country because it is one of four states that doesn't cover the Fraudulent Transfer Act and it has a different meaning and can be read more broadly.
>
> What we are essentially talking about in this case is whether there is reasonably equivalent value so that from a practical perspective I believe we can harmonize things, but I believe there is a conflict in that component of the statute.

Tr. 2499 at 18-25, 2500 at 1-4. While this exchange was facially about the difference between the laws of New York and Utah, Defendant also represented that the bankruptcy code and Utah law are "fundamentally the same" and that they "coincide[]." Tr. 2504 at 7; Tr. 2510 at 11. Later, when discussing the concept of reasonably equivalent value under federal law and New York law, Defendants' counsel stated that "the New York statute talks about it [reasonably equivalent value] in a different vernacular and with some different ideas." Tr. 2509 at 1-2. He further stated that the bankruptcy code contains "a slightly more pro transferee set of tests, as

2

opposed to the New York statute." Tr. 2509 at 25, 2510 at 1. The Court provided the parties the opportunity to file letter briefs about the differences between New York, Utah, and federal law over the weekend following the conference, and in their letter Defendants states that "[u]nlike the UFTA [Uniform Fraudulent Transfer Act], Section 273 of the New York Debtor Creditor Law imposes a 'good faith' requirement." Dkt. No. 305 at 1 n.1.

On February 23, 2015, the Court distributed versions of the draft jury charge and special verdict form reflecting the changes made at the February 20, 2015 conference. When the charging conference resumed later in the day on February 23, the Court explained that its revised charge would instruct the jury on both federal and New York law, because federal law and Utah law were essentially the same. The Court would thus be able to reserve any choice-of-law questions until after the verdict, and would need to reach them only if Defendants whose liability was subject to a choice-of-law dispute were found liable under New York but not federal law. Tr. 2600 at 15-25, 2601 at 1-4. At that time, neither party objected to the procedure, or made an argument that the New York and federal charges were redundant. Indeed, the solution largely mirrored Defendants' proposal from February 20, where they suggested that it would not be necessary to repeat the federal and Utah instructions twice, *see* Tr. 2510 at 9-11, but did not state that a New York instruction would be entirely unnecessary, because they agreed that New York law governed transfers from Renco Metals to The Renco Group, Inc., *see* Tr. 2496 at 19-25, 2497 at 1-5.

The Court also distributed drafts of the special verdict form in advance of the February 20 and February 23 conferences. On both drafts, the jury was instructed to consider the question of whether Defendants committed fraudulent conveyances under New York law regardless of whether the jury found fraudulent transfers under the bankruptcy code. Indeed, in the drafts sent to the parties before each day of the charging conference, as well as the final version of the form that went to the jury, the jury was explicitly instructed to consider fraudulent conveyance under New York law immediately even if they determined that MagCorp and Renco Metals did not meet the tests for insolvency, inadequate capitalization, or inability to pay debts under federal

3

law. In all three versions, the jury was told to proceed to the question about New York law if they answered "No" to all of the federal-law questions about whether the companies were insolvent. Neither party objected or otherwise suggested changes to this general procedure, nor was any argument made that it would be unnecessary to consider fraudulent conveyance under New York law if the jury answered the insolvency, unreasonably small capital, and inability to pay debts questions entirely in the negative.

The parties gave their summations on February 24, 2015, and the Court charged the jury on the morning of February 25, 2014. The jury returned a verdict on February 27, 2015, that in relevant part found in favor of all Defendants on Plaintiff's claim for fraudulent transfers under the bankruptcy code, but finding Defendants Rennert, Legge, Thayer, Ogaard, Brown, Kaplan, and the Renco Group, Inc. liable for fraudulent conveyances under New York law. The jury assessed damages only against Defendants Rennert and the Renco Group, Inc.

After the jury indicated that they had reached a verdict but before the jury was brought in and the verdict was read to the parties, the Court told counsel:

> When I finish reading, assuming everyone agrees that it was their verdict, I will ask if there is any reason that I cannot dismiss the jury. So that will be an opportunity to identify if there is anything in the verdict form itself that might require clarification. Assuming not, I will dismiss the jury.

Tr. 3054 at 22-25, 3055 at 1-2. While the Court was reading the verdict, the foreperson indicated that he had made an incorrect transcription of the jury's answer to a question about punitive damages. Tr. 3057 at 18. After finishing the reading, the Court asked the jurors to put that question aside for a moment, and polled the jurors regarding the remainder of their answers; each indicated assent to the verdict. Tr. 3058 at 12-18. Before sending the jury back to reach a unanimous conclusion and indicate the correct amount of punitive damages it intended to assess, the Court asked counsel at sidebar, "Is there anything else on [the verdict form] that you identify as a reason, once we resolve this, that the jury cannot be dismissed?" Tr. 3060 at 16-18. Both parties indicated that there was not. Tr. 3060 at 19-20.

After the jury had returned to the jury room to resume its deliberations on the punitive damages questions, the Court asked counsel if there was anything to take up. Defendants' counsel responded, "Not until after you dismiss the jury, your Honor." Tr. 3061 at 10-11.

The jury returned with a unanimous answer to the punitive damages question soon thereafter, and the Court again polled the jurors as to their agreement with that answer, "as well as the entire verdict[.]" Tr. 3061 at 24-25. All jurors again indicated that they agreed. Tr. 3062 at 2. The Court again asked counsel if there was any reason the jury could not be dismissed at that time, and again both parties indicated that there was not. Tr. 3062 at 3-6. The jury was thereupon dismissed.

*Immediately* after the jury was dismissed, Defendants moved for a mistrial based on a "dramatic inconsistency in the verdict." Tr. 3063 at 5-7. Defendants' counsel then represented that the jury's findings in Defendants' favor on solvency, adequacy of capital, and the ability to pay debts as they came due in Questions 1-3 on the special verdict form presented a "radical and irreconcilable inconsistency" in the verdict. Tr. 3063 at 8-17. According to Defendants' counsel, the grounds for their motion for a mistrial was the "abundant *facial* irreconcilability" of the verdict. Tr. 3065 at 6-8 (emphasis added). And yet that "abundant facial irreconcilability" was not raised with the Court prior to the dismissal of the jury. The Court orally denied Defendants' motion, noting that the parties had just moments earlier consented to dismiss the jury before Defendants' counsel raised the possibility of an inconsistent verdict. Tr. 3066 at 1-5. It is this oral ruling that is elaborated upon below.

## II.   Waiver

Defendants' argument for a mistrial on the grounds of an inconsistent verdict was effectively waived three times over. First, any such motion related to an inconsistent verdict had to have been made before the jury was dismissed. Second, Defendants consented to both the instructions and special verdict form that required the jury to consider fraudulent conveyance defined differently under New York law even if they did not find insolvency, unreasonably small capital, or inability to pay debts under the federal definitions. And third, Defendants agreed to

5

the jury charge that they now say permitted an inconsistent finding, and indeed represented to the Court that New York offered a more Plaintiff-friendly standard than federal law.

### A. Consent to Dismiss the Jury

The Second Circuit repeatedly has made clear that objections based on alleged inconsistencies in a verdict must be made before the jury is dismissed. *See Litras v. Long Island R.R.*, 226 F. App'x 31, 33 (2d Cir. 2007) (summary order); *Kosmynka v. Polaris Indus.*, 462 F.3d 74, 83 (2d Cir. 2006); *Haskell v. Kaman Corp.*, 743 F.2d 113, 123 (2d Cir. 1984). Defendants made no attempt to raise this issue between the rendering of either the initial verdict or the jury's return of the verdict on punitive damages and the jury's dismissal, despite being given the opportunity to raise the issue at both junctures. *See* Tr. 3060 at 16-18; Tr. 3062 at 3-4. Indeed, the jury was permitted to return to deliberation on punitive damages after the first verdict, and dismissed after the supplementary verdict, with both parties' consent each time. Tr. 3060 at 19-20; Tr. 3062 at 5-6. Defendants' failure to make any application whatsoever before the jury was dismissed regarding the existence of an inconsistent verdict means that the issue has not been preserved.

Whether intentional or not, Defendants' conduct here—to wait until immediately after the jury was dismissed, and then move for a mistrial on grounds available to them while the jury was still impaneled—demonstrates the precise reason why the issue must be raised before dismissal or be waived. Raising the potential of an inconsistent verdict before the jury is dismissed allows the Court an opportunity to address any real inconsistency with the jury and seek clarification. The waiver rule is in place to require counsel to seek clarification and cure when that is still possible without the duplication of the enormous resources just spent on a substantial trial. Foregoing such an opportunity, as counsel did here, is inefficient at best and devious at worst: it denies "the court and the opposing party the opportunity to correct an error in the conduct of the trial," *Kosmynka*, 462 F.3d at 83 (quoting *Barry v. Maglass*, 432 N.E.2d 125, 127 (N.Y. 1981)), and presents an opportunity for "misuse of Rule 49 procedures," *Haskell*, 743 F.3d at 123 (quoting *Skillin v. Kimball*, 643 F.2d 19, 20 (1st Cir. 1981). This unambiguous waiver rule is

6

sufficient grounds alone to deny Defendants' motion for a mistrial based on a claimed inconsistency in the verdict.

### B. Consent to the Special Verdict Form

In addition to consenting to dismiss the jury before raising the possibility of an inconsistent verdict, Defendants also consented to the special verdict form that they now allege permitted the jury to reach an inconsistent verdict. To preserve objections to the form or substance of a special verdict form, a party must object before the jury has retired to deliberate. *See Cash v. County of Erie*, 654 F.3d 324, 340 (2d Cir. 2011) (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 141 (2d Cir. 2007)). All of the draft special verdict forms provided to the parties, as well as the final special verdict form provided to the jury, directed the jury to proceed to consider whether Defendants had committed fraudulent conveyances under New York law regardless of whether they found in Defendants' or Plaintiff's favor on earlier questions related to insolvency. *See* Dkt. No. 304 (blank version of final verdict form). Defendants raised no objections to this aspect of the verdict form, which was used with the parties' consent.

Defendant's claim that the verdict was "abundantly *facial[ly]* irreconcilable," Tr. 3065, makes clear that an objection to the instructions on the verdict form requiring the jury to consider fraudulent conveyances under New York law regardless of its conclusion on solvency under federal law could have been made long before the jury retired to deliberate. Under Defendants' theory, if the jury answered "no" to all portions of Questions 1-3, they should not have been permitted to answer Question 7, which the verdict form *required* that they answer. But Defendants never made this argument, despite both charging conference drafts and the final version of the verdict form containing this alleged "facial" problem.

### C. Agreement as to the Law

Finally, though it is also not necessary to the Court's decision to deny Defendants' motion for a mistrial, the Court notes that the Defendants' position at the charging conference was that there were material differences between federal bankruptcy law and New York law such

7

that the Court was correct to charge the jury separately on their elements. *See* Tr. 2509; Dkt. No. 305. Moreover, the jury instructions told the jury that insolvency had a "specific definition" under New York law: "Under New York law, an entity is insolvent when the present fair saleable value of its assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." See Dkt. No. 303 at 19. Defendants did not object to this aspect of the instructions.

Defendants now argue that, despite the admitted difference in language between the New York and federal definitions of bankruptcy in the jury charge, the instructions were substantively identical and did not permit unique findings. This is a precise example of a matter that should have been raised when the Court was exhorting the parties to find a unified instruction governing all relevant federal and state law of fraudulent transfer and fraudulent conveyance, and to avoid redundancies in the instructions on these counts. In fact, Defendant never once suggested that the charge on the New York law of fraudulent conveyances should not have contained the separate definition of insolvency under New York law that was given to the jury. Defendants argue that they were willing to agree to a unified charge on the fraudulent transfer and fraudulent conveyance claims, and that only the definition of "reasonably equivalent value" prevented an agreed-upon unified charge from being presented to the jury. Even so, the differences in New York and federal law prevented the giving of a unified charge, and it was abundantly clear to Defendants that the jury would be charged separately on federal and New York law in the final charge. Despite knowing this would be the case, Defendants raised no objection, nor even hinted at an argument that insolvency should not have been defined differently under New York law in the final charge.

Without needing to decide whether any actual inconsistency may have resulted, then, the Court notes that Defendants consented to language indicating that a consistent verdict might still obtain despite different results under New York and federal law. Therefore, even if Defendants had not waived their argument that the verdict is inconsistent by failing to raise it before the jury was discharged and by agreeing to the special verdict form, it is dubious at best that an argument

8

about inconsistency could succeed based on the language of Instruction No. 13. *See* Dkt. No. 303 at 19.

### III. Entry of Judgment

Defendants have now cited several case for the proposition that the Court may not enter judgment under Federal Rule of Civil Procedure 49(b)(3) because the verdict form contained claimed inconsistencies. The Court must first note that Rule 49(b)(3) becomes relevant in a situation where the jury's answer to a general verdict question is at odds with underlying special verdict questions. That is not the case here; Questions 1-3 on the verdict form, which addressed the grounds for finding insolvency predicate to a fraudulent transfer claim under federal bankruptcy law, were not special verdict questions leading unto a general verdict regarding fraudulent conveyances under New York law. These were separate counts, and never argued by counsel or presented to the jury as anything otherwise. Indeed, it was Defendants' suggestion to eliminate language on the verdict form referring to Questions 1-3 as questions of "insolvency," and instead to bring all three questions under the federal "Fraudulent Transfers" claim. Tr. 2579 at 3-8.

Moreover, the cases Defendants have cited do not undermine the rule that claimed inconsistencies not raised before the jury is dismissed are waived. They involve scenarios where the objection was made before the jury was dismissed, *see Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 135 (2d Cir. 2005) ("Defense counsel pointed out the error to the jury ... ."),[1] or where the court itself resubmitted inconsistently answered questions to the jury and a party objected to the jury's reconsideration. *Turchio v. D/S A/S Den Norske Africa*, 509 F.2d 101, 106 (2d Cir. 1974) ("When the jury failed at first to answer any of the questions put to it, the court acted within its rights in asking the jury to deliberate a second

---

[1] To the extent *Armstrong* considers the defendant's failure to raise inconsistencies in a third special verdict as a waiver and goes on to find fundamental error, it did so because the instructions given were *directly at odds* with a clear statement of the law. *See Armstrong*, 425 F.3d at 136 ("Section 2805–d clearly prohibits recovery if a reasonable and properly informed person would have consented, but the verdict sheet instead made such a reasonable person's consent a prerequisite to recovery.").

and third time to obtain answers to the unanswered questions."). To the extent Defendants cast the verdict form as inconsistent under Rule 49(b), the Second Circuit has held that failure to challenge the inconsistency before the jury is dismissed is waiver in the Rule 49(b) context. *See Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 54 (2d Cir. 1992).[2]

To find waiver inapplicable here would entirely undermine the clear and consistent waiver rule articulated by the Second Circuit, because Defendants' argument would require a court to conclude that any entry of judgment on a claimed inconsistent verdict is improper. That clearly is not the case; the argument can be waived, and Defendants have done so here. Moreover, the circumstances weigh particularly strongly in favor of waiver here, where the timing of Defendants' motion for a mistrial— after a significant amount of time had passed since the initial reading of the jury's verdict yet within only moments of the jury's dismissal— indicates that Defendants were fully aware of the alleged implications of the jury's answers to Questions 1-3 and 7 when the jury was still impaneled. Counsel's statement after the initial verdict was read and while the jury returned to its deliberations on punitive damages that Defendants would not have any matters to raise "until after [the Court] dismiss[ed] the jury" indicates that Defendants consciously chose to forego presenting any application to the Court until after the jury was dismissed.

### IV.   Conclusion

For the foregoing reasons, Defendants' oral motion for a mistrial made after the jury was dismissed, and their request that the Court refrain from entry of judgment on the grounds of a claimed inconsistency in the verdict, are DENIED.

SO ORDERED.

---

[2] While Defendants have cited cases suggesting that other circuits may not subject Rule 49(b) objections to waiver analysis, *see L.A. Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1355-56 (9th Cir. 1987), such analysis is patently at odds with the Second Circuit's treatment of Rule 49(b).

Dated: March 9, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge