UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :

LEE E. BUCHWALD, as Chapter 7 Trustee for    :   Case No. 1:13-CV-07948-AJN
Magnesium Corporation of America and Related :
Debtor, Renco Metals, Inc.,                           :   **TRUSTEE'S BRIEF RE**
                                                             X   **PREJUDGMENT INTEREST AND**
                  Plaintiff,                           :   **PROPOSED FORM OF**
                                                                  :   **JUDGMENT**
                      vs.                                 :
                                                                X

THE RENCO GROUP, INC., a Delaware          :
corporation; K. SABEL HOLDINGS, INC., an   :
Alabama corporation; KPMG PEAT              :
MARWICK LLP; DONALDSON, LUFKIN &     :
JENRETTE SECURITIES CORPORATION;     :
HOULIHAN LOKEY HOWARD & ZUKIN;       :
CADWALADER, WICKERSHAM & TAFT,     :
LLP; IRA LEON RENNERT; ROGER L. FAY;  :
JUSTIN W. D'ATRI; DENNIS A.                   :
SADLOWSKI; MICHAEL C. RYAN;              :
MICHAEL H. LEGGE; RON L. THAYER;      :
TODD R. OGAARD; LEE R. BROWN;             :
HOWARD I. KAPLAN; KEITH SABEL;         :
UNIDENTIFIED TRUSTEES of Trusts          :
Established by Ira Leon Rennert; and DOES I  :
through XX,                                                :
                                                                :
                 Defendants.                                :
                                                                :
------------------------------------------------------------ X

188825

**TABLE OF CONTENTS**

**Page No**.

I. INTRODUCTION .................................................................................................. 1

II. APPLICABLE LAW FOR THE AWARD OF PREJUDGMENT INTEREST ............................................................................................................. 2

    A. The Trustee Is Entitled To Prejudgment Interest Under Both New York and Delaware Law ............................................................................. 2

    B. The Trustee's Claims For Prejudgment Interest In The Pleadings And In The Joint Pretrial Report .............................................................. 6

    C. The Debtors' Estates and Creditors Deserve To Be Compensated For The Use Of Their Money, Defendants Should Not Benefit From Their Misconduct, And The Law And Policy Of Both New York And Delaware Is To Award Prejudgment Interest At Their Statutory Rates ............................................................................................ 8

III. PREJUDGMENT INTEREST CALCULATIONS .............................................. 9

IV. THE TRUSTEE AND HIS COUNSEL DILIGENTLY PURSUED DISCOVERY AND SUCCESSFULLY PROSECUTED THIS CASE ........... 11

V. CONCLUSION .................................................................................................... 14

**I.     INTRODUCTION**

The Court's Order dated 4 March 2015 directed the Trustee to submit a proposed judgment along with the brief on prejudgment interest discussed on the last day of trial, 27 February. The following pages support the Trustee's claim for prejudgment interest, and explain the alternative methods for calculating prejudgment interest under applicable law.

The Trustee is also submitting a proposed form of Judgment In A Civil Action, including prejudgment interest calculated as of today's date, 6 March 2015, at the New York statutory rate of 9% simple interest from the date of the fraudulent conveyances, and on the basis of the jury's verdict for a combined total of $117,222,000 in compensatory damages, which is 98.97% of the amounts of the conveyances claimed by the Trustee and described in the Agreed Facts section of the Joint Pretrial Report, pages 35-37 (Facts Relating to the Transfers).

The Trustee has a good faith basis for requesting prejudgment interest at higher rates under Delaware law (9.75% to 10.25% for the period December 1995 to October 1998), for calculating prejudgment interest on a substantial part of the principal amount at the higher rate (11-1/2%) at which Renco Metals and MagCorp were forced to borrow in order to finance most of the fraudulent conveyances, and for compounding prejudgment interest. Each of those methods, if accepted by the Court in its discretion, would generate substantially higher prejudgment interest awards than those included in the Trustee's proposed form of judgment.

New York law also law permits prejudgment interest to be calculated on all of the amounts claimed as of a "single reasonable intermediate date," which could be either the median date between the first and the last transfers (5 May 1997 is the midpoint on the calendar), which produces slightly lower numbers, or the date with the median dollar for all of the transfers (3 July 1996 is the "center of gravity" for the cash taken in the fraudulent conveyances), which produces slightly higher numbers than those included in the Trustee's proposed form of judgment.

1

188825

We believe the calculation of prejudgment interest in the Trustee's proposed form of judgment fairly corresponds with the jury's apparent intent to award virtually one hundred percent of the total amount of the fraudulent conveyances claimed by the Trustee under New York law, and is also consistent with New York's clear expression of public policy in N.Y. CPLR §§ 5001 and 5004, applying New York's statutory and presumptive rate for prejudgment interest at 9% per annum, without compounding.

## II.   APPLICABLE LAW FOR THE AWARD OF PREJUDGMENT INTEREST

### A.   The Trustee Is Entitled To Prejudgment Interest Under Both New York and Delaware Law

Because the Court is sitting in New York in a case in which New York and Delaware state law provide the rules of decision for the Trustee's successful claims against The Renco Group, Ira Rennert, and the Rennert Trusts, the Court should apply New York's choice of law rules and "interest analysis" to determine what state law to apply to the award of prejudgment interest. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The right to prejudgment interest is an issue of substantive law, and governed here by applicable state law.[1]

The fraudulent conveyance claims against The Renco Group and Ira Rennert, the aiding and abetting fraudulent conveyance claim against Ira Rennert, and the unjust enrichment claim

---

[1] For the application of New York law, see *In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014) ("Many of the courts in this Circuit look to the source of the law underlying plaintiff's claims: claims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules. … We agree this is the proper framework for the analysis. Here, implicit in the district court's award of interest is its decision that state law formed the basis for its award, as the district court specifically referenced N.Y. CPLR § 5004. We find no fault with that determination." For the application of Delaware law, see *Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305 (Del. Super. Ct. 1985); *Those Certain Underwriters at Lloyd's London Who Subscribed Severally as Their Interests Appear Thereon and Not Jointly to Lloyd's Policy Number 390/J145210 v. National Installment Ins. Services, Inc.*, 2007 WL 4554453 (Del. Ch. 2007), *aff'd mem.*, 962 A.2d 916 (Del. 2008).

2

against Ira Rennert and the Rennert Trusts are all governed by New York law. The Trustee is authorized to recover fraudulent conveyances "voidable under applicable law by a creditor."[2] The "applicable law" is the relevant state law that permits the transfer or conveyance to be avoided by such a creditor. For the successful fraudulent conveyance claims against The Renco Group, Inc. and Ira Rennert – both citizens of New York[3] – the applicable state law is the New York Fraudulent Conveyance Act.[4]

The successful claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are governed by Delaware law. The jury also awarded $1 million in punitive damages against The Renco Group; the Trustee does not claim the right to prejudgment interest on the award of punitive damages.

The right to prejudgment interest on the awards of damages for the fiduciary duty and aiding and abetting breach of fiduciary duty claims is governed by Delaware law. In *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978), the court said that "[i]nterest is awarded in Delaware as a matter of right and not of judicial discretion" and "the general rule is that "interest accumulates from the date payment was due the plaintiff, because

---

[2] Joint Pretrial Report, page 6 ("The parties concur that this Court has subject matter jurisdiction for the reasons set forth below … Under the Bankruptcy Code, the Trustee has standing to assert the remaining claims for relief in this action, as they are the property of the Debtors' respective bankruptcy estates. Those claims for relief are: (i) fraudulent transfers under state law and the Bankruptcy Code …").

[3] Joint Pretrial Report, pages 23-24.

[4] New York Debtor & Creditor Law (DCL), Article 10, Sections 270-281. The choice of law issue that the Court reserved before the jury returned its verdict has been mooted by the jury's verdict with respect to the Utah defendants. Although the jury concluded that each of the Utah defendants had received fraudulent conveyances under New York law, the jury awarded no damages against Messrs. Legge, Thayer, Ogaard, Kaplan, and Brown. Thus, there is no verdict against any of those Defendants to require the Court to engage in any choice of law analysis.

full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance." *Id.*

In any case, the court "has broad discretion, subject to principles of fairness, in fixing the [interest] rate to be applied," *Summa v. Trans World Airlines*, 540 A.2d 403, 409 (Del. 1988); *Valeant Pharmaceuticals International v. Jerney*, 921 A.2d 732, 756 (Del. Ch. 2007). An award of interest under Delaware law serves two purposes: it compensates the judgment creditor for the loss of use of its money, and it causes the judgment debtor to disgorge the benefit enjoyed during the same period of time.

Therefore, both New York and Delaware law provide for the payment of prejudgment interest, at statutory rates intended to serve those dual purposes. New York presumptively awards 9% simple interest per annum,[5] and Delaware law provides for prejudgment interest at rate described in DEL. CODE ANN. tit. 6 § 2301, which is "5% over the Federal Reserve Discount Rate, including any surcharge as of the time from which interest is due."[6]

Under both New York and Delaware law, prejudgment interest is generally regarded as a matter of right.[7] Under New York law, the Trustee's claims for aiding and abetting fraudulent conveyances and for unjust enrichment are *legal* claims for the purposes of awarding *mandatory*

---

[5] N.Y. CPLR §§ 5001, 5004.

[6] The Federal Reserve Discount Rate was 5.25% at the time of the December 1995 payment, and 5.0% at the time of every subsequent payment until October 31, 1998 (the date of the last Net Worth Appreciation payments), when the rate was 4.75%; thus, the effective Delaware interest rate was between 9.75% and 10.25% between December 1995 and October 1998 and, for almost the entire period, a full percentage point higher than the New York rate.

[7] N.Y. CPLR § 5001(a); *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del. 2000); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992); *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988), *cert. denied*, 488 U.S. 853 (1988); *Collins v. Throckmorton*, 425 A.2d 146, 152 (Del. 1980); *Moskowitz v. Wilmington*, 391 A.2d 209, 210 (Del. 1978).

188825

prejudgment interest. N.Y. CPLR § 5001(a). Aiding and abetting a fraudulent conveyance is a recognized tort, *Joel v. Weber*, 197 A.D.2d 396, 602 N.Y.S.2d 383, 383-384 (App. 1993), and unjust enrichment is likened to *quantum meruit*. *Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F.Supp.2d 237, 250-51 (S.D.N.Y. 2012) ("courts 'may analyze *quantum meruit* and unjust enrichment together as a single quasi contract claim,' or as a single claim for unjust enrichment"); and, "[w]hile the roots of *quantum meruit* are found in principles of equity, for purposes of prejudgment interest the remedy is likened to one for breach of contract, *and an award of prejudgment interest is mandatory*." *Stillman v. InService Am. Inc.*, 738 F.Supp.2d 480, 482 (S.D.N.Y. 2010) *aff'd*, 455 F. App'x 48 (2d Cir. 2012) (emphasis added).[8]

The Court has substantial discretion with respect to the award of prejudgment interest to the extent the underlying claims are based in equity. N.Y. CPLR § 5001(a); *In re Palermo*, 739 F.3d 99, 107-108 (2d Cir. 2014); *Montgomery Cellular Holding Co., Inc. v. Dobler*, 880 A.2d 206, 226 (Del. 2005); *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del.1988); *Valeant Pharmaceuticals Intern. v. Jerney*, 921 A.2d 732, 756 (Del. Ch.), *app. dismissed mem.*, 929 A.2d 784 (Del. 2007). In Delaware, because a judgment for the payment of money in equity is essentially indistinguishable from a judgment from a court of law, the equity courts have

---

[8] Prejudgment interest should be awarded in unjust enrichment cases in order to have "complete compensation." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 622 (S.D.N.Y. 2010). "Thus, prejudgment interest in this case should be assessed from the date on which defendants realized the profits they are now being ordered to disgorge through to the date of entry of judgment for plaintiffs in an amount representing a disgorgement award including prejudgment interest." *Id.* At the very least, prejudgment interest is "confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *S.E.C. v. Contorinis*, 743 F.3d 296, 307 (2d Cir. 2014). The test is "governed by the equities, reflecting 'considerations of fairness' rather than 'a rigid theory of compensation.'" *Id.* at 308. "Prejudgment interest on a disgorgement amount is intended to deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain." *Id.*

traditionally applied the statutory rate of interest. *Trans World Airlines, Inc. v. Summa Corp.*, 1987 WL 5778 (Del. Ch. 1987), *aff'd*, 540 A.2d 403 (Del.), *cert. denied*, 488 U.S. 853 (1988).

Although the court in *In re The 1031 Tax Group, LLC*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) was applying a federal statute to a purely federal claim, the following language is instructive with respect to the Court's exercise of discretion when awarding prejudgment interest for claims governed by either state or federal law:

> In exercising discretion to award prejudgment interest, the Second Circuit has directed a court to consider the following factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bd. of Elec. Workers, AFL–CIO*, 955 F.2d 831, 833–34 (2d Cir. 1992). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006).

### B. The Trustee's Claims For Prejudgment Interest In The Pleadings And In The Joint Pretrial Report

In the Amended Complaint, the Trustee prayed for relief including "pre-judgment and post-judgment interest as allowed pursuant to statutory and common law." Amended Complaint, Prayer for Relief paragraph D. In the Joint Pretrial Report, at pages 56-58 the Trustee also claimed the right to prejudgment interest, and outlined four alternative measures of prejudgment interest under New York and Delaware law.

**First**, under New York law, the Trustee argued that "A. Plaintiff is entitled to recover $118,445,675 in fraudulent conveyances, plus prejudgment interest under New York law at the rate of 9% simple interest in the total amount of **$195,529,098**, for a total of **$313,974,773**."[9]

---

[9] [Joint Pretrial Report, footnote 1] "All bolded numbers are calculated through December 31, 2014 and to be updated at trial."

188825

That assumed recovery of 100% ($118,445,675) of the fraudulent conveyances claimed by the Trustee.[10]

**Second**, under Delaware law, the Trustee argued that "B. For the claims governed by Delaware law, Plaintiff is entitled to recover $118,445,675, plus prejudgment interest under Delaware law at the rate of not less than the Delaware legal rate of 5% over the Federal Reserve Discount Rate as of the date of each payment complained of,[11] in the amount of **$217,546,340**, for a total of **$335,992,015**." That calculation assumed recovery of 100% of the fraudulent conveyances.

**Third**, under Delaware law, the Trustee argued that the Court in its discretion could award interest at the higher rate at which Renco Metals and MagCorp were forced to borrow the money used to finance most of the fraudulent conveyances:[12]

> C. For the claims governed by Delaware law, Plaintiff is entitled to and seeks $118,445,675 plus prejudgment interest on the payments made with borrowed funds in connection with the 1996 Note Offering at the higher rate of 11-12% simple interest through July 1, 2003 (the Notes rate), and at the rate of 13-1/2% compounded annually (the Notes default rate) after July 1, 2003. The principal amount borrowed to finance the July 1996 payments ($72,384,000) plus interest is equal to **$369,242,820**. The principal balance of that part of the 1996 payments not borrowed ($16,444,175) plus interest at the Delaware legal rate is **$46,863,646**. The total principal and interest for the July 1996 payments alone is **$416,106,466**; and the total of the other payments made before and

---

[10] The jury's combined verdicts against The Renco Group and Ira Rennert on the fraudulent conveyance claims are equal to 98.97% of that amount, strongly suggesting that the jury intended to return virtually 100% of the fraudulent conveyances to the Trustee.

[11] [Joint Pretrial Report, footnote 2] "The Discount Rate was 5.25% at the time of the December 1995 payment, 5.0% at the time of every subsequent payment until October 31, 1998 (the date of the last Net Worth Appreciation payments), when the rate was 4.75%."

[12] The Debtors borrowed $72,384,000 in the 1996 Notes Offering to finance the fraudulent conveyances.

7

after July 1996 plus interest at the Delaware legal rate is **$83,191,828**, for a total of **$499,298,294**.

**Fourth**, the Trustee argued that the Court in its discretion could award compound interest under Delaware law: "D. For the claims governed by Delaware law, Plaintiff is also entitled to seek $118,445,675 plus discretionary compounded prejudgment interest at the Delaware legal rate of 5% over the Federal Reserve Discount Rate as of the date of each payment complained of, in the amount of **$566,381,010**, for a total of **$684,826,686**."

### C. The Debtors' Estates and Creditors Deserve To Be Compensated For The Use Of Their Money, Defendants Should Not Benefit From Their Misconduct, And The Law And Policy Of Both New York And Delaware Is To Award Prejudgment Interest At Their Statutory Rates

It is appropriate and just that the Renco Metals and MagCorp bankruptcy estates and their creditors be compensated for the loss of use of the money taken in these fraudulent conveyances, and that the Defendants should pay for the use of that money at a rate of interest sufficient to deny at least a substantial part of the economic benefit they derived from the fraudulent conveyances. The Trustee believes that the Court should consider that the Debtors were forced to borrow a substantial part of the money used to finance the fraudulent conveyances at 11-1/2% interest, and that the Defendants have had the profitable use of the money for 16-19 years.

The Court should also consider that the Defendants were allowed to profit from the use of other people's money for almost twenty years, and that the goal of deterring similar conduct will not be served if the Defendants are permitted to retain the economic benefit of their wrongdoing. Ira Rennert testified at trial, in response to questions from his own counsel, that "As a businessman, you don't borrow money at 11 and a half percent, put it in the bank at 2 or 3 percent. You'll lose the money. *The purpose is to invest it. And that's what we did. If we need it*

8

*in the future, we can make a better return*. There is no reason to put it into just a bank account." Transcript page 665 (emphasis added).

The clear implication of that testimony is that the Renco Defendants caused $150 million to be borrowed by the Debtors at 11-1/2% because they expected to "make a better return" on the money they received from the offering than it cost to borrow the money – or at least that they believed it made economic sense to cause Renco Metals and MagCorp to borrow the money at 11-1/2% in order for the Renco Defendants to get their hands on, and have the use of, that money. These Defendants should have to live with the consequences of that judgment, and to return the money with interest at a rate that at least approaches the rate at which Renco Metals and MagCorp were forced to borrow the money.

An award of prejudgment interest at the statutory rate of 9% will probably capture less than 100% of the economic benefit the Defendants actually derived from these fraudulent conveyances, and is no more than New York law provides for legal and equitable claims of all kinds and in many other circumstances. There is certainly nothing extraordinary or punitive about an award of prejudgment interest at the rate of 9% per annum.[13]

## III.  PREJUDGMENT INTEREST CALCULATIONS

The Trustee claimed the right to recover fraudulent conveyances and damages (not including punitive damages) under various theories, in the total amount of **$118,445,675**. Joint Pretrial Report, pages 56-58. The jury's verdict, awarding $101 million against The Renco Group and $16,222,000 against Ira Rennert, for a total of **$117,222,000** – and another $1 million

---

[13] The fact that the jury returned a verdict for punitive damages against The Renco Group, albeit for a relatively modest amount, would justify a greater award of prejudgment interest than 9% simple interest. It should certainly suffice to answer any complaint from the Defendants that an award of prejudgment interest at 9% is "inequitable" or in any respect unjust.

9

188825

against The Renco Group for punitive damages – strongly suggests that the jury intended to award the Trustee virtually 100% of the amount claimed. As it is, the combined award of compensatory damages against The Renco Group and Ira Rennert is **98.97%** of the amount claimed.

The Trustee's proposed form of judgment reflects the recovery of 98.97% of the claimed fraudulent conveyances, plus prejudgment interest at the rate of 9% per annum simple interest from the dates of the fraudulent conveyances, as described in the Agreed Facts of the Joint Pretrial Report. The total interest on the combined verdict of $117,222,000 (excluding the punitive damages award) is $195,566,588, which has been allocated 86.1613% to The Renco Group and 13.8386% to Ira Rennert and the Rennert Trusts.[14] The total amount of the judgment (excluding punitive damages) using that rate of prejudgment interest is $312,788,588. See **Attachment A**.

The Trustee has also prepared calculations showing the result of calculating interest on the amounts of the verdict from two "single reasonable intermediate date[s]" – 5 May 1997, which is the calendar midpoint between the first and the last fraudulent conveyances; and 3 July 1996, which is the "center of gravity" for the cash taken in the fraudulent conveyances. The 3 July 1996 "center of gravity" date produces a total amount of the judgment (excluding punitive damages) of $314,260,941. See **Attachment B**. The 5 May 1997 calendar midpoint calculation produces a total amount of the judgment (excluding punitive damages) of $305,416,301. See **Attachment C**.

---

[14] $101 million is 86.1613% of the total $117,222,000; $16,222,000 is 13.8386% of the total.

10

## IV. THE TRUSTEE AND HIS COUNSEL DILIGENTLY PURSUED DISCOVERY AND SUCCESSFULLY PROSECUTED THIS CASE

In the Joint Pretrial Report, at page 21, the Defendants have made the astounding argument that "In this case, the equities go against the award of prejudgment interest. This case was initially brought in 2003, *and the Trustee has not been diligent and allowed it to languish*. It would be *unfair* to assess interest on an award that the Trustee failed to pursue with any diligence." (Emphasis added.) Like so many of the Defendants' other arguments in this case, that one is counter-factual, to say the least.

The Trustee was appointed in April 2003,[15] and this action was filed in July 2003. *At these Defendants' request*, the Bankruptcy Court stayed discovery in April 2004, when the Court met with the parties to discuss procedural issues relating to defendants' motions to dismiss various claims for relief asserted against them. As the Defendants acknowledged in the Bankruptcy Court, "*the Trustee vigorously opposed the stay and wanted discovery to occur promptly*. See 4/19/04 Hearing Tr. 13-14, 21-22." Defendants' Opposition to the Trustee's Motion for Order Dissolving Discovery Stay (Dkt. 112), 28 Feb 08, p.3 (Emphasis added.) The Bankruptcy Court allowed limited document production should go forward while the motions to dismiss were pending, but – with these Defendants' support and encouragement – no depositions were permitted to be taken.

The Trustee raised the issue again in November 2004, when he specifically sought to take the deposition of Defendant Keith Sabel. The Defendants opposed the Trustee's request, and the

---

[15] The Trustee's appointment was delayed by Renco's opposition to the appointment of a trustee, which was eventually withdrawn. When the Trustee was appointed, and left with only $220,000 in the combined estates, there was almost no money available to hire counsel at hourly rates to pursue – or even to investigate and assess – these claims.

Bankruptcy Court refused to lift the discovery stay. Defendants' Opposition to Plaintiff's Motion to Strike (Dkt. 72), 18 Nov 04, pp. 2-3.

The following spring, the Trustee moved for approval of a settlement agreement with the Sabel defendants, and sought leave to take discovery of the Sabel defendants. These Defendants also opposed that request, and the Bankruptcy Court allowed the depositions of the Sabel defendants *only*, while saying "I think the chances of me ordering any further oral depositions are remote until the motions, the 12(b)(6), is decided." 7/25/05 Hearing Transcript, pages 42-43.

On 18 February 2008, the Trustee made another Motion for Order Dissolving Discovery Stay, and it was opposed by these Defendants. "The Renco Defendants and Cadwalader join in the submissions of the other defendants in opposition to the Trustee's motion to vacate the discovery stay." That response was signed by the Defendants' lead trial counsel in this action. The Trustee's motion to lift the stay on discovery was denied.

On 13 August 2008, the Trustee filed a Renewed Motion for Order Dissolving Discovery Stay. The Renco Defendants opposed the renewed motion, arguing that "The Trustee's Motion should be denied, as there is no more basis today than there was on April 2, 2008 (when the parties were last before the Court) to vacate the discovery stay. *Indeed, the facts supporting continuation of the stay are even more compelling today*." (Emphasis added.) The same Defendants who now argue that the Trustee "allowed [the case] to languish" said "*the Trustee has offered no new facts or arguments whatsoever as to why the Court should lift the stay at this time*. Nor has the Trustee claimed that there are any unusual circumstances, such as health problems, that might give rise to a particularized need to lift the stay."

Promptly after the motions to dismiss were decided in January 2009, the Trustee's counsel in March sent discovery requests to Defendants, including KPMG and Houlihan Lokey,

12

which (in the case of KPMG) were not produced voluntarily, until the Trustee filed a Proposed Order on 29 June 2009 to obtain the production of those documents. The Trustee answered the Defendants' first set of interrogatories in May 2009. In September, the Trustee served a subpoena on Congress Financial to obtain documents relating to the loan agreements.

Even after the motions to dismiss were decided in January 2009, these Defendants moved to restrict discovery in this case, in an effort to make discovery with respect to the environmental issues at MagCorp off limits, because the District Court in Utah had dismissed the EPA's claims in the RCRA Action. On 7 October 2009, these Defendants asked the Bankruptcy Court to give collateral estoppel effect to the summary judgment in the RCRA Action in order to limit discovery in this case, *although that judgment was still being appealed*. The Trustee opposed that effort to limit the scope of discovery in this case, but the Defendants succeeded in blocking discovery with respect to the environmental issues in this case for a substantial period of time. The Bankruptcy Court initially refused to permit discovery with respect to those issues, and that order was not vacated until September 2010, after the Tenth Circuit reversed the district court's judgment in the RCRA Action, and the first deposition in this action was taken in October 2010. The Trustee has been pursuing this case diligently, and successfully, ever since the way was cleared to commence meaningful discovery.

When the Defendants were successfully opposing the Trustee's efforts to commence discovery *for five years*, and successfully blocking discovery with respect to the environmental issues in this case *for another eighteen months after that*, the long delay in getting this case moving meant nothing to them. Now that they face an application for prejudgment interest for all the years they were holding on to other people's money, not only do the Defendant complain that the long delay in bringing this case to trial makes it "inequitable" that Defendants should have to

13

188825

pay prejudgment interest, but the Defendants want to blame the Trustee for "allow[ing the case] to languish." That argument is disgraceful and insulting, and it deserves to be rejected.

## V.     CONCLUSION

The Trustee's request for prejudgment interest is supported by the law, and is both reasonable and consistent with the jury's verdict and apparent intent to see the bankruptcy estates of Renco Metals and MagCorp fully compensated by these Defendants. The Trustee respectfully asks that prejudgment interest be awarded consistent with the provisions of New York law applicable to the fraudulent conveyance claims, and that judgment be entered on the jury's verdict including interest at the New York statutory rate of 9% per annum.

Respectfully submitted this 6th day of March 2015.

> **BEUS GILBERT PLLC**
>
> By:  *Scot C. Stirling*
> Leo R. Beus (Arizona Bar No. 002687) Admitted *Pro Hac Vice*
> lbeus@beusgilbert.com
> Scot C. Stirling (Arizona Bar No. 005757) Admitted *Pro Hac Vice*
> sstirling@beusgilbert.com
> Malcolm Loeb (Arizona Bar No. 017338) Admitted *Pro Hac Vice*
> mloeb@beusgilbert.com
> Robert O. Stirling
> rstirling@beusgilbert.com
> 701 North 44th Street
> Phoenix, Arizona  85008-6504
> Telephone:    (480) 429-3000
> Fax:               (480) 429-3100
> *Attorneys for Plaintiff*