UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 1 6 201

Lee E. Buchwald,

                Plaintiff,

     –v–

The Renco Group, *et al.*,

                Defendants.

13-cv-7948 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Before the Court is the question of whether Plaintiff is entitled to recover prejudgment interest, and if so, the amount of prejudgment interest that Plaintiff shall recover. For the reasons that follow, Plaintiff shall be awarded prejudgment interest at a rate of six percent per annum, not compounded, and beginning from the date that the bankruptcy petition was filed.

## I.    Applicable Law

Plaintiff and Defendant disagree on the law to be applied to Plaintiff's request for prejudgment interest. According to Plaintiff, because the jury returned a verdict in his favor only on counts governed by the laws of New York (fraudulent conveyance and unjust enrichment) and Delaware (breach of fiduciary duty and aiding and abetting breach of fiduciary duty), then those states' laws regarding prejudgment interest should govern. Defendant counters that the prejudgment interest request is governed by federal law, because the claims were either asserted pursuant to Bankruptcy Code provisions that permit state substantive law to apply in bankruptcy court, or were "derivative of" claims based on rights conferred under the Bankruptcy Code.

Defendants' argument that prejudgment interest on avoidance actions in bankruptcy court are always governed by federal law, regardless of whether the claim itself arose out of state or

1

federal law, runs headlong into the Second Circuit's decision in *In re Palermo*, 739 F.3d 99 (2d Cir. 2014).  There, as here, the bankruptcy trustee commenced proceedings under 11 U.S.C. §§ 544 and 550 to avoid certain transfers, and alleged that the conveyances were fraudulent under the precise provisions of New York law that applied in this action: New York Debtor & Creditor Law §§ 273-276.  *Id.* at 101-02.  After a jury found in the trustee's favor, the court entered prejudgment interest at New York's statutory rate of nine percent per annum, *see* N.Y. C.P.L.R. 5004.  *Id.* at 106.  The court of appeals noted that it was then an open question in the circuit whether prejudgment interest should be awarded in an avoidance and recovery action brought under federal bankruptcy law.  *Id.* at 107.  It went on to state that the "proper framework" is to look to the source of the law underlying the plaintiff's claim to determine whether prejudgment interest is available: "[C]laims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules."  *Id.*  The court found "no fault" with the district court's determination that New York law formed the basis for its award, but vacated the award under New York law because prejudgment interest was not available as a matter of right under the circumstances, but instead was entrusted by state law to the court's discretion, and the court did not explain how it was exercising its discretion in that matter.  *Id.*

Defendants try to distinguish *Palermo* on the ground that it "merely stated the generality that 'many of the courts in this Circuit look to the source of the law underlying plaintiff's claim,' and then proceeded to cite cases reaching opposite outcomes on the precise question at issue here … ."  Defs.' Mem. at 7 (Dkt. No. 336).  Defendants go on to state that "the *Palermo* decision cannot be read to reject the cases it cites that applied federal law."  *Id.*  Defendants' reading of *Palermo* is facially incorrect.  The *Palermo* court *explicitly* stated that applying federal rules to claims arising out of federal law, and state rules to claims arising out of state law, is "the proper framework for the analysis."  *Palermo* 739 F.3d at 107.  And, as stated, the court found "no fault" with the decision to apply New York's prejudgment interest statute when

2

New York Debtor & Creditor Law § 273 was the source of the plaintiff's right to recover under the federal Bankruptcy Code. *Id.*

*Palermo* settles the question here, and New York's prejudgment interest statute will be applied to the judgment on Plaintiff's fraudulent conveyance claims under New York law. Although Plaintiff's breach of fiduciary duty claims were governed by Delaware law, the damages won on the fraudulent conveyance and breach of fiduciary duty claims are duplicative, and Plaintiff's request to apply only New York law obviates the need to conduct further analysis under Delaware law.[1]

Though Defendants' other arguments require no discussion in light of *Palermo*, Defendants' argument that a court must apply federal law on prejudgment interest when a Plaintiff has won a judgment on both federal and state claims should be addressed. Defendants cite for this proposition *Thomas v. iStar Financial, Inc.*, 629 F.3d 276 (2d Cir. 2010), which held that "judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate." *Id.* at 280. The argument that *Thomas* requires the Court to apply a federal interest rate here depends on the faulty premise that the jury returned an indistinguishable verdict on state and federal law. In fact, none of Plaintiff's judgment was based on federal law: the jury returned verdicts in Plaintiff's favor on New York fraudulent conveyance law, Delaware law for breach of fiduciary duty, and New York unjust enrichment law. In light of *Palermo*, we know that the New York fraudulent conveyance judgment is not based on "federal law" just because it was asserted pursuant to § 544 of the Bankruptcy Code, and the other judgments are patently products of state law. At any rate, *Thomas* involved an award of damages returned without any distinction between the state and federal claims, *see Thomas*, 629 F.3d at 280, whereas in this case the jury

---

[1] Regardless of whether New York law would be more or less generous to Plaintiff than Delaware law, Defendants cannot be prejudiced by Plaintiff's decision to proceed only under New York law. If New York law is more generous than Delaware law, than Plaintiff is simply asserting his right to have prejudgment interest calculated according to the most generous applicable state law under which he has been awarded damages. If New York law is less generous than Delaware law, then Plaintiff has voluntarily chosen to forego additional prejudgment interest to which he may be entitled.

separately indicated its award (or non-award) for every claim, state and federal.  See Dkt. No. 327-27 (Court Ex. 25) (Final Verdict Form).

## II.     Prejudgment Interest Under New York Law

The Court turns now to the application of New York law here.  Under the relevant New York statute, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion."  N.Y. C.P.L.R. 5001(a).  The next question, then, is whether interest under this provision is mandatory, or is left to the Court's discretion.  Plaintiff argues that the statute requires the Court to award prejudgment interest.  Defendants argue that prejudgment interest is discretionary because this action falls into the category of actions "of an equitable nature" under the statute.

Again, *Palermo* considered and at least partially disposed of this question.  There, the Second Circuit held that prejudgment interest is not a matter of right for a New York-law fraudulent conveyance claim.  739 F.3d at 107.  Accordingly, prejudgment interest on that claim was captured by the portion of the statute rendering prejudgment interest to the court's discretion.  *Id.*  The same result follows here.

In discussing breach of fiduciary duty under Delaware law, Plaintiff asserts that "because a judgment for the payment of money in equity is essentially indistinguishable from a judgment of a court of law, the equity courts have traditionally applied the statutory rate of interest."  Pl.'s Mem. at 5-6 (Dkt. No. 329).  The Court understands this argument to concede that breach of fiduciary duty (and aiding and abetting thereof) is an equitable claim under Delaware law.  However, in Delaware the law appears to be plainer than in New York: prejudgment interest is awarded as a matter of right without caveat.  *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) (citing *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209 (Del. 1978)).  That said, Plaintiff has elected to seek prejudgment interest under New York law, so the

4

Court will consider prejudgment interest applying the New York standard. Because the Court has already found that it is appropriate to apply the New York law of prejudgment interest to the damages awarded to Plaintiff, the inquiry under Delaware law need proceed no further.

Finally, on the question of unjust enrichment, New York's provision governing equitable claims applies. Though sometimes described as quasi-contractual, unjust enrichment is equitable. *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). Plaintiff attempts to liken unjust enrichment to a *quantum meruit* claim, which at least one court has held falls under the mandatory prejudgment interest provision of N.Y. C.P.L.R. 5001. *See Stillman v. InService Am. Inc.*, 738 F. Supp. 2d 480, 482 (S.D.N.Y. 2010). However, the case Plaintiff cites to demonstrate that *quantum meruit* and unjust enrichment may be analyzed together as a single quasi-contract claim was specifically limited to "the context of services rendered." *Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F. Supp. 2d 237, 250 (S.D.N.Y. 2012). The better course is to stick with the accepted understanding of unjust enrichment as an equitable claim and find that prejudgment interest is committed to the Court's discretion under New York law.

Accordingly, the Court has discretion to award prejudgment interest, and discretion over the amount of prejudgment interest, with regard to all three of the claims on which the jury awarded (duplicative) damages to Plaintiff.

### III.    Amount of Prejudgment Interest

Finally, having determined that prejudgment interest is available and that fixing the amount of prejudgment interest is committed to the Court's discretion, the Court must now determine whether prejudgment interest should be awarded to Plaintiff, and if so, what the amount should be. Factors that govern a discretionary award of prejudgment interest include "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d

831, 834 (2d Cir. 1992).  The Court's purpose in fixing the amount and timing of prejudgment interest is to set a rate "necessary to compensate the wronged party fully," while avoiding providing a windfall to Plaintiff.  *Mendez v. Teachers Ins. & Annuity Ass'n & Coll. Ret. Equities Fund*, 982 F.2d 783, 790 (2d Cir. 1992) (quoting *Wickham*, 955 F.2d at 835).

First, the Court determines that some measure of prejudgment interest is appropriate in this case.  Plaintiff is the bankruptcy trustee for two corporations that a jury has now determined had substantial assets depleted by Defendants' fraudulent conveyances.  This worked direct harm to the corporations and, by extension, the corporations' creditors, who stood to lose the most by MagCorp's and Renco Metals's bankruptcies.  The jury's verdict will permit those creditors to recover from the companies' estates at least a portion of what they otherwise would have been entitled to had the debtor corporations been able to pay their debts.  The purpose of awarding prejudgment interest is not to amplify the amount that Plaintiff and the corporations' creditors are able to recover, but to, at minimum, offset the otherwise diminished value of the funds because of the passage of nearly nineteen years before the first of the transfers at issue in this case and the judgment to be entered.  Moreover, the Court is mindful that these sums of money had significant potential to generate interest and other investment returns for the parties holding them.  MagCorp initially borrowed the funds that were subsequently transferred away from the debtor companies at a rate of 11.5% interest, and Defendant Rennert testified that the money generated by the bond offering was put to use by the Renco Group to generate some return.  Trial Tr. 665-66.  These funds presumably could have been put to productive use in the creditors' hands as well.  The nominal dollar value of the funds should not remain in stasis while the real value of money drops over the course of 16-19 years.

Having determined that prejudgment interest is appropriate, the Court must next determine the rate of prejudgment interest.  Plaintiff argues for the New York statutory rate of 9% (which, as noted above, is not mandated in this action because *Palermo* instructs that the amount of interest awarded is within the Court's discretion), while Defendants argue that if prejudgment interest is made available at all, it should be fixed at the federal postjudgment

6

interest rate, which is set by statute as the weekly average one-year constant maturity treasury yield. 28 U.S.C. § 1961(a). Here, that would be roughly 0.25%.

To begin, the Court concludes that use of the generous New York statutory rate of nine percent per annum would overcompensate Plaintiff. Two main factors guide the Court's discretion on this point. First, some portion of the current bondholders who stand to recover are not the original bondholders who were deprived of the use of their funds because of the fraudulent conveyances. *See* Trial Tr. 179-81. Individuals who purchased the debt once it was already distressed could not have expected to put the funds originally invested in the bonds to a more productive use between the time of their purchase and the conclusion of this litigation. Unlike the original investors, they never had any entitlement to those funds, and so were not deprived of use of the money in the interim. *See Kaiser v. Fishman*, 187 A.D.2d 623, 627 (N.Y. App. Div. 1992) (Noting in a contract action that "[t]he award of interest is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved."). Permitting an overly generous rate of interest would produce a windfall for these distressed-debt investors. *Cf. Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 614 (2d Cir. 1994) (denying prejudgment interest to investors in highly risky venture who otherwise received a return that satisfied any equitable interest for recovery). To the extent any of the funds recovered by the Trustee could be used to pay eventual liability to the EPA, as has been argued, the Court is similarly convinced that applying the nine percent per annum rate would be excessive. Because no liability to the EPA has been established to date, the EPA had and continues to have no immediate entitlement to the funds at issue. Thus, any question as to what the value of those funds would have been to the EPA is irrelevant.

The second main consideration guiding the Court's discretion to impose less than New York's statutory interest rate is that the statutory rate likely overstates the potential performance of those funds for Plaintiff, and those whose interests he represents, during the time period since the transfers were made. The Court can take judicial notice of the fact that a significant financial

crisis occurred during the timeframe for which prejudgment interest is sought, and though a nine percent annual rate of return may not have been impossible during this timeframe, it was less likely than in a period of economic calm, and indeed there would have been a substantial possibility of investors earning a lower rate, or taking a loss. If nothing else, a nine percent annual rate of return exceeds what is necessary to ensure that the present value of the damages award matches its adjusted worth at the time of MagCorp's bankruptcy.

Defendants' proposed interest rate, however, is far insufficient to even ensure that the damages award—which represents the amount of funds taken from MagCorp despite its insolvency—retains its real value between the time of the transfers and the entry of judgment. Indeed, inflation alone would leave the value of the $117,220,000 quite diminished given the passage of time. A significant amount of time having passed since the transfers, the Court finds that it would be inequitable to let the value of the damages decrease in this manner.

The Court also notes that, although Mr. Buchwald testified at trial that some current bondholders were not the original purchasers and were likely "vulture funds," the evidence does not show that *all* of the original notes ended up being resold as distressed debt. Defendants' own papers suggest that as of 2003, roughly half of the debt was held by post-petition purchasers or purchasers who could anticipate the bankruptcy, *see* Defs.' Mem. at 11 (Dkt. No. 336); there is no evidence of how this number has changed in the intervening decade. To the extent any original noteholders continue to hold the notes, these individuals should receive the benefit of a prejudgment interest rate that reflects their lost opportunity to use the funds invested in MagCorp bonds more productively. Indeed, this basic recognition is required in order to make these individuals whole in light of Defendants' fraudulent transfers and breaches of fiduciary duty.

Finally, and contrary to Defendants' argument, the jury's damages award does *not* show that Defendants were wholly innocent tortfeasors who met only formal liability, or were otherwise so lacking in culpability as to make a prejudgment interest rate at or above the level of inflation fundamentally unfair. Indeed, both of the Defendants ordered to pay compensatory damages were found liable for breaches of fiduciary duty or aiding and abetting such breaches.

8

While it is true that the jury did not find any "actual fraud," they were also not presented with that option. In light of the nature of the jury's findings, including imposing punitive damages on the Renco Group, Inc., the Court would be hard-pressed to find that Defendants "acted innocently." *Wickham*, 955 F.2d at 834. Ultimately, however, the equities favor prejudgment interest in this action even if Defendants' conduct was wholly innocent, because the evidence shows that Defendants were able to generate substantial returns based on the money borrowed from the noteholders, and the equities favor returning some of this value to Plaintiff and those he represents as a matter of making those individuals whole for the loss of their money for the prejudgment time period.

The appropriate rate must therefore take account of the competing needs to, on the one hand, compensate Plaintiff for the decrease in absolute value of the funds that are represented by the damages award in this action and to provide a reasonable return to make Plaintiff whole in light of the lost ability to otherwise make use of the funds, and on the other hand to avoid overcompensating Plaintiff based on the likely performance of any investments over the past 16-18 years, to avoid a windfall for noteholders who otherwise did not lose potential value, and to avoid imposing an interest rate that serves as a punishment for Defendants. The court finds that an appropriate rate to achieve this is two-thirds of the New York statutory rate, or **six percent per annum**, without compounding. This rate exceeds the rate of inflation, and therefore serves to ensure Plaintiff's damages award does not lose absolute value because of the intervening period between the bankruptcy and the judgment, and provides a modest but reasonable rate of return on any investment of the funds. As Defendants originally borrowed the noteholders' funds at 11.5% per annum, the Court finds that the 6% rate of return is equitable to all parties, takes into account the state of the economy over the intervening period, and strikes a balance between the need to compensate continued noteholders without providing an unfair windfall for entities who purchased the notes at a bankruptcy-related discount.

Finally, the Court exercises its discretion to determine that prejudgment interest shall accrue from the date of the bankruptcy petition: August 2, 2001. There is no evidence in the

record that MagCorp had ceased to pay its debts before the date of bankruptcy, so starting the interest earlier risks double recovery. Furthermore, it is because MagCorp and Renco Metals went into bankruptcy that the transfers became actionable at all. *See In re Nelson Co.*, 117 B.R. 813, 818 (Bankr. E.D. Pa. 1990). Plaintiffs argue for a midpoint date between the transfers from MagCorp and Renco Metals to Defendants, but the Court finds that beginning at that earlier date would overstate the amount of interest necessary to make Plaintiff whole. Defendants cite a substantial number of cases wherein the court applied prejudgment interest from the commencement of adversary proceedings. Some provide no reasoning for beginning on that date, *see, e.g.*, *In re 1031 Tax Grp., LLC*, 439 B.R. 84, 91 (Bankr. S.D.N.Y. 2010), and others indicate that the date was chosen at the trustee's request, *see, e.g.*, *In re Nathan & Miriam Barnert Mem'l Hosp.*, Bankr. No. 07-21631 (DHS) 2009 WL 3230798, at *10 (Bankr. D.N.J. Oct. 5, 2009). Even those that provide some reasoning as to the date do so under federal law, and are thus less persuasive, because the damages award here was made under New York law, as discussed above. As the court explained in *Howland v. Resteiner*, No. 07-cv-2332 (ILG) (SMG), 2008 WL 1740531, at *6 (E.D.N.Y. Apr. 10, 2008), New York law provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. 5001(b). Although the *Howland* court found this to be the date of the transfer itself, that case was factually dissimilar to this one: *Howland* involved a mail-fraud scheme that was fraudulent from the moment it was executed, not because it was connected with a later bankruptcy. *Howland*, 2008 WL 1740531, at *2. As the fraudulent conveyance claims here were only asserted in the bankruptcy context, and there is no evidence that investors ceased receiving the expected return on their investment before the bankruptcy petition was filed, the Court finds in its discretion that the date that the petition was filed is the appropriate date from which to commence prejudgment interest. This reasoning is equally applicable to the breach of fiduciary duty claims, because the jury's damages award for these claims overlaps with the damages for fraudulent conveyance. Regardless of the date on which the breaches themselves occurred, Plaintiff's loss of funds to which he was entitled did not begin until the bankruptcy petition was

10

filed, and the Court will exercise its discretion to run prejudgment interest from the date of that petition. Similarly, the damages award for unjust enrichment are duplicative of the damages awarded for fraudulent conveyance against Ira Rennert, and the Court will exercise its discretion to begin prejudgment interest on these damages from the date of the bankruptcy petition.

## IV.   Conclusion

For the foregoing reasons, judgment in this action shall include prejudgment interest at a rate of six percent per annum, not compounded, and beginning on the date that the bankruptcy petition was filed, August 2, 2001.

Therefore, consistent with the jury's verdict, *see* Dkt. Nos. 237-27 & 237-28, and this Order, the Clerk is requested to prepare a judgment reflecting a damages award against **The Renco Group, Inc.**, in the amount of **$101,000,000**, plus prejudgment interest at the rate of **6% per annum, not compounded**, and commencing on **August 2, 2001**; and an additional award of **$1,000,000** in punitive damages, with no prejudgment interest. Postjudgment interest shall apply at the applicable rate under 28 U.S.C. § 1961.

The judgment should further indicate a damages award against **Ira Rennert** and **the Trustees of Trusts Established by Ira Rennert**, jointly and severally, in the amount of **$16,220,000**, plus prejudgment interest at a rate of **6% per annum, not compounded**, and commencing on **August 2, 2001**. Postjudgment interest shall apply at the applicable rate under 28 U.S.C. § 1961.

The judgment should finally indicate that Plaintiff shall recover nothing, and the action shall be dismissed, against the following Defendants: KPMG Peat Marwick LLP; Donaldson, Lufkin & Jenrette Securities Corporation; Houlihan Lokey Howard & Zukin; Cadwalader, Wickersham & Taft, LLP; Roger L. Fay; Justin W. D'Atri; Dennis A. Sadlowski; Michael C. Ryan; Michael H. Legge; Ron L. Thayer; Todd R. Ogaard; Lee R. Brown; and Howard I. Kaplan. Dismissal of claims shall also be final as against K. Sabel Holdings, Inc., and Keith Sabel.

SO ORDERED.


Dated: ___March 16___, 2015
       New York, New York

ALISON J. NATHAN
United States District Judge