```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   LEE E. BUCHWALD, as Chapter 7
     Trustee for Magnesium
 4   Corporation of America and
     Related Debtor, Renco Metals,
 5   Inc.,

 6                  Plaintiff,

 7          v.                             13 CV 7948 (AJN)
                                           Trial
 8
     THE RENCO GROUP, INC., a
 9   Delaware corporation, et al.,

10                  Defendants.

11   ------------------------------x
                                           New York, N.Y.
12                                         February 26, 2015
                                           9:20 a.m.
13
     Before:
14
                         HON. ALISON J. NATHAN,
15
                                             District Judge
16
                             APPEARANCES
17
     BEUS GILBERT, PLLC
18        Attorneys for Plaintiff
     BY:  LEO R. BEUS
19        SCOT C. STIRLING
          ROBERT STIRLING
20        MALCOLM LOEB

21   KAYE SCHOLER LLP
          Attorneys for Defendants
22   BY:  H. PETER HAVELES, JR.
          JEFFREY A. FUISZ
23        -and-
     PARK JENSEN BENNETT LLP
24   BY:  TAI H. PARK
          STEVEN C. BENNETT
25
```

 1                    (Trial resumed; jury not present)

 2            THE COURT:  Upon reflection as to the jury's request,

 3       let me get the note in front of me.  The note, Court Exhibit

 4       15, which asks for the solvency opinions for Frank and

 5       Grabowski, upon reflection and after reading your letters this

 6       morning, this is what I decided I am going to say:  This is a

 7       departure from what was requested of me yesterday.

 8            You've asked for the solvency opinions of Frank and

 9       Grabowski.  Their expert opinions were put before you at trial

10       through their testimony.  During that testimony they referenced

11       written reports.  Those reports themselves are not in evidence.

12       Instead, as noted, their expert opinions are in evidence via

13       their testimony and any exhibits admitted during their

14       testimony.  Assuming that's what you are seeking, the lawyers

15       have pulled together the direct, cross, and redirect

16       examinations of both Frank and Grabowski, and I am sending that

17       back with you now.  And to the extent that you are interested,

18       the exhibits that were admitted during their testimony you

19       have, and they were, and I'll just read the numbers as to what

20       they are, all of them.

21            What are the numbers?

22            MR. HAVELES:  We have a list we gave to your Honor.

23            When you say all of them, I am not clear.  Is that

24       addressing the issue that was raised in my letter to mean that

25       particular exhibit will also be on those?  Because we have two

```
 1    versions, one with, one without the numbers.

 2              THE COURT:  All of the exhibits that were admitted

 3    during any of the testimony of the experts.

 4              MR. HAVELES:  Okay.  Thank you, your Honor.

 5              THE COURT:  Including the one that you asked not to be

 6    sent back to them, though obviously they have it.  Because it

 7    came in during their testimony but was not inquired about.

 8              MR. HAVELES:  Rather than reading it and messing it

 9    up, I'll hand you the actual typed list, your Honor, which

10    includes the exhibit number in question.

11              THE COURT:  Mr. Stirling, you've looked at that list?

12              MR. S. STIRLING:  Yes, your Honor, we have shared

13    these lists.

14              THE COURT:  Yes.  Thank you very much.

15              MR. HAVELES:  We have the testimony, your Honor.  We

16    have prepared the Grabowski testimony.  Mr. Stirling has

17    prepared the Frank testimony.  Lat night we exchanged the

18    versions showing the redactions and we each signed off on the

19    extent of the redactions.  There were no disagreements.

20    Everyone was happy with what had been done.

21              Do you want us to hand that to Ms. Nunez right now,

22    your Honor?

23              THE COURT:  Yes, please.

24              Does anyone have a preference as between me reading to

25    them the full list of exhibits or simply giving them the pieces
```

1      of paper that you've handed me, any preference?

2                  MR. HAVELES:  I would give them the list, your Honor.

3                  MR. S. STIRLING:  I agree.

4                  THE COURT:  It would be efficient.  Thank you.  We

5      will do that.

6                  The only modification then to what I'll say is just at

7      the end and to the extent you are interested, the exhibits that

8      were admitted during their testimony that you have a list of

9      them, I'm also giving them with the testimony.

10                 MR. HAVELES:  The one clarification I would

11     respectfully suggest, your Honor, because there were exhibits

12     that were used that had been previously admitted, so it also

13     includes exhibits that were addressed during the testimony but

14     had been admitted prior to the examination.

15                 THE COURT:  That's fair enough.  And I'll say, as

16     noted, their expert opinions are in evidence via their

17     testimony, and any exhibits admitted or discussed with them

18     during their testimony.

19                 MR. HAVELES:  Thank you, your Honor.

20                 MR. S. STIRLING:  Yes.

21                 MR. HAVELES:  I have one other issue, if I may, your

22     Honor.

23                 Your Honor, this morning's New York Post had an

24     article, and I'll hand it up to your Honor and Mr. Stirling,

25     had an article with the headline:  Jury weighing Ira Rennert's

1    $700 million dollar fate, and the $700 million, which was never

2    a number given to the jury, is attributed to an undisclosed

3    source in the course of the article.  We are concerned about,

4    given the Post is a rather commonly read newspaper in this

5    city, about the potential, because we have not told people to

6    not read newspapers at all, for the potential, given the

7    headline, prejudicing the jury with extra judicial comments in

8    the press.  And we think that a cautionary instruction to the

9    jury about there may be newspaper articles during the course of

10   the week and the jury should avoid any reference to newspapers

11   while this is going on.  And if they inadvertently see

12   something they should understand that what may be in the press

13   is not necessarily accurate or a correct recitation of what is

14   before them and it should be disregarded.

15         THE COURT:  I am happy to add that to elaboration to

16   my instruction.  I think the thing to do would be to do that at

17   the end of the day, if we are not done, because they will be in

18   here all day.

19         MR. HAVELES:  My concern is if they read the Post this

20   morning, because it was on the website late last night and it

21   was in the paper for the morning edition, to the extent anyone

22   reads the Post in the morning, there is the possibility they

23   would have seen this, given the prominence of the headline.

24   I'm concerned about the inadvertent impact it might have on

25   today's deliberations, particularly given the number used in

1   the headline, which was not a number used during the course of

2   the trial.

3         THE COURT:  I am not sure which would be worse.  If it

4   were a number used during the course of the trial, you'd have

5   the same concern, I imagine.

6         MR. HAVELES:  If it was in the trial, either it would

7   have been admitted or not.  No one has asked for a gag order.

8   This is a normal paper.  We told people not to go out and do

9   any research.  Now, this is something in a routine daily

10   newspaper that many New Yorkers read.  If it was in an obscure

11   journal, it was like the Observer has picked up some stories, I

12   wouldn't worry because no one reads the Observer.  Something

13   like the Post, that's a different issue.

14         THE COURT:  You want me to do this when they come in?

15         MR. HAVELES:  Yes, your Honor.

16         THE COURT:  Tell me your request again.

17         MR. HAVELES:  My request is to remind the jury that

18   they should not be looking at anything they see in the news or

19   newspapers or social media or on the web regarding this case

20   and remind them that things that may be reported are not part

21   of the record and may not be accurate and should be

22   disregarded.

23         THE COURT:  Mr. Stirling.

24         MR. S. STIRLING:  Your Honor, I have no objection to

25   your handling it as you see fit.

```
 1              THE COURT:  Thank you.

 2              I will do a version of that.

 3              MR. HAVELES:  Thank you, your Honor.

 4              THE COURT:  We are just checking on our numbers.  As

 5   soon as we get 10, we will bring them out to give this back to

 6   them.

 7              Anything else?

 8              MR. HAVELES:  Nothing on this side, your Honor.

 9              MR. S. STIRLING:  Nothing.

10              THE COURT:  I'll step down until we have our 10.

11   Thank you.

12              (Recess)

13              THE COURT:  We do have all of our jurors.  We will

14   bring them in in a moment, as soon as they are ready.

15              While we have a moment, for your planning purposes, to

16   the extent that there are posttrial motions, I am not going to

17   extend the 28 from judgment day deadline.  That will be the

18   deadline for filings with two weeks for opposition, one week

19   for reply.

20              MR. HAVELES:  Your Honor, from a more micro calendar

21   issue, are we still thinking that 12:30 is the luncheon recess?

22              THE COURT:  I will have lunch brought in for them at

23   12:30.

24              (Jury present)

25              THE COURT:  Good morning, members of the jury.  To
```

1   complete the response to your request from yesterday, when you

2   had sent a note asking for exhibits for tomorrow, solvency

3   opinions for Frank and Grabowski, as just noted, you have asked

4   for the solvency opinions of Frank and Grabowski.  Their expert

5   opinions were put before you at trial through their testimony.

6   During that testimony they did reference written reports.

7   Those reports themselves are not in evidence.  Instead, as

8   noted, their expert opinions are in evidence via their

9   testimony and any exhibits admitted or discussed with them

10   during their testimony.  So assuming that's what you are

11   seeking, the lawyers have pulled together the direct, cross,

12   and redirect examinations of both Frank and Grabowski, and I

13   have that and I am going to send that back with you now.

14         And to the extent that you are interested, we also

15   have a list of the exhibits that were admitted or discussed

16   with Frank and Grabowski, that were admitted or discussed with

17   them during their testimony.  You have those exhibits.  But to

18   the extent it's helpful, or what you are looking for, going

19   back with you along with the testimony are the list of

20   exhibits.

21         I'll give those to Ms. Nunez to give to you on your

22   way back.

23         I also did have one note.  As I've discussed

24   throughout, and I am confident you've been faithful to the

25   importance of doing no research of any kind regarding the case,

1    everything that you need to know about the case is what's come

2    in evidence here.  A corollary of that, to the extent you were

3    to inadvertently see something, that it came to you through the

4    press or other ways, you should, of course, disregard it.  To

5    the extent you have seen anything in that regard, of course,

6    you should put it out of your mind.  It's not evidence, not

7    reliable, not part of the case.  Everything which you are

8    permitted to base your decision on is what's been admitted in

9    evidence in this case.

10             With that, I'll send you back and we will have lunch

11   brought in for you at 12:30.  Thank you very much.

12             (Jury deliberations resumed; time noted:  9:55 a.m.)

13             THE COURT:  Just to complete that point, I usually

14   give the lawyers a lunch, an hour for the lunch.  But given the

15   frequency with which notes have come out, I do want to keep

16   that shorter, so let's take a 40-minute lunch break.

17   Otherwise, please be available so we can respond to notes as

18   promptly as possible.

19             Anything else to address at this time?

20             MR. HAVELES:  No, your Honor.

21             THE COURT:  We will wait to hear from the jury.  Thank

22   you.

23             (Recess pending verdict)

24             THE COURT:  We received a note which we will mark as

25   16.  The note says:  In order to answer No. 6, we need to know

1    the total amount received for A through G:  A, Renco Group; B.

2    Ira Rennert; C, Legge; D, Thayer; E, Ogaard, F, Brown; G,

3    Kaplan.  Plus new paper, please and thank you, which I will

4    direct my deputy.

5          I'll hear your proposals for response.

6          MR. HAVELES:  We need to do some number crunching to

7    some extent for some of them, your Honor.  The one thing that

8    there is no dispute on, there was no direct transfer to

9    Mr. Rennert.  As to that I believe the number is zero.  But for

10   the others we'd have to sit down and add numbers up.

11         THE COURT:  Why don't you sit and think a little bit,

12   come up with a proposal.  I am going to sit and think for a

13   little bit.  It's an unusual question.  And I'll want to give

14   you a few moments to formulate how you would like me to

15   respond, including doing whatever you think is necessary to

16   respond.

17         I'll come back in a few minutes and we can all noodle

18   a bit.

19         (Recess pending verdict)

20         THE COURT:  Suggestions.

21         MR. HAVELES:  Your Honor, the jury is asking us to do

22   its fact finding with respect to the amount of No. 6 because

23   there is no readily available information without us doing what

24   would be the jury's work.  We think it's inappropriate to

25   answer the question and say they have to go back and rely on

 1    the evidence.

 2         THE COURT:  Give me your specific proposal.

 3         MR. HAVELES:  My proposal would be to advise the jury

 4    that this is an issue for it to determine and must review the

 5    evidence to reach a determination as to what the evidence in

 6    the record shows as to each of those amounts to each of the

 7    parties about whom they have asked.

 8         MR. S. STIRLING:  Your Honor, I think we can refer

 9    them to, first, agreed facts where these numbers are identified

10    in Exhibit 2792 and in a couple of other exhibits where the

11    information can be found.  The numbers are not in controversy

12    and the information is simply a matter of -- it's a matter of

13    giving the jury an answer to the question about where that

14    information is in the exhibits that they have, including agreed

15    facts.

16         MR. HAVELES:  Your Honor, they asked that question

17    yesterday and we pointed them to the various documents.  And

18    now they are asking us for the numbers.  That's the issue.

19    Tell us what numbers to fill in on the verdict form.

20         THE COURT:  I agree that we are not going to do that

21    and that's not what actually Mr. Stirling is suggesting.  Let's

22    try to be responsive.

23         I think the question on the table is whether to say

24    simply, what they are asking is part of their task.  And based

25    on the information that they have and the evidence and the

1    like, it's for them to determine, versus that with pointing

2    them to any exhibits that do or don't, I suppose, contain

3    information from which those numbers can be derived.

4         I agree that when you first stood up and suggested

5    doing the math, it was not immediately apparent to you that

6    that was inappropriate, but I agree with you now that it's

7    inappropriate.

8         Really the question is to make their task manageable

9    whether there are some set of documents that appropriately they

10   should be pointing to.

11        MR. HAVELES:  As I said, your Honor, yesterday they

12   specifically asked for that.  We told them the specific

13   documents.

14        THE COURT:  How about we point them again to the

15   documents?

16        MR. HAVELES:  We can point them collectively to the

17   same documents we did yesterday, your Honor.  Let me just pull

18   up the transcript to get the answer we gave them, if I may.

19        Your Honor, yesterday, and I'm referring to the

20   discussion that begins on page 2964, all the way over to the

21   advice we gave the jury, that your Honor gave the jury on pages

22   2971 through 72.

23        THE COURT:  Just one second.

24        Mr. Haveles, you said 2964.

25        MR. HAVELES:  The discussion, you gave us a break to

F2QMBUC3

1    think about it and then we started to have a dialogue when we

2    came back on 2964 and the pertinent discussion begins as to

3    these documents, your Honor, on page 2966 through 2970.  And

4    then the advice that you gave the jury is reflected starting on

5    line 21 of 2971 through line 13 of the next page.

6            THE COURT:  Some of those numbers were wrong and then

7    we recorrected later and then added to them, if I'm

8    remembering.  Is this the place where that was?

9            MR. S. STIRLING:  In part, yes.

10           MR. HAVELES:  Those were the balance sheet, things for

11   the MagCorp balance sheets.  This is referencing them to

12   certain 10-Ks and some stipulated facts, your Honor, or

13   referring to them.  We corrected that error before we got to

14   this note, your Honor.

15           THE COURT:  Can you point me again to where you think

16   it's contained.

17           MR. HAVELES:  The advice you gave the jury?

18           THE COURT:  Yes.

19           MR. HAVELES:  There was a long discussion.

20           THE COURT:  No.

21           MR. HAVELES:  Beforehand, the advice you gave the jury

22   as to this gentleman starts at 2971, line 21, carrying through

23   to -- actually, your Honor, it starts on 2972, line 3 through

24   13.  This is in response to their question about documents

25   regarding dividends, and we had a dialogue about both dividends

1   and net worth appreciation payments in the preceding pages,

2   your Honor.

3          THE COURT:  At base the view as to what documents

4   contain information to answer this question is to be found at

5   2090 and Exhibit 8330 at page 0039 and 8382 at page 0043.  And

6   what I said you can look here for the total amount paid in a

7   fiscal year with respect to the three individuals, Legge,

8   Kaplan, and Thayer.  And you may also -- it says:  You may also

9   give them what you have asked for, what to look to, Exhibit

10  2792.  I think the language there, and you may also look to

11  Exhibit 2792, which is the stipulated facts, agreed facts and,

12  in particular, pages 19 to 22.

13         Setting aside the language for a moment, Mr. Stirling,

14  do you agree these are the exhibits that could readily be

15  pointed to?

16         MR. S. STIRLING:  Your Honor, I think there are other

17  exhibits that should be identified for the jury.  The question

18  they are asking today --

19         THE COURT:  What exhibits?

20         MR. S. STIRLING:  Very well.  In addition to 2090 and

21  2792, we would suggest 2074, 1998 10-K at page 43; Exhibit

22  2033, page 11; and then the net worth agreements for the

23  individual defendants:  Legge, 2181; Brown, 2183; Ogaard, 2202;

24  Thayer, 8057; and Kaplan, 8098.

25         THE COURT:  What is your reaction to the fuller list?

1      Is it just the same reaction or is it any different?

2           MR. HAVELES:  It's twofold.  One, I don't think it's

3      appropriate just to give them the net worth appreciation

4      agreements because they are the contracts.

5           My view is, it's the jury's job to decide what

6      evidence it wants to look at.  They can't come and say, how

7      should we determine the numbers when we say look at these

8      exhibits.  That, in effect, becomes a mini closing.

9           I believe this is an inappropriate response telling

10     them, this is the evidence you should consider to answer a

11     particular verdict question.  I believe we should not give them

12     any information.  Before they asked for particular exhibits, we

13     gave them the information where they are looking for things,

14     just help us sort through things.

15          Now this is a question specifically addressed to how

16     should we answer one of the interrogatories.  And it's

17     inappropriate to say, well, look at these things and you can

18     find all the numbers you need.  That's not the task of a jury

19     note here.  And I believe it now becomes the jury asking us to

20     help fill in the void for their fact finding.  If either side

21     failed to bring the jury's attention to certain evidence or

22     tell the jury how to answer the questions, that's a failure of

23     closing argument and it can't be resolved by answering a note

24     to a jury question, which is specifically what this note seeks

25     to do.

1          And I strongly urge the Court to say that this is an

2     issue of fact finding, the jury must review the evidence that

3     it received to determine what the answer is.

4          But separate and apart from that, we spent a lot of

5     time yesterday going over all of these things and these are the

6     documents that we all identified contained the information.  I

7     haven't looked at 2074, but I would strongly disagree with him

8     telling to start looking at the net worth agreements because

9     that only further amplifies the point of my basic objection.

10    We are telling the jury what evidence it should consider to

11    make an ultimate finding of fact and, I respectfully submit,

12    your Honor, that just crosses the line of what the jury may

13    request of counsel and the Court to help them with.

14         THE COURT:  I will say I do tend to agree.  I was

15    surprised at Mr. Haveles' first suggestion to somehow do the

16    numbers, and I don't disagree with anything he has just said.

17    And I do think the fuller list really does put a point on the

18    act of what we are doing, which is -- if they said, what

19    documents should we look to to determine liability, clearly we

20    can't do that.  This is asking for how do we decide damages.

21    And that's what exactly the question is asking for and that was

22    the task of counsel through the trial, but certainly during

23    closing argument which, again, there are no complaints of

24    insufficient time since I gave you all the time you asked for.

25         It goes too far.  And when they ask for specific

1  exhibits, we can give that and that's what we have done so far.

2  They are not asking for that.  They may be asking for actual

3  numbers, but even interpreting it more appropriately, they are

4  asking for a summation of documents, an organization of

5  documents and presumably testimony.  There was testimony that

6  goes to these matters as well and it invades the jury's

7  process.

8          MR. S. STIRLING:  Very well, your Honor.  Do I

9  understand that the proposal now then, putting aside what I had

10  suggested, would be to remind them that yesterday they asked

11  these questions and we had referred them to the exhibits that

12  we had identified yesterday that included some of this

13  information, 2090, 2792, et cetera, those that were identified

14  yesterday?

15          MR. HAVELES:  I don't think we can do that, your

16  Honor.  That crosses the line.  That's an issue that you must

17  decide based on the evidence you have heard and received.

18          THE COURT:  Here is what I think is appropriate, some

19  version of this.  I think it wouldn't be useful to them to say

20  what we referred you to yesterday has some of that information.

21  Either referring to it them yesterday gave them sufficient

22  information or it didn't.  And then the process of telling you,

23  we told you some of this is doing that work.

24          I think what we can do is, in a sense, invite them to

25  ask if there are specific exhibits that they want or specific

testimony.  But to the extent that they are asking us for what

documents or evidence they should use to come to a particular

conclusion on a question, that we cannot do.  That is their

task based on everything that's been presented to them.

MR. S. STIRLING:  I do think, your Honor, it would be

appropriate and not out of line to tell them that they had

asked a question yesterday relating to this subject that we had

identified those exhibits for them and that we cannot provide

them --

THE COURT:  I am not going to do that.  It's just a

version of the same thing, as I think you recognize.

Because there are steps involved here.  There is

pulling together different aspects of different pieces of

evidence.  If it were just arithmetic, if it were just clear

that they had in mind some set of exhibits and they just don't

remember what the exhibit numbers were or some testimony and

they can't identify exactly what, we would know with some

confidence that they have done the fact-finding analysis

themselves and they are just looking for the piece of paper

that get that.  To the extent that they need more, it's too

late, or at least I am not, through me, going to summarize or

describe the testimony.  I have no basis for thinking that's

appropriate.

I'm just working on specific language.

Here is what I propose.  After reading the question

1    I'll say:  The fact-finding task for you in this question that

2    you are asking about is to come to conclusions based on the

3    evidence to determine what amounts for each of these defendants

4    has been proven.  If there are specific documents you have in

5    mind or specific testimony that you are seeking, I will gladly

6    provide it.  But what I can't do is invade your role by

7    determining what information you need in order to make your

8    fact conclusions.

9         MR. S. STIRLING:  Your Honor, respectfully, I think

10   agreed facts in the joint pretrial report stand to a different

11   footing than other evidence.

12        THE COURT:  You mean the stipulated-to facts.

13        MR. S. STIRLING:  Yes, the stipulated-facts in the

14   joint pretrial report I think stand on a different footing than

15   other evidence and it is appropriate, at a minimum, to refer

16   the jury to stipulated facts that are not contested in this

17   case.

18        MR. HAVELES:  We strongly disagree, your Honor.  The

19   charge that you read yesterday, to which Mr. Stirling never

20   objected, said the stipulated facts are just amongst all the

21   other evidence and was not entitled to any different treatment.

22   It was one of a series of things and that's not to be

23   highlighted or given special distinction as opposed to

24   something else, and that was explicitly in the charge that your

25   Honor read at the conclusion of the charges yesterday morning.

1          THE COURT:  I think, again, Mr. Stirling, it's just a

2     version of the same thing.  And they asked for nine copies of

3     the stipulated facts yesterday.  So I feel quite confident, if

4     that's what they are looking for, based on their doing their

5     job, which is not my job to take over, then they have it.

6          Anything else with respect to what I propose?

7          MR. S. STIRLING:  No, your Honor.

8          THE COURT:  Mr. Haveles.

9          MR. HAVELES:  I would just recommend findings instead

10    of conclusions at the end of your statement, your Honor.

11         THE COURT:  And I used the word earlier as well.  I

12    said to come to conclusions.  I'll say to come to findings.

13    And then at the end, fact findings.

14         MR. HAVELES:  Yes, your Honor.  Otherwise, we have no

15    other comments on the proposed response.

16         THE COURT:  Will you get the jury.

17         (Jury present)

18         THE COURT:  Everyone may be seated.

19         Good afternoon, members of the jury.  I did receive a

20    note which says:  In order to answer No. 6, we need to know the

21    total amount received for A through G and then listing as A

22    through G Renco Group, Ira Rennert, Legge, Thayer, Ogaard,

23    Brown, and Kaplan.  And then you also say:  Plus new paper,

24    please, and thank you.

25         New paper we can do and that will be sent back to you

1    in a moment.

2              On the first question here is the response I have:

3    Part of your fact-finding task for this question is to come to

4    findings, come to your findings based on the evidence to

5    determine what amounts for each of those defendants has been

6    proved.  If there are specific documents you have in mind or

7    specific testimony, I will gladly provide it, but what I can't

8    do is invade your role by determining what information you need

9    in order to make your fact findings.

10             That's the response I can give you.  We will send you

11   back with paper in hand.  Thank you very much.

12             (Jury deliberations resumed; time noted 12:23 p.m.)

13             THE COURT:  Anything else?

14             MR. HAVELES:  Not now, your Honor.

15             Luncheon recess in 10 minutes?

16             THE COURT:  Luncheon recess in 10 minutes.

17             MR. HAVELES:  We will keep it wicked short, your

18   Honor.

19             THE COURT:  Certainly take 40 minutes.  I think we

20   have that.  And everybody needs a break.

21             Just to plant the seed, in case it hasn't occurred to

22   you, you should be thinking about settlement talks and let me

23   know if you need anything from the Court.

24             MR. HAVELES:  Thank you, your Honor.

25             (Recess pending verdict)

```
 1            THE COURT:  We have a note.  It says:  Which

 2    documents -- something -- I cannot read the word.  Which

 3    documents something colon, Ogaard colon, quote, we urge extreme

 4    caution CapEx and negative cash drain, end quote.  Thank you.

 5            MR. HAVELES:  I think I understand.

 6            THE COURT:  It's clear what they are looking for, I

 7    think.

 8            MR. HAVELES:  They are asking for -- I think it's

 9    which document is or some verb that just says what is the

10    document that has that statement in it.

11            THE COURT:  I totally agree.  For purposes of reading

12    the note I am not sure what the word is, but they are looking

13    for a document which they are attributing to Mr. Ogaard with

14    something along the lines of, we urge extreme caution, CapEx

15    and negative cash drain.

16            MR. HAVELES:  We can identify that.  May Mr. Stirling

17    and I look at the note and see if we can translate the writing.

18    Since my handwriting is notoriously bad, I'm good at

19    interpreting bad handwriting.

20            THE COURT:  It could be asked, but it doesn't make a

21    lot of sense.

22            MR. HAVELES:  Looks like ask, your Honor.  An

23    ungrammatical sentence, but I think that's what they are doing.

24            We are looking to get the document number.  We know

25    which one it is, but I want to get the right document.
```

 1              MR. S. STIRLING:  Your Honor, I'm pointing out it is

 2    documents plural and I believe there are two of them.

 3              MR. HAVELES:  We are looking for them.

 4              MR. S. STIRLING:  We think those are Exhibits 2549 and

 5    2716.

 6              MR. HAVELES:  Your Honor, we are identifying -- if we

 7    can look at the documents, if you can give us one minute to

 8    pull them and examine them.

 9              THE COURT:  You can both identify what you think is

10    responsive and then let me know.

11              I think I didn't say this.  This note will be marked

12    as Court Exhibit 17.

13              MR. HAVELES:  Your Honor, we believe the only exhibit

14    is 2549.  That is the only document that uses the phrase

15    extreme caution.  The language is materially different between

16    it and 2716, the other document that Mr. Stirling identified.

17    I'm happy to hand up the two copies to your Honor.

18              THE COURT:  Sure.

19              MR. R. STIRLING:  Your Honor, if I may read from

20    Exhibit 2716.

21              MR. HAVELES:  The top one, your Honor, 2716 --

22              THE COURT:  There is no disagreement that 2549 is

23    responsive, correct?

24              MR. S. STIRLING:  Correct.

25              MR. HAVELES:  Your Honor, I think it's actually the

3017

```
 1    other way around.  It's 2716 that uses the extreme caution.
 2    It's 2549 that has different language.
 3              THE COURT:  Would you say if it uses, we urge extreme
 4    caution, is that responsive?
 5              MR. HAVELES:  I misheard it.  My eyes are failing me
 6    and my glasses are dirty.
 7              THE COURT:  2716.  Do you want to look at them again.
 8    They both use that language.
 9              MR. HAVELES:  If I may, your Honor.
10              THE COURT:  Sure.
11              MR. HAVELES:  Thank you.
12              I stand corrected, your Honor, even with my dirty
13    glasses.  Thank you.
14              THE COURT:  So everybody agrees 2549 and 2716 are
15    responsive?
16              MR. HAVELES:  Yes, your Honor.
17              MR. S. STIRLING:  Yes, your Honor.
18              THE COURT:  Bring them out and I'll give them those
19    numbers.
20              (Jury present)
21              THE COURT:  Thank you, members of the jury.  I have a
22    note from you which says:  Which documents -- I think the next
23    word is ask -- Ogaard, quote, we urge extreme caution CapEx and
24    negative cash drain.  Thank you.
25              And the exhibits that I can point you to that I
```

1   believe you are asking for with that language are 2549 and

2   2716.

3           Thank you very much.

4           (Jury deliberations resumed; time noted 1:20 p.m.)

5           THE COURT:  Anything to take up?

6           MR. HAVELES:  No.

7           THE COURT:  We will wait to hear from the jury.  Thank

8   you.

9           (Recess pending verdict)

10          THE COURT:  We have a note which I will mark as Court

11  Exhibit 18.  It says:  Testimony of Roger Fay, please.  You'll

12  gather the direct.

13          MR. HAVELES:  The entirety of the testimony, your

14  Honor?

15          THE COURT:  Yes.

16          MR. HAVELES:  We can do that.  It will take us about

17  10 minutes just to process it and get it printed out, if your

18  Honor can give us that indulgence.

19          THE COURT:  Of course.

20          MR. HAVELES:  We need to also then go through it and

21  redact it for any objections that were sustained.  I don't

22  believe any testimony was stricken from Mr. Fay.

23          THE COURT:  If you would pull what you think, maybe

24  just working together redact, and if there is any dispute you

25  will let me know.  Otherwise, I'll come back in about 10

1    minutes, unless you indicate you are ready sooner and we will

2    get that in to them.

3           MR. HAVELES:  Ten minutes should probably be able to

4    do it.  Mr. Fuisz promised me he knows how to print now.  If he

5    is true to his word, we will be able to do it very quickly.

6           THE COURT:  Thank you.

7           (Recess pending verdict)

8           MR. HAVELES:  Your Honor, we have gone through the

9    testimony.  Mr. Stirling and I reviewed it.

10          For the record, Mr. Fuisz doesn't get any credit.

11   Mr. Langsdorf preprinted all the witness testimony last night

12   for every witness in anticipation of such a request.  As our

13   case manager, he gets much kudos.

14          THE COURT:  Well done.

15          MR. HAVELES:  That's basically Mr. Stirling and I

16   jointly went through it all.  We are in agreement that this is

17   the testimony we have extracted, three pages that was pure

18   colloquy amongst the parties during a break about some

19   exhibits.  In terms of what should be admitted or not and

20   everything else, your Honor, has been redacted for the

21   objections and the colloquy that may have occurred in

22   connection with that.

23          THE COURT:  Mr. Stirling, do you agree?

24          MR. S. STIRLING:  Yes.

25          THE COURT:  One thought.  Just the first page of it,

1    at the top is marked Veranth recross.  I think my suggestion

2    would be to redact that.

3              MR. HAVELES:  That's the running header from the court

4    reporter.  I will do that right now, your Honor.

5              THE COURT:  Thank you.  Unless anyone objects, my

6    suggestion would be to simply send this back, since it was very

7    clear what was being asked for, rather than bringing them out.

8              Everyone comfortable?

9              MR. S. STIRLING:  Yes, your Honor.

10             MR. HAVELES:  Yes, your Honor.

11             THE COURT:  With your agreement as to this, we will

12   send back in response to their request for the testimony of Mr.

13   Fay what you have gathered.

14             Thank you.  We will wait to hear from the jury.

15             (Recess pending verdict)

16             THE COURT:  I have a note which we will mark as Court

17   Exhibit 19.  It says:  Unfortunately, we cannot agree on No. 1

18   and therefore we are hung.  I'm sorry.

19             I would propose a deadlock charge.  I would propose an

20   Allen charge along the following lines.  I'm happy to hear your

21   suggestions.

22             I received a note indicating that you've not been able

23   to reach a unanimous verdict as to all questions.  This is not

24   unusual with juries.  The case is important for the plaintiff

25   and for the defendants.  Both parties, as well as the Court,

1    have expended a great deal of time, effort, and resources in

2    seeking a resolution of this dispute.  It is desirable if a

3    verdict can be reached that this be done, both from the

4    viewpoint of the plaintiff and of the defendants'.  But as I

5    stated in my instructions to you, your verdict must represent

6    the conscientious judgment of each juror.

7         It's normal for jurors to have differences.  This is

8    quite common.  While you may have honest differences of opinion

9    with your fellow jurors during your deliberations, each of you

10   should seriously consider the arguments and opinions of the

11   other jurors.  Do not hesitate to change your opinion if after

12   discussion of the issues and consideration of the facts and

13   evidence in this case you are persuaded that a change of your

14   original opinion is justified.  Again, I emphasize that no

15   juror should vote for a verdict unless it represents his

16   conscientious judgment.

17        MR. HAVELES:  I am just trying to formulate one idea

18   in my head, if you can give me 20 seconds or 30 seconds, your

19   Honor.

20        THE COURT:  Take your time.

21        Mr. Stirling, are you close?

22        MR. S. STIRLING:  Close, your Honor.

23        THE COURT:  Take some more time.  I can hear from you

24   first or I can hear from Mr. Haveles.

25        Go ahead, Mr. Haveles.

```
 1              MR. HAVELES:  Your Honor, this note from the jury is

 2    not the first such note that we received from the jury.  Last

 3    night, when they were asking to go home to have a chance to

 4    refresh themselves, they specifically advised Court they are at

 5    an impasse.

 6              THE COURT:  Temporarily they said.

 7              MR. HAVELES:  I understand.  This is now a second,

 8    more dramatic impasse and I think this is a jury that we have

 9    seen right out of the box, went right to work and tried to deal

10    with issues.

11              THE COURT:  I am not going to not give an Allen

12    charge.

13              MR. HAVELES:  I understand.  But I would still like to

14    make my record, if I may, your Honor.

15              I believe, under the circumstances, that the Allen

16    charge, as opposed to declaring a mistrial at this time, is

17    unnecessary, in light of the record of the jury's deliberation

18    and notes, and first would request and object to the giving of

19    a charge as opposed to declaring a mistrial at this time.

20              THE COURT:  Do you have any support for the notion

21    that based on this a mistrial would be appropriate?  Noting, by

22    the way, it is conceivable that even if they were render a

23    partial verdict here, they may have answered yes on question 2

24    and question 3 or question 3, which you can make whatever

25    arguments you made, but I think as a logical matter we are in
```

1   the same place as if they answered 1.

2          MR. HAVELES:  I understand, your Honor.  The

3   instructions were clear that they could answer any of the

4   three, and they have come back and they have told you that they

5   are hung.  Do I have case law here with me, your Honor, about

6   mistrials?  No.  I'm just arguing from the record that's been

7   established.

8          THE COURT:  I think in response to that that every

9   indication I've seen from this jury, based on their attention

10  throughout trial, their questions, their following of

11  directions, that I'm not in any way certain that they won't

12  come to a unanimous verdict with a reminder that they should

13  keep deliberating and be open while maintaining their

14  consciously-held views.

15         MR. HAVELES:  To the extent I infer from your Honor's

16  comments that you have denied my application, then I would

17  request additional language be added to the instruction.

18         Your Honor, the problem with an Allen charge always is

19  to try to find a balance where it doesn't seem coercive.  I

20  know your Honor has attempted that with it twice saying, you

21  don't -- the last sentence, which is a repetition, and

22  unfortunately it's not in front of the screen, so I can't

23  repeat it verbatim, the advice that you tell the jury that they

24  can still make -- Mr. Fuisz is scrolling for me.

25         THE COURT:  On the repetition point -- let me finish,

1    Mr. Haveles.

2            MR. HAVELES:  I apologize, your Honor.

3            THE COURT:  As a general matter I try not to talk on

4    top of you, just because that is a problem for the record.  You

5    know, stopping speaking when the judge is talking is not an

6    unheard-of matter of courtroom behavior.

7            MR. HAVELES:  I understand that, your Honor.

8            THE COURT:  Thank you.  And even if it weren't, I try

9    to stop talking when you are talking.

10           In adding the sentence that I did at the beginning, I

11   think I did introduce a repetition, although I don't think it's

12   the repetition -- I am just taking the standard deadlocked

13   charge from Model Jury Instructions.  And I was conforming it a

14   little bit to another one that I had, and I think I did

15   introduce a repetition, but not the one that you had.

16           Let me just read again what I would propose:  I have

17   received a note indicating that you have not been able to reach

18   a unanimous verdict with respect to all questions.  I will say

19   that this case is important for the plaintiff and for the

20   defendants.  Both parties, as well as the Court, have expended

21   a great deal of time, effort, and resources seeking a

22   resolution of this dispute.  It is desirable if a verdict can

23   be reached that this be done, both from the viewpoint of the

24   plaintiff and of the defendants.  But as I stated in my

25   instructions to you, your verdict must represent the

1    conscientious judgment of each juror.

2              It is normal for jurors to have differences.  This is

3    quite common.  While you may have honest differences of opinion

4    with your fellow jurors during the deliberations, each of you

5    should seriously consider the arguments and opinions of the

6    other jurors.  Do not hesitate to change your opinion if, after

7    discussion of the issues and consideration of the facts and

8    evidence in this case, you are persuaded that a change of your

9    original opinion is justified.  Again, I emphasize that no

10   juror should vote for a verdict unless it represents his

11   conscientious judgment.

12             MR. HAVELES:  In lieu of the last sentence, your

13   Honor, we believe to avoid the coercive effect that Allen

14   charges have that courts try to avoid them having, we would

15   propose the following sentence be placed instead of the last

16   sentence:  You should not feel compelled to change your

17   judgment simply to reach a verdict unless you believe in the

18   exercise of your judgment it is correct.

19             THE COURT:  Mr. Stirling.

20             MR. S. STIRLING:  Your Honor, I don't see how that is

21   any improvement on the last sentence that you had proposed.  It

22   seems to be, as you suggested, it isn't obvious from this note

23   that the jury has even reached or whether they are hung on

24   questions 2 or 3 or whether they have gone, which would permit

25   them to go on to question 7 and subsequent parts as to which

1   they may have reached agreement, or may not be hung, at any

2   rate.  And I believe that may not be clear to them and I think

3   it may be appropriate to remind them to read the instructions

4   that they have, to make that clear to them that they can go

5   on --

6          THE COURT:  No, I won't do that, at least not yet.  We

7   can talk about a partial verdict of some kind, but they have

8   been instructed to come to a unanimous decision on all

9   instructions that they were directed to, unless told to skip.

10  And the verdict form, approved by everyone, without any

11  objection to this, I don't think suggests that they can skip

12  question 1 by answering question 2 or question 3.  I am not

13  going to change midstream the verdict form that everyone

14  consented to, unless I am forgetting something about the

15  verdict form.

16         MR. S. STIRLING:  Your Honor, I don't believe it does

17  require them to do that.  At the end of question 1 it says:

18  Proceed to question 2.

19         THE COURT:  Yes.  And my instructions were that they

20  have to answer any questions unless they were told that they

21  could skip any as a result of other answers.  So what you are

22  suggesting might have been a good idea at the time of the

23  charging conference, and we can talk about it down the road if,

24  in fact, it turns out that they will be deadlocked, although I

25  remain fairly optimistic that won't be the case.

1          In any event, I'm not going to change the directions

2    now.

3          MR. S. STIRLING:  Your Honor, but on page 5 of the

4    jury verdict form it says:  If you answered no to every part of

5    question 1, every part of question 2, and every part of

6    question 3, skip to question 7.

7          THE COURT:  That doesn't help you.

8          MR. S. STIRLING:  Just a moment, your Honor, if you

9    would.

10          THE COURT:  I am going to give a standard

11    run-of-the-mill balanced Allen charge.  There is just nothing

12    here at this point.  This was a trial that lasted three and a

13    half weeks.  They have been deliberating for not even a full

14    two days.  So everybody, calm down.  We are not close to the

15    doomsday scenario.  There is a lot to be done, including just

16    telling them, without abandoning their beliefs, to see if they

17    can come to a consensus.

18          No, Mr. Stirling.  Not yet.  I'll hear you.

19          MR. S. STIRLING:  Actually, I agree with you on that,

20    your Honor.

21          I did want to point out that instruction No. 7

22    concludes on page 11.  What the jury was told was:

23    Accordingly, you need to find by a preponderance of the

24    evidence that only one of these three types of transfers has

25    occurred in order to find for the plaintiff.

1        THE COURT:  That is true.

2        MR. S. STIRLING:  You do not need to find that all

3   three types of transfers occurred.

4        THE COURT:  That is very true.  But I told them that

5   they had to answer every question on the verdict form unless

6   they were specifically told to skip as a result of other

7   conclusions.  So, again, if you had brought this point up at

8   the charging conference, we may have done something different

9   and there may be something different to do down the road, but I

10  am not going to do that now and I'm happy to hear it after I

11  give a charge.

12       Mr. Haveles, I am not going to accept your sentence.

13  I didn't think it improved on the Modern Federal Jury

14  Instructions standard charge.  But I think your preliminary

15  point was the repetition of the reminder that you don't want me

16  to tell them that your verdict must represent the conscious

17  judgment of each juror?

18       MR. HAVELES:  No, your Honor.  I was going to be

19  making two points.  The first is, although you had made that

20  point twice, I didn't think that was enough to balance out the

21  fact that twice you told them that they should try to reach a

22  verdict.

23       THE COURT:  Two times of each.  Is it balanced?

24       MR. HAVELES:  I think the fact that the other was much

25  longer and there is a very short sentence to simply say, you

1    should follow your conscience wasn't sufficient and that's why

2    I changed the language to say, you are not compelled.  Your

3    Honor, I think that was really the concern that I was trying to

4    express by the additional language.  It was to balance things

5    out so it didn't look like they were being told they must reach

6    a verdict.

7              THE COURT:  I think that's exactly the point of the

8    charge.  And ending with the sentence that I emphasized that no

9    juror should vote for a verdict unless it represents his or her

10   conscientious judgment does precisely what you are asking for,

11   and I'm taking that language from the standard charge listed in

12   Modern Federal Jury Instructions from Lexis, indicating as in

13   all circuits except the District of Columbia.  And I do think

14   the fact that it makes both points twice and certainly

15   doesn't -- we can talk about, if we get to the point of needing

16   another charge, what additional language to add, but I think

17   this is quite standard and appropriate under all the

18   circumstances.

19             We will get the jury.

20             Let me say, and we will pause before they come in, I

21   should also end with something like:  Please continue your

22   process of deliberation, just to make clear what I'm asking

23   them to do.  Okay?

24             MR. HAVELES:  Yes, your Honor.

25             THE COURT:  Okay, Mr. Stirling?

1              MR. S. STIRLING:  Yes, your Honor.

2              (Jury present)

3              THE COURT:  Thank you, members of the jury.  I

4    received a note which reads:  Unfortunately, we cannot agree on

5    No. 1 and, therefore, we are hung.  I'm sorry.

6              So I did receive that note and let me give you my

7    instruction.  I have received that note from you, that you have

8    not been able to reach a unanimous verdict with respect to all

9    questions.  This case is important for the plaintiff and for

10   the defendants.  Both parties, as well as the Court, have

11   expended a great deal of time, effort, and resources in seeking

12   a resolution of this dispute.  It is desirable if a verdict can

13   be reached that this be done, both from the viewpoint of the

14   plaintiff and of the defendants.  But as I stated in my

15   instructions to you, your verdict must represent the

16   conscientious judgment of each juror.

17             It is normal for jurors to have differences.  This is

18   quite common.  While you may have honest differences of opinion

19   with your fellow jurors during the deliberations, each of you

20   should seriously consider the arguments and opinions of the

21   other jurors.  Do not hesitate to change your opinion if after

22   discussion of the issues and consideration of the facts and

23   evidence in this case you are persuaded that a change of your

24   original opinion is justified.  Again, I emphasize that no

25   juror should vote for a verdict unless it represents his or her

1    conscientious judgment.

2              With that instruction in mind, I'll ask you to please

3    continue your process of deliberation.  Thank you very much.

4              (Jury deliberations resumed; time noted:  3:40 p.m.)

5              THE COURT:  That note, as I said, we have marked as

6    Court Exhibit 19.

7              Anything else?

8              MR. HAVELES:  No, your Honor.

9              MR. S. STIRLING:  Nothing, your Honor.

10             THE COURT:  I do think spend your time thinking

11   through your proposals for the contingency of another

12   deadlocked note.  I'm happy to hear those and it's a good use

13   of this time to plan for that contingency.  As I said, I remain

14   optimistic.  It was a long trial, obviously, a lot of

15   information, complicated instructions.  They have been working

16   very hard, asking for a lot of information.  And they have only

17   been deliberating -- I think it went to them yesterday at about

18   11:30 in the morning and they put out a note asking to stop at

19   about 4:30, 4:45, and then started today, I think all of the

20   jurors came in, we brought them in a little bit before 10 to

21   give them the materials and it's 3:40 now, having received that

22   note about 15 minutes ago.

23             In the scheme of length of deliberations, especially

24   compared with the length of trial and complexity of trial, very

25   early.  So for that reason I do remain optimistic, but I also

1    have every confidence that they are following the instructions,

2    including the instruction not to abandon their conscientious

3    view.

4              We will wait to hear from the jury.  Thank you.

5              (Recess pending verdict)

6              THE COURT:  I have a note which I will mark Court

7    Exhibit 20.  It says:  We need a break from the room.  One

8    juror is having a panic attack.

9              My suggestion is to bring them in, take a 10-minute

10   break, come back in 10 minutes.  If they want to break until

11   the morning, they should bring out a note.  If they want to

12   continue, they should continue.  I want to give them a break

13   since somebody is uncomfortable.  We will go get them.

14             MR. PARK:  Your Honor, on reflection I'm concerned

15   about that note.

16             THE COURT:  We will talk about it after the jury comes

17   in.  Here they come.

18             (Jury present)

19             THE COURT:  I got a note that we need a break from the

20   room.  One juror is having a panic attack.  I certainly want to

21   give you a break.

22             Here is what I'm going to suggest or do.  Take a

23   10-minute break.  It's 4:20 now.  Come back at about 4:35.  If

24   what you decide is you want to stop for the day once you come

25   back from the break, send out a note that you want to stop for

1    the day.  If you decide you want to keep going, just send out a

2    note whenever you want to stop.  Let's do that.  But go back,

3    get your coats, whatever you want, walk around and just come

4    back in about 10 minutes and make a decision as to whether you

5    want to continue today or continue in the morning.  Thank you

6    very much.

7                 (Jury deliberations resumed; time noted 4:22 p.m.)

8                 THE COURT:  Mr. Park.

9                 MR. PARK:  Your Honor, for a juror to express that

10   they are having a panic attack --

11                THE COURT:  Not that unusual.

12                MR. PARK:  In my experience, I have never received a

13   note like that in the years that I've been doing trials in this

14   courthouse.

15                THE COURT:  Basically the same note happened I think

16   like two months ago.  Just with that background in mind, I'm

17   open to whatever it is you want to suggest.

18                MR. PARK:  We renew our motion for a mistrial.

19                THE COURT:  Denied.

20                Anything else?

21                MR. S. STIRLING:  Nothing here, your Honor.

22                THE COURT:  We will see what they say in terms of

23   continuing today or not.  And you are thinking through

24   contingencies if we were to receive another note indicating an

25   impasse and the like.

1          We will come back in 10.  Thank you.

2          (Recess pending verdict)

3          THE COURT:  I have a note which we will mark as 21.

4    We can work until 5.  May we leave and return tomorrow.

5          I interpret that to mean we can work until 5, but they

6    assume they will need to keep going tomorrow.  What I would

7    suggest is that I bring them back out just a couple of minutes

8    before 5 and send them home with my thanks for their continuing

9    efforts and reminding them of my instructions and have them

10   return at 9:30.  Okay?

11         MR. HAVELES:  Yes, your Honor.

12         MR. S. STIRLING:  Very good.

13         THE COURT:  I'll come back in a few minutes before 5.

14   Thank you.

15         (Recess pending verdict)

16         THE COURT:  Counsel, anything to take up before we

17   bring in the jury and send them home for the night?

18         MR. HAVELES:  No, your Honor.

19         MR. S. STIRLING:  Nothing here, your Honor.

20         THE COURT:  I'll do that.  I do plan to just say that

21   I know they have been working hard and it's a small room with

22   no windows and they have been there all day.  So I'm grateful

23   for their efforts and thank them, hope that they get a good

24   break and a good night's sleep, and to return tomorrow morning

25   at 9:30.

1          I will tell them I am going to have breakfast brought

2     in for them tomorrow.

3          (Jury present)

4          THE COURT:  Thank you so much, members of the jury.  I

5     did get your note saying that we can work until 5 and then may

6     we leave and return tomorrow.  Yes, of course.

7          And I just want to say that I'm very grateful.  I know

8     you are working hard.  I know it's a small room with no windows

9     and you were in there all day.  I'm just enormously grateful

10    for your efforts and your diligence.

11         I will send you home.  I do want to remind you of my

12    instructions.  No communications with anyone about the case

13    through any means, no research about the case through any

14    means.  And included in that is that if you were to come across

15    something inadvertently about the case, put it aside.  Don't

16    look at it or listen to it.  Because everything you need to

17    know about the case is what was admitted in evidence.

18         Same procedure as this morning.  Please be in the jury

19    room and ready to go by 9:30.  Please wait for all of you to be

20    there to start your deliberations.  That is important.

21         I am going to have breakfast, the hot breakfast

22    brought in again like we did a week or two ago.  We have your

23    orders from last time.  So we will order you what you had last

24    time and have that waiting for you beginning at 9 tomorrow.

25         I wish you a good break, a good night's sleep and

1     thank you so much.  We will see you tomorrow.

2               (Jury not present)

3               THE COURT:  Anything to take up, counsel?

4               MR. HAVELES:  Not on this side, your Honor.

5               THE COURT:  Mr. Stirling.

6               MR. S. STIRLING:  No, your Honor.

7               THE COURT:  See you tomorrow.  Thank you.

8               (Adjourned to Friday, February 27, 2015, at 9:30 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25